# Exhibit 1

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>16th JUDICIAL CIRCUIT<br>Macomb COUNTY | **SUMMONS** | CASE NO.<br>2023- 003669 -CB |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 40 N. Main Street, Mount Clemens, Michigan 48043 | (586) 469-5351 |

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| GLS LEASCO, INC.<br>12225 Stephens Road<br>Warren, MI 48089 | v | NAVISTAR, INC.<br>c/o CSC-Lawyers Incorporating Service (Company)<br>3410 Belle Chase Way, Ste. 600<br>Lansing, MI 48911 |

| Plaintiff's attorney, bar no., address, and telephone no. |
|---|
| Joseph E. Viviano (P60378)<br>Kienbaum Hardy Viviano Pelton & Forrest, P.L.C.<br>48 S. Main Street, Suite 2<br>Mount Clemens, MI 48043<br>(586) 469-1580 |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| OCT 25 2023 | JAN 24 2024 | *signature* ANTHONY G. FORLINI |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

| MC 01 (3/23) **SUMMONS** | MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105 |

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB**

| | |
|---|---|
| GLS LEASCO, INC., a Michigan Corporation, | Case No: 2023- ~~CU3669~~ -CB |
| Plaintiff, | Hon. *Richard Caretti* |
| vs. | **COMPLAINT** |
| NAVISTAR, INC., a Delaware Corporation, | |
| Defendant. | |

---

KIENBAUM, HARDY, VIVIANO, PELTON &
FORREST, P.L.C.
By:  Joseph E. Viviano (P60378)
     William B. Forrest (P60311)
     Marianne J. Grano (P82901)
Counsel for Plaintiff
48 South Main Street, Suite 2
Mt. Clemens, MI  48043
(586) 469-1580
jviviano@khvpf.com
wforrest@khvpf.com
mgrano@khvpf.com

**RECEIVED**

OCT 2 5 2023

ANTHONY G. FORLINI
Macomb County Clerk

BOIES SCHILLER FLEXNER LLP
By:  Hamish P.M. Hume (*Pro Hac Vice* pending)
Co-Counsel for Plaintiff
1401 New York Ave. NW
Washington, DC 20005
(202) 274-1149
hhume@bsfllp.com

---

THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION BETWEEN THESE PARTIES ARISING OUT OF THE SAME TRANSACTIONS OR OCCURRENCES ALLEGED IN THIS COMPLAINT.

THIS CASE INVOLVES A BUSINESS OR COMMERCIAL DISPUTE AS DEFINED IN MCL 600.8031 AND MEETS THE STATUTORY REQUIREMENTS TO BE ASSIGNED TO THE BUSINESS COURT.

                          */s/ Joseph E. Viviano*
                         Joseph E. Viviano (P60378)

## COMPLAINT

Plaintiff GLS Leasco, Inc. ("GLS") states as follows for its Complaint against Defendant Navistar, Inc. ("Navistar").

## PARTIES, JURISDICTION, AND VENUE

1.      GLS is a Michigan corporation with its registered office and principal place of business located at 12225 Stephens Road, Warren, Michigan.

2.      Navistar is a Delaware corporation registered and authorized to conduct business within the State of Michigan, with its principal place of business located in Lisle, Illinois.

3.      Navistar conducts systematic and continuous business in Macomb County and throughout the State of Michigan, including by maintaining an International Truck distributorship within Macomb County; marketing, distributing and selling tractors, trailers, parts, and accessories within Macomb County and the State of Michigan; creating, soliciting, and servicing a market for such products in Macomb County and the State of Michigan; being registered to conduct business in the State of Michigan; and entering into multi-million dollar contracts with Macomb County and Michigan business entities (including GLS and the contract at issue) for such products.

4.      This case arises out of a contract Navistar entered into with GLS, a Macomb County business entity, for over $128 million in Navistar trucks (also referred to as tractors), as set forth in an April 8, 2022 letter agreement. **Ex. A.**

5.      This Court has personal jurisdiction over Navistar under MCL 600.711 and 600.715.

6.      This Court has subject matter jurisdiction because the amount in controversy is in excess of $25,000.

7.      Venue is proper in Macomb County under MCL 600.1621.

2

8.      This case is properly assigned to business court under MCL 600.8031 and MCL 600.8035 because it involves a business or commercial dispute in which all parties are business enterprises, and it relates to their contractual agreement and business dealings.

## FACTUAL ALLEGATIONS

9.      GLS is in the business of purchasing, leasing, and selling commercial trucks.

10.     Navistar sells trucks, buses, and parts, and offers related financial services, within the State of Michigan and throughout the United States and Canada.

11.     GLS has made substantial purchases from Navistar in the past, including the six hundred and thirty (630) Model Year 2018 tractors that are at issue in this lawsuit (the "MY2018 Tractors").

12.     On November 6, 2017, Navistar and GLS entered into an Optional Trade-In Agreement. Under the Optional Trade-In Agreement, as more particularly set forth therein and without limitation, Navistar granted GLS the option to trade in the MY2018 Tractors for a specified residual value.

13.     In February 2021, GLS issued a request for quotation for new tractors to multiple original equipment manufacturers, including Navistar.

14.     In April 2021, GLS notified Navistar that it had been selected to supply 1305 tractors.

15.     On July 13, 2021, GLS entered into a letter agreement with Navistar and its dealer representative, Summit Truck Group, for the supply of 1,305 International Tractors (the "July 2021 Letter Agreement").

16.     Under the July 2021 Letter Agreement, as more particularly set forth therein and without limitation:

       a.  Navistar agreed to supply 1,100 2023MY tractors and 205 2024MY tractors for
           $113,843 per tractor;

3

b. Navistar recognized GLS's option to turn in 1046 used tractors (including the MY2018 Tractors);

c. Navistar agreed that the new MY2023 units would be produced and delivered to GLS from February 2022 to December 2022; and,

d. Navistar agreed that the new MY2024 units would be produced and delivered to GLS from January 2023 to February 2023.

17. At the end of 2021, Summit Truck Group was sold to Rush Enterprises, and at Navistar's behest, Navistar and GLS entered into negotiations for a new letter agreement excluding Summit Truck Group.

18. On April 8, 2022, Navistar and GLS entered into a new letter agreement (the "Letter Agreement"), **Ex. A,** which stated: "This Letter Agreement is intended to replace the previous agreement among GLS LeasCo., Summit Truck Group and Navistar dated July 13th, 2021." *Id.* at p.1.

19. During the negotiation of the Letter Agreement and at the time the parties entered into the Letter Agreement, it was widely known in the trucking industry, and was specifically known to Navistar and GLS, that the market for used trucks was historically strong.

20. At the time, Navistar was having difficulty producing new tractors with its Bendix Fusion collision mitigation system, resulting in production slots opening up for customers willing to accept delivery of new tractors without the Bendix system.

21. Consistent with the foregoing, the negotiations leading up to the Letter Agreement involved the following key points:

a. With full awareness of GLS's intention and expectation to purchase and take delivery of new tractors as soon as possible, and then to sell in the historically strong

4

re-sale market the MY2018 tractors that were being replaced by the new tractors, Navistar proposed an earlier delivery schedule for new tractors if GLS would accept delivery without the Bendix system (to be installed at a later date);

b. In exchange for the earlier production schedule that allowed GLS to sell its MY2018 tractors in the historically strong re-sale market, GLS expressed its willingness to consider waiving its trade-in option (including with respect to the MY2018 Tractors);

c. To further entice GLS to enter into this transaction, Navistar offered a rebate payment related to new tractor purchases, which ended up being $6.2 million in the Letter Agreement (or roughly $6,000 per new tractor).

22.   The earlier production schedule for the new tractors was a critical part of the consideration Navistar offered to GLS.

23.   GLS would never have waived its trade-in rights, including with respect to the MY2018 Tractors, in the absence of Navistar's agreement to the earlier production schedule, which both parties understood would allow GLS to sell the MY2018 tractors in the historically strong re-sale market.

24.   In order to secure the earlier production slots, GLS agreed to allow Navistar to complete the installation and wiring of its Bendix system after delivery of GLS's new tractors.

25.   Consistent with the foregoing, GLS and Navistar entered into the Letter Agreement with the mutual understanding and recognition that Navistar's earlier production schedule for the new tractors would allow GLS to take advantage of the historically strong market conditions for used tractors (including for the MY2018 Tractors).

26.     Accordingly, under the Letter Agreement, as more particularly set forth therein and without limitation:

    a.  Navistar agreed to produce 1100 MY2023 tractors from January 2022 through May 2022 (instead of the previously agreed upon production schedule of February 2022 to December 2022). *Id.* at pp.1-2.

    b.  In exchange for Navistar's promised earlier production schedule and a $6,200,000 rebate to GLS on the new tractor purchases, Navistar was released from its obligation to pay GLS the previously agreed upon residual value of specified used tractors (including the MY2018 Tractors).

    c.  The Letter Agreement's "No Trade Agreement" provision confirms that the residual value of the MY2018 Tractors (*i.e.*, the amount Navistar would have been required to pay for trade-ins in the absence of the No Trade Agreement provision), as of May 1, 2022, was $57,000 per vehicle.

    d.  The "No Trade Agreement" provision confirms that in the absence of this agreement, Navistar would have owed GLS, at GLS's option, in excess of $50 million for trade-in vehicles, including nearly $35 million for the MY2018 Tractors.

    e.  The "No Trade Agreement" provision states: "This Agreement Letter is all-encompassing for any and all current or future issues for 941 model year 2017 – 2019 International units and terminates any and all other agreements pertaining to these units." *Id.* at p.3.

27.     Navistar was fully aware during negotiation of the Letter Agreement and at all relevant times that:

a. GLS would be unable to sell its used tractors, including the MY2018 Tractors, and take advantage of the historically strong used truck market, until Navistar replaced the used tractors with new tractors;

b. Time was of the essence for the Letter Agreement's production schedule for new tractors;

c. GLS had agreed to waive its option to trade-in the MY2018 Tractors in consideration of Navistar's promised earlier production schedule;

d. the used tractor market was historically strong and would not remain so indefinitely;

e. there was a risk of a price drop in the market for used tractors with a production delay; and,

f. taking advantage of the historically strong market conditions for used tractors was the key reason GLS traded the security of Navistar's residual trade-in obligations for Navistar's earlier production schedule.

28. Navistar's knowledge of the market conditions is further demonstrated by Navistar's own efforts to capitalize on the historically strong used truck market during the relevant time period.

29. On May 2, 2022, *Fleet Maintenance* published an article entitled, "Navistar relocates Used Truck Center to better serve high-demand market."

30. The article states that "Navistar recently opened a new 13,000 sq.-ft. Used Truck Center located in Joliet, Illinois."

31. Tony Stinsa, a Navistar vice president, provided the following quotation for the article: "The used truck market continues to be in a state of abnormally low available inventory and

7

historically high pricing levels…Within the International [*i.e.* Navistar brand] used truck ecosystem, we are participating actively in this market."

32.     It was entirely foreseeable to Navistar, and Navistar knew at the time the parties entered into the Letter Agreement, that its failure to meet the production schedule would impair GLS's ability to take advantage of the historically strong market conditions for used tractors and could result in consequential damages in the form of re-sales at lower prices than would have been available if the promised production schedule was honored and fulfilled.

33.     Under the Letter Agreement, Navistar promised to produce all new tractors, including the replacements for the MY2018 Tractors, by the end of May 2022.

34.     Specifically, Navistar promised to produce the new tractors intended to replace the MY2018 Tractors as follows:

        a.   75 RH model Tractors during March 2022;

        b.   225 LT model Tractors during April 2022;

        c.   330 LT model Tractors during May 2022.

35.     However, by the end of May, Navistar had only delivered 18 of the 630 new tractors intended to replace the MY2018 Tractors.

36.     Navistar's late delivery of the new tractors extended well over a year. Rather than adhere to the production schedule it promised in the Letter Agreement, Navistar delivered the new tractors intended to replace the MY2018 Tractor as follows:

        a.   95 in June 2022;

        b.   74 in July 2022;

        c.·  80 in August 2022;

        d.   31 in September 2022;

e.  11 in October 2022;

f.  30 in November 2022;

g.  50 in December 2022;

h.  66 in January 2023;

i.  103 in February 2023;

j.  39 in March 2023;

k.  6 in April 2023;

l.  1 in May 2023;

m.  18 in June 2023;

n.  6 in July 2023;

o.  1 in August 2023;

p.  1 in September 2023.

37.     Navistar's failure to timely deliver the new tractors intended to replace the MY2018 Tractors precluded GLS from selling the MY2018 Tractors during the period of Navistar's delay and precluded GLS from benefitting from the historically strong market conditions for used tractors.

38.     During the months following the time period in which Navistar was contractually obligated supposed to have completed its deliveries, the price for the MY2018 tractors dropped by over 75%, causing GLS to suffer substantial damages in the form of lost sales revenue.

39.     As a direct result of Navistar's delay, GLS lost tens of thousands of dollars in lost revenue and profits for each one of the MY2018 Tractors it sold, totaling tens of millions of dollars in damages.

40.     In addition, as a direct result of Navistar's production delay, GLS sustained far higher maintenance, fuel, driver recruitment, and repair costs due to the need to keep the MY2018 Tractors in service instead of replacing them with new tractors.

41.     In addition, as a direct result of Navistar's production delay, GLS has been required to pay a higher rate of interest and incurred higher costs related to financing the new tractors that replaced the MY2018 Tractors.

42.     It was entirely foreseeable to Navistar, and Navistar knew, that GLS would sustain far higher maintenance, fuel, driver recruitment, and repair costs and financing costs if Navistar did not timely deliver the new tractors under the Letter Agreement.

## COUNT ONE: BREACH OF CONTRACT

43.     GLS incorporates the foregoing allegations.

44.     The Letter Agreement constitutes a binding contract between GLS and Navistar.

45.     Navistar's failure to meet the required production schedule is a material breach of the Letter Agreement.

46.     GLS has suffered tens of millions of dollars of damages caused by Navistar's material breach of the Letter Agreement, including without limitation consequential damages, incidental damages, and lost profits related to GLS's inability to sell its used tractors into the historically strong used tractor market as intended and expected by both parties at the time of the Letter Agreement, GLS's increased maintenance, fuel, driver recruitment, and repair costs during the period of GLS's delay, and GLS's higher financing costs and interest expenses related to the purchase of new tractors.

10

**WHEREFORE,** Plaintiff GLS requests that the Court enter judgment in its favor and against Defendant Navistar in an amount greater than $25,000.00, plus interest, costs, attorneys' fees, and such further relief as the Court deems just and equitable.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, PLC:

By: /s/ *Joseph E. Viviano*
       Joseph E. Viviano (P60378)
       William B. Forrest (P60311)
       Marianne J. Grano (P82901)
Counsel for Plaintiff
48 S. Main Street, Suite 2
Mount Clemens, MI 48043
(586) 469-1580
jviviano@khvpf.com
wforrest@khvpf.com
mgrano@khvpf.com

and

BOIES SCHILLER FLEXNER LLP
By: Hamish P.M. Hume (*Pro Hac Vice* pending)
Co-Counsel for Plaintiff
1401 New York Ave. NW
Washington, DC 20005
(202) 274-1149
hhume@bsfllp.com

October 25, 2023

11

RECEIVED

OCT 2 5 2023

ANTHONY G. FORLINI
Macomb County Clerk

# EXHIBIT A

 **Navistar, Inc.**
5850 Granite Parkway, Suite 760
Plano, TX 75024

P: 972-377-1208
C: 469-422-8042
E: sean.carmichael@navistar.com

Sean Carmichael
Vice President
Southwest Region

April 8, 2022

Mr. Kyle Blain
GLS LeasCo, Inc.
12225 Stephens Rd
Warren, MI 48089

Dear Mr. Blain,

Navistar is working diligently to secure production dates as early as possible based on the current production environment. At the time of this letter Navistar can supply (1,100) new 2023 International LT/RH production slots from January 2022 thru June 2022. The production availability dictates that the trucks will be 2023 model year. This Letter Agreement is intended to replace the previous agreement among GLS LeasCo., Summit Truck Group and Navistar dated July 13th, 2021.

**New and Used Quantity and Pricing per unit:**

(500) 2023 International RH A26 Day-cab Tractors (Proposal: 9202-44)............................ $116,317*
　　　*For Bendix Prewire with credit for aftermarket install of Radar add $1,839
　RH A26 optional coverages:
- 48mo / 400,000 mile Custom Service Contract - Chassis Warranty..............$2,750
- 48mo ($550 per occurrence) - Towing Warranty.................................$650

(561) 2023 International LT X15 Day-cab Tractors (Proposal: 9219-02)............................ $116,317*
　　　*For Bendix Prewire with credit for aftermarket install of Radar add $1,839
　LT X15 optional coverages:
- 36mo / 400,000 mile Custom Service Contract - Chassis Warranty..............$3,260
- 36mo ($550 per occurrence) - Towing Warranty.................................$550
- 36mo / 400,000 mile Engine & After-treatment.................................$1,875

(39) 2023 International LT X15 Sleeper Tractors (Proposal: 2746-59)............................ $137,754
　LT X15 optional coverages:
- 60mo / 600,000 mile Custom Service Contract - Chassis Warranty..............$6,100
- 60mo ($550 per occurrence) - Towing Warranty.................................$800
- 60mo / 600,000 mile Engine & After-treatment.................................$5,780

New Truck Delivery – based on available production at the time of this letter.

| New Truck Build Month | RH New Truck Builds | LT New Truck Builds | Trades |
|---|---|---|---|
| January | 42 | | 0 |
| February | 32 | | 0 |
| March | 342 | | 0 |
| April | 42 | 300 | 0 |
| May | 3 | 339 | 0 |
| June- Spillover month | | | |
| Total | 461 | 639 | 0 |

## New Truck Pricing to include the following:

- Payment 30-day terms with $25.00 per day liquidated damages per unit for late funding of new units.
- 48mo / 400,000 mile optional trade residual for MY28 RH A26/LT X15 Day-cab 6x4 at $55,000
  - Higher Optional Trade residual value if Central adds aluminum wheels and virgin rubber to the trucks at turn-in $2,000 estimated additional value.
  - Requires the execution of a separate Optional Trade Back ("OTB") Agreement which will include notification of intent to exercise the option 6 months prior to the 48th month anniversary of the trucks delivered under this agreement. Subject to replacement new truck deal finalization, production slots will be secured.
- 48mo / 400,000 mile optional trade residual for MY23 LT X15 Sleeper 6x4 at $58,500 which includes virgin rubber at turn-in ($1,000 deduct for non-virgin rubber at turn-in).
  - Requires the execution of a separate Optional Trade Back ("OTB") Agreement which will include notification of intent to exercise the option 6 months prior to the 48th month anniversary of the trucks delivered under this agreement. Subject to replacement new truck deal finalization, production slots will be secured.
- 48mo / 400,000 mile Engine and After-treatment warranty.
- 2023MY steel/commodities surcharge and updated shipping charge for 2022 orders
- Bendix Fusion prewire only (RH A26 Day-cab & LT X15 Day-cab models only) (Navistar add for secondary market only). Unit price above of $116,317 includes reduction in lieu of radar installation credit. If credit for radar aftermarket install is requested at time of order, please see aftermarket install feature code price listed above.
- International 360 and Fleet Health – *included in Intelligent Fleet Care on all 2022 models and newer.*
- Advanced Preventative Maintenance – *Included in Intelligent Fleet Care on all 2022 models and newer.*
- Navistar Fleet Charge – Navistar will work with Central Transport to facilitate establishing an account for Central Transport and Universal Truckload Services with 60-day terms and appropriate credit line for each company, based on terms and conditions to be established.
- Financing – financing may be available through Navistar Capital at market interest rate on all new trucks ordered from Navistar in this Letter Agreement.
- NED Software – all maintenance locations
- DLB Software – all maintenance locations
- Navistar onsite and web training for all locations.
- Fuel Analytics – Software *under development with no release date currently.*
- The CY23 and CY24 price increase will be based on the greater of a 1.5% increase or the change in the PPI industry code, Transportation Equipment Truck and Bus Body – WPU1413, comparing an average of the 6 months index values prior to the first produced unit in CY23 and CY24 to an equivalent period the prior year. The annual economic price increase will be based on the last invoiced price including surcharges.

Price guarantee does not include government mandates, greenhouse-gas increases or associated costs, specification changes, additional destination charges, vendor price increases and availability, model discontinuation, or extended service contract price updates.

<u>No Trade Agreement Notes:</u>

- Navistar agrees to pay Central $6,200,000 upon payment for the MY23 1,100 new units under this Letter Agreement.
- Disbursement of funds will be as follows:
  - Check in the amount of $600,000 made out to LGSI
  - Check in the amount of $4,000,000 made out to Central Transport
  - Fleet Charge Credit of $1,600,000 applied to Central Transports account
- Central/Universal and PAM Transportation will dispose of all 941 trades associated with this package. Late model units outlined below:
- (827) 2018-2019MY DayCabs to include:
  - Up to a 1 year, 100,000 mile after-treatment warranty. Such warranty will be cancelled upon delivery of a corresponding new truck delivered in the same month.

Prior to delivery of new units, Central to provide VIN number of units being taken out of service in that month.

| Company | Year | Make | Model | Description | Count | Average Residual or Purchase Offer | Preferred Terms Mileage | Rollout Start Date |
|---|---|---|---|---|---|---|---|---|
| Central | 2017 | International | PROSTAR | Daycab - Tandem Axle | 73 | $36,000 | 400,000 | May 1, 2022 |
| PAM | 2017 | International | PROSTAR | Daycab - Tandem Axle | 28 | $36,000 | 250,000 | May 1, 2022 |
| Central | 2018 | International | RH613 | Daycab - Tandem Axle | 612 | $57,000 | 400,000 | May 1, 2022 |
| Central | 2018 | International | LT62F | Daycab - Tandem Axle X15 | 10 | $58,000 | 400,000 | May 1, 2022 |
| ULH | 2018 | International | LT62F | Skyrise Sleeper | 13 | $56,000 | 150,000 | May 1, 2022 |
| Central | 2019 | International | RH613 | Daycab - Tandem Axle | 205 | $65,000 | 300,000 | May 1, 2022 |
|  |  |  |  | **Total** | **941** |  |  |  |

- GLS LeasCo. agrees to supply Navistar a VIN list for all 941 trade units associated with the "No Trade Agreement".
- GLS LeasCo. will work with Central/Universal and PAM Transportation to allow Navistar the opportunity to replace connecting rods prior to the sale/auctions of units that are currently in-service RH A26 units within the suspected production range of connecting-rod issues and within population targeted for proactive repairs
  - Navistar service team to provide VIN list for affected group and will be in contact with Central Transport on logistical details.
- Navistar UTO is requesting first right of refusal to purchase Central/Universal/PAM International branded trade units if they are being priced for sale at or below equivalent OTB values ("OTB values in chart above represented as residual value or purchase offer).
- As part of the "No Trade Agreement" associated with the $6.2M payment, Central/Universal and PAM Transportation have been compensated for the following:
  - Assistance for the disposal of the 941 units included in the table above.
  - Rental invoices associated with delayed current and future production on units that were to be in serviced in the first quarter of 2022.
  - Rental invoices associated with previous model year(s) delayed production resulting in 2017-2019 International trade units remaining in service.
  - Rental invoices associated with downtime associated with QLS, connecting rods issues and DPF/DOC items.
  - OnCommand/3G/4G and 5G communication devices associated with all model year 2018 - 2020 units. All expense to add such communication devices for model year 2021 and newer will be at Central/Universal and PAM Transportations expense moving forward.
  - This Agreement Letter is all-encompassing for any and all current or future issues for 941 model year 2017 - 2019 International units and terminates any and all other agreements pertaining to these units.

Thank you again for your business and continued partnership!

_____          5/13/22
Kyle Blain                                                Date
Vice President, Maintenance
GLS LeasCo, Inc.


_____          4-8-2022
Sean Carmichael                                        Date
Vice President, SW Region
Navistar, Inc.


_____          _____
Allegiance Truck Group                                 Date

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

GLS LEASCO, INC., a Michigan
Corporation,

      Plaintiff,

vs.

NAVISTAR, INC., a Delaware Corporation,

      Defendant.

Case No: 2023- *003669* -CB

Hon. *Richard Caretti*

---

KIENBAUM, HARDY, VIVIANO, PELTON &
FORREST, P.L.C.
By:  Joseph E. Viviano (P60378)
     William B. Forrest (P60311)
     Marianne J. Grano (P82901)
Counsel for Plaintiff
48 South Main Street, Suite 2
Mt. Clemens, MI 48043
(586) 469-1580
jviviano@khvpf.com
wforrest@khvpf.com
mgrano@khvpf.com

BOIES SCHILLER FLEXNER LLP
By:  Hamish P.M. Hume (*Pro Hac Vice* pending)
Co-Counsel for Plaintiff
1401 New York Ave. NW
Washington, DC 20005
(202) 274-1149
hhume@bsfllp.com

RECEIVED

OCT 2 5 2023

ANTHONY G. FORLINI
Macomb County Clerk

---

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, PLC:

By: /s/ Joseph E. Viviano
       Joseph E. Viviano (P60378)
       William B. Forrest (P60311)
       Marianne J. Grano (P82901)
Counsel for Plaintiff
48 S. Main Street, Suite 2
Mount Clemens, MI 48043
(586) 469-1580
jviviano@khvpf.com
wforrest@khvpf.com
mgrano@khvpf.com

and

BOIES SCHILLER FLEXNER LLP
By: Hamish P.M. Hume (*Pro Hac Vice* pending)
Co-Counsel for Plaintiff
1401 New York Ave. NW
Washington, DC 20005
(202) 274-1149
hhume@bsfllp.com

October 25, 2023

2



# *Anthony G. Forlini*

## Macomb County Clerk
## Register of Deeds

Kathy Smith
Chief Deputy Clerk

TO:    FILER

FROM:   Macomb County Clerk of the Court

RE:    **2023-003669-CB**    16th Circuit Court Case Number

JUDGE:   RICHARD CARETTI

---

This is to inform you that the above mentioned case is deemed an e-filing case pursuant to Administrative Order No. 2019-4. It is MANDATORY that all further filings in this matter are to be filed electronically through the court's e-filing website at:

**http:// mifile.courts.michigan.gov**

Registration instructions, filing instructions, the administrative order and frequently asked questions can be found on the court's website at:

**http://circuitcourt.macombgov.org/CircuitCourt-eFilingResources**

All parties must register with the court and opposing parties one e-mail address for service. Service will be provided electronically to the email address that you provide. All parties must also register an email address with the TruFiling e-filing system. Each individual is responsible for the accuracy of the registered email address.

For TrueFiling technical support, please call 1-855-959-8868, or send an email to:

**support@truefiling.com.**

You are required to serve this notification on all parties when perfecting service on the Complaint. Also, if you have not previously provided your email address to our office when submitting documents for filing, it is now required that you furnish it in order for us to update our records.

If you need help in submitting your filing electronically, assistance is available in the Circuit Court I.T. Department on the 6th Floor. Computers, scanners and staff are available to assist you during normal business hours 8:00 a.m. to 12:00 p.m. and 1:30 p.m. to 4:00 p.m.

**Court Section**
40 North Main Street, 1st Floor
Mount Clemens, MI 48043
586-469-5351; Fax: 586-469-5364
macombgov.org/ClerkRoD
courtclerk@macombgov.org

**Court Section File Room**
40 North Main Street, 1st Floor
Mount Clemens, MI 48043
586-469-5199; Fax: 586-469-5365
macombgov.org/ClerkRoD
fileroom@macombgov.org

01.17.2020