UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

        Plaintiffs,

v.

        NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs' Motion for a Protective Order re: Defendant's 30(b)(6) Notice Related to "Discovery about Discovery"**

Plaintiffs GLS Leasco, Inc. and Central Transport, LLC, through their counsel, move this Court for a protective order quashing Defendants' 30(b)(6) topic regarding Plaintiffs' "litigation hold and efforts to preserve potentially relevant evidence in connection with the above captioned lawsuit." In support of the motion, Plaintiffs state the following:

1. The undersigned counsel certifies that counsel personally spoke to opposing counsel on September 25, 2024, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

2. Defendant Navistar issued 30(b)(6) deposition notices to each Plaintiff. Topic 2 of each notice was "[Plaintiff's] litigation hold and efforts to preserve potentially relevant evidence in connection with the above captioned lawsuit."

3. Courts generally disallow "discovery about discovery," including in a 30(b)(6) deposition notice, absent some evidence of wrongdoing. Navistar tried to use recent fact-witness depositions of fact witnesses to create a showing of impropriety, relying on witnesses' imperfect memories of the litigation hold. In response, Plaintiffs provided Navistar with proof that the witnesses received a litigation hold before this lawsuit was filed, and both witnesses had confirmed that their computers were searched in the litigation. Even so, Navistar has refused to withdraw its improper deposition topics—and further doubled down, suggesting an

-1-

intent to take the deposition of the in-house attorney whose name is on the litigation hold memo, in a direct effort to invade privilege. This motion was thus necessary.

Plaintiffs now move the Court for a protective order quashing Topic 2 from the 30(b)(6) notices issued for Plaintiff GLS Leasco, Inc. and Plaintiff Central Transport LLC, as Navistar's planned "discovery about discovery" is improper.

> Respectfully submitted,
>
> KIENBAUM HARDY VIVIANO
> PELTON & FORREST, PLC:
>
> By: */s/ Thomas J. Davis*
>     Joseph E. Viviano (P60378)
>     Eric J. Pelton (P40635)
>     Thomas J. Davis (P78626)
> Counsel for Plaintiffs
> 48 S. Main Street, Suite 2
> Mount Clemens, MI 48043
> (586) 469-1580
> jviviano@khvpf.com
> epelton@khvpf.com
> tdavis@khvpf.com

Date: September 25, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT LLC,

    Plaintiffs,

v.

NAVISTAR, INC.,

    Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs' Brief in Support of Motion for a Protective Order re:
Defendant's 30(b)(6) Notice Related to "Discovery about Discovery"**

-i-

**Statement of Issues Presented**

Discovery into litigation holds and responses to document requests is generally inappropriate without evidence showing a reason to distrust a party's diligence. Here, Plaintiffs issued a litigation hold and preserved employee data, searched and produced responsive documents, and performed further searches using Defendant's own requested search terms. Defendants have no proof of wrongdoing. Should the Court issue a protective order forbidding Defendant's demands for "discovery about discovery," including in its Rule 30(b)(6) deposition notices?

## Table of Contents

Statement of Issues Presented ................................................................................... i

Table of Authorities ................................................................................................ iii

Introduction ...............................................................................................................1

Background ...............................................................................................................2

      A.      The parties agree to an ESI protocol, which Plaintiffs follow. ......................................................................................................2

      B.      Navistar complains about the size of Plaintiffs' production, and Plaintiffs agree to use Navistar's selected terms. ................................................................................................3

      C.      Navistar attempts to create a false controversy over the "litigation hold," and persists despite being given the hold document. ...............................................................................................4

Argument ...................................................................................................................6

Conclusion ...............................................................................................................10

## Table of Authorities

**Cases**

*Edwards v. Scripps Media, Inc.*,
 331 F.R.D. 116 (E.D. Mich. 2019) ................................................................. 6, 7

*Smithkline Beecham Corp. v. Apotex Corp.*,
 2000 WL 116082 (N.D. Ill. Jan. 24, 2000) ........................................................ 7

*Stein v. U.S. Xpress Enters, Inc.*, No. 2022
 WL 511553 (E.D. Tenn. Feb. 11, 2022) ............................................................ 7

## Introduction

Defendant Navistar's case is in trouble. Its Vice President Sean Carmichael—the person who signed the operative April 2022 contract on Navistar's behalf—admitted at deposition to Navistar's breach of contract and Navistar's understanding of the consequential damages that would flow to Plaintiffs from that breach. Specifically, he admitted (1) Navistar was contractually obligated to provide Central with its trucks "by the end of June" 2022; (2) that "it was very important to hit the June date so Central could sell" its used trucks in a favorable market; and (3) that Navistar "could not produce the new trucks as promised so Central could pull out the trades in time." Ex. A, Carmichael Dep. 392-393. Carmichael also admitted that the current cornerstone of Navistar's defense—alleged supply chain issues—were all resolved as to Plaintiffs' trucks when he signed the agreement. *Id.* at 395-399.

Given the evaporation of Navistar's defenses, it has turned to manufacturing a distraction: that Plaintiffs have failed to preserve evidence and did not issue a litigation hold. This is false. Plaintiffs issued a litigation hold before beginning the litigation and provided Navistar with proof. Plaintiffs' fact witnesses confirmed that their computer drives were copied in the litigation. Plaintiffs' original search terms were thorough—so much so that when Navistar demanded a second round of searches using its own terms, it only generated a few dozen additional responsive documents from among the 185,000+ ESI documents preserved and searched. And

the purportedly "missing" documents Navistar has focused on are *Navistar emails* sent by Navistar's agent Jim Lollis, produced by Lollis in discovery. There is no basis for Navistar's attack on Plaintiffs' litigation hold and discovery responses. The Court should grant a protective order prohibiting Navistar from taking this planned "discovery about discovery" and disallowing its Rule 30(b)(6) topics on the issue.

## Background

This is a case about Navistar's breach of an agreement with Plaintiff GLS Leasco, Inc. to timely produce and deliver 630 trucks to Plaintiff Central Transport, LLC. This lawsuit was filed in Macomb County Circuit Court on October 25, 2023. *See* ECF No. 1-1, PageID.8. On October 9, 2023—several weeks before the lawsuit was filed—GLS issued a litigation hold notice to employees at GLS and Central[1] who likely had knowledge about the issues set forth in the complaint: GLS President and Central Vice President of Maintenance Kyle Blain, Central CFO Nick Schmalenberg, and Central employees Brianne Perkins and Joe Hanvey, among others. *See* Ex. B, Sept. 24, 2024 Letter to Navistar's Counsel, Attachment. These individuals' computers were also forensically imaged and preserved by Plaintiffs' counsel's eDiscovery vendor, at direction of counsel.

**A.   The parties agree to an ESI protocol, which Plaintiffs follow.**   In January 2024, the parties met and conferred on an ESI protocol that permitted each

---

[1] GLS Leasco and Central are affiliated and share common legal counsel.

party to craft their own search terms for identifying potentially relevant ESI before review and production of responsive documents. ECF No. 15, PageID.103. The parties also agreed to exchange the search terms and custodians used, upon request. PageID.104. Plaintiffs ran their search terms against over 185,000 unique ESI documents from the four custodians noted above (among others) and identified over 6,000 documents with hits. Of those, around 1,000 were responsive—with many of them privileged.

      **B.   Navistar complains about the size of Plaintiffs' production, and Plaintiffs agree to use Navistar's selected terms.** After complaints by Navistar about the production—primarily based on a comparison with the number of pages in Navistar's own production (Ex. C, July 26, 2024 Letter to Plaintiffs' Counsel, p. 3)—Navistar issued Rule 30(b)(6) deposition notices to GLS and Central, each of which included as its Topic 2 the Plaintiff's "litigation hold and efforts to preserve potentially relevant evidence in connection with the above captioned lawsuit." Ex. D, GLS 30(b)(6) Notice; Ex. E, Central 30(b)(6) Notice.

      Plaintiffs responded by refuting the alleged deficiencies and disclosing their custodians and the ESI search terms they had used. Ex. F, August 6, 2024 Letter to Navistar's Counsel. In response, Navistar claimed that Plaintiffs' search terms were "far too narrow" and proposed its own search terms for Plaintiffs' ESI. Ex. G, August 19, 2024 Email to Plaintiffs' counsel, pp. 2-3 & attachment. But to address

Navistar's concerns and address their dispute, Plaintiffs agreed to re-run its searches using Navistar's search terms, verbatim. Ex. H, August 26, 2024 Email to Navistar's Counsel. Most of the documents captured by Navistar's search terms had already been captured by the search terms Plaintiffs had earlier crafted—reflecting the thoroughness of their original search terms—with Plaintiffs producing the few dozen additional responsive documents arising from a review of those new hits. *See* Ex. B. Plaintiffs requested that Navistar drop its improper demand for discovery into Plaintiffs' litigation hold. Navistar did not agree, but the parties agreed to defer resolution of the litigation hold objection and proceed with the other 30(b)(6) topics.

    **C. Navistar attempts to create a false controversy over the "litigation hold," and persists despite being given the hold document.** During the weeks of September 9 and September 16, 2024, Navistar took Plaintiffs' 30(b)(6) depositions, as well as depositions of Plaintiffs' fact witnesses, including Kyle Blain, Brianne Perkins, and Nick Schmalenberg. Navistar asked questions directed at creating a document-preservation issue. But Blain confirmed he received a litigation hold. Ex. I, Blain Dep. 8. Perkins did not recall whether she received a litigation hold but confirmed that her computer was "swept" as part of the litigation. Ex. J, Perkins Dep. 21-22, 67:2-4. Schmalenberg recalled receiving a hold, and confirmed that his computer drive had been copied. Ex. K, Schmalenberg Dep. 8-11.

On September 20, 2024, Navistar's counsel sent a "deficiency" letter that made vague accusations that Plaintiffs had not preserved data. Ex. L, Sept. 20 Letter to Plaintiffs' counsel. The basis of the accusation was that Brianne Perkins did not have copies of emails that Navistar's agent Jim Lollis[2] had sent her in April 2022—information that Lollis would have obtained from Navistar and thus is in Navistar's own possession or control. *See id.* at p. 1. But the reason for this was no secret: Perkins testified that she did not retain emails in the ordinary course of business, and there was nothing unusual to her about the communication from April 2022 that would have merited special treatment. Ex. J at 22:9-21, 104-108. And Schmalenberg explained that Central only had limited inbox space, necessitating deletion in this pre-litigation period. Ex. K at 9-12. The April 2022 email from Lollis to Perkins (which Navistar had in its possession via Lollis himself) predated the litigation by *eighteen months*—long before any lawsuit was contemplated.

Plaintiffs responded to the letter on September 24, 2024, pointing out the deficiency in Navistar's logic regarding "preservation" issues—*i.e.*, that Perkins's routine deletion of emails long before litigation started was not problematic—but

---

[2] Lollis worked for Allegiance Trucks, the dealership supporting the GLS/Central account. Ex. M, Lollis Dep. 52. Lollis had daily communication with Navistar; he had access to Navistar's computer systems; and he received Navistar production data, which he would convey to customers like Plaintiffs. *Id.* at 14-15. Navistar's Sean Carmichael confirmed that "communication [from Navistar] normally flows through Jim Lollis back to Kyle [Blain's] team." Ex. A, Carmichael Dep. 50-52; *see also id.* at 358 (confirming that production updates "flowed through the dealer").

-5-

that in any event, Navistar *did* have the email in question and the information at issue in those documents was Navistar information. *See* Ex. B, Sept. 24 Response Letter. Nevertheless, in a show of good faith and to avoid unnecessary motions practice, Plaintiffs provided Navistar with a redacted copy of their litigation hold—redacting everything but the information that would be contained in a privilege log[3]—along with an electronic copy of the same with metadata confirming that Blaine, Hanvey, Perkins, and Schmalenberg did receive a litigation hold in October 2023. *See id.* At a follow-up conference, Plaintiffs informed Navistar that it would be forced to file this motion if it did not withdraw its 30(b)(6) notice topic regarding Plaintiffs' litigation hold. Navistar refused, and went further, indicating a desire to depose the GLS attorney who issued the litigation hold memo. Plaintiffs rejected this proposal and indicated that it would file this motion for a protective order.

## Argument

A party's demands to engage in "discovery about discovery" are generally prohibited—including in a 30(b)(6) deposition. *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019) (citing cases). Such discovery is generally ordered only "when the record suggests that there is reason to distrust the responding party's diligence." *Id.* Thus, when "a party responding to discovery takes the

---

[3] The parties agreed, in their ESI protocol, to exchange privilege logs on a mutually-agreeable date. ECF No. 15, PageID.106. Although Plaintiffs have raised this issue several times, Navistar has yet to agree to a deadline. *See* Ex. B at p. 1.

position that it has fully responded, the court usually will not compel a further response absent evidence that the responding party has improperly withheld documents." *Id.*; *accord, e.g.*, *Stein v. U.S. Xpress Enters, Inc.*, No. 2022 WL 511553, at *2 (E.D. Tenn. Feb. 11, 2022) (denying motion to compel 30(b)(6) witness to testify about the steps "taken to locate, preserve, review, and produce information" sought in discovery because the plaintiffs "have not demonstrated any lapses in Defendants' preservation or production efforts that would call into question the methods they have utilized to find and produce ESI").

These rules are particularly applicable in the 30(b)(6) context insofar as "answering requests for production… customarily is performed with the assistance of counsel" and inquiries into the document production process "improperly trespass[] into areas of work product and attorney-client privilege." *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000); *accord Club v. BNSF Ry.*, 2016 WL 4528452, at *5 (W.D. Wash. Aug. 30, 2016) (rejecting similar topic on overbreadth and privilege grounds where "all discovery requests were overseen by attorneys for its organization").

Under this authority, Navistar's 30(b)(6) topics regarding Plaintiffs' litigation hold and document review is inappropriate—particularly given its stated desire to depose a GLS attorney, thereby threatening to directly invade Plaintiffs' attorney-client privilege and work product. Navistar has no basis for its accusation that

Plaintiffs have failed to preserve documents or respond appropriately to discovery requests.

*First*, Plaintiffs did issue a litigation hold before filing the lawsuit, and the relevant custodians' ESI was collected and preserved. Plaintiffs have produced the hold (with redactions to information that would not appear on a privilege log). It was sent to Blain, Perkins, and Schmalenberg among others. *See* Ex. B. Navistar cannot reasonably dispute this; all it claims to the contrary is a lay witness's lack of recall of receiving the notice—issued almost a year ago—and even that witness confirmed that she knew her ESI had been swept during the litigation. *Supra* at 4.

*Second*, Plaintiffs complied with the parties' own negotiated ESI protocol, which this Court entered by the parties' stipulation. *Supra* at 2-3. Plaintiffs generated search terms intended to find responsive documents among the more than 180,000 ESI documents that had been preserved. The search term "hits" were then individually reviewed for responsiveness to Navistar's document requests, and the responsive documents were produced. *Id.* After Navistar complained that not "enough" documents were provided, Plaintiffs told Navistar what custodians were searched and what search terms were used. *Supra* at 3-4. Navistar then proposed its own search terms, and Plaintiffs agreed to run *those* terms against the preserved ESI set. *Id.* This resulted in only a few dozen additional responsive documents. *Id.* This sequence of events—where Navistar's *own* search terms were almost entirely

-8-

subsumed within Plaintiff's original search parameters—shows that Plaintiffs' original search terms were thorough and appropriate.

Navistar has also repeatedly speculated that something is "wrong" because Navistar produced more documents than Plaintiffs. But that is no surprise: Navistar is a huge multinational manufacturing concern, significantly larger than Plaintiffs. Dozens of Navistar employees across several states and at least one foreign country participated in the transaction at issue, requiring Navistar to search for and produce documents from these custodians. By contrast, only a handful of Plaintiffs' employees had any significant involvement in the Navistar deal and worked in the same building. Navistar also points to the number of emails produced by its dealer Allegiance on behalf of Lollis, but again fails to appreciate that Allegiance appears to have simply produced all the Lollis/Central documents it had without reviewing for responsiveness—something that Plaintiffs *did* do, and had a right to do via the parties' own stipulated ESI protocol. Ultimately, Navistar's accusations based on comparative page counts rest on baseless speculation.

*Third*, Navistar cannot point to anything of relevance that is missing, let alone that was destroyed in bad faith at a time where a preservation obligation existed. Its most recent accusation of impropriety revolves around an April 2022 email from Navistar's agent Lollis to Perkins. There is nothing suspicious about Perkins's failure to retain the email, per her own testimony. *Supra* at 5. It was a routine

-9-

document that Navistar's dealer sent long before litigation began (and, indeed, months before Navistar's breach even would have occurred). But more importantly, Navistar *has* that email, as it was produced by Lollis. And the information in that email—Navistar's claimed production figures and intended delivery schedule—is itself Navistar information, entirely within Navistar's own records. Navistar knows when it produced the trucks in question. It knows when it sent them for delivery. Navistar does not point to any actual "missing" evidence, let alone relevant evidence.

## Conclusion

Ultimately, a party seeking "discovery about discovery" requires evidence of misconduct, not innuendo or speculation. Its accusations here are baseless and appears to be a distraction from the lack of merit in its defenses to Plaintiff's claims. The Court should grant Plaintiffs' motion for a protective order and prohibit Navistar's planned discovery into Plaintiffs' litigation hold and document review.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, PLC:

By: */s/ Thomas J. Davis*
    Joseph E. Viviano (P60378)
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Counsel for Plaintiffs
48 S. Main Street, Suite 2
Mount Clemens, MI 48043
(586) 469-1580
jviviano@khvpf.com

epelton@khvpf.com<br>tdavis@khvpf.com

Date:  September 25, 2024

## LOCAL RULE CERTIFICATION

      I, Thomas J. Davis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

                                      Respectfully submitted,

                                      KIENBAUM HARDY VIVIANO
                                      PELTON & FORREST, PLC:

                                      By: */s/ Thomas J. Davis*
                                            Joseph E. Viviano (P60378)
                                            Eric J. Pelton (P40635)
                                            Thomas J. Davis (P78626)
                                      Counsel for Plaintiffs
                                      48 S. Main Street, Suite 2
                                      Mount Clemens, MI 48043
                                      (586) 469-1580
                                      jviviano@khvpf.com
                                      epelton@khvpf.com
                                      tdavis@khvpf.com

Dated:  September 25, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

>	*/s/ Thomas J. Davis*
>	(P78626)
>	Kienbaum Hardy
>	Viviano Pelton & Forrest, P.L.C.
>	280 N. Old Woodward Ave., Ste. 400
>	Birmingham, Michigan 48009
>	(248) 645-0000
>	tdavis@khvpf.com