


171 Monroe Avenue, NW, Suite 1000
Grand Rapids, MI 49503-2694 U.S.A.
(616) 742-3930
Fax (616) 742-3999

www.btlaw.com

Scott R. Murphy
(616) 742-3930
smurphy@btlaw.com

September 20, 2024

**Via Email and Regular Mail**

Thomas J. Davis
Kienbaum Hardy Viviano Pelton & Forrest, PLC
280 N. Old Woodward Ave
Birmingham, MI 48043

      RE:    *GLS Leasco, Inc., et al. v. Navistar Inc.*, **United States District Court for the Eastern District of Michigan, Case No. 23-cv-12927-MAG-APP ** Discovery Deficiency Letter No. 2 **

Dear Thomas:

    We write to address deficiencies in Plaintiffs GLS Leasco, Inc. ("GLS") and Central Transport, LLC's ("Central" and collectively with GLS "Plaintiffs") discovery responses to Defendant Navistar, Inc.'s ("Navistar") First Set of Interrogatories and Requests for Production. Please review the below and provide availability for a meet and confer.

    **I.**    **Litigation Hold**

    As you are aware, deposition exhibit D-32 is an email dated April 13, 2022 from Jim Lollis to Brianne Perkins with a copy to Kyle Blain and Mason Steward. This document was produced by Mr. Lollis in response to GLS's subpoena at LOLL – 0000047-48. Mrs. Perkins responded to this email on April 21, 2022 requesting "the latest and greatest for production dates" and that Mr. Lollis send "weekly production updates." LOLL 0000049-50. In response, Mr. Lollis informed Mrs. Perkins that "everything is the same as the spreadsheet sent on 4-13" and he again attached the spreadsheet with projected build start dates. *Id*. None of these documents were produced by GLS despite their relevance to the central issue in this case. Mr. Blain testified that he did not recall receiving it. Mrs. Perkins testified that she doesn't recall receiving a litigation hold and her regular practice was to delete emails. Specifically, Ms. Perkins testified:

    Q.    Do you recall receiving any instruction not to delete or erase either emails or documents that might be potentially relevant to this lawsuit?

    A.    No.

Thomas J. Davis
September 20, 2024
Page 2

Q. So if we were to ask you to go back and search for emails with Jim Lollis, would those emails still be present on your computer?

A. **Probably not.**

Q. Why do you say that?

A. **Because impracticability wouldn't keep them. I run pretty lean.**

Q. And when you say you run pretty lean, is there a typical time period in which you would delete emails?

A. **No, no typical timeframe, but once the transaction is done, it's done, I move on, I don't keep anything because I wouldn't expect something like this, of course. (Perkins Rough Tr. pp. 18-19.**

During Nick Schmalenberg's deposition, he testified that he thought he received an email "a couple months ago" instructing him not to delete documents. In light of Plaintiffs failure to produce critically relevant documents in this case, Plaintiffs production of less than 3,000 pages of documents in total (as compared to the other productions in this matter), and Plaintiffs apparent failure to implement a proper litigation hold, we request the following:

1) Produce a copy of Plaintiffs' litigation hold (if any), identify the date the litigation hold was transmitted to Plaintiffs' employees (assuming it was) and identify the custodians who received the litigation hold, including the email received "a couple months ago" as referenced by Messrs. Schmalenberg and Hanvey during their depositions;

2) Produce Plaintiffs' document retention policy (if any);

3) State whether Plaintiffs have in their possession (whether produced or not) the aforementioned emails between Mr. Lollis and Ms. Perkins (LOLL 47-49) and all communications related thereto and, if Plaintiffs do possess these emails, explain why they were not produced; and

4) Produce all communications between Mr. Lollis and Plaintiffs applying no search terms from November 2021 through September 2023;

Given the urgency of this matter and the apparent lack of preserving potentially relevant evidence, please provide your availability to discuss this matter early next week.

Thomas J. Davis
September 20, 2024
Page 3

## II. Ownership of Model Year 2023 Tractors Leased to Central

During GLS's corporate representative deposition, Mr. Blain testified that Equipment Leasing Company, LLC purchase at least some (if not all) of the MY 2023 Tractors and leased those tractors to Central. Specifically, he stated:

> Q. And did Equipment Leasing Company, LLC purchase these trucks?
>
> **A. Yes.**
>
> Q. Okay. And what is Equipment Leasing Company, LLC?
>
> **A. It's a leasing company that leases trucks to Central Transport, same matter that GLS's coding does.**
>
> Q. And so we can go through all these invoices, but am I correct that Equipment Leasing Company, LLC purchased all of the trucks that are referenced in the First Amended Complaint?
>
> **A. Well –**
>
> Q. With respect to Central Transport?
>
> MR. PELTON: For 2023 model year?
> MR. MURPHY: Yes, sir.
>
> THE WITNESS: And we talked about that yesterday. You know, originally GLS Leasco was the leasing entity. The affiliated leasing entity that Central got their lease and their trucks from. You know, at some point that had changed to Equipment Leasing Company.
>
> BY MR. MURPHY:
>
> Q. Right.
>
> **A. Another affiliate. And I wasn't certain exactly that time frame. You know, the invoices would be -- you know, this is truly the first invoice, then it would have been Equipment Leasing Company from the beginning.**

(9/11/24 GLS Dep, pp. 34-35).

**BARNES & THORNBURG** LLP

Thomas J. Davis
September 20, 2024
Page 4

Navistar's RFP 28 & 29 specifically request all documents related to the purchase of the MY 2023 tractors subject to the April 2022 Letter Agreement and Plaintiffs never produced any of the invoices, titles or communications concerning the purchase of the MY 2023 tractors. Deposition Exhibit 42 contains some, but not all of the invoices related to the sale of the MY 2023 tractors that were produced by Allegiance. Plaintiffs never produced any of these documents. In light of this deficiency, provide the following:

1) Produce all invoices, proof of payment and related documents concerning the purchase of the MY 2023 tractors that were intended for lease with Central;

2) Produce all titles reflecting ownership of the MY 2023 tractors;

3) Include Becky Butler as a custodian and produce all relevant documents concerning the purchase and licensing of MY 2023 tractors.

### III. Documents Related to Sale of MY 2018 tractors

During Brianne Perkins deposition she stated that she took over the sale of the MY 2018 tractors from Mirsad Dzebic that forms the basis of Plaintiffs damage claim and referenced a number of documents and communications she would have had concerning the sale of the tractors. Other than the invoices marked as Defendants' deposition exhibit D-50, Plaintiffs have not produced any additional documents related to efforts to sell the MY 2018 tractors. Defendant's RFP 18 to GLS specifically asks for all documents related to the potential sale of any MY2018 tractors. According, provide the following:

1) All documents and communications concerning any advertising by Plaintiffs for the sale of MY 2018 tractors including all advertisements with Truck Paper, My Little Salesman and Ritchie Brothers and related communications;

2) All bills of sale if separate from the invoices;

3) All communications regarding the sale of the MY 2018 tractors.

Lastly, Ms. Perkins referenced a spreadsheet which reflects the date each MY 2023 tractors was delivered to a Central terminal. Please confirm that Plaintiffs will produce the spreadsheet.

As a practical matter, Navistar has produced well over 100,000 pages of documents and Allegiance produced over 13,000 pages of documents. Jim Lollis produced over **5,000 documents** and GLS, on the other hand, has produced less than 3,000 ***pages*** of documents to date. It is clear that GLS's production is not complete and that GLS has either not identified, collected, and reviewed all potential ESI sources, or failed to take reasonable precautions to preserve potentially relevant evidence. To the extent you rely upon your "search terms" as an excuse as to why Plaintiffs' production is missing critical documents relevant to this case, we never agreed to your initial search terms and only requested that you include additional search terms in light of Plaintiffs deficient production.

**BARNES & THORNBURG** LLP

Thomas J. Davis
September 20, 2024
Page 5

      Please review the above, provide availability for a meet and confer to occur no later than September 24, 2024, and provide GLS's search terms and sources used to cull potentially responsive ESI. Please note that the foregoing is without prejudice to Navistar's right to compel compliance with any of GLS's other discovery deficiencies. Thank you.

      Regards,

      BARNES & THORNBURG LLP

      Scott R. Murphy

cc:    Marianne J. Grano (mgrano@khvpf.com)
       Eric J. Pelton (epelton@khvpf.com)