UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and CENTRAL
TRANSPORT LLC,

      Plaintiffs,                         Case No. 23-cv-12927

v.                                 Hon. Mark A. Goldsmith

NAVISTAR, INC.,               Magistrate Judge Anthony P. Patti

      Defendant.

---

## DEFENDANT NAVISTAR, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER (ECF NO. 30)

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES PRESENTED ........................................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................. iv

INTRODUCTION ........................................................................................................ 1

RELEVANT BACKGROUND .................................................................................... 3

    A.    Plaintiffs believe Navistar committed a breach of contract as early as May/June of 2022. .................................................................................. 3

    B.    Despite requesting that Navistar preserve evidence in May 2023, GLS does not issue its litigation hold until October 9, 2023. ................... 4

    C.    Plaintiffs' preservation and collection efforts are reasonably drawn into question and, in fact, wholly inadequate. ............................................... 4

    D.    Plaintiffs' document production(s) further evidence their failure to preserve and/or produce potentially relevant evidence. ........................... 9

    E.    Navistar has uncovered significant gaps in Plaintiffs' production. ......... 10

ARGUMENT ............................................................................................................. 11

    A.    The Court has the authority to order the type of discovery sought by Navistar. ................................................................................................ 11

    B.    Navistar is entitled to its requested Rule 30(b)(6) deposition, and likely more discovery concerning Plaintiffs' preservation, collection, and document productions. ..................................................... 12

CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Crocs, Inc. v. Effervescent, Inc.,*
   2017 WL 1325344 (D. Co. 2017) ............................................................................ iv, 11

*Edwards v. Scripps Media, Inc.,*
   331 F.R.D. 116 (E.D. Mich. 2019) ...................................................................... iv, 1, 11

*John B. v. Goetz,*
   531 F.3d 448 (6th Cir. 2008) ...................................................................................... 11

*Lyman v. Ford Motor Co.,*
   344 F.R.D. 228 (E.D. Mich. 2023) .............................................................................. 15

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC,*
   No. CIV. 10-0541, 2013 WL 6159177 (S.D. Cal. Nov. 25, 2013) ........................... 13

*Zubulake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................. 14

**Other Authorities**

Fed. R. Civ. P. 26(c)(3) ..................................................................................................... 2, 16

Fed. R. Civ. P. 37(a)(5)(B) ............................................................................................... 2, 16

Fed.R.Civ.P. 37(b), (e)........................................................................................................ 11

Rule 30(b)(6)........................................................................................................... iii, 1, 12, 16

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether Plaintiffs, GLS Leasco, Inc. ("GLS") and Central Transport, LLC ("Central" and collectively with GLS, "Plaintiffs") are entitled to a protective order concerning topic 2 of Navistar Inc.'s ("Navistar") Rule 30(b)(6) corporate representative deposition notice, which requests testimony concerning Plaintiffs' "litigation hold and efforts to preserve potentially relevant evidence in connection with the above captioned lawsuit."

The Court should respond "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1.      *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116 (E.D. Mich. 2019).

2.      *Crocs, Inc. v. Effervescent, Inc.*, 2017 WL 1325344 (D. Co. 2017).

## INTRODUCTION

When the record suggests that there is reason to distrust the responding party's efforts to preserve potentially relevant evidence, or a "potential issue of spoliation," courts have ordered discovery about discovery. *See Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019). This includes "Rule 30(b)(6) depositions about retention policies and procedures, as well as litigation holds placed in a case[.]" *Id.* In this case, Navistar has uncovered evidence that goes well beyond a "reason to distrust" Plaintiffs' preservation efforts and, in fact, raises significant potential spoliation issues.

In particular, Plaintiffs' motion (ECF No. 30) takes the position that because they issued a litigation hold on October 9, 2023, it does not matter if Plaintiffs deleted relevant emails before that date, because no duty to preserve previously arose. But that position belies Plaintiffs' own May 26, 2023 "Notice of Material Breach of April 8, 2022 Letter Agreement," which Plaintiffs conveniently omit from their motion. In that letter that Plaintiffs sent to Navistar pre-suit, Plaintiffs contended Navistar breached the April 8, 2022 letter agreement, alleged damages "over $25,000,000," and requested Navistar "retain all communications between the parties relating to negotiation and execution of the Letter Agreement." *See* GLS Notice of Material Breach, **Exhibit A**.

Recent September depositions of Plaintiffs' witnesses have revealed that both before May 2023 and thereafter, Plaintiffs' custodians deleted potentially relevant communications on a nearly daily basis. As a result, Plaintiffs' limited document production (less than 3,000 pages as compared to the approximate 133,569 pages

1

produced by Navistar) omitted, among other things, critical communications concerning the production and delivery of the MY 2023 tractors, the very issue that forms the basis of Plaintiffs' claims.

In addition, despite Plaintiffs repeatedly representing in the face of Navistar's deficiency letters that they have "produced all responsive non-privileged documents" (ECF No. 30-7, PageID.335), Navistar has sampled Plaintiffs' document productions against other third-party productions and discovered significant gaps. These gaps include *at least* dozens of emails sent or received by Plaintiffs (a large majority of which include their custodians), between May 2023 and October 2023 (after Plaintiffs' breach letter), that Plaintiffs have not produced. To the best Navistar can determine, several of these missing emails would have even yielded a hit result using the search terms Plaintiffs' counsel represented they ran. Plaintiffs' motion, which does not even reference their May 2023 demand letter, bolsters that Navistar is entitled to further explore the breadth of Plaintiffs' potential spoliation of evidence and if warranted, seek further redress from the Court.

Pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5)(B), Navistar requests its reasonable attorney's fees and expenses in having to seek this deposition and responding to Plaintiffs' instant motion.

## RELEVANT BACKGROUND

**A.    Plaintiffs believe Navistar committed a breach of contract as early as May/June of 2022.**

Plaintiffs' second amended complaint alleges that "Navistar promised to produce the new tractors intended to replace the MY2018 Tractors as follows:

    a.   75 RH model Tractors during March 2022;

    b.   225 LT model Tractors during April 2022;

    c.   330 LT model Tractors during May 2022."

(ECF No. 29, ¶ 37, PageID.256).  Plaintiffs allege Navistar breached this agreement as early as March/April of 2022 because "by the end of May, Navistar had only delivered 18 of the 630 new tractors intended to replace the MY 2018 Tractors." (*Id.* ¶ 37).

By May 26, 2023, Plaintiffs' engaged a law firm to send Navistar a notice of material breach.  *See* Ex. A.  The notice contends that "Navistar's breach of the Letter Agreement forced GLS to sell its used trucks into a substantially weaker market" and that "Navistar was fully aware of GLS' desire to take advantage of the strong used truck market in 2022 at the time of the Letter Agreement."  *Id.*  Finally, the notice states:

> *GLS requests that Navistar retain all communications between the parties related to negotiation and execution of the Letter Agreement, and otherwise reserves all rights and remedies.*

*Id.*  Plaintiffs' motion omits reference to this May 26, 2023 letter to Navistar.

**B.     Despite requesting that Navistar preserve evidence in May 2023, GLS does not issue its litigation hold until October 9, 2023.**

Despite believing that Navistar allegedly breached the Letter Agreement as early as May 2022, and requesting that Navistar preserve evidence in May of 2023, Plaintiffs apparently did not issue a litigation hold until October 9, 2023.  (*See* ECF No. 30-3). According to Plaintiffs, the fact that they issued a litigation hold before they filed their complaint "should be the end of the matter" and simply because "two lay witnesses did not recall when they received a litigation hold is irrelevant."  (*Id.* at PageID.316).  As the record will show, not only did one of Plaintiffs' witnesses not recall even receiving the litigation hold, two other fact witnesses both testified that they received it a couple of months prior to their September 2024 depositions.  Even more concerning is the fact that Brianne Perkins ("Perkins"), Central's senior maintenance coordinator, never stopped deleting emails even after the lawsuit was filed, calling into question whether she ever received the litigation hold or just ignored it.  Plaintiffs state they "forensically imaged" her computer (ECF No. 30, PageID.289), but don't say when or provide any further details.

**C.     Plaintiffs' preservation and collection efforts are reasonably drawn into question and, in fact, wholly inadequate.**

Perkins was a primary contact between Central and Allegiance Truck Group ("Allegiance"), the dealer (not a party to this case), concerning the production and delivery of MY2023 International tractors from Navistar.   Perkins regularly communicated directly with Jim Lollis ("Lollis"), Allegiance's Fleet Sales Manager, via

4

email concerning updates to the production and delivery schedules.  Perkins Dep., **Exhibit B** at p. 35-36.  Often times, Navistar was not included in those communications.

On April 8, 2022, Navistar signed the Letter Agreement between Navistar, GLS, and Allegiance.  Kyle Blain (GLS) did not sign the Letter Agreement on GLS's behalf until May 18, 2022, 40 days later.  (ECF No. 29-1, PageID.280).  In pertinent part, the Letter Agreement states the following concerning the "RH New Truck Builds" and "LT New Truck Builds":

**New Truck Delivery – based on available production at the time of this letter.**

| New Truck Build Month | RH New Truck Builds | LT New Truck Builds | Trades |
|---|---|---|---|
| January | 42 | | 0 |
| February | 32 | | 0 |
| March | 342 | | 0 |
| April | 42 | 300 | 0 |
| May | 3 | 339 | 0 |
| June- Spillover month | | | 0 |
| **Total** | 461 | 639 | 0 |

Nearly every witness deposed in this case described the production schedule as "fluid" and subject to constant changes.  Perkins testified that Lollis provided her a schedule indicating the trucks would be delivered "within a three-month timeframe ending in June."  Perkins Dep., Ex. C at pp. 32-33.  From April 13, 2022 until delivery of the last tractor in September 2023, Perkins regularly communicated with Allegiance concerning production schedules, delivery dates, and invoicing for the MY2023 tractors.

On April 13, 2022, before GLS signed the Letter Agreement, Lollis sent Perkins and Blain a spreadsheet with estimated build dates for all 630 tractors.  *See* LOLL

000047, **Exhibit C**.  Plaintiffs did not produce this communication, nor the spreadsheet detailing the build schedule for all 630 tractors.  According to the build schedule, over 420 of the tractors were not even scheduled to be manufactured by Navistar until <u>after</u> June 1, 2022.  GLS's corporate representative testified that he didn't recall receiving this email, but would have considered it a material deviation from the build schedule contained in the Letter Agreement:

> Q.  Would you consider that prior Exhibit that we looked at that reflected all the build dates into June and July for over half of the CT trucks, wasn't that -- you said you don't know if you received or not.  You were copied on it. Would you consider that a material change or unmaterial change?
> **A.  That would be a material change.**

GLS Dep., **Exhibit D**, pp. 230-231.  Significantly, at the time Perkins and Blain received this production update from Lollis, Blain had not signed the Letter Agreement, and did not sign it until over a month later.

While Perkins could not remember actually receiving the email from Lollis, she was quick to testify that she deleted it:

> Q.   Okay.  And to your recollection, do you recall if you actually received this document?
> **A.  It goes to my email, so I would assume yes, that I did receive it.**
> Q.  Okay.  And would this be a document that you would still maintain on your computer?
> **A.  No.**
> Q.   And why is that?
> MR. DAVIS:  Asked and answered.
> **THE WITNESS:  I wouldn't need to keep it.**
> BY MR. MURPHY: Q. So you would delete it?
> **A.   Right.**
> Q.  Okay.  And you were never instructed not to delete it?
> **A.   No.**

Perkins Dep., Ex. B at pp. 104-05.  Perkins further testified that she never recalled

receiving any instruction to preserve potentially relevant emails or documents related

to this lawsuit, and that when a "transaction is done," she doesn't "keep anything":

> Q.  Do you recall receiving any instruction not to delete or erase either emails or documents that might be potentially relevant to this lawsuit?
> **A.   No.**
> Q.   No, you don't recall receiving such a notice?
> **A.   No, I don't recall.**
> Q.   Do you know if there's any type of auto-delete function on your emails?
> **A.   Not that I would be aware of.**
> Q.   So if we were to ask you to go back and search for emails with Jim Lollis, would those emails still be present on your computer?
> **A.   Probably not.**
> Q.   Why do you say that?
> **A.   Because I wouldn't keep them.  I run pretty lean.**
> Q.   And when you say you run pretty lean, is there a typical time period in which you would delete emails?
> **A.   No, no typical timeframe, but once the transaction is done, it's done, I move on.  I don't keep anything because I wouldn't expect something like this, of course.**

*Id.* at pp. 21-22.  In this case, according to Plaintiffs, the transaction was not "done"

until September of 2023, when Navistar delivered the last tractor to Central.  (ECF No.

29, ¶ 39, PageID.257).

The following week, on April 21, 2022, Perkins followed up with Lollis and

requested "the latest and greatest for production dates" and "weekly production

updates" so she could track the production and delivery of trucks to Central.  *See* LOLL

– 000049, **Exhibit E**.  Plaintiffs did not produce this communication or the response.

As another example, Lollis communicated with Perkins in May 2022 regarding

delivery of the MY 2023 Tractors, including on May 12 and May 16, 2022.  The subject

line on the email reads "Central – Delivery Status" and the substance of the email chain provides updates in May 2022 concerning the delivery status of the Central trucks at issue in this lawsuit. *See* ALLEGIANCE00000017, **Exhibit F**. The document establishes that as of May 16, 2022, just two days before GLS signed the Letter Agreement, the production build schedule had shifted significantly. More importantly, Plaintiffs knew the production schedule had shifted significantly because Central had yet to take delivery of a single truck even though, according to paragraph 37 of the second amended complaint, they should have already received *300 trucks in March and April and the remaining 330 in May, 2022*. Exhibit F and the other emails referenced herein reflect GLS and Central's state of mind and knowledge, on a weekly basis, of the production and build schedule leading up to GLS' execution of the Letter Agreement on May 18, 2022. Again, Plaintiffs did not produce this correspondence, despite it going to a critical issue in this case.

In addition to Perkins, Joe Hanvey, Central's Director of Maintenance, testified at his September 19, 2024 deposition that he believes he received a communication telling him not to delete and to preserve "a couple months ago" in 2024. Hanvey Dep, **Exhibit G**, pp. 37-38. Prior to that, he stated "there was a long time that we had to, that we only had 800 – a little over 800 megabytes of storage. So there's a lot of time that we had to delete them for a very long time." *Id.* at 37. Nick Schmalenberg, Central's CFO, similarly testified that he believed he received a litigation hold "at least

a couple months" prior to his deposition, but could not recall specifically. Schmalenberg Dep., **Exhibit H**, p. 11.

 As evidenced above, Plaintiffs did not produce several key communications between Plaintiffs and Allegiance concerning the threshold issue in this case, the production and delivery schedules for the MY2023 tractors.

 **D.** **Plaintiffs' document production(s) further evidence their failure to preserve and/or produce potentially relevant evidence.**

 The document productions in this case speak for themselves.  Plaintiffs have produced less than 3,000 pages as compared to the approximate 133,569 pages produced by Navistar.  Even Lollis, the dealer representative for Allegiance, produced *six* times as many documents from his personal email account.

| Productions as of 10/04/2024 | Begin Bates Number | End Bates Number | Docs | Pages |
|---|---|---|---|---|
| Navistar Productions | NAV00000001 | NAV00133569 | 22,090 | 133,569 |
|  |  |  |  |  |
| Allegiance | ALLEGIANCE00000001 | ALLEGIANCE00013417 | 2,921 | 13,417 |
| GLS | GLSN-0000001 | GLSN-0002912 | 871 | 2,912 |
| LOLL | LOLL-0000001 | LOLL-0019026 | 5,454 | 19,026 |
| SUMM | SUMM-0000001 | SUMM-0006262 | 2,070 | 6,262 |

 Plaintiffs try to explain this massive discrepancy away by stating "Navistar is a huge multinational manufacturing concern, significantly larger than Plaintiffs."  (ECF No. 30, ¶ 37, PageID.296).  However, Central has thousands of employees, so this is not a rational or conceivable explanation for Plaintiffs' limited production to date. Regardless, even the third-party productions are significantly larger than Plaintiffs and,

as discussed below, included numerous documents that Plaintiffs never produced – including after Plaintiffs' May 2023 breach letter.

### E.    Navistar has uncovered significant gaps in Plaintiffs' production.

After being told by Plaintiffs' counsel that they produced all responsive documents, Navistar undertook the significantly arduous task of sampling gaps in Plaintiffs' productions against other productions.  In addition to the production and delivery updates discussed above, Navistar believes it has identified dozens of emails or documents sent or received by Plaintiffs (including their existing custodians) they did not produce, *simply between May 2023 and October 2023*.  *See* chart at **Exhibit I**.[1]  Notably, Navistar believes it has preliminarily identified at least some emails Plaintiffs did not produce that, using the search terms Plaintiffs' counsel represented they ran, would have yielded a hit result.  *See e.g.*, compiled **Exhibit J**.  Navistar has not performed a full forensic accounting of these gaps, though it is aware of additional emails prior to May 2023 that Plaintiffs did not produce.

---

[1] Navistar cross-checked Plaintiffs' productions in this time frame against Allegiance's and Lollis' productions, where Plaintiffs sent or received the email.  There may be duplicate emails produced by both Allegiance, Lollis, and/or Navistar listed on the chart on Exhibit I, but in any case which Plaintiffs did not produce.  A large majority include custodians Plaintiffs represented they collected from.  Moreover, for the most part, the emails listed on Exhibit I refer to the top-level email.  But in many instances, Plaintiffs did not produce the entire email chain.

## ARGUMENT

### A. The Court has the authority to order the type of discovery sought by Navistar.

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). It is the responsibility of the parties to ensure that relevant ESI is preserved, and when that duty is breached, a district court may exercise its authority or discretion to impose appropriate discovery sanctions. *Id.* (*citing* Fed.R.Civ.P. 37(b), (e)).

"Courts have ordered 'discovery about discovery' when the record suggests that there is reason to distrust the responding party's diligence." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019). "In general, such discovery will be allowed if a party's efforts to comply with the proper discovery requests are reasonably drawn into question." *Id.* (*quoting Crocs, Inc. v. Effervescent, Inc.* Dkt. No. 06-CV-00605, 2017 WL 132544, at *8 (D. Col. Jan 3, 2017)). In *Crocs*, the court allowed defendant to depose plaintiff's 30(b)(6) witness on "[t]he search for, preservation of and production of electronic and hard copy document information and this potentially relevant to this Action . . ." because, in part the case would benefit by "some guidance from Crocs as to the efforts to fully respond to discovery requests." *Id.* at * 9.

11

**B.** **Navistar is entitled to its requested Rule 30(b)(6) deposition, and likely more discovery concerning Plaintiffs' preservation, collection, and document productions.**

The circumstances here are compelling.  Plaintiffs openly admitted to deleting relevant communications concerning production updates that go to the very heart of this case.  Plaintiffs' production of just roughly 2,900 pages in light of the other productions in this case cannot be explained away because Navistar is "significantly larger than Plaintiffs."  Even Lollis, a single individual, produced over *six* times as many documents as Plaintiffs.  And Plaintiffs, who were clearly aware of the potential for litigation well before Navistar, can hardly argue that they timely issued a litigation hold when they asked Navistar to do the same *five months earlier*.  Unless they are just simply being withheld, Plaintiffs appear to have deleted critical communications concerning the production and delivery of MY 2023 trucks.  And lastly, Navistar sampled Plaintiffs' productions against other productions and discovered a significant number of emails or documents Plaintiffs did not produce from May 2023 to October 2023 – including some that even hit on Plaintiffs' search terms they said they applied. *See* Exs. I-J.

At the latest, Plaintiffs' duty to preserve arose in May 2023 when GLS threatened Navistar with litigation and instructed Navistar to preserve evidence.  However, Plaintiffs waited until October 9, 2023 to circulate a litigation hold.  Even then, one can infer from the testimony above that Plaintiffs' employees either didn't receive the hold or ignored it.  Perkins, Hanvey, and Schmalenberg testified that they deleted emails,

12

sometimes daily, and that "the people don't save emails, other than what they're immediately working on."  Schmalenberg Dep., Ex. H at 12.  As a result, potentially relevant evidence was lost on a daily basis, including from May 2023 to October 2023.

If Plaintiffs' production gaps involved a much smaller number of documents or emails, that would be one thing and, hopefully, the parties' counsel could resolve it without Court action.  In fact, Navistar's counsel already raised some of these missing documents with Plaintiffs' counsel (ECF No. 30-8, PageID.339), and received no credible explanation.  And still, the emails were not produced.  Here, (i) Plaintiffs' witnesses' admitted deletion, (ii) Plaintiffs' reliance on a litigation hold allegedly issued five months after their breach letter, *when Navistar was allegedly still producing trucks*, (iii) Plaintiffs' representations they have produced all responsive documents, and (iv) the significant gaps uncovered to date, call into question Plaintiffs' preservation, collection, and productions.  At a minimum, Navistar is entitled to further exploration via deposition[2] and, if warranted, will move the Court for further relief.

At this stage, Plaintiffs cannot claim "no harm no foul" simply because third-party subpoenas buttress Plaintiffs' potential spoliation of evidence.  *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-0541, 2013 WL 6159177, at *6 (S.D. Cal.

_____

[2] As an aside, Plaintiffs' motion contends that Navistar's counsel suggested "an intent to take the deposition of the in-house attorney whose name is on the litigation hold memo[.]"  (ECF No. 30, PageID.283-84).  This is not correct.  Undersigned counsel emailed Plaintiffs' counsel to inquire as to the basis of this statement in Plaintiffs' motion, and shortly thereafter Plaintiffs' counsel confirmed that they misunderstood.

Nov. 25, 2013) (finding spoliation where "[w]hile Plaintiffs have been able to obtain these communications from third parties, there may have been additional communications of a similar sort that were destroyed that are especially probative of the claims at issue in this litigation."), *report and recommendation adopted in part*, 2014 WL 6851607 (S.D. Cal. June 16, 2014); *see also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 427, 429 (S.D.N.Y. 2004) ("Although Zubulake has only been able to present concrete evidence that this one e-mail was irretrievably lost, there may well be others. Zubulake has presented extensive proof, detailed below, that UBS personnel were deleting relevant e-mails … Some of those e-mails were recovered … but some—and no one can say how many—were not."). It actually raises additional questions, such as Plaintiffs' document retention policies, and whether the Court should order a potential forensic imaging of Plaintiffs' servers, and/or require a third-party forensic expert to run additional search terms.

What is clear, however, is that Navistar has exerted significant effort attempting to obtain responsive documents from Plaintiffs and, now, uncover Plaintiffs' gaps. For months, in response to deficiency letters, Plaintiffs' counsel represented that Plaintiffs "produced all responsive non-privileged documents." (ECF No. 30-7, PageID.335). And at the time, even as depositions approached, Navistar had no choice but to take Plaintiffs' counsel at their word, going so far as to even propose search terms. Plaintiffs have repeatedly used Navistar's suggestion of additional search terms against Navistar in meet and confer efforts to defend their discovery approach. But little did Navistar's

counsel know, until deposing Plaintiffs' witnesses, that Navistar was proposing search terms to be run over large portions of … nothing. Plaintiffs certainly knew.

Navistar has remained willing to cooperate with Plaintiffs in discovery, but it is not Navistar's obligation to ensure Plaintiffs' compliance with their discovery obligations. *Lava Trading, Inc., Hartford Fire Ins. Co.*, 2005 WL 459267, at *9 (S.D.N.Y. Feb. 24, 2005) (stating that a responding party has "an obligation to ensure that document searches, when initially made, were careful and thorough, still another obligation that it failed to satisfy."); *Lyman v. Ford Motor Co.*, 344 F.R.D. 228, 230-31 (E.D. Mich. 2023) (noting that party and counsel must "ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced," and noting that a limited production from key custodians "permits a reasonable deduction that other documents may exist."). More information is needed to determine the full extent of the existence of responsive information, lack thereof, and Plaintiffs' preservation and collection efforts.[3]

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Protective Order and grant Navistar the opportunity to depose Plaintiffs' corporate representative

---

[3] For purposes of this motion, the only targeted intervention necessary by the Court is, hopefully, allowing Navistar to conduct its requested deposition and discover Plaintiffs' preservation/collection efforts. But as Navistar continues to explore these issues, Navistar reserves the right to seek additional remedies, which may include an independent forensic examination of Plaintiffs' ESI, or spoliation remedies.

15

concerning its implementation of the litigation hold as indicated in the Rule 30(b)(6) notices, and order Plaintiffs to disclose when they imaged the computers of Perkins, Blain, Mason, Hanvey and Schmalenberg.  In addition, pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5)(B), Navistar requests its reasonable attorney's fees and expenses in having to seek its requested relief and responding to Plaintiffs' instant motion.

Dated:  October 9, 2024

BARNES & THORNBURG LLP

*/s/ Scott R. Murphy*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
616-742-3930
smurphy@btlaw.com
asallah@btlaw.com
*Attorneys for Defendant Navistar, Inc.*

16

## <u>LOCAL RULE CERTIFICATION</u>

I, Scott Murphy, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 9, 2024, the foregoing was electronically filed using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

BARNES & THORNBURG LLP

Dated: October 9, 2024

*/s/ Scott R. Murphy*
Scott R. Murphy (P68015)
*Attorney for Defendant Navistar, Inc.*

18