UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

      Plaintiffs,

v.

      NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

---

### Plaintiffs' Motion to Compel Discovery

The undersigned counsel certifies that counsel personally spoke to opposing counsel, explaining the nature of the relief to be sought by way of this Motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiffs GLS Leasco, Inc. and Central Transport, LLC respectfully request that the Court order Defendant Navistar, Inc. to provide full and complete responses to Interrogatories Nos. 8-12 and 15 and Requests for Production Nos. 46-49, 53-54, 58-60, and 63. The bases for this Motion are set forth in the accompanying brief.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.:


By:   /s/ Thomas J. Davis
      Eric J. Pelton (P40635)
      Joseph E. Viviano (P60378)
      Thomas J. Davis (P78626)
      Marianne J. Grano (P82901)
      Lauren Walas (P87669)
Counsel for Plaintiffs
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
jviviano@khvpf.com
tdavis@khvpf.com
mgrano@khvpf.com
lwalas@khvpf.com

Date:  January 21, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

        Plaintiffs,

v.

        NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

---

**Brief in Support of Plaintiffs' Motion to Compel Discovery**

## Statement of Issues Presented

Navistar is asserting a commercial impracticability defense to Plaintiffs' breach of contract claim, which requires it to prove that it fairly and reasonably allocated its limited tractor production slots among its customers. Should the Court grant Plaintiffs' motion to compel Navistar to produce information about how it allocated its production slots in this $50 million commercial lawsuit between two sophisticated entities?

## Controlling or Most Appropriate Authority

Fed. R. Civ. P. 26

Fed. R. Civ. P. 33

Mich. Comp. Laws § 440.2615

*In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399 (N.D. Ohio 2011)

*Harhara v. Norville*, 2007 WL 2897845 (E.D. Mich. Sept. 25, 2007)

## Introduction

Plaintiff GLS Leasco, Inc. contracted with Defendant Navistar, Inc. for 1,100 tractors—600 of which were intended for Plaintiff Central Transport, LLC—to be delivered by June 2022. Navistar did not complete delivery until September 2023. Its primary defense is that timely production and delivery were commercially impracticable due to supply chain issues. Under Michigan law, this defense requires showing, among other things, that (1) the events that caused the commercial impracticability were unforeseeable; and (2) the seller "allocate[d] production and deliveries among [its] customers" in a "fair and reasonable manner." Mich. Comp. Laws § 440.2615.

Although GLS believes that Navistar's defense will fail at the first step, as the undisputed record shows that Navistar was aware of the supply chain issues when it entered into the contract (*see* Pls.' Mot. Summ. J., PageID.1079-81), Navistar disagrees and refuses to abandon its affirmative defense. Thus, reasonable allocation is at issue in this case. Navistar, however, has repeatedly stonewalled GLS's discovery into how it allocated its supposedly limited tractor production slots—including which customers received the tractors, how much those particular customers paid for the tractors, and the factors used in making the allocation decisions—claiming that gathering the information would be too burdensome. But Navistar's objections are meritless and hypocritical. It wants to defend a $50 million

case with a highly fact-intensive defense, but then claim that GLS's discovery demands targeted at exploring that defense are too burdensome.

Navistar also refuses to produce documents reflecting the reasons why it pushed out GLS's orders beyond the June 2022 delivery date and who received the production that had earlier been allocated to GLS. Navistar raises similar objections—objections that are particularly troubling given that its own corporate representative managed to gather documentation of just the sort that GLS has been demanding, but only for a timeframe that Navistar felt was helpful to *its* case. The Court should overrule Navistar's objections and order it to provide full and complete responses to Interrogatories Nos. 8-12 and 15 and Requests for Production Nos. 46-49, 53-54, 58-60, and 63.[1]

## Background

### A. Navistar's Impracticability Defense to Plaintiffs' Breach of Contract Claim.

In April 2022, Navistar agreed to build and deliver 1,100 new tractors to GLS and its affiliates by the end of June 2022. (Pls.' 2d Am. Compl., PageID.253, ¶ 29; PageID.268, ¶ 83.) Navistar did not comply with the schedule set forth in the parties' agreement, delivering the last tractor over a year late, in September 2023. (*Id.* at PageID.256, ¶ 39.)

---

[1] Plaintiffs will agree to limit the temporal scope of Requests for Production Nos. 53, 54, and 60 to August 1, 2021 to June 30, 2022.

Plaintiffs subsequently brought this suit for breach of contract and fraud. (*Id.* at PageID.272, ¶¶ 105-108.) In response, Navistar has asserted the affirmative defense of commercial impracticability to the breach of contract claim. (Def.'s Answer to Pls.' Am. Compl., PageID.172.) It argues that delivery of all 1,100 tractors by June 2022 was rendered impracticable by GLS's delay in signing the agreement, changes made to Plaintiffs' orders, and supply chain difficulties. (Ex. 1, Def.'s Answers & Objs. to 30(b)(6) Dep. Topics 20-34 Re: Affirmative Defenses at 7.)

Plaintiffs maintain that Navistar could have delivered all 1,100 tractors by the end of June 2022 but chose not to. (Pls.' 2d Am. Compl., PageID.263, ¶¶ 62-63; *see also id.* at PageID.272, ¶¶ 100-01.) Instead, Navistar deliberately delayed the production of the tractors that Plaintiffs had ordered so that it could prioritize other, more profitable customers instead. (*Id.* at PageID.259-272, ¶¶ 47, 50, 57, 59, 62-63, 74-77, 100-01.)

**B.    The Discovery Requests at Issue.**

Plaintiffs served their third[2] and last set of Requests for Production ("RFPs") and Interrogatories on Navistar on October 23, 2024, most of which were directed

---

[2] Plaintiffs had issued two earlier sets of interrogatories. (*See generally* Ex. 2, Pl.'s 1st Interrogs. to Def.; Ex. 3, Pl.'s 2d Interrogs. to Def.)

at obtaining information showing (1) how Navistar allocated its production slots; and (2) what method was used to make those allocation decisions:

- **Interrogatory No. 8** asked Navistar to provide, for a particular subset of customers, the number of tractors it was contractually obligated to build for each customer in 2022, the date that Navistar signed the relevant contract, and the number of tractors it actually built for each customer in 2022. (Ex. 4, Pl.'s 3d Interrogs. to Def. at 2.)

- **RFP No. 46** requested the production of all documents used to prepare Navistar's answer to Interrogatory No. 8. (Ex. 5, Pls.' 3d Reqs. Produc. to Def. at 3.)

- **Interrogatories Nos. 9-11** sought similar information (number of tractors contractually obligated to build versus number of tractors actually built) for several other subsets of customers, including larger institutional customers (Interrogatory No. 9) and small customers (Interrogatory No. 11). (Ex. 4 at 2-4.)

- **RFPs Nos. 47-49** requested that Navistar produce the documents underpinning its responses to Interrogatories Nos. 9-11. (Ex. 5 at 3-4.)

- **Interrogatory No. 12** asked Navistar to identify the number of tractors that it built as "stock" (*i.e.*, tractors that were not promised to a particular customer but were instead inventory that dealers could retail) for each month in 2022. (Ex. 4 at 4-5.)

- **RFPs Nos. 53-54** sought copies of Navistar's "order boards" for the plant where Navistar builds semi-truck tractors. (Ex. 5 at 5.) Order boards list every tractor that has been ordered and show the order in which they will be built. (Ex. 6, Belisle Dep. 70:14-71:13.)

- **RFPs Nos. 58-59** requested documents related to Navistar's decisions to schedule some of the tractors in Plaintiffs' orders for production beyond May and June 2022. (Ex. 5 at 6.)

- **RFP No. 60** asked Navistar to produce its "CRC allocation spreadsheets," which were spreadsheets reflecting the number of production slots that Navistar had allocated to each customer in a given year. (Ex. 5 at 7; *see* Ex. 6, Belisle Dep. 78:3-14.)

- **Interrogatory No. 15** directed Navistar to identify all facts supporting its witness's contention that, when Navistar reduced the number of 2022 production slots allocated to each customer, the reductions were "mostly proportional" across customers. (Ex. 4 at 5-6.)

- **RFP No. 63** sought the documents that supported Navistar's response to Interrogatory No. 15. (Ex. 5 at 7.)

When Navistar responded on November 22, 2024, however, it refused to provide any new documents or information in response to the requests listed above. (*See generally* Ex. 7, Def.'s Answers & Objs. to Pl.'s 3d Set Interrogs.; Ex. 8, Def.'s Resps. & Objs. to Pls.' 3d Reqs. Produc.) It objected to Interrogatories Nos. 8-12 and RFPs Nos. 46-48, 53-54, and 60 as seeking irrelevant information. (Ex. 7 at 4-10; Ex. 8 at 4-6, 8, 11.) It complained that Interrogatories Nos. 8-11 and RFPs Nos. 46-49, 53-54, 58-59 and 60 were "unduly burdensome," and made vague assertions in support of its objection, including that the requests could "conceivably encompass a wide variety of documents" (RFPs Nos. 58-59) or sought information "for roughly thirty different customers" (Interrogatory No. 8). (Ex. 7 at 4-9; Ex. 8 at 4-6, 8, 10-11.) It also objected to Interrogatories Nos. 11, 12, and 15 on the grounds that Plaintiffs had exceeded the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure. (Ex. 7 at 8-10, 12.) And Navistar claimed that it had already produced "all non-privileged documents responsive to" RFPs Nos. 58-59. (Ex. 8 at 10.)

## C.      The Deposition of Navistar's Corporate Representative.

Plaintiffs' notice of the deposition of Navistar's corporate representative

included two topics seeking information about Navistar's decisions to schedule

some of the tractors in Plaintiffs' orders for production beyond May and June 2022.

(Ex. 9, Pls.' Re-Notice of Taking Video Recorded Rule 30(b)(6) Dep. Navistar, Inc.

at 7.) Notably, these topics were virtually identical to RFPs Nos. 58 and 59.

(*Compare id. with* Ex. 5 at 6.)

Navistar's corporate representative testified that, to prepare for his

deposition, he asked a colleague to send him (1) a spreadsheet showing the history

of all changes made to Plaintiffs' orders, including changes to the dates that

Plaintiffs' tractors were scheduled to be built and (2) a summary of all of those

changes. (Ex. 10, Navistar Dep. 28:24-33:8.) He also testified that Navistar has

access to this change history from January 2022 forward but that he only reviewed

the change history from the end of March 2022 forward. (*Id.* at 33:3-34:25.)

Nevertheless, Navistar has refused to produce the spreadsheet and summary upon

which its corporate representative relied.

## D.      The Instant Dispute.

On November 27, 2024, shortly after Navistar served its objections to

Plaintiffs' final set of discovery requests, Plaintiffs' counsel sent Navistar's counsel

a letter outlining the deficiencies in Navistar's responses. (*See generally* Ex. 11.)

Plaintiffs pressed for fulsome responses to the requests listed above and sought a meet-and-confer session to discuss the deficiencies. (*Id.*) As for RFPs Nos. 53-54 and 58-59, Plaintiffs asked Navistar to identify the Bates numbers of the responsive documents it claimed it had produced. (*Id.* at 2.) Plaintiffs also offered to limit the temporal scope of RFP No. 60. (*Id.* at 3.)

On December 10, 2024, Plaintiffs' counsel and Navistar's counsel were finally able to discuss Plaintiffs' deficiency letter over the phone. Plaintiffs offered to withdraw Interrogatories Nos. 8-12 and RFPs Nos. 46-49 if Navistar agreed to dismiss its impracticability defense, but Navistar refused to do so. Navistar's counsel agreed to discuss Plaintiffs' concerns with their client, but warned that they would be unable to respond to Plaintiffs before December 13, 2024.

On December 12, 2024, Plaintiffs' counsel asked Navistar's counsel for an update regarding the outstanding discovery requests. (Ex. 12 at 4-5.) Plaintiffs' counsel followed up again on December 19, 2024, requesting a call to discuss. (*Id.* at 3.) The next day, Plaintiffs' counsel emailed Navistar's counsel, suggesting a potential compromise for Interrogatories Nos. 8-12 and offering to agree that Navistar would not have to supplement its responses until after the Court had ruled on the parties' summary judgment motions. (*Id.*)

On December 23, 2024, Navistar's counsel informed Plaintiffs that their client was still considering Plaintiffs' requests and that, although Navistar was closed for

the last two weeks of the year, they would be in touch after January 1, 2025. (*Id.* at 2-3.) On January 8, 2025, Navistar's counsel told Plaintiffs that they would have an update regarding Interrogatories Nos. 8-12 and RFP No. 60 by early in the week beginning January 13, 2025. (*Id.* at 1.)

To date, Navistar still has not meaningfully addressed Plaintiffs' concerns about Interrogatories Nos. 8-12 and 15 and RFPs Nos. 46-49, 53-54, 58-60, and 63. Accordingly, Plaintiffs now move to compel Navistar to respond to Interrogatories Nos. 8-12 and 15 and RFPs Nos. 46-49, 53-54, 58-60, and 63. Plaintiffs will nevertheless limit the temporal scope of RFPs Nos. 53, 54, and 60 to August 1, 2021 to June 30, 2022.

## Argument

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *United States v. Carter*, 2014 WL 2605460, at *1 (E.D. Mich. June 11, 2014). Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under these liberal discovery rules, the Court should grant Plaintiffs' Motion. As explained below, none of Navistar's objections or responses have any merit.

**I.    Navistar is required to provide information germane to its affirmative defense of commercial impracticability.**

**A.    Plaintiffs' requests seek relevant information.**

In Michigan, if a seller proves that performance under a contract was, in fact, impracticable, then to avoid liability it must also prove that it allocated production and deliveries among its customers in a "fair and reasonable manner." Mich. Comp. Laws § 440.2615(a), (b). This is a fact-intensive question. Plaintiffs' discovery requests seek information that goes directly to whether Navistar fairly and reasonably allocated production among its customers, including documents relevant to GLS's theory that Navistar disproportionately and unreasonably chose *not* to honor contractual agreements with longtime, loyal, but less-profitable customers like GLS, in favor of newer, smaller, and higher-margin customers to which it owed no contractual duty. Such evidence is critical in a commercial impracticability case. *See, e.g., Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 151 (6th Cir. 1983) (holding that under statute identical to Mich. Comp. Laws § 440.2615 "an allocation system which includes participants other than customers under contract and regular customers is unreasonable").

For instance, Interrogatory No. 9 asks for information about Navistar's obligations to build tractors for certain customers in 2022. (Ex. 4 at 2-3.) RFP No. 60 requests that Navistar produce the records that detail its decisions on how to allocate production slots across customers. (Ex. 5 at 7.) And RFPs Nos. 53 and 54

seek information showing how Navistar implemented those decisions, including the order in which Navistar fulfilled different customers' orders. (*Id.* at 5.) GLS's requests are plainly relevant, while Navistar's objections to the contrary fall flat.

### B.    Navistar's "undue burden" objections fail as they were not properly asserted.

Navistar's objections as to undue burden were not properly asserted and should be rejected on procedural grounds. When making such an objection, a "responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410 (N.D. Ohio 2011) (quotation marks and citation omitted). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id.* at 411 (quotation marks and citation omitted).

Navistar's suggestions that these requests "could conceivably encompass a wide variety of documents" or ask for information "for roughly thirty different customers" are not enough. (*See, e.g.*, Ex. 8 at 10; Ex. 7 at 5.) Navistar has not come forward with sworn statements or detailed evidence explaining how much time or effort it would take to respond to these requests and why the burden outweighs the probative value of this information. As a result, its undue burden objections should be dismissed out of hand. *See, e.g., In re Heparin Prods.*, 273

F.R.D. 399 at 411 (rejecting undue burden objection as unsubstantiated);

*Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 361 (W.D. Ky.

2011) (a "bare assertion that there are a significant number of documents covered

by the requests is not a sufficient showing of burdensomeness to garner protection

from the Court").

### C.   The discovery is not unduly burdensome as it directly relates to Navistar's key affirmative defense in a $50 million case.

Even if Navistar had quantified the purported burden, it cannot show that the

challenged requests are unduly burdensome. In assessing such a claim, courts

consider "the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R.

Civ. P. 26(b)(1). All of these factors weigh in favor of compelling Navistar to

produce the requested information:

- Plaintiffs' requests ask for information that goes to the heart of Navistar's principal defense.

- Plaintiffs seek more than $50,000,000 between the breach-of-contract and fraud claims.

- Plaintiffs have no other way to access this information, apart from Navistar producing it.

- Navistar is an enormous multinational and commercially sophisticated company that earns over a billion dollars in revenue each year.

Given the significance of the evidence that Plaintiffs seek, any burden on Navistar is outweighed by the benefit of litigating this case on equal footing, with both parties having equal access to relevant information. *Cf. State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018) ("[R]esponding to discovery is generally *bothersome*, and may indeed be, at least to some extent, burdensome…But the fact that it will be either bothersome or burdensome to respond to a discovery request does not necessarily mean that it will be *unduly* so.") (emphasis in original). Navistar has not established, and cannot establish, that the requested discovery is unduly burdensome.

## II.   Navistar's objections to the maximum number of interrogatories are likewise meritless.

Navistar's objection that Plaintiffs have exceeded the maximum number of interrogatories is baseless. Federal Rule of Civil Procedure 33(a)(1) caps the number of interrogatories, "including all discrete subparts," at 25. Plaintiffs served 15 interrogatories throughout the course of discovery in this case. (*See* Exs. 2-4.) For its part, Navistar contends that each of the subparts in Interrogatories Nos. 8-11 should be counted as separate interrogatories, such that Interrogatory No. 8 constitutes three separate interrogatories and Interrogatories Nos. 9-11 each constitute seven separate interrogatories. (Ex. 7 at 9.) But subparts that "are

necessarily related to the primary question" or "elicit[] details concerning [a] common theme" are only counted as one interrogatory rather than as multiple interrogatories. *Harhara v. Norville*, 2007 WL 2897845, at *1 (E.D. Mich. Sept. 25, 2007) (quotation marks and citations omitted).

Here, each of the subparts of Interrogatories Nos. 8-11 are tied to a common theme and thus cannot be counted separately. Interrogatory No. 8 seeks information regarding Navistar's contractual obligations to certain customers and whether Navistar fulfilled those obligations. (Ex. 4 at 2.) Subparts (a), (b), and (c) – which request the total number of tractors Navistar was contractually obligated to build, the date that Navistar assumed those obligations, and the total number of tractors that Navistar actually built (*see id.*) – are all "necessarily related" to a common theme. *Harhara*, 2007 WL 2897845, at *1. The same is true of Interrogatories Nos. 9-11, which contain identical subparts. (Ex. 4 at 2-4.) Like Interrogatory No. 8, Interrogatories Nos. 9-11 relate to Navistar's performance of its contracts with other customers. (*Id.*) Subparts (a), (d), and (e) ask Navistar to identify how many tractors it was obligated to build for those customers in 2022. (*Id.*) Subpart (b) asks for the date when Navistar signed the contracts with those other customers. (*Id.*) Finally, subparts (c), (f), and (g) ask Navistar to specify how many tractors it actually built for those customers. (*Id.*)

-13-

Because the subparts to Interrogatories Nos. 8-11 are logically related to and subsumed within one central question, they should not be counted separately. *See, e.g.*, *Harhara*, 2007 WL 2897845 at *1; *Hall v. Trivest Partners L.P.*, 2024 WL 4453761, at *2 (E.D. Mich. Oct. 9, 2024). And when the subparts to Interrogatories Nos. 8-11 are not counted separately, Plaintiffs have only tendered 15 interrogatories—well below the 25-interrogatory limit. The Court should overrule this objection and compel Navistar to fully respond to Interrogatories Nos. 11, 12, and 15.

### III. Navistar has not produced all non-privileged documents responsive to RFPs Nos. 58 and 59, including documents that Navistar's corporate representative used in preparing for his deposition.

Lastly, Navistar's claim that it has already produced "all non-privileged documents responsive to" RFPs Nos. 58 and 59 is false. (Ex. 8 at 10.) Those requests seek all documents relating to Navistar's decisions in February 2022 (RFP No. 58) and May 2022 (RFP No. 59) to schedule some of the tractors that Plaintiffs ordered to be built in June 2022 and beyond. (Ex. 5 at 6.) Plaintiffs also requested this information in the form of testimony from Navistar's corporate representative. (Ex. 9 at 7.) Navistar's corporate representative testified that he prepared for his deposition by reviewing (1) a spreadsheet showing the history of all changes made to Plaintiffs' orders, including changes to the dates that Plaintiffs' tractors were scheduled to be built and (2) a summary of all of those changes. (Ex. 10, Navistar

Dep. 28:24-33:8.) He also testified that Navistar has access to this change history from January 2022 forward but that he only reviewed the change history from the end of March 2022 forward—even though Plaintiffs sought testimony about changes to their orders in February 2022. (*Id.* at 33:3-34:25.) In other words, Navistar's own testimony confirms that it possesses and can easily access the information sought by RFPs Nos. 58 and 59 but that it has chosen not to provide it to Plaintiffs. Navistar has not produced either the spreadsheet or the summary that its corporate representative relied upon, nor has it produced any other documents reflecting the change history of Plaintiffs' orders. (*Supra* at 6.) Its claim, then, that it has already produced "all" documents responsive to RFPs Nos. 58 and 59 is wrong. The Court must order Navistar to supplement its responses to these requests.

## Conclusion

For these reasons, the Court should grant Plaintiffs' Motion to Compel and order Navistar to fully respond to Interrogatories Nos. 8-12 and 15 and RFPs Nos. 46-49, 53-54, 58-60, and 63, subject to Plaintiffs' agreement to limit the temporal scope of RFPs Nos. 53, 54, and 60 to August 1, 2021 to June 30, 2022.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.:


By: _____ /s/ Thomas J. Davis _____
      Eric J. Pelton (P40635)
      Joseph E. Viviano (P60378)
      Thomas J. Davis (P78626)
      Marianne J. Grano (P82901)
      Lauren Walas (P87669)
Counsel for Plaintiffs
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
jviviano@khvpf.com
tdavis@khvpf.com
mgrano@khvpf.com
lwalas@khvpf.com

Date: January 21, 2025

## LOCAL RULE CERTIFICATION

I, Thomas J. Davis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, I electronically filed the foregoing document and all attachments with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

/s/ Thomas J. Davis
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com