# EXHIBIT 10

Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN DISTRICT OF
SOUTHERN DIVISION

GLS LEASCO, INC. and CENTRAL     )
TRANSPORT LLC,                   )
                                 )     Case No.
              Plaintiffs,        )     23-cv-12927
                                 )
     vs.                         )
                                 )
NAVISTAR, INC.,                  )
                                 )
              Defendant.         )


VIDEOTAPED DEPOSITION OF

NAVISTAR, INC. BY CARL M. WEBB

Naperville, Illinois

Wednesday, December 4, 2024


Reported by:

JENNIFER L. BERNIER, CSR, RMR, CRR

Webb, Carl - 12/04/2024

---

Page 26

1      A.   In Lisle, Illinois, correct.
2      Q.   All right.  That's a mouthful.
3      A.   Yes.
4      Q.   Have you met with anyone besides
5  counsel to prepare for this deposition?
6      A.   I met with two individuals also.  So
7  Kerri Podewell, I met with.  And then Teresa --
8  her name is shortened, Terry.  And I'm not
9  going to try and pronounce Terry's -- Teresa's
10  last name.
11      Q.   Try to spell it?
12      A.   It'd be M-A -- Teresa Mag -- I'm not
13  going to -- I don't know.  I apologize.  She is
14  a -- she lives in Mexico.
15      Q.   Mexico, all right.  Is her name on
16  any of the documents that you looked at?
17      A.   Yes.
18      Q.   Okay.  All right.  So when we get to
19  her in the documents, let's identify her so we
20  have her --
21      A.   Yeah.
22      Q.   I think I know who you're talking
23  about.
24      A.   Yeah.
25      Q.   So you met with Kerri Podewell when?

---

Page 27

1      A.   Also Monday.
2      Q.   Okay.  So you met with her without
3  counsel present?
4      A.   Met with her -- I'm sorry.  So I met
5  with her with counsel present.
6      Q.   Okay.  How long was she present for?
7      A.   I met with her for maybe one hour.
8      Q.   Okay.  So this was of the six-hour
9  meeting that you --
10      A.   No.  That would be in -- in
11  addition.
12      Q.   Okay.  All right.  Who was at that
13  meeting?  So you and Kerri, and then which
14  lawyers were there?
15      A.   Also the same counsel.
16      Q.   The same three?
17      A.   Correct.
18      Q.   Okay.  And that was also in person
19  at Navistar headquarters?
20      A.   That's correct.
21      Q.   All right.  And then Teresa, I
22  believe it's Teresa Magdalena -- is that --
23      A.   Yeah.  I -- yeah, I think --
24  let's -- let's go with that for now.
25      Q.   Okay, for now.  We'll find her name

---

Page 28

1  and put it on the record.  But she is actually
2  located in Mexico?
3      A.   That's correct.
4      Q.   All right.  So you did not meet with
5  her in person, I take it?
6      A.   That's correct.
7      Q.   All right.  How did you meet with
8  her?
9      A.   I met with her on Teams.
10      Q.   On Teams, all right.
11           When was that?
12      A.   That would have been two weeks ago.
13      Q.   Who else was present?
14      A.   That was just me.
15      Q.   Just you and her?
16      A.   Correct.
17      Q.   Okay.  No attorneys?
18      A.   No, no attorneys.
19      Q.   How long did you meet with Teresa?
20      A.   I would say less than an hour.
21      Q.   What did you discuss with Teresa?
22      A.   Discussed the information that --
23  that she provided.
24      Q.   All right.  Well, what -- what
25  information did she provide you?

---

Page 29

1      A.   So she provided transaction history
2  of the Central Transport orders.
3      Q.   And you're saying she provided you
4  information that was different than what you
5  had been provided in this list of exhibits --
6  I'm sorry -- the list of topics?
7      A.   The information she provided is
8  different, yes.
9      Q.   Okay.  Can you give me an idea,
10  then, what that was comprised of?  Was it an
11  electronic like PDF, a spreadsheet?  What --
12  what -- what are we talking about here?
13      A.   Yes.  She provided a spreadsheet
14  that had details of the transaction history, as
15  well as a summary.  And then she provided, in
16  e-mail form, a summary of what that transaction
17  detail -- what it -- what it listed out, right,
18  what it provided, what it -- what it -- what it
19  was showing, you know, in the -- in the
20  history.
21      Q.   Okay.  And the e-mail that she
22  conveyed this to you in, was it -- were any
23  attorneys copied on it as far as you know?
24      A.   No attorneys were copied on it.
25      Q.   Do you have a copy of it now?

8  (Pages 26 to 29)

Page 30

```
 1      A.   Not with me.
 2      Q.   Do you still have a copy --
 3      A.   Yes.
 4      Q.   -- in your possession?
 5      A.   Yes.
 6      Q.   Okay.  And as best as you can
 7  remember, what -- what was the actual
 8  information?
 9      A.   Again, it was -- it's transaction
10  history.  So it shows the history of once an
11  order is placed and then what work was
12  performed on each one of the orders to finally
13  have a unit produced.
14      Q.   Do you know what system she would
15  have generated this from?
16      A.   Likely from -- we call it CVT.
17      Q.   And you said she gave you a summary
18  as well.  That was --
19      A.   Right.
20      Q.   -- a written summary?
21      A.   That's correct.
22      Q.   That she wrote herself?
23      A.   That's correct.
24      Q.   And what was that summary?  What did
25  she summarize, as best as you can recall?
```

Page 31

```
 1      A.   She summarized the -- the movement
 2  of those orders from the time the order came in
 3  until the order was produced.
 4      Q.   So it was a timeline of when the
 5  orders for the Central trucks were first
 6  placed?
 7      A.   Yes.
 8      Q.   And then it would -- the information
 9  she gave you showed when those production dates
10  changed?
11      A.   Correct.
12      Q.   Okay.  And the information also
13  showed when each truck was actually built?
14      A.   Correct.
15      Q.   Did it show when they were actually
16  first lineset?
17      A.   Yes.
18      Q.   Did it show --
19      A.   Correct.
20      Q.   -- when lineset changes were made?
21      A.   I'm not sure what you mean by
22  lineset changes, but it would show when the
23  lineset -- when it was actually lineset.
24  That's an actual, you know, step in our
25  process.
```

Page 32

```
 1      Q.   Let me back up.  You're right, that
 2  was -- I didn't mean to say that.
 3           So we have seen and are going to see
 4  again today documents reflecting a -- well,
 5  first, there is a -- an order board.
 6      A.   Yeah.
 7      Q.   You're familiar with that?
 8      A.   Yes.
 9      Q.   We've seen documents come from
10  Maria Averhart, who I understand was your
11  subordinate.
12      A.   Correct.
13      Q.   And these -- there was something
14  called a non-lineset order board and there was
15  a lineset order board.
16      A.   That's correct.
17      Q.   And you're familiar with both of
18  these things?
19      A.   Yes.
20      Q.   Okay.  So the summary that Teresa
21  provided to you showed changes to Central's
22  trucks if the -- for instance, if the order
23  board had them in February of 2022 and then
24  moved to February 15th, 2022, that would have
25  been part of the summary she provided?
```

Page 33

```
 1      A.   That would be correct.
 2      Q.   Go ahead.
 3      A.   So -- yeah, let me say this.  So
 4  from February, that, I'm not certain of the --
 5  for your dates.  The changes that I was -- that
 6  are in her summary is around the orders that
 7  we're talking about specifically.  And those
 8  orders were not placed until March 29th.
 9      Q.   All right.
10      A.   As an example.
11      Q.   Well, that was an example.  But
12  let's actually --
13      A.   Okay.
14      Q.   -- let's go ahead and turn, just to
15  give you an example --
16      A.   Sure.
17      Q.   -- look at Topic 12 in your list.
18      A.   All right.
19      Q.   And we're going to look at some
20  spreadsheets when we get to Topic 12.  We're
21  not going to do it now, but we're going to get
22  there.
23           But for instance, what we believe
24  it's going to show is that at some point
25  between February 17th and February 25, a number
```

9 (Pages 30 to 33)

Webb, Carl - 12/04/2024

Page 34

1  of vehicles, VINs identified, had an order
2  board date that was moved several weeks or
3  months forward.
4        Teresa's summary, would it have
5  shown such moves that took place in February of
6  2022?
7        A.  I don't believe so.
8        Q.  As far as you know though, Teresa's
9  system -- well, it did show moves of that type
10  that took place in March, April, and May.  Is
11  that what you're saying?
12       A.  That's correct.
13       Q.  Okay.  So she would have had access,
14  as far as you're aware, to that same
15  information for moves that were made in, say,
16  January and February of 2022?
17       A.  Yes, that -- that would be correct.
18       Q.  You just don't believe that she
19  looked for or provided that to you?
20       A.  That's correct.
21       Q.  Okay.  And that's the case, despite
22  Topic 12 asking specifically about order board
23  changes between February 17th and
24  February 25th?
25       A.  Yes, that's correct.

Page 35

1        Q.  Okay.  You reached out to her and
2  asked her for information?
3        A.  That is correct.
4        Q.  Okay.  Is there a reason why you
5  didn't ask her for that information from
6  February, even though it was a topic that you
7  knew you'd have to testify about?
8        A.  Yeah, I -- so I asked for
9  information for the orders that were listed in
10  the summary.
11       Q.  Okay.  So you gave her a list of a
12  list of -- a list of vehicles that you wanted
13  her to look at?
14       A.  Correct.
15       Q.  Okay.  And where did you get that
16  list?
17       A.  I got that list from the -- from the
18  material that was provided.
19       Q.  Okay.  And you'd be able to identify
20  that once we see that -- those documents?
21       A.  I believe so.
22       Q.  Okay.  We'll get to this, but are --
23       A.  Yeah.
24       Q.  -- you prepared to testify about
25  Topic No. 12?

Page 36

1        A.  I believe so.
2        Q.  Okay.  So let me just see if I
3  have this accurate and then tell me if there is
4  any more.
5             So you -- you met with
6  Kerri Podewell -- and I'm talking about people
7  who are not their counsel.
8        A.  Yes, correct.
9        Q.  Once with Kerri Podewell --
10       A.  Yes.
11       Q.  -- and that was recently in person?
12       A.  Correct.
13       Q.  You sent -- you initiated
14  communication with Teresa in Mexico via e-mail.
15  She sent you an e-mail back, and then you had
16  Teams call?
17       A.  Correct.
18       Q.  Okay.  And that was about two weeks
19  ago?
20       A.  Correct.
21       Q.  How long was that Teams call?
22       A.  Less than an hour.
23       Q.  Have you had any communication with
24  anybody else -- and I'm talking about whether
25  it was via e-mail, telephone, Teams, any other

Page 37

1  communication with anybody else in preparation
2  for today's dep?
3        A.  No, I have not.
4        Q.  Do you know what Teresa's title or
5  role is right now?
6        A.  She would -- her -- I believe her
7  title and her role is scheduler for the
8  Escobedo plant.
9        Q.  And you believe that's a role she's
10  held since at least 2021?
11       A.  That would be correct.
12       Q.  Okay.  And in your role -- I'm not
13  talking about the current role -- in your
14  former role, you would communicate with -- with
15  the plant in Mexico frequently?
16       A.  Yes, correct.
17       Q.  Daily even?
18       A.  Yes.
19       Q.  Okay.  I assume you've physically
20  been in the plant?
21       A.  Yes.
22       Q.  On many occasions?
23       A.  Yes.
24       Q.  Okay.  So you're kind of familiar
25  with how the -- I assume you're familiar with

10  (Pages 34 to 37)