UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and CENTRAL
TRANSPORT LLC,

     Plaintiffs,                    Case No. 23-cv-12927

v.                               Hon. Mark A. Goldsmith

NAVISTAR, INC.,            Magistrate Judge Anthony P. Patti

     Defendant.

---

## DEFENDANT NAVISTAR, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY (ECF NO. 54)

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES PRESENTED ........................................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................. v

INTRODUCTION.................................................................................................... 1

BACKGROUND..................................................................................................... 2

LEGAL STANDARD............................................................................................. 5

ARGUMENT .......................................................................................................... 6

      A.  Plaintiffs' tardy Motion to Compel should be denied since it was filed two months after the close of discovery and without good cause.......................... 6

      B.  Even if the Court chooses to consider Plaintiffs' tardy Motion, Navistar has affirmatively met or reasonably objected to Plaintiffs' discovery requests.... 8

          1.  Navistar has already produced tens of thousands of pages of relevant information pertaining to the allocation of its production slots. .............. 8

          2.  Navistar adequately objected to Plaintiffs' additional discovery requests as unduly burdensome. ................................................................... 9

          3.  Navistar adequately objected to Plaintiffs' interrogatories as exceeding the maximum number of interrogatories. .................................................. 12

CONCLUSION ..................................................................................................... 13

LOCAL RULE CERTIFICATION ....................................................................... 14

CERTIFICATE OF SERVICE ............................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boykins v. Trinity, Inc.*,
  No. CV 18-13931, 2020 WL 13594956 (E.D. Mich. Sept. 15, 2020)........................ 11

*Craig-Wood v. Time Warner N.Y. Cable LLC*,
  549 F. App'x 505 (6th Cir. 2014) ............................................................. v, 7, 8

*Curry v. SBC Commc'ns, Inc.*,
  No. CIV.A. 06-CV-11728, 2009 WL 728545 (E.D. Mich. Mar. 19, 2009)................. 7

*Ginett v. Federal Express Corp.*,
  166 F.3d 1213 (6th Cir. 1998) .............................................................. 5

*Glob. Fleet Sales, LLC v. Delunas*,
  No. 12-15471, 2016 WL 2342319 (E.D. Mich. May 4, 2016) ...................................... 7

*Gray v. Price*,
  No. CV 19-10383, 2020 WL 12721645 (E.D. Mich. Feb. 12, 2020)........................ 12

*In re Heparin Products Liab. Litig.*,
  273 F.R.D. 399 (N.D. Ohio 2011)................................................................. 11

*Lavado v. Keohane*,
  992 F.2d 601 (6th Cir. 1993) ................................................................. 5

*Lavigne v. Dow Chem., Inc.*,
  No. 09-10146-BC, 2010 WL 536912 (E.D. Mich. Feb. 5, 2010) ................................. 7

*Pittman v. Experian Info. Sols., Inc.*,
  901 F.3d 619 (6th Cir. 2018) ................................................................. v, 7

*Suntrust Bank v. Blue Water Fiber, L.P.*,
  210 F.R.D. 196 (E.D. Mich. 2002) ...................................................... v, 1, 5, 7

*Transamerica Life Ins. Co. v. Moore*,
  274 F.R.D. 602 (E.D. Ky. 2011) ................................................................. 9

*United States v. EES Coke Battery*, LLC,
   No. 22-11191, 2024 WL 3262593 (E.D. Mich. July 1, 2024) ...................................... 12

*United States v. Quicken Loans, Inc.*,
   No. 16-CV-14050, 2018 WL 4352696 (E.D. Mich. Sept. 12, 2018) ......................... 6, 7

*Willis v. New World Van Lines, Inc.*,
   123 F. Supp. 2d 380 (E.D. Mich. 2000) ................................................................... v, 5, 8

**Statutes**

Mich. Comp. Laws § 440.2615 ........................................................................................... 2

## STATEMENT OF THE ISSUES PRESENTED

Should Plaintiffs' tardy Motion to Compel be granted, when it was filed two months after the close of discovery without good cause for the delay, and when Navistar has affirmatively met or reasonably objected to each of Plaintiffs' discovery requests?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Page(s)**

*Craig-Wood v. Time Warner N.Y. Cable LLC,*
549 F. App'x 505 (6th Cir. 2014)……………………………….…………….v, 7, 8

*Pittman v. Experian Info. Sols., Inc.,*
901 F.3d 619 (6th Cir. 2018)…………………………………………………....v, 7

*Suntrust Bank v. Blue Water Fiber, L.P.,*
210 F.R.D. 196 (E.D. Mich. 2002)………………….…..…………………..v, 1, 5, 7

*Willis v. New World Van Lines, Inc.,*
123 F. Supp. 2d 380 (E.D. Mich. 2000)……………………....…….………v, 5, 8

## INTRODUCTION

This Court should deny Plaintiffs GLS Leasco, Inc. and Central Transport, LLC (collectively "Plaintiffs") tardy Motion to Compel Discovery (the "Motion" or "Motion to Compel") in its entirety. Plaintiffs filed the Motion on January 21, 2025 – two months after the discovery cutoff – and failed to articulate good cause excusing the delay. Plaintiffs claim they need additional production data from all of Navistar's customers to determine whether Navistar allocated production slots reasonably during unprecedented supply chain disruptions. (ECF No. 54, PageID.1763) However, Navistar's assertion of the commercial impracticability defense was well known to Plaintiffs since the inception of this case. Put simply, Plaintiffs cannot show good cause for filing their tardy Motion.

Under this Court's Case Management Order, discovery shall not be ordered after the discovery cutoff, absent good cause. (ECF No. 13, PageID.74) Not only did Plaintiffs wait until the very last day to serve the discovery requests in question, Plaintiffs' two-month delay in filing the Motion without articulating *any* good cause is reason enough to deny the Motion. *See e.g., Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 199 (E.D. Mich. 2002) ("A district court may properly deny a motion to compel where the motion to compel was filed after the close of discovery.")

Even assuming Plaintiffs' Motion was timely filed before the close of discovery, Plaintiffs' Motion is unsupported by the facts. Navistar has already produced tens of thousands of documents related to the allocation of its production slots in response to

Plaintiffs' discovery requests. Furthermore, Navistar either already produced responsive documents, or reasonably objected to Plaintiffs' overbroad discovery requests. Therefore, even if Plaintiffs' Motion was timely filed, this Court should still deny the Motion on the merits.

## BACKGROUND

Navistar has asserted a commercial impracticability defense in this case, which requires Navistar to demonstrate that it fairly and reasonably allocated its tractor production slots in light of unprecedented supply chain disruptions caused by the COVID 19 pandemic. Mich. Comp. Laws § 440.2615. Plaintiffs' Motion suggests that Navistar has "stonewalled GLS's discovery into how it allocated its supposedly limited tractor production slots." (ECF No. 54, PageID 1763) Navistar's document production proves just the opposite. Navistar has been overly expansive in producing any possible responsive document, including hundreds of spreadsheets reflecting order board allocations. Indeed, Navistar has produced a mountain of information with over 133,000 pages of documents as compared to Plaintiffs' production of only 15,000 pages. Within its production, Navistar has produced thousands of documents responsive to its efforts to allocate production slots including, without limitation, documents hitting on the following key terms:

- 3,999 documents which hit on the term "allocation;"
- 523 documents which hit on the term "allocate;"
- 6,957 documents which hit on the term "production;"
- 2,983 documents which hit on the term "slot."

In sum, Navistar's production of documents discussing production slot allocations entails over 60,000 pages and far eclipses Plaintiffs' entire document production.

On January 5, 2024, Plaintiffs served their first set of requests for production of documents which included, among other things, requests for documents pertaining to scheduling records, production slots reserved for other buyers (i.e., slot allocation), and documents pertaining to Navistar's impracticability defense. In other words, Plaintiffs were fully aware of Navistar's commercial impracticability defense since their initial request for documents. (*See* **Exhibit A**, Navistar's Responses to GLS's First Request for Production of Documents.)  On June 24, 2024, Plaintiffs served their second set of document requests which included, among other things, requests for all documents that describe Navistar's "order board" and how it is used, changes to the order board and the steps involved in processing customer and dealer orders.  (*See* **Exhibit B**, Navistar's Responses to GLS's Second Request for Production of Documents.)  During discovery, Plaintiffs took over ten depositions of Navistar employees and asked literally hundreds of questions concerning Navistar's order board management and the allocation of production slots at any given time during calendar years 2021 and 2022.

On July 8, 2024, Plaintiffs sent Navistar a Meet and Confer letter, which sought to confer regarding "Orders and Production Update" reports and the order board – essentially seeking additional information about how Navistar allocated its production slots. (**Exhibit C**, Plaintiffs' Meet and Confer Letter dated July 8, 2024.) In response, Navistar advised Plaintiffs that it had, in fact, already produced 78 documents containing the production reports but would nevertheless supplement its production if additional reports were identified. (*See* **Exhibit D**, Navistar Response, July 22, 2024.) As such, as early as July 8, 2024, Plaintiffs were on notice regarding purported deficiencies in Navistar's production of weekly "Orders and Production Update" reports, which Navistar promptly addressed without objection.

After this initial meet and confer, the parties continued to engage one another in several meet and confer efforts both verbally and in writing throughout the next several months, including correspondence regarding information pertaining to allocation of Navistar's production slots.   In addition, Navistar supplemented its document production on numerous occasions based on specific issues that arose during depositions, all in the interest of avoiding discovery disputes.   Navistar witnesses testified *ad nauseum* concerning the allocation of production slots and order board management and reviewed in painstaking detail different iterations of the order board.

On October 23, 2024, GLS served its Third Request for Production of Documents, making Navistar's response to those requests due on the last day of discovery. (ECF No. 13, PageID.73).  (*See* **Exhibit E**, Navistar's Response to GLS's

Third Request for Production of Documents.) These requests were redundant and overbroad, seeking virtually every document exchanged between Navistar and its customers, dealers and manufacturing plants for a two-year span.

As evidenced above, Plaintiffs had ample notice and opportunity to file this Motion well in advance of the discovery cutoff. Instead, Plaintiffs allowed two months to pass before filing their Motion and omit any meaningful discussion as to why they have good cause for doing so.  Plaintiffs' Motion should be denied.

## LEGAL STANDARD

"A district court enjoys broad discretion in managing discovery." *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 199 (E.D. Mich. 2002).  "[I]t is well established that the scope of discovery is within the sound discretion of the trial court. Accordingly, denials of motions to compel discovery are reviewed only for an abuse of discretion." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (internal citations omitted).  District courts routinely deny motion(s) to compel discovery where the motion to compel was filed after the close of discovery.  *See, e.g.*, *Suntrust Bank*, 210 F.R.D. at 199; *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 401 (E.D. Mich. 2000) ("A district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery.") (*citing Ginett v. Federal Express Corp.*, 166 F.3d 1213 (6th Cir. 1998)).

As this Court previously noted, a party's undue delay in requesting judicial relief after the close of discovery does not constitute "good cause" for granting a motion to

compel. *United States v. Quicken Loans, Inc.*, No. 16-CV-14050, 2018 WL 4352696, at *3 (E.D. Mich. Sept. 12, 2018) (denying motion to compel where "[i]explicably, the Government has waited until the end of discovery to claim it should be entitled to a greater universe of revenue/profit information.")

The circumstances in this case dictate the same result.

## ARGUMENT

**A.    Plaintiffs' tardy Motion to Compel should be denied since it was filed two months after the close of discovery and without good cause.**

Plaintiffs' Motion to Compel was filed two months too late and absent a showing of good cause.  This Court has the broad discretion to deny the Motion based on this fact alone. In pertinent part, the Case Management and Scheduling Order states:

> **The Court will not order discovery to take place after the discovery cutoff date absent good cause. Any motion to compel discovery must be filed promptly after the grounds for the motion become apparent and reasonable efforts to resolve the dispute have been exhausted.**

(ECF No. 13, PageID.74) (emphasis in original). The discovery period closed on November 22, 2024, and dispositive motions were due on December 13, 2024. (*Id.* at PageID.73).  Plaintiffs waited until January 21, 2025 to file the Motion.

Inexplicably, Plaintiffs provide no legitimate reason as to why they waited until well after the discovery cutoff to file their Motion. It is clear that "[a] district court may properly deny a motion to compel discovery where the motion to compel was filed after the close of discovery." *Suntrust Bank*, 210 F.R.D. at 199; *see also Willis,* 123 F. Supp. 2d

at 401. Going further, district courts properly deny motions to compel especially "where the moving party had the information it needed to file the discovery motion and its late filing would prejudice the other party." *See, e.g., Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 643 (6th Cir. 2018)

Federal courts within this District have routinely denied tardy motions to compel for delay alone. *See, e.g., Glob. Fleet Sales, LLC v. Delunas*, No. 12-15471, 2016 WL 2342319, at *2 (E.D. Mich. May 4, 2016) (denying a motion to compel that was filed after the close of discovery where plaintiffs provided no explanation for the delay and had reason to know of the evidence sought prior to the deadline); *United States v. Quicken Loans, Inc.*, No. 16-CV-14050, 2018 WL 4352696, at *3 (E.D. Mich. Sept. 12, 2018) (denying motion to compel additional revenue and profit information which wasn't raised until the end of discovery); *Curry v. SBC Commc'ns, Inc.*, No. CIV.A. 06-CV-11728, 2009 WL 728545, at *1 (E.D. Mich. Mar. 19, 2009) (denying motion to compel filed eight days after discovery cutoff); *Lavigne v. Dow Chem., Inc.*, No. 09-10146-BC, 2010 WL 536912, at *2 (E.D. Mich. Feb. 5, 2010) (denying motion to compel filed four days after discovery cutoff).

Here, Plaintiffs' Motion wasn't filed until well after the discovery cutoff as well as the dispositive motion deadline. In *Craig-Wood v. Time Warner N.Y. Cable LLC*, the moving party waited until two months after discovery closed to file their motion to compel – which the court denied due to its delinquency. *Craig-Wood v. Time Warner N.Y. Cable LLC*, 549 F. App'x 505, 508 (6th Cir. 2014). The court in *Craig-Wood* found it

troublesome that the moving party filed its motion to compel just two days after the opposing party filed its motion for summary judgment. *Id.* Here, Plaintiffs' Motion to Compel was filed *over a month* after the parties filed motions for summary judgment and on the even of the response deadline.

Plaintiffs delay in filing the Motion is particularly inexcusable since Plaintiffs have known about the alleged deficiencies (and Navistar's stance on them) since as early as July of 2024. (Ex. C.) Indeed, as far back as on July 8, 2024, when Plaintiffs sent their initial discovery deficiency letter, Plaintiffs' specifically request information regarding order board management and production updates. (*Id.*) Plaintiffs had plenty of time to file a motion to compel within the discovery window, and have failed to provide adequate justification, or really any justification at all for not doing so.  Furthermore, Plaintiffs' delay in filing its Motion has already prejudiced Navistar, mainly since dispositive motions have already been filed and are currently in the process of being fully briefed.

In sum, Plaintiffs' tardy Motion lacks good cause and was filed in direct contravention of this Court's Case Management Order. For this reason alone, this Court should deny the Motion. *See Willis*, 123 F. Supp. 2d. at 401.

**B.    Even if the Court chooses to consider Plaintiffs' tardy Motion, Navistar has affirmatively met or reasonably objected to Plaintiffs' discovery requests.**

**1.    Navistar has already produced tens of thousands of pages of relevant information pertaining to the allocation of its production slots.**

Navistar has produced a staggering 22,000 documents in excess of 133,000 pages in this lawsuit. This number is especially significant given the fact that Plaintiffs collectively have produced a little over 15,000 pages of documents. Navistar has been overly expansive in its production, especially given the broad discovery requests issued by Plaintiffs. Navistar has produced thousands of documents which hit on terms such as "allocate" to substantiate its defense of commercial impracticability. Navistar made it abundantly clear in response to Plaintiffs' third set of requests for production that responsive documents had already been produced regarding allocation. (Ex. E, at p. 10) (Navistar stating in response to RFPs nos. 58 and 59 that "all non-privileged documents responsive to this request and within Navistar's possession, custody, and control have already been produced").

### 2. Navistar adequately objected to Plaintiffs' additional discovery requests as unduly burdensome.

Navistar adequately objected to Plaintiffs' discovery requests where appropriate and Plaintiffs' arguments to the contrary should be dismissed out of hand. Plaintiffs served sixty-three requests for documents, including a variety of overly broad requests which often encompassed a period of several years. Notably "a discovery request is considered overly broad or unduly burdensome on its face if it (1) uses an omnibus term… and (2) applies to a general category or a group of documents or a broad range of information." *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011). This is exactly the case for many of the discovery requests at issue in this Motion, which

Navistar properly objected to. For example, RFP Nos. 50 through 53 request that Navistar produce:

- **All contracts between Navistar and *any customers* concerning the production or delivery of MY 2023 LT 625 tractors or MY 2023 RH613 tractors; (Ex. E, at RFP 50)**

- **All production reports from January 1, 2021 to December 31, 2022; (Ex. E, at RFP 51)**

- **All communications from Navistar to Navistar dealers regarding production slots and/or production capacity from January 1, 2021 to December 31, 2022; (Ex. E, at RFP 52)**

- **All lineset order boards for Naivstar's Escobedo plant from January 1, 2021 to September 30, 2023.  (Ex. E, at RFP 53)**

These requests literally seek every document exchanged between Navistar and its customers, dealers and manufacturing plants for a two year period.  Navistar's objections are well documented and warranted under the circumstances.  Notably, Navistar did not utilize boilerplate objections and provided context for unduly burdensome objections. For example, in response to RFP no. 52 Navistar stated:

> **Navistar objects to this request as overly broad and unduly burdensome, in that the request seeks "all" communications for a two-year time frame regarding any changes to production slots or capacity with any Navistar dealer. As discovery has shown, Navistar communicated on a daily basis with its dealership network concerning production constraints, supply chain issues, production capacity and impacts on production availability.  Navistar further objects to this request as duplicative of prior requests. Navistar has already produced over 130,000 pages of documents which include, among other things, communications with its dealers concerning production capacity during this timeframe.**

(Ex. E, at p. 7). Similarly, Navistar objected to RFP 50 since it sought every contract Navistar had with *any customer or dealer* concerning MY 2023 LT and RH tractors (*Id.*) In addition, Navistar objected because the request "includes no reasonable time frame, further rendering it overbroad and not reasonably calculated to lead to the discovery of relevant, admissible evidence." (*Id.*)

Plaintiffs argue in their Motion that Navistar was required to submit affidavits to support its overly broad and unduly burdensome objections and rely upon a Northern District of Ohio case to support this argument. *In re Heparin Products Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011). Not only is *In re Heparin* non-binding, the court's decision actually supports the robust objections asserted by Navistar. Indeed, the court in *In Re Heparin* specifically criticized the sloppy drafting of document requests that often times elicit objections from the responding party. (*Id.* at 410). The court further stated that while affidavits help, the objecting party really only has to give some sort of an explanation as to why a request is burdensome. (*Id.* at 411) ("[a]t the very least, where a party claims burdensomeness, it must explain why that is so."). Other, more persuasive cases, further indicate that an objecting party can use common sense to substantiate its objections, or at a minimum must make an attempt to substantiate a claim that a request is too burdensome. *Boykins v. Trinity, Inc.*, No. CV 18-13931, 2020 WL 13594956, at *2 (E.D. Mich. Sept. 15, 2020), objections overruled, No. 18-13931, 2020 WL 6866630 (E.D. Mich. Nov. 23, 2020). This is exactly what Navistar has done.

**3. Navistar adequately objected to Plaintiffs' interrogatories as exceeding the maximum number of interrogatories.**

Plaintiffs served interrogatories that contained several subparts not tied to a common theme, and as such served more than the maximum number allotted under the Federal Rules of Civil Procedure. Navistar asserted this objection in response to GLS's Interrogatories nos. 11 through 15. (*See* **Exhibit F**, Navistar's Responses to Plaintiffs Third Requests for Production, at pp. 8-12). Plaintiffs argue their interrogatories were all tied to a common theme, when instead they are often a haphazard set of discrete questions. Many of Plaintiffs interrogatories were not tied to a common theme and could easily "stand alone" rendering them a separate interrogatory. *Gray v. Price*, No. CV 19-10383, 2020 WL 12721645, at *1 (E.D. Mich. Fed. 12, 2020); *see also United States v. EES Coke Battery*, LLC, No. 22-11191, 2024 WL 3262593, at *3 (E.D. Mich. July 1, 2024).

For example, for interrogatory no. 8, Plaintiff GLS Leasco requested Navistar provide information for many different customers identified in a detailed spreadsheet, first requesting the total number of tractors Navistar was contractually obligated to build for each customer, then requesting the date of any contract signed for the customer in 2022, and then also requesting the total number of tractors Navistar actually built for the customers in 2022. (Ex. F, at pp. 4-5). These subparts are not tied to a common theme, as a lengthy, detailed spreadsheet cannot be considered one singular theme. Each of these subparts are discrete from one another and can easily stand on its

own. Plaintiffs easily exceeded the maximum number of allotted interrogatories when factoring in each time Plaintiffs served an interrogatory with subparts not tied to a common theme. As such, Navistar voiced adequate objections that Plaintiffs exceeded the maximum number of interrogatories allotted.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' tardy Motion to Compel additional discovery from Navistar.

Dated:  February 10, 2025                     BARNES & THORNBURG LLP


                                              /s/ Scott R. Murphy
                                              Scott R. Murphy (P68015)
                                              Anthony C. Sallah (P84136)
                                              Sydney O. Imes (P86532)
                                              171 Monroe Ave NW Suite 1000
                                              Grand Rapids, MI 49503
                                              (616) 742-3930
                                              smurphy@btlaw.com
                                              anthony.sallah@btlaw.com
                                              Sydney.Imes@btlaw.com
                                              *Attorneys for Defendant Navistar, Inc.*

## LOCAL RULE CERTIFICATION

I, Scott Murphy, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Dated: February 10, 2025

BARNES & THORNBURG LLP

*/s/ Scott R. Murphy*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
Sydney O. Imes (P86532)
171 Monroe Ave NW Suite 1000
Grand Rapids, MI 49503
(616) 742-3930
smurphy@btlaw.com
anthony.sallah@btlaw.com
Sydney.Imes@btlaw.com
*Attorneys for Defendant Navistar, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel was electronically filed using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

Dated: February 10, 2025

BARNES & THORNBURG LLP

*/s/ Scott R. Murphy*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
Sydney O. Imes (P86532)
171 Monroe Ave NW Suite 1000
Grand Rapids, MI 49503
(616) 742-3930
smurphy@btlaw.com
anthony.sallah@btlaw.com
Sydney.Imes@btlaw.com
*Attorneys for Defendant Navistar, Inc.*