UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

        Case No. 23-cv-12927

      Plaintiffs,

        Hon. Mark A. Goldsmith

v.

        Magistrate Judge Anthony P. Patti

      NAVISTAR, INC.,

Defendant.

---

**Plaintiffs' Reply in Support of Motion
for Partial Summary Judgment**

Navistar's opposition brief rests on a fundamentally misleading, *post hoc* interpretation of the Letter Agreement's meaning—one at odds with what the parties contemporaneously understood the deal to mean. To do so, it often simply elides or omits key language refuting its assertions. The quintessential example of Navistar's tactic involves its repeated argument that the Agreement had no delivery requirement, but only contained a build schedule. (*E.g.*, ECF No. 56 ("Resp."), ¶ 24, ¶ 35, ¶ 42, ¶ 87). Navistar pastes the purported build schedule into its brief, but *omits* three critical words stating what the schedule represents: "New Truck Delivery":

New Truck Delivery – based on available production at the time of this letter.

| New Truck Build Month | RH New Truck Builds | LT New Truck Builds | Trades |
|---|---|---|---|
| January | 42 | | 0 |
| February | 32 | | 0 |
| March | 342 | | 0 |
| April | 42 | 300 | 0 |
| May | 3 | 339 | 0 |
| June- Spillover month | | | 0 |
| Total | 461 | 639 | 0 |

It should go without saying that a party cannot create a genuine dispute of material fact by misrepresenting the record. Plaintiff's motion should be granted.

## I.    Navistar breached the Letter Agreement, causing Plaintiffs' damages.

Navistar breached the Letter Agreement by failing to deliver 1,100 trucks by the end of June 2022. (Facts ¶¶ 19, 24). Navistar admitted that it failed to deliver all required trucks by the end of June, and that failure to do so caused Plaintiffs significant damages. (*Id.* ¶¶ 40–48). That warrants partial summary judgment.

Navistar's response that the Agreement contained "no promised delivery dates . . . at all" ignores the Agreement's plain language—language Navistar omits. (Resp.

at 9). The Agreement explicitly contained a "New Truck Delivery" schedule. *Supra* at 1. It states that Navistar would "*supply*" the trucks "from January 2022 thru June 2022." (ECF No. 51 ("Mot.") Ex. V at 1 (emphasis added)). And Navistar signatory Sean Carmichael repeatedly said so, including writing in July 2022 that "we agreed to deliver 1,100 units by June 2022." (Mot. Ex. MM; *see also* Facts ¶ 41).

Navistar never addresses this plain language or the confirmatory evidence from Carmichael, because it is fatal to its incorrect argument that it "was not obliged to deliver 1,100 trucks." (Resp. at 9.) For this reason, Navistar's lengthy digression into UCC gap-filler language about a "reasonable time" for delivery (Resp. 12–16), is beside the point. While the day-to-day build numbers may have been inherently flexible and subject to change, the parties all knew that the *endpoint* of the agreement required Navistar to deliver all 1,100 units by June 2022. (Facts ¶¶ 24, 35). That is why, for instance, the supposed "build schedule" Navistar cites includes a June "spillover month" *without* any builds, to allow for final delivery. (Mot. Ex. V at 2).

Navistar also rehashes its own summary judgment argument that Plaintiffs cannot obtain consequential damages because GLS assigned its purchase right to its affiliate ELC. But, as Plaintiffs argued in their opposition to Navistar's summary judgment motion, GLS's assignment to ELC is irrelevant under the UCC. (ECF No. 55, PageID.1903–07). Michigan's UCC defines a "buyer" as "a person who buys or contracts to buy goods." MCL § 440.2103(1)(a). Navistar concedes that GLS

contracted to buy trucks (Facts ¶ 37), and so by definition it is a "buyer" under the UCC. Central, moreover, as an intended third-party beneficiary, is also a buyer under the UCC entitled to seek damages. *See Shay v. Aldrich*, 790 N.W.2d 629, 640 (Mich. 2010); *Bay Gen. Indus., Inc. v. Johnson*, 418 A.2d 1050, 1056 (D.C. 1980).[1]

## II.   Navistar's affirmative defenses all fail as a matter of law.

### A.   Navistar's performance was neither impossible nor impracticable.

Navistar's impossibility and impracticability defenses fail as a matter of law because (1) the events giving rise to the purported impossibility/impracticability were not unforeseeable; and (2) because Navistar's claim—that it had not built enough trucks by April or May—does not create a material dispute of fact for its obligation to deliver *by end of June* 2022. (Mot. 12–14, 23–24).

Navistar's opposition merely ignores the black-letter law regarding the need for foreseeability and thus fails to dispute that the so-called "impossible" conditions were known the Navistar when the parties entered the contract. *See*, *e.g.*, *Roberts v. Farmers Ins. Exch.*, 737 N.W.2d 332, 342 (Mich. App. 2007). That alone warrants summary judgment. Likewise, given Navistar's refusal to acknowledge the existence

---

[1] Navistar's conditions precedent and lack of mutuality defenses, based upon the claim that ELC, not GLS, purchased the trucks, and so GLS is not a real party in interest and lacks standing (Resp. at 24–25), also fail for the exact same reasons as above. The sole authority Navistar cites—*Greater Lakes Ambulatory Surgical Ctr., LLC v. Meemic Ins. Co.*, 2021 WL 3234350 (Mich. App. July 29, 2021)—is not a UCC case, and the agreement there assigned rights "without limitation."

of the June 2022 delivery deadline, its barebones claim that delivery was impossible or impracticable by the end of June 2022—despite Navistar's reaffirmation of its promises on May 18, 2022—does not create a genuine dispute of material fact on that second, independent ground.

**B.  Plaintiffs did not waive Navistar's duty to timely deliver trucks.**

As Plaintiffs' opening brief explains, timely delivery was the *sine qua non* of the April 2022 Letter Agreement. Navistar already had an obligation to supply 1,100 trucks by December 2022; GLS agreed to give up a valuable trade-in right to obtain those trucks by June 2022 instead. (Facts ¶¶ 8, 12, 15–16). GLS never waived that obligation and only signed the agreement after Navistar threatened to *hold* production and *stop* timely delivery of trucks. (Facts ¶¶ 36–37).

Navistar's waiver defense continues to rest on the erroneous claim that GLS "waived" the right to timely delivery because Navistar's dealer had earlier provided build schedules showing a handful of trucks being built into July. (Resp. at 19). But this conflates the "fluid" nature of the day-to-day builds with the finality of the delivery deadline—which both GLS's witness and Navistar's dealer confirmed is the ordinary course. (Facts ¶¶ 31–33). Navistar's twisting of Kyle Blain's May 26, 2022 email is likewise futile. (*See* Resp. at 19). That email shows only concern that Plaintiffs receive all their contracted-for trucks by the contractual deadline. Indeed, when Navistar responded to Mr. Blain, through their representative Jim Lollis, about

- 4 -

Navistar's severely delayed "delivery and production information," Mr. Blain explicitly stated that this delay was "unacceptable." (Reply Ex.1, LOLL-0000064). Thus, contrary to Navistar's case law, Plaintiffs neither urged Navistar to perform the contract on its own chosen schedule, *see SME Holdings, LLC v. Tool Crib, Inc.*, 2021 WL 3861114, at *4 (E.D. Mich. Aug. 30, 2021), nor modified delivery deadlines by joint agreement, *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 461 F. Supp. 3d 531, 542 (E.D. Mich. 2020). There was no waiver.

### C. Release and accord do not apply to Plaintiffs' claims.

As made clear in Plaintiffs' opening brief, the Letter Agreement's "No Trade" clause releases Navistar from buying back the model-year 2018 trucks and satisfies specific prior claims for rental invoices and related issues for those older trucks, not to end Navistar's obligation to timely deliver new trucks. (Mot. at 19–20).

Navistar's contrary arguments yet again revolve around an incorrect, fragmented reading of the "No Trade" clause. Navistar first claims that this section "compensates for rental costs 'associated with delayed current and future production of units,'" and so clearly envisioned that future delays might occur, which were to be included within the $6.2 million payment. (Resp. at 21). Not so. The Letter Agreement actually states that it compensates for specific "*rental invoices* associated with delayed current and future production," not vague unanchored damages related to future delays. (Mot. Ex. V at 3). In other words, "the plain and ordinary meaning

- 5 -

of the language" of the "No Trade" clause, *Batshon v. Mar–Que Gen. Contractors, Inc.*, 624 N.W.2d 903, 905 n.4 (Mich. 2001), does not span so broadly as to encompass any and all <u>*costs*</u> related to future delays, unmoored from rental invoices the parties were aware of at the time of contracting, contrary to Navistar's arguments.

Next, Navistar contends that the final bullet point of the "No Trade" clause, stating that it is "*all-encompassing* for *any and all current or future issues for 941 model year 2017-2019 international units*"—"full stop"—necessarily includes any issues relating to disposal of the model-year 2018 trucks, including Plaintiffs' claims for consequential damages arising from the failure to timely deliver new trucks. (Resp. at 21–22). But this contradicts Navistar's interrogatory admissions. Navistar conceded that the "No Trade" clause merely "released any and all current or future claims for the model-year 2017-2019 International units." (Mot. Ex. UU at 5). And Plaintiffs' *claims* all pertain to delays related to the model-year 2023 trucks, with the model-year 2018 trucks only establishing consequential damages.

Moreover, Navistar's erroneous reading seeks to take this single catch-all clause, "divorced from those which precede" it. *In re Complaint of Rovas Against SBC Mich.*, 754 N.W.2d 259, 273 (Mich. 2008). A plain-language reading of this bullet merely states that all issues related to the enumerated claims above it—*e.g.*, assistance with disposing the 941 trucks; rental invoices related to units "that were to be serviced in the first quarter of 2022" and units that experienced "downtime";

and missing communication devices—are settled. The plain language nowhere expands the parties' agreement beyond these categories to the entire universe of the parties' relationship that might, in any way, touch on these older trucks, such as Plaintiffs' claims here. Thus, both the "plain and ordinary meaning of the language" used in the "No Trade" clause, *Batshon*, 624 N.W.2d at 905 n.4, and the parties' understandings of the contract show that it does not prohibit Plaintiffs' claims.

**D.      The Court should grant summary judgment on the defenses that Navistar abandons; they should not be dismissed as "moot."**

Navistar does not defend its estoppel, laches, prior breach, and novation defenses, but asks the Court to dismiss Plaintiffs' motion on them as "moot." (Resp. at 23 n.6). But they are set forth in the current pleading and remain meritless, as Navistar's failure to defend confirms. Summary judgment is appropriate. *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013).

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.:

By:      */s/ Thomas J. Davis*
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Counsel for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Date: February 11, 2025                tdavis@khvpf.com
557691

- 7 -

## LOCAL RULE CERTIFICATION

I, Thomas J. Davis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

/s/ *Thomas J. Davis*

Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

557691