**EXHIBIT 1**

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION


GLS LEASCO, INC.,

        Plaintiff,

-v-                                          Case No. 23-cv-12927

NAVISTAR, INC.,

        Defendant,
_____/


           HEARING ON MOTION FOR PROTECTIVE ORDER

           BEFORE THE HONORABLE MARK A. GOLDSMITH

        Detroit, Michigan, Thursday, November 7th, 2024.



APPEARANCES:

FOR THE PLAINTIFF:        THOMAS J. DAVIS
                          ERIC J. PELTON
                          Kienbaum, Hardy, Viviano, et al, PLC
                          280 North Old Woodward Avenue
                          Suite 400
                          Birmingham, MI 48009


FOR THE DEFENDANT:        SCOTT R. MURPHY
                          ANTHONY C. SALLAH
                          Barnes & Thornburg, LLP
                          171 Monroe Avenue, NW
                          Suite 1000
                          Grand Rapids, MI  49503-2694



David B. Yarbrough, CSR, RMR, FCRR
Official Court Reporter
(313) 234-2619
```

```
 1                        TABLE OF CONTENTS
                                                          PAGE
 2    WITNESSES:

 3    NONE

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15                           EXHIBITS

16    NONE

17

18

19

20

21

22

23

24

25
```

1            Detroit, Michigan.
2            Thursday, November 7th, 2024.
3            At or about 3:18 p.m.
4                    --     ---    --
5         THE CLERK OF THE COURT:  Please rise.  The United
6  States District Court for the Eastern District of Michigan is
7  now in session, the Honorable Mark Goldsmith presiding.  You
8  may be seated.
9         The Court calls case number 23-cv-12927, GLS Leasco,
10 Inc versus Navistar, Inc.  Counsel, please state your
11 appearances for the record.
12        MR. DAVIS:  Thomas J. Davis and Eric Pelton on behalf
13 of the plaintiffs.
14        MR. MURPHY:  Scott Murphy and Anthony Sallah here on
15 behalf of the defendant.
16        THE COURT:  All right, great.  I'm going to ask
17 everyone to keep your voices up.  Please speak directly into
18 the microphone.  You can remain seated.  All right, we're here
19 for hearing on docket 42 -- I'm sorry, docket 30, the motion
20 for protective order and this has to do with a 30B6 notice
21 related to discovery about discovery, so let me hear from
22 plaintiff first.
23        MR. DAVIS:  Yes.  Thank you, your Honor.  As we've
24 indicated and I don't think there's any dispute that generally
25 discovery upon discovery is disfavored.  We've identified that

```
 1   generally a party is not entitled to go into discovery about
 2   discovery absent some kind of showing the document have been
 3   withheld by the other party and that's the Edwards v. Scripps
 4   case from Judge Stafford which is rather influential on this
 5   topic and this is a case where there is, you know, these things
 6   invade attorney/client privilege.  It just kind of concerns a
 7   waste of everybody's time and looking at the standard of
 8   whether they have any proof of anything improper, they have
 9   none.  I mean, this is a case where we have run their search
10   terms verbatim, umm, we have every document.  They haven't
11   identified a single document missing from the key witness who
12   was involved in the negotiation of the contract and this is a
13   breach of contract case and what we've done at every step, we
14   get an objection from the defendants and the goalpost keeps
15   moving.  The first objection is well, you didn't issue a
16   litigation hold well, yes, we did, here's the litigation hold.
17   Then it turns to well, this administrative employee, she
18   testified that she deleted documents.  Well, yeah, she deleted
19   documents contemporaneously a year, year and-a-half before the
20   litigation started and the reason they know about this is we
21   produced the documents from a different source, so what they're
22   essentially complaining about is that we don't have an
23   additional copy from your custodian, we have it from the
24   subpoenaed custodian.  These are e-mails.  The deleted e-mails
25   are e-mails that are coming from defendant's own agent so it's
```

1    information that they clearly know about.  It's not a mystery
2    when their trucks were delivered to us, that's what the deleted
3    e-mails were about.  So that is, you know, that objection we
4    respond to and yesterday, late yesterday we -- they file a
5    sur-reply now they raise well this other almost purely clerical
6    employee who literally her job is to process titles with the
7    Department of Motor Vehicles, well she retired and you don't
8    have her e-mails.  This, this Becky Butler, this is the
9    sur-reply issue.  She's not on our witness list, she's not on
10   their witness list, she's not on any party's initial
11   disclosure, she's clerical and I will say to the Court they
12   raise the sur-reply issue last week.  We've since gone to our
13   client and I can confirm for the Court in fact my client has a
14   backup tape that will contain Ms. Butler's e-mails as clerical
15   employee and as your Honor is aware, I mean, generally a party
16   is not required to go into backup tapes because it's just more
17   time-consuming and expensive to retrieve information, but if
18   they think this Becky Butler is so critical, you know, that
19   will be an issue where if the Court were to order cost-shifting
20   which is generally done in cases where you have to go to backup
21   tape, we'll retrieve information from a backup tape and
22   produce, but the issue here is have the plaintiffs improperly
23   withheld documents and the answer to that question is no.  They
24   have no basis to make accusations --
25            THE COURT:  Pardon me for interrupting.  Has the 30B6

1 been taken or started or set up yet?

2     MR. DAVIS: Well, what we did your Honor is we took
3 the 30B6 and we agreed to not do the 30B6 on this issue pending
4 the Court's ruling, either it's done or we will bring a 30B6
5 witness on this topic.

6     THE COURT: Okay. How long did that portion of the
7 30B6 take?

8     MR. DAVIS: How long did the rest of the 30B6 take?

9     THE COURT: Yes, the actual deposition that's been
10 taken so far, how long did that take?

11     MR. DAVIS: I mean, it was probably most of the day.
12 I don't know if they hit seven hours, but it was definitely
13 more than half a day, umm.

14     THE COURT: Okay.

15     MR. DAVIS: So you know what, your Honor, the issue,
16 the answer to that question is that the same witness actually
17 was, umm -- so the plaintiffs are intertwined and they have the
18 same, the vice-president is also the president of the other and
19 he testified on behalf of both companies so actually it spilled
20 over in two days, but he was testifying on behalf of himself
21 and two companies, so it's hard to break it out for you, but
22 yeah, they -- he -- Mr. Blain who is the key witness I
23 identified, he has already testified for a day and-a-half in
24 this case already.

25     THE COURT: So he would be the person to come back

| | |
|---|---|
| 1 | and testify further or it would be somebody else? |
| 2 | MR. DAVIS:  On this issue, your Honor, probably not |
| 3 | because this would be an issue of, you know, document retention |
| 4 | and Mr. Blain is not the person issuing the lit hold or |
| 5 | anything like that, so. |
| 6 | THE COURT:  All right, so it would be somebody else. |
| 7 | MR. DAVIS:  Probably. |
| 8 | THE COURT:  There was some mention made about an |
| 9 | attorney.  Would there be an attorney who would be coming back |
| 10 | to testify? |
| 11 | MR. DAVIS:  That was a misunderstanding.  We thought |
| 12 | that's what they were suggesting.  Of course we get to pick the |
| 13 | 30B6 witness as long as we prepare him, so yeah, we |
| 14 | misunderstood them.  We haven't identified who the 30B6 witness |
| 15 | would be, but given the sensitive nature, I mean, we can't -- |
| 16 | they can't get into attorney/client privilege matters |
| 17 | regardless, we're going to have to prepare an appropriate |
| 18 | custodian, an appropriate witness if the Court were to so |
| 19 | order, but really our point is, your Honor, is that we don't |
| 20 | think they've come close to making the showing that we've done |
| 21 | something improper.  In fact, we've bent over backwards to |
| 22 | address their concerns as they've raised them and the goalpost |
| 23 | keep moving and so for that reason we just think it's |
| 24 | inappropriate to subject us to that additional cost and time. |
| 25 | THE COURT:  Okay.  Let's hear from the defense. |

| | |
|---|---|
| 1 | MR. MURPHY:  Thank you, your Honor.  You know, as the |
| 2 | Court's aware, this issue's been extensively briefed, probably |
| 3 | more so than either party would wish, but I do agree with one |
| 4 | thing with opposing counsel that the <u>Edwards v. Scripps</u> case is |
| 5 | the correct legal standard that applies here your Honor and the |
| 6 | test in that case is, you know, the Court would recognize and |
| 7 | allow for discovery on a party's preservation efforts if the |
| 8 | party's efforts to comply with discovery requests are |
| 9 | reasonably drawn into question and we submit to the Court on |
| 10 | this record we believe there is reasonable grounds to question |
| 11 | the veracity of the plaintiffs's preservation efforts, your |
| 12 | Honor, and it really starts with the document productions that |
| 13 | have occurred in this case.  As we point out to the Court, you |
| 14 | know, Navistar, our client, we produced over 130,000 pages of |
| 15 | documents.  Other third parties in this case, your Honor, |
| 16 | allegiance, Summit and even Mr. Lawless (phonetic) produced far |
| 17 | in excess of the plaintiff's production which was 2,900 pages |
| 18 | of documents and that's really what kind of caught our |
| 19 | attention initially your Honor is, well, why did we produce |
| 20 | 130,000 pages and we only got 3,000 pages on the other side of |
| 21 | it and so we started to look at the other third-party |
| 22 | productions and compared those to the plaintiffs and we saw |
| 23 | significant gaps in those productions and we've highlighted |
| 24 | those gaps, your Honor, in our opposition brief in the exhibits |
| 25 | to the opposition brief, certain e-mails that were never |

1  produced by the plaintiffs that were, actually go to the heart
2  of this case and they concern, you know, the delivery schedule
3  and production schedules for these trucks and communications
4  between the plaintiffs and the dealership and so they were
5  critical documents from our perspective your Honor and they
6  weren't produced.
7      When we went and asked the plaintiffs, you know,
8  employees about this and in particular Ms. Perkins, when we
9  asked her about well could you go back and see if you actually
10 received this because during the course of discovery there was
11 some question over whether one of the employees actually
12 received one of these communications from the dealer and that's
13 when she flat out told us that no, I would have deleted all of
14 that and we've cited that deposition testimony, your Honor, in
15 our brief and that really, you know, we have no doubt that
16 plaintiffs, they did disclose the litigation hold and we
17 appreciate that.  We're not questioning whether a litigation
18 hold was actually issued, your Honor.  What we question is what
19 did they actually do to implement the litigation hold because
20 at least the witnesses we deposed testified that they didn't
21 ever recall receiving one and they still actively deleted
22 e-mails and so that's your Honor why we believe that we've made
23 a case to at least, your Honor, take the deposition of their
24 corporate representative to better understand what their
25 document retention policy was, what were their preservation

1  efforts, when did they, you know, when did they mirror image
2  these computers?  We are entitled to at least ask their
3  corporate representative on those topics, your Honor.
4          THE COURT:  How long would you be?
5          MR. MURPHY:  Your Honor, I believe we could have this
6  done in between an hour, hour and-a-half.  I mean, no more than
7  an hour and-a-half your Honor would be all that we would need
8  and, you know, if the Court has any questions, your Honor, I
9  mean obviously there's a lot of briefing on this.  I'd be happy
10 to address any questions the Court might have, but thank you
11 very much.
12         MR. DAVIS:  Your Honor --
13         THE COURT:  Tell me one thing, what is the
14 plaintiff's demand here?  How much is in controversy?
15         MR. MURPHY:  I believe, your Honor, approximately 27
16 million dollars so it's a very significant case for both
17 parties, your Honor.
18         THE COURT:  Okay.
19         MR. DAVIS:  Your Honor, if I could just briefly
20 respond?
21         THE COURT:  Yes.
22         MR. DAVIS:  My and I come back to the point that
23 we've made before, what is actually missing here?  They still
24 have not identified anything that's missing.  These gaps that
25 they're alleging, these are gaps based on documents we produced

1   to them.  These are documents we produced to them and their
2   own, they're their own documents.  They're talking about
3   documents from their agent to us.  We produced those documents
4   which were retrieved from the agent via subpoena.  There's a
5   few documents that she deleted a year-plus before the
6   litigation even started, before there was even a breach of
7   contract is what they're talking about and it's about the date
8   that they deliver trucks to us.  They though when they deliver
9   trucks, that's why this is a red herring.  There's nothing here
10  that's missing that has anything to do of importance in the
11  case or that's a mystery.  This is an attempt to basically
12  manufacture an issue to tar us with because the law and the
13  fact are really against them on the merits, so, you know, to
14  suggest that our client has done something improper and the
15  quote from <u>Scripps</u> by the way your Honor is that the Court will
16  usually not compel a further response absent evidence that the
17  responding party has improperly withheld documents.  We're not
18  withholding anything.  Every single time they come to us, they
19  raise an issue, we produce the document or they say there's a
20  problem, we produce the documents.
21              You know, they claim that well we didn't produce a
22  large volume of documents.  We ran their search terms verbatim,
23  your Honor.  They gave us the search terms and we ran them
24  across almost over 200,000 documents which we have disclosed as
25  well.  It's not as if we said, you know, we're not going to run

1   your documents.  We ran our search terms, we ran their search
2   terms and we produced.
3           Like I said, every step of the way where they've
4   raised an issue, we addressed it.  They keep moving the
5   goalpost and this is a standard that requires them to make a
6   showing of, essentially of bad faith and they have not even
7   come close to that.  There's nothing missing here, certainly
8   nothing that goes to the heart of the case which is breach of
9   contract and the person who negotiated the contract, they
10  haven't identified even a single so-called missing document
11  from Cal Blain who is the key witness.  They're talking about
12  administrative employees who had no role in negotiation of the
13  contract, who are not actively deleting e-mails.  They have no
14  proof that they actively deleted e-mails after the litigation
15  hold.  That's just, I don't even know where that comes from,
16  but, you know, they have a showing to make your Honor and
17  whatever the litigation demand is, umm, that does not give them
18  license to basically intrude into attorney-client privileged
19  matters based on nothing, based on no legitimate basis to
20  accuse our client of impropriety, so I would just ask the Court
21  grant our protective order motion and allow this discovery to
22  come to a close.
23          (Pause)
24          THE COURT:  Well, when it comes to discovery there
25  are few hard and fast rules.  The job of the Court is to make

1  sure that discovery doesn't become unduly burdensome for
2  responding parties and that the discovery burdens are not
3  disproportionate to the needs of the case.  This is a fairly
4  large case.  I'm told the amount in controversy is some 27
5  million dollars.  What's at issue in this motion is whether to
6  let the defense take another hour and-a-half worth of
7  deposition.  Seems like a fairly small burden to bear in light
8  of plaintiff's demand.
9        The Court acknowledges there is some case law that
10 talks about discovery about discovery being somewhat disfavored
11 at least to the extent of requiring some showing if the
12 matter's contested, that there's some cause to take such
13 discovery.  That doesn't seem like a very high burden to meet.
14 I don't think the defense has to show that there's been some
15 bad faith as plaintiff has suggested.  I think the case law
16 talks about simply being facts that draw into question whether
17 there's been a full production and defense points to some facts
18 that would draw that into question; the relatively smaller
19 number of documents produced by plaintiff compared to the
20 defense, the admission by some witnesses that documents were
21 deleted, the fact that there seemed to be some gaps in the
22 production.  I don't think there needs to be any kind of
23 conclusive proof of wrongdoing in order to allow the defendants
24 to proceed and ask questions for about an hour and-a-half about
25 what the document retention policies are, so I'm going to deny

```
 1    the plaintiff's motion for protective order.
 2              In the future, I would encourage both sides to think
 3    carefully about arguing about matters that good lawyers could
 4    work out between themselves.  I would have put this dispute in
 5    the category of the kind of dispute lawyers should resolve
 6    between themselves and not engage the Court in having to read
 7    very lengthy briefs on a dispute about an hour and-a-half
 8    deposition, but if that's what you want to spend your client's
 9    money on, then I'm not going to stop you from filing motions,
10    but in the future you should think carefully about whether
11    you're really doing your clients any good by filing this kind
12    of a motion.
13              I know there are other motions that have been filed.
14    We'll be looking at them in the near future and letting you
15    know about possible hearings on them.  There was a motion for
16    filing a sur-reply brief, but that will be denied as moot.
17    Anything else?
18              MR. MURPHY:  Thank you, your Honor.  No, thank you.
19              THE COURT:  Anything else for plaintiff?
20              MR. DAVIS:  I mean, your Honor, the only issue and
21    just to see if we're going to, umm, like I said, the two gaps
22    I've identified, one of which we have it in a backup tape and I
23    don't know if you want us to talk amongst ourselves before we
24    raise that issue, but --
25              THE COURT:  I sure do.  I want you to talk about
```

```
 1   everything.  I believe in talk.  I think talk is good.
 2            MR. DAVIS:  Well, then we'll do so, your Honor, but
 3   like I said --
 4            THE COURT:  Good, thank you.  Have a good day.  That
 5   concludes our hearing.
 6            MR. MURPHY:  Thank you.
 7            (Hearing concluded at 3:44 p.m.)
 8                           --    ---    --
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, David B. Yarbrough, Official Court Reporter, do hereby certify that the foregoing pages comprise a true and accurate transcript of the proceedings taken by me in this matter on Thursday, November 7th, 2024.

1/14/2025                   /s/ David B. Yarbrough

Date                        David B. Yarbrough,
                            (CSR, RPR, FCRR, RMR)
                            231 W. Lafayette Blvd.
                            Detroit, MI  48226