## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC<br><br>                Plaintiffs,<br><br>     v.<br><br>NAVISTAR, INC.<br><br>                Defendant. | Civil Action No. 23-cv-12927<br><br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

## DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' DAMAGES EXPERT MICHAEL KAHAIAN

Pursuant to the Court's December 29, 2025 Order (ECF No. 86), Navistar, Inc. ("Navistar") hereby files its Motion to Exclude the Opinions of Plaintiffs' Damages Expert Michael Kahain and the incorporated Brief in Support.

Respectfully submitted,

Dated: January 6, 2026

By _/s/ Scott R. Murphy_
    Scott R. Murphy (P68015)
    Anthony C. Sallah (P84136)
    BARNES & THORNBURG LLP
    171 Monroe Ave. NW, Suite 1000
    Grand Rapids, MI 49503
    616-742-3938
    smurphy@btlaw.com
    asallah@btlaw.com

    *Attorneys for Defendant Navistar, Inc. n/k/a*
    *International Motors LLC*

# TABLE OF CONTENTS

Page

**STATEMENT OF ISSUE PRESENTED** ...................................................iii

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES** ..................... iv

**INTRODUCTION AND SUMMARY OF ARGUMENT** ..................................... 1

**BACKGROUND** ............................................................................................. 3

I.   THE PARTIES & PLAINTIFFS' CLAIMS ................................................. 3

II.  KAHAIAN'S OPINIONS AND ASSUMPTIONS ......................................... 5

     A.   Lost Resale Value ......................................................................... 5

     B.   Excessive Costs ............................................................................ 6

**LEGAL STANDARD** ..................................................................................... 7

**ARGUMENT** ................................................................................................. 8

I.   KAHAIAN'S OPINIONS SHOULD BE EXCLUDED ................................... 8

     A.   Kahaian's Delivery Date Assumption Is Contradicted By The Facts And Plaintiffs' Theory Of The Case. ................................. 9

     B.   Kahaian's Resale Date Assumption Has No Evidentiary Basis and Is Contradicted By The Facts. ....................................................... 11

         1.   *The Resale Date Assumption Has No Evidentiary Basis.* ........................ 11

         2.   *Evidence Directly Contradicts The Resale Date Assumption.* .................... 13

     C.   Kahaian's Resale Price Assumption Is Unreliable ..................................... 15

         1.   *The Actual Sales And Offer Prices For Plaintiffs' Used Trucks Undermines Kahaian's Resale Price Assumption.* ..................................... 16

         2.   *Kahaian Makes No Effort To Consider The Effect Of The Used Trucks' Specifications And Characteristics On Price.* .............................. 17

         3.   *Kahaian Does Not Control For The Price Effect Of A Bulk Sale Of Hundreds Of Used Trucks.* ................................................................. 18

D.   Kahaian Incredibly Calculates Damages For Used Trucks (1) Actually Resold And (2) Still Operated By Plaintiffs ................................. 19

**CONCLUSION** .................................................................................................... 20

CERTIFICATE OF CONFERENCE ............................................................... 22

CERTIFICATE OF SERVICE ........................................................................... 23

LOCAL RULE CERTIFICATION .................................................................... 24

**STATEMENT OF ISSUE PRESENTED**

Whether the Court should exclude the opinions of Mr. Michael Kahaian, the damages expert for Plaintiffs GLS Leasco, Inc. ("GLS") and Central Transport LLC ("Central"), under Federal Rule of Evidence 702 because Plaintiffs cannot demonstrate by a preponderance of the evidence that Kahaian's testimony is based on sufficient facts or data, derives from reliable principles and methods, or reflects a reliable application of the principles and methods to the facts of the case.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. Federal Rule of Evidence 702 ......................................................................iii, iv, 3, 7

2. *Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579, 589-590 (1993) ............................................................. iv, 7

3. *Rondigo, L.L.C. v. Casco Twp.*,
   537 F. Supp. 2d 891 (E.D. Mich. 2008) ............................................. iv, 2

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.,*
  Case No. 13-138044, 2015, WL 3441155 (E.D. Mich. May 28, 2015) ..................... 15

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579, 589-590 (1993) .................................................................................... iv, 7

*Ellipsis, Inc. v. The Color Works, Inc.,*
  428 F. Supp. 2d 752 (W.D. Tenn. 2006) ................................................................. 8, 13

*Endless River Techs., LLC v. TransUnion, LLC,*
  Case Nos. 23-3087/3144, 2025 WL 233659 (6th Cir. Jan. 17, 2025) ................ 10, 16

*Finkelman v. Nat'l Football League,*
  810 F.3d 187 (3d Cir. 2016) ........................................................................................ 18

*Jordan v. Menjoulet,*
  Case No. 13-13804, 2023 WL 2746795 (E.D. Mich. Mar. 31, 2023) ........................ 7

*Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.,*
  358 F. App'x 643 (6th Cir. 2009) ......................................................................... 7, 8, 13

*Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.,*
  724 F. Supp. 2d 740 (E.D. Mich. 2010) ..................................................................... 20

*Rondigo, L.L.C. v. Casco Twp.,*
  537 F. Supp. 2d 891 (E.D. Mich. 2008) .................................................................. iv, 2

*Rose v. Truck Centers, Inc.,*
  388 F. App'x. 528 (6th Cir. 2010) ............................................................................ 8, 9

*Universal Coin & Bullion, Ltd. v. Fed. Express Corp.,*
  No. 2:12-cv-2778-SHM-dkv, 2015 WL 12001264 (W.D. Tenn. June
  30, 2015) ...................................................................................................................... 13

*Williams v. Syphan,*
  Case No. 22-3222, 2023 WL 1305084 (6th Cir. Jan. 31, 2023) ................................. 8

**Other Authorities**

Federal Rule of Evidence 702 ............................................................... iii, iv, 3, 7

Local Rule 5.1(a) ....................................................................................... 24

Local Rule 7.1(d)(3) .................................................................................. 24

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case revolves around a letter agreement executed in May 2022 between Defendant Navistar, Inc. and Plaintiff GLS ("Letter Agreement"). Plaintiffs assert Navistar promised under the Letter Agreement to deliver model-year 2023 trucks ("New Trucks") on a specified timeframe and that Navistar failed to do so. Plaintiffs allege they consequently lost the opportunity to re-sell 630 of their older model-year 2018 trucks ("Used Trucks") in a favorable market. Plaintiffs engaged Michael Kahaian to quantify the value of that supposed lost opportunity. Although Navistar disputes that Plaintiffs can establish their claim, *see* ECF Nos. 36, 50, this motion focuses on Kahaian's unreliable and inadmissible damages calculations.

Kahaian's damages calculations are built on three flawed assumptions (collectively, the "Flawed Assumptions"): (1) the Letter Agreement obligated Navistar to deliver the New Trucks in April, May, and June 2022 (the "Delivery Date Assumption"); (2) Plaintiffs would have resold Used Trucks in a one-to-one ratio in the same month as New Trucks were delivered (the "Resale Date Assumption")[1]; and (3) Plaintiffs would have received the average of auction and retail sales prices for used trucks sold in individual transactions during those months when selling the Used Trucks (the "Resale Price Assumption").

---

[1] Kahaian assumes the parties contracted for the delivery of 330 Used Trucks in June but that GLS would have sold only 294 Used Trucks that same month, excluding stolen and scrapped Used Trucks. Kahaian Dep. at pp. 104:16–21, attached as <u>Exhibit A</u>.

1

Kahaian commits critical errors at each step of his analysis:

*First*, Kahaian's Delivery Date Assumption conflicts with the Letter Agreement (which contains no such promise), the facts (the Letter Agreement was not fully executed until May 18), and even Plaintiffs' case theory (Plaintiffs have now disavowed any delivery obligation in April or May).

*Second*, Kahaian's Resale Date Assumption has no basis in the record and is definitively contradicted by the facts: Plaintiffs sold only 30 Used Trucks by June 2022 despite receiving 114 New Trucks by then.

*Third*, Kahaian's Resale Price Assumption is significantly higher than the price Plaintiffs sold Used Trucks in May and June 2022. Kahaian also considered no factor or characteristic of Plaintiffs' Used Trucks that could cause them to sell for less than the "average" price on which he relies. And Kahaian's entire model depends on Plaintiffs flooding the market with a bulk transaction of six-hundred-plus trucks—but he does nothing to account for the effect such a transaction would have on price.

*Fourth*, Kahaian then compounds his errors by including damages for Used Trucks (1) sold during May and June 2022 and (2) that Plaintiffs chose not to sell at all and continue to operate to this day.

This is not the first time Kahaian has relied on unsupported assumptions—his opinions have been excluded for that exact reason before. In *Rondigo, L.L.C. v. Casco Twp.*, 537 F. Supp. 2d 891, 895 (E.D. Mich. 2008), the court found that "[s]everal of the factual foundations and resulting extrapolations in [Kahaian's] report are fundamentally

flawed or unsupported, and result in the unprincipled application of this otherwise reliable methodology to the facts of this case."

Here again, the facts directly contradict Kahaian's assumptions, and Kahaian's damages calculations should be excluded under Federal Rule of Evidence 702.

## BACKGROUND

## I.    THE PARTIES & PLAINTIFFS' CLAIMS

Navistar sells trucks and buses, as well as engines and other components for those vehicles.  *See* ECF No. 29, PageID.248 ¶ 11.  Plaintiffs are two corporate affiliates in the business of hauling freight, and GLS often buys trucks that it leases to Central for use in Central's business.  *Id.*

On May 18, 2022, GLS executed the Letter Agreement for the manufacture of 1,100 New Trucks.  Letter Agreement, attached as <u>Exhibit B</u>.  Navistar had prepared a draft of the agreement in February 2022, which stated, "based on available production at the time," Navistar could build new trucks on the following schedule:

| New Truck Delivery – based on available production at the time of this letter. | | | |
|---|---|---|---|
| **New Truck Build Month** | **RH New Truck Builds** | **LT New Truck Builds** | **Trades** |
| January | 42 | | 0 |
| February | 32 | | 0 |
| March | 342 | | 0 |
| April | 42 | 300 | 0 |
| May | 3 | 339 | 0 |
| June- Spillover month | | | 0 |
| **Total** | **461** | **639** | **0** |

*Id.*  The parties continued negotiating terms, and Navistar signed an updated draft of the letter agreement, which still featured the above schedule, on April 8.  GLS executed the Letter Agreement over a month later on May 18.

In bringing this suit, Plaintiffs originally alleged that the available build schedule in the Letter Agreement they entered on May 18 required Navistar to deliver New Trucks based on the Delivery Date Assumption (*i.e.*, that Navistar contracted to deliver New Trucks in April, May, and June 2022).  *Id.* ¶ 37.[2]  Plaintiffs have since abandoned that assumption, arguing instead that Navistar contracted to deliver the 630 New Trucks "by the end of June 2022."  ECF No. 55, PageID.1893 ¶ 43.

According to Plaintiffs, GLS planned to lease 630 of the New Trucks to Central for its trucking business, allegedly allowing GLS to immediately sell an equal number of Used Trucks.  ECF No. 29, PageID.252 ¶ 28.  Plaintiffs allege that Navistar's failure to deliver all New Trucks by the end of June prevented Plaintiffs from selling the Used Trucks "in a historically strong used tractor market" and caused them to incur maintenance and other expenses for continued use of the Used Trucks.  ECF No. 55, PageID.1894 ¶¶ 52–53.

---

[2] The Letter Agreement contemplated that Navistar would produce 1,100 model-year 2023 trucks, but only 630 of those trucks are at issue in this litigation.  ECF No. 29, PageID.253 ¶ 29.  There is no dispute that Navistar ultimately delivered every New Truck contemplated under the Letter Agreement.  *Id.* at PageID.256 ¶ 39.

## II.    KAHAIAN'S OPINIONS AND ASSUMPTIONS

Kahaian is an accountant who has never worked for a trucking company and has no experience assessing what influences buyers of used semi-trucks.  Am. Kahaian Rpt., ¶ 5, attached as Exhibit C; *see id.* Rept. Ex. B; Kahaian Dep. at p. 20:3–10, Ex. A. Nevertheless, he purports to quantify two measures of damages here, Lost Resale Value and Excessive Costs, both of which are based on some or all of the Flawed Assumptions and thus should be excluded.

### A.    Lost Resale Value

Kahaian's first measure of damages supposedly reflects Plaintiffs' inability to capitalize on the purported April – June 2022 "strong" resale market ("Lost Resale Value").  Am. Kahaian Rpt., ¶¶ 28–35, Ex. C.  Kahaian calculates Lost Resale Value by (1) first calculating what he purports to be the "Expected Resale Value" of the New Trucks and then (2) subtracting what he describes as the "Actual Resale Value" to arrive at a "Lost Resale Value" of around $24.8 million.

*Expected Resale Value.*  To calculate Expected Resale Value, Kahaian uses the Delivery Date and Resale Date Assumptions to arrive at an "expected month of sale." He then applies the Resale Price Assumption—that in any given month the Used Trucks would have been resold at a price equal to the monthly average of market price

and auction price for trucks with 400,000 miles—and multiplies the resulting price by the number of Used Trucks he assumed would have been sold each month.

Kahaian's chart illustrating his "Expected Resale Value" calculations is below:

| | Month | Number of Units | | Market Value RH 400K Miles [c] [d] | | Expected Resale Value Per Unit [e] | Expected Resale Value |
|---|---|---|---|---|---|---|---|
| | | Expected Delivery Month [a] | Expected Month of Sale [b] | Auction | Market | | |
| 1 | 11/30/2021 | - | - | $ 52,745 | $ 68,471 | $ 60,608 | $        - |
| 2 | 12/31/2021 | - | - | 56,032 | 71,900 | 63,966 | - |
| 3 | 1/31/2022 | - | - | 59,315 | 75,570 | 67,443 | - |
| 4 | 2/28/2022 | - | - | 61,723 | 78,709 | 70,216 | - |
| 5 | 3/31/2022 | - | - | 62,397 | 80,395 | 71,396 | - |
| 6 | 4/30/2022 | 75 | 75 | 61,057 | 80,094 | 70,575 | 5,293,147 |
| 7 | 5/31/2022 | 225 | 225 | 58,114 | 77,865 | 67,989 | 15,297,626 |
| 8 | 6/30/2022 | 330 | 294 | 54,340 | 74,321 | 64,330 | 18,913,127 |

Am. Kahaian Rpt., Rpt. Ex. D, Schedule 2, Ex. C; *see also id.* at ¶ 21.

*Actual Resale Value*.  To determine "Actual Resale Value," Kahaian adds together the total sales for any Used Trucks actually sold, offers for six unsold Used Trucks, and the **auction price** (not the average of the auction and market prices) as of February 2, 2025, for all other unsold Used Trucks.  Am. Kahaian Rpt., ¶¶ 36–39, Ex. C.

**B.    Excessive Costs**

Kahaian devotes just three paragraphs of his report to his second measure of damages: purported losses from supposed additional maintenance and fuel costs incurred because the Used Trucks were not immediately sold in April – June 2022 ("Excessive Costs").  Am. Kahaian Rpt., ¶¶ 41–43, Ex. C.  Kahaian incorporates his Delivery Date Assumption and Resale Date Assumption—that GLS would have sold the Used Trucks in the same month that the New Trucks were delivered—into his

Excessive Costs opinion, theorizing that maintenance and fuel costs incurred in operating the Used Trucks after June 2022 are "damages." *See id.* He estimates them to equal $2.17 million. *See id.*

## LEGAL STANDARD

Under Rule 702, Plaintiffs have the burden to prove that Kahaian's opinions a) "will help the trier of fact to understand the evidence or to determine a fact in issue"; b) are based on "sufficient facts or data"; c) are the "product of reliable principles and methods"; and d) "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. These are "critical questions" of "admissibility"—not merely "of weight." Fed. R. Evid. 702 advisory committee's note to 2023 amendments. Courts should thus exclude damages opinions that lack reliable or relevant bases, including those that rely on faulty assumptions. *See, e.g., Jordan v. Menjoulet*, Case No. 13–13804, 2023 WL 2746795, at *7 (E.D. Mich. Mar. 31, 2023) (Goldsmith, J.) ("Because [the expert] provides no explanation for this opinion, the Court will exclude this testimony.") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-590 (1993); *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 654 (6th Cir. 2009) (excluding expert opinion where expert did not reliably apply economic principles).

# ARGUMENT

## I.   KAHAIAN'S OPINIONS SHOULD BE EXCLUDED

Kahaian's opinions are littered with the types of problems courts regularly find render expert opinions unreliable and inadmissible: assumptions with either no basis in fact at all, or based solely on Plaintiffs' bare assertions. *See Williams v. Syphan*, Case No. 22-3222, 2023 WL 1305084, at *3 (6th Cir. Jan. 31, 2023) (every expert, for each opinion, must explain "how and why [he or she] reached a particular result"); *Multimatic, Inc.*, 358 F. App'x. at 654 ("Experts may not assume facts without some support for those assumptions[.]"); *Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp. 2d 752, 761 (W.D. Tenn. 2006) (expert's report unreliable where, among other things, he "predicted a growth [in the relevant market] without any specific basis for such an assumption"). Worse still, record evidence and Plaintiffs' own theory of their case directly contradict many of Kahaian's Flawed Assumptions. *See Rose v. Truck Centers, Inc.*, 388 F. App'x. 528, 535 (6th Cir. 2010) (an expert's conclusion is unreliable where it is based on an assumption contradicted by the evidence).

Because these Flawed Assumptions permeate both Kahaian's Lost Resale Value and Excessive Costs opinions, both must be excluded.

### A. Kahaian's Delivery Date Assumption Is Contradicted By The Facts And Plaintiffs' Theory Of The Case.

Kahaian's Delivery Date Assumption—that Navistar contracted to deliver New Trucks in April, May, and June 2022—does not square with (1) the facts of the case; (2) the text of the Letter Agreement; or (3) Plaintiffs' current theory of the case.

<u>First</u>, GLS did not sign the Letter Agreement until May 18, 2022. Letter Agreement at p. 4, Ex. B. It is impossible for it to impose an obligation to deliver New Trucks *in the past* in April and most of May given this timing.

<u>Second</u>, the Letter Agreement contains no promise to deliver trucks on any schedule. Instead, it outlines International's then-current *production* capacity and available **"build months**." Letter Agreement at p. 2, Ex. B (emphasis added). But Plaintiffs' own witnesses testified that a "build month" is different from a delivery date. Blain Dep. at 175:23–25, attached as <u>Exhibit D</u> (testifying the build month is distinct from the delivery month); Perkins Dep. at p. 105:9–22, attached as <u>Exhibit E</u> (estimating two to four weeks between the estimated build date and estimated delivery date); Lollis Dep. at pp. 271:15–272:17, attached as <u>Exhibit F</u> (confirming a distinction between the delivery and production build date). There is simply no contractual commitment to deliver vehicles in April, May, and June and, without that, Kahaian's calculation is untethered to the facts of the case. *Rose*, 388 F. App'x at 535 (excluding expert's opinion where photo evidence directly contradicted expert's assumption).

Kahaian tries to justify his opinion by assuming that delivery should occur 30 days after production.  Even if that were true, a truck built in April would then be delivered at the earliest in *May*, so the assumption does not justify Kahaian's methodology.  In any event, Kahaian testified that the only basis for the 30-day assumption was his client's say so.  Of course, that is insufficient.  *E.g.*, *Endless River Techs., LLC v. TransUnion, LLC*, Case Nos. 23-3087/3144, 2025 WL 233659, at *8 (6th Cir. Jan. 17, 2025) (finding damages calculation unreliable where expert simply relied on profit projections from client without independent verification).

Third, in light of the above facts, Plaintiffs no longer argue that the Letter Agreement required deliveries in April or May.  Instead, to survive summary judgment, Plaintiffs only now contend the Letter Agreement required delivery "by the end of June 2022."  ECF No. 55, PageID.1893 ¶ 43.  This directly contradicts Kahaian's assumption that the Letter Agreement promised delivery of 75 New Trucks in April and 225 in May.  Indeed, according to Plaintiffs' new theory, there should be no damages at all for the *114* trucks delivered by June 2022.  Kahaian's opinions, therefore, are not tethered to the facts of the case even as Plaintiffs present them.  *Endless River Techs., LLC*, 2025 WL 233659, at *8 (excluding expert's lost profit calculations as "not 'sufficiently tied' to the facts of th[e] case" where expert did not measure damages based on the appropriate date).

**B.    Kahaian's Resale Date Assumption Has No Evidentiary Basis and Is Contradicted By The Facts.**

Kahaian's Resale Date Assumption—that GLS would have sold the Used Trucks in the same month that the New Trucks were delivered—is also flawed: (1) it has no reliable evidentiary basis; and (2) record evidence flatly contradicts it.

1.    *The Resale Date Assumption Has No Evidentiary Basis.*

In supporting his Resale Date Assumption, Kahaian cites (1) information he claims reflects a strong resale market without trying to connect that to *GLS's* ability to sell the Used Trucks in April, May, and June 2022; and (2) uncorroborated discussions with GLS that he neither explains nor tests.  Am. Kahaian Rpt., ¶¶ 33–34, Ex. C. Neither basis comes close to supporting Kahaian's assumption.

<u>First</u>, Kahaian relies on information in the four footnotes (23–26) to paragraph 34 of his report, but none of it supports that GLS could have and would have sold every Used Truck in the same month the New Trucks were delivered.

The materials cited in footnotes 24 and 26 simply provide estimates for the mileage of Central MY2018 Trucks and purport to identify factors contributing to increased tractor prices generally.  Am. Kahaian Rpt., ¶ 34 n.24, 26, Ex. C.

In footnote 25, Kahaian cites a chart in a previous July 2021 Agreement between GLS and Navistar.  The July 2021 Agreement between Navistar, GLS, and Summit Truck Group (Navistar's dealer representative) stated that Navistar would supply 1,100 model-year 2023 trucks and that GLS would have the "option to turn in" 1,046 used

trucks.   ECF No. 29, PageID.250 ¶ 19; Am. Kahaian Rpt., ¶¶ 16–17, Ex. C.[3]   As Kahaian describes, the July 2021 Agreement shows an agreement to have "the same number of units delivered and *traded* within a given month." Am. Kahaian Rpt., ¶ 34 n.25, Ex. C (emphasis added).   But that Navistar agreed to take units on *trade* in the same month it would deliver them to Plaintiffs under an entirely different contract has no bearing on Plaintiffs' ability to make *bulk sales* in an open market over a year later.

Finally, in footnote 23, Kahaian points to one slide of a 26-page Navistar slide deck concerning "inventory aging" of Navistar trucks for twelve months ending in March 2022.  *See* (NAV000019861), at p. 13, attached as <u>Exhibit G</u>.  This slide relates to Navistar's sale of trucks, not sales by private fleets like Plaintiffs.  And, more to the point, the slide does not contain any information on the typical time between purchase and resale.  When asked to explain how the slide supported his opinion, Kahaian merely parroted back the slide's text and baldly stated it showed "the market . . . was a lot higher than it was [] previous."  Kahaian Dep., at pp. 147:7–148:6, 152:11–20, Ex. A. That does not support the assumption that GLS could have sold the Used Trucks one-to-one the same month New Trucks came in.

Even viewing the four footnotes together, the "information and data" Kahaian cherry-picks has no bearing on his assumption.  And courts in the Sixth Circuit have

---

[3] The Letter Agreement superseded the July 2021 Agreement.  *See* Letter Agreement, at 1, Ex. B.

excluded experts' similarly flawed calculations.  *See, e.g.*, *Universal Coin & Bullion, Ltd. v. Fed. Express Corp.*, No. 2:12-cv-2778-SHM-dkv, 2015 WL 12001264, at *7–8 (W.D. Tenn. June 30, 2015) (data reflecting increased demand for gold cannot support expert's conclusion regarding projected sales where plaintiff primarily sold rare coins).

Second, Kahaian also claims to rely on unrecorded "review or discussions with [GLS and Central]" to support his same-month sale assumption.  *See,* Kahaian Dep., at p. 126:8–12, Ex. A; Am. Kahaian Rpt. ¶ 33 & n.22, Ex. C.  But when pressed for details, he could not provide *any* reliable details about these supposed "discussions."  Kahaian instead was vague and non-specific, and simply stated he had "a number of conversations" but he "do[esn't] know which one," only that he "would have had that discussion."  *See* Kahaian Dep., at p. 143:12–16, Ex. A.  He also speculated that his assumption came from the testimony of Ms. Brianne Perkins, Central's Fleet Manager, *see id.* at 145:7-15, but Perkins said nothing about the timeline of Used Truck sales as compared to delivery, and Kahaian points to none.  *See* Perkins Dep., at pp. 91:15–92:4, Ex. E.  Nor did any other Plaintiff representative.

### 2.   *Evidence Directly Contradicts The Resale Date Assumption.*

Record evidence that Kahaian ignores also flatly contradicts his Resale Date Assumption.  An expert's opinion is unreliable if he fails to "analyze many other factors" than those considered "that would affect" his supposed analysis.  *Ellipsis, Inc.*, 428 F. Supp. 2d at 761; *see also Multimatic, Inc.*, 358 F. App'x at 654 (expert's "utterly

13

speculative" lost profits award properly excluded where expert failed to consider historical data or other contributing factors in his profits estimate).

Kahaian ignores that GLS's actual sales data definitively proves that Plaintiffs did **not** sell a Used Truck in the same month Navistar delivered each New Truck. For example:

- GLS received 114 New Trucks by June 2022 but sold only 30 Used Trucks by then;

- GLS received 74 New Trucks in July 2022 but sold none that month; and

- GLS received 90 New Trucks in August 2022 but sold only 21 Used Trucks that month.

Am. Kahaian Rpt., Ex. C; Ex. F, at pp. 1–4; Hosfield Rebuttal Rpt. at 19, attached as Exhibit H. Just as glaringly, despite all New Trucks having been delivered by May 2023, Plaintiffs still have not sold (and continue to use) 166 Used Trucks to this day, over two years later. Blain Dep., at p. 323:7–21, Ex. D (testifying GLS continues to operate unsold Used Trucks and they continue to generate revenue).

Kahaian nowhere accounts for these facts. Instead, he repeatedly testified that the "inventory numbers [of the delivered New Trucks] were not high enough" for GLS to sell its Used Trucks; that is, Kahaian claims that if all New Trucks were delivered in April, May, and June 2022, Plaintiffs could have made a single bulk sale of Used Trucks in those same months. *See, e.g.*, Kahaian Dep., at pp. 88:5–20, 138:20–21, Ex. A. But Kahaian could not identify any specific, reliable record evidence to back up his assertion

and admitted he was "not aware of conversations" with any potential buyers for all 630 Used Trucks.  *See id.* at p. 96:13–21.

In fact, GLS' President Mr. Blain testified that they "were advertising and started the advertising in *April* for more of *a retail, smaller lot perspective*."  Blain Dep., at 257:12–258:9 (further testifying a "smaller lot" "could be 20 trucks") (emphasis added), Ex. D.  Plaintiffs thus had made the decision to try to sell smaller, 20-truck lots before GLS even executed the Letter Agreement in May 2022.  And if GLS could only sell 30 Used Trucks in May and June despite the delivery of 114 New Trucks, there is simply no basis to assume GLS would have sold any additional Used Trucks had more New Trucks been delivered in April, May, or June.

Kahaian's Resale Date Assumption lacks any basis in and is contradicted by the record facts, rendering Kahaian's methodology unreliable and excludable.  *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13–13804, 2015 WL 3441155, at *6–8 (E.D. Mich. May 28, 2015) (excluding expert's opinion on the cause of overhead lighting fixtures failure because he did not verify his assumptions, disregarded contradictory testimony, and did not examine the light fixtures).

## C.     Kahaian's Resale Price Assumption Is Unreliable.

Kahaian's Resale Price Assumption—that Plaintiffs could have sold the Used Trucks at a price equal to the monthly average of market price and auction price for trucks with 400,000 miles—ignores: (1) the actual prices at which Plaintiffs sold Used Trucks; (2) the differences between Plaintiffs' Used Trucks and the "average" truck;

and (3) the fact that flooding the market with a "bulk order" of hundreds of additional trucks would inevitably lower the market price and the price Plaintiffs could receive for the Used Trucks.

1.     *The Actual Sales And Offer Prices For Plaintiffs' Used Trucks Undermines Kahaian's Resale Price Assumption.*

Kahaian assumes that Plaintiffs would have sold 75 Used Trucks in April for $70,575 each, 225 Used Trucks in May for $67,989 each, and 294 Used Trucks in June for $64,330 each.  Am. Kahaian Rpt., at Rpt. Ex. D, Schedule 2, Ex. C.  In making that assumption, Kahaian ignores that, for example, on May 9 and May 13 Plaintiffs sold five Used Trucks for only $60,000.  *Id.* at Rpt. Ex. E, Ex. C.  Again in June, State Line Truck Sales offered to pay $60,000 for 200 Used Trucks in an arm's length transaction. *See* Hanvey Dep. at 85:11–96:18, attached as <u>Exhibit I</u>; *see id.*, at Dep. Ex. D-70.

Kahaian tried to explain away his choice to ignore that critical data by asserting the monthly average price of "auction and market values for [2018 used trucks]" from Truck Paper is "empirical data" from an "independent source" and that he used a "consistent methodology" (*i.e.*, using a monthly average of auction and market values for 2018 used trucks) to arrive at his "Expected Resale Value."  Kahaian Dep., at pp. 159:17–160:14, Ex. A.  But the actual sales prices GLS received for Used Trucks are also "empirical" and apply to the exact type of Used Trucks Plaintiffs owned, maintained in the exact way Plaintiffs maintained them, and sold into the exact market Plaintiffs sell into.  *See Endless River Techs.*, 2025 WL 233659, at *8 (expert's profit

16

projection unreliable given the "stark gap between the profit projection's estimates and the Quote Exchange's real-world earnings").

        2.    *Kahaian Makes No Effort To Consider The Effect Of The Used Trucks' Specifications And Characteristics On Price.*

Kahaian's methodology also turns a blind eye to several factors that make market-wide averages unreliable. Kahaian admitted he did not consider factors that impact a buyer's willingness to buy a used semi-truck like the truck's condition, features, and specifications. *See* Kahaian Dep., at 177:19–178:13, Ex. A (admitting he did not account for these factors); Hosfield Rebuttal Rpt., at p. 20, Ex. H (citing Stinsa Dep. at 44) (noting Kahaian disregarded the many undesirable features of the Used Trucks, including "the A26 engine, manual transmission, steel wheels, yellow color, enormous package size for day cabs, and Central's poor reputation for maintenance").

Instead, Kahaian considered only two datapoints: the month of hypothetical sale and truck mileage. *See* Kahaian Dep., at pp. 173:18–175:12, 177:19–178:13, Ex. A. But rather than look at the actual odometer readings of the Used Trucks—which was available to him—he opted instead to assume each Used Truck had logged 400,000 miles. Am. Kahaian Rpt., ¶ 34, Ex. C. Recognizing this failure, Kahaian asserted that there was not a "material difference" in mileage of the Used Trucks, but failed to explain how or why. Kahaian Dep., at p. 162:1–23, Ex. A.

3.   *Kahaian Does Not Control For The Price Effect Of A Bulk Sale Of Hundreds Of Used Trucks.*

To mask other failings of his assumptions, Kahaian asserts Plaintiffs were not selling Used Trucks in a one-to-one ratio with deliveries of New Trucks by speculating that, if Navistar had delivered all the New Trucks in April, May, and June, Plaintiffs would have sold all 630 of their Used Trucks in a single bulk sale.

Fundamental laws of supply and demand show that Kahaian's assumptions are irreconcilable.  *See, e.g., Finkelman v. Nat'l Football League*, 810 F.3d 187, 200 (3d Cir. 2016) (noting that "an increase in supply leads to lower prices").  First, a large injection of supply into the market would lower the market price.  Second, a bulk sale would have lowered the price that Plaintiffs received for two reasons: the expected "volume" discount, and the fact that a wholesale buyer would buy for resale and need to buy at a price that would allow it to profit on its resale of individual trucks.  Thus, even if Kahaian's Resale Price Assumption was a reliable way to estimate the price of a single incremental Used Truck sale (it is not for the reasons in Section C, above), it is divorced from what Kahaian is purportedly calculating (the price in a massive bulk sale).[4]

---

[4] Kahaian's "bulk sale" theory also conflicts with his expectation that some sales would have happened in April, some in May, and some in June.  If Plaintiffs were going to sell the Used Trucks in a bulk sale, they could only have done so after all the New Trucks were delivered in June.

### D. Kahaian Incredibly Calculates Damages For Used Trucks (1) Actually Resold And (2) Still Operated By Plaintiffs

Kahaian makes two additional errors that undermine the reliability of his calculations for both Lost Resale Value and Excessive Costs damages.

<u>First</u>, Kahaian includes damages for about thirty Used Trucks that Plaintiffs *in fact sold in May and June 2022*. Kahaian Dep., at p. 79:11–21, Ex. A (testifying his damages calculation includes trucks sold in May and June because Plaintiffs "didn't achieve the full amount"). At the outset, sales of these trucks were—according to Plaintiffs' theory—enabled by Navistar's delivery of New Trucks in those months. And at summary judgment, Plaintiffs argued only that delivery was required by June. So there can be no liability for New Trucks delivered before then and thus no Lost Resale Value damages stemming from their delivery. In any event, for Used Trucks sold in May and June 2022, there is no basis to hypothesize about the price at which they "would" have sold for in that time. The actual sales price that Plaintiffs received is the sales price they "would" have received, and there can be no damages for such trucks.

<u>Second</u>, Kahaian also includes damages for the 166 remaining Used Trucks still in service and operated by Plaintiffs, in the form of both Lost Resale Value and Excessive Costs damages. But these are trucks that Plaintiffs simply chose to operate instead of resell, and thus could not give rise to "lost" resale damages. Although Kahaian suggests Plaintiffs would have sold these Used Trucks if Navistar had delivered all the New Trucks in April, May, and June 2022, this contention is again belied by the

fact Plaintiffs did receive 114 New Trucks by June 2022 but only resold 30 Used Trucks. And there is simply no credible evidence that Plaintiffs could not have resold any of those Used Trucks in the two years since Navistar completed delivery of them.  In any event, even if all of Kahaian's contentions were true, he fails to account for the lease revenue Plaintiffs have earned from these Used Trucks in the past three years (which they could not have earned if the Used Trucks had been resold).  *See, e.g., Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 756 (E.D. Mich. 2010) (landlord's damages award reduced by operational reserves and gross profits incurred by operating the premises despite tenant's breach).

## CONCLUSION

For all these reasons, Defendant respectfully requests that the Court exclude Kahaian from offering his opinions here.

Respectfully submitted,

Dated: January 6, 2026

By  /s/*Scott R. Murphy*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
BARNES & THORNBURG LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
616-742-3938
smurphy@btlaw.com
asallah@btlaw.com

and

Kevin M. Jakopchek (IL Bar #6317040)
Kathryn K. George (IL Bar #6306004)

LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: 312.876.7700
Fax: 312.993.9767
kevin.jakopchek@lw.com
katie.george@lw.com

*Attorneys for Defendant Navistar, Inc. n/k/a*
*International Motors LLC*

## CERTIFICATE OF CONFERENCE

I certify that on April 3, 2025 movants put Plaintiffs and the Court on alert that they intended to file this motion. On August 18, 2025 movants conferred by phone with counsel for Plaintiffs who stated that they are opposed to this motion.

/s/ *Scott R. Murphy*
Scott R. Murphy

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Scott R. Murphy
Scott R. Murphy

**LOCAL RULE CERTIFICATION**

I, Scott R. Murphy, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Scott R. Murphy*
Scott R. Murphy