# Exhibit A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


GLS LEASCO, INC. and

CENTRAL TRANSPORT LLC,

        Plaintiffs,

    v.                        Case No. 23-cv-12927

NAVISTAR, INC.,

        Defendant.

_____


DEPOSITION OF

MARK J. HOSFIELD

March 14, 2025

9:30 a.m. CST

Chicago, Illinois


Reported by:

Janice M. Kocek, CSR, CLR

Job No. 21634

The deposition of MARK J. HOSFIELD, called by the Plaintiffs for examination, reported stenographically by Janice M. Kocek, License No. 084-002871, Certified Shorthand Reporter, Certified LiveNote Reporter, and Notary Public for the State of Illinois, held at Barnes & Thornburg, One North Wacker Drive, Chicago, Illinois, commencing at the hour of 9:30 a.m. CST, on the 14th day of March, 2025.

* * *

would have happened if these used trucks would have gone in the market, whether the prices would have changed, whether the market -- you know, this is additional supply hitting the market, which generally reduces the prices.

Q. 600 trucks?

A. Well, they're also 600 trucks which were fairly undesirable from what I understand. So we're, you know, looking at average price there.

Q. All right. But in this construct you differ on what -- on when the expected delivery date would be? He uses 30. You use 45.

A. I've assumed a different delivery date, right.

Q. Okay. And the later delivery date pushes out the time they can sell them, which in this -- based on the TruckPaper means they sell them at a lower price, right?

A. Possibly. You don't know how these particular trucks would have been priced even in the early dates.

Q. You're both making assumptions, right?

A. I -- I assume -- I adopted his assumption of the I think average --

Q.   All right.

A.   -- of the auction and list price.  But just for purposes of the calculation.

Q.   All right.  The second thing you differ on is the time to sell the 2018 once the 2023 replacement truck is delivered, right?

A.   Yes.

Q.   And that's in small Roman ii of your report on page 17.

A.   It's just -- yeah, there's a discussion of that there.

Q.   And then you both rely on TruckPaper for expected resale value.  In other words, what -- what's the value at the time the truck would have been sold under your competing assumptions.

A.   What -- what TruckPaper value is, that's correct.  And had they -- had they actually sold the trucks at that time rather than hang on to them.

Q.   All right.  The next part of the construction then is once you had the expected resale value is to subtract what he calls the actual resale value or I think you refer to as the adjusted month of sale, right?

A.   The adjusted month of sale is the -- is

Q. It may be. But if that's the premise, you wouldn't have the trucks later, you wouldn't have the problem, right?

A. I don't know what that question is.

Q. If you sold them all in April, May, and June or March, April, and May, as the contract says, you wouldn't have the 2018s a year later and have to sell them at a much lower price, right?

A. Wait a minute. The contract doesn't say anybody is going to sell anything in March, April, and May. I don't think the contract says anything about when GLS is going to sell the trucks.

Q. Mr. Hosfield, the assumption in this case is that had these trucks been delivered when Kahaian says here in his report, they would have all been sold. That's his assumption. You may not agree with it, but that's the assumption.

A. No, that -- that's the assumption he has, yes.

Q. That's correct. And I understand you don't agree with it.

A. Right.

Q. We've -- we've -- we've been over that.

A. Right.