UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

          Plaintiffs,

v.

NAVISTAR, INC.,

          Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs GLS LeasCo and Central Transport's Combined Motions in Limine**

Plaintiffs GLS LeasCo, Inc. and Central Transport, LLC move this Court in limine for an order addressing various evidentiary questions expected to arise in the impending trial. In support of this motion, Plaintiffs state as follows:

1.      In this lawsuit, Plaintiffs seek damages for breach of contract (Count I) and for fraud (Count II). This motion seeks to address certain evidentiary and procedural issues pertaining to those claims, remaining before the start of trial.

2.      Undersigned Counsel and counsel for Navistar discussed and exchanged proposals for resolving these issues in a stipulated order but could not reach agreement, requiring the bringing of this motion.

3.      First, Plaintiffs seek to preclude introduction of any references, discussion or evidence related to Matty Moroun, the Ambassador Bridge, or the Gordie Howe Bridge.  Such evidence is plainly irrelevant to this lawsuit, and would serve only to prejudice Plaintiffs and enflame the jury.

4.      Second, Plaintiffs seek to exclude evidence of any profits or revenue Plaintiffs' generated from leasing or continuing to use the 2018 tractors to support a reduction in damages, because the UCC permits reductions in damages only for "expenses saved" not "lease income" or "economic benefit."

5.      Third, Plaintiffs seek a ruling that they may present reputation and goodwill evidence to support its claim for exemplary damages, as Michigan law squarely allows, and consistent with the character-evidence rules and hearsay rules.

6.      Fourth, Plaintiffs seek a ruling that they need not present evidence of attorney's fees to the jury because Michigan law commits the fee determination to the Court on post-judgment motion and federal procedural rules confirm that process.

7.      Fifth, Plaintiffs seek to prohibit any mention, discussion or presentation of evidence on Plaintiffs' subsequent negotiations and business dealings with Navistar, as such negotiations and dealings have no bearing on the preceding fraudulent act and contractual breach, are irrelevant, and would serve only to prejudice Plaitniffs.

8.      Sixth, and finally, Plaintiffs seek a ruling prohibiting mentioning Equipment Leasing Company, LLC's involvement in the contracts, consistent with the Court's ruling during summary-judgment proceedings that such involvement was not relevant or prohibitive of Plaintiffs' UCC claims.

WHEREFORE, Plaintiffs request that their motions in limine be granted.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, PLC

By: */s/Eric J. Pelton*
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Attorneys for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com

Dated:  April 28, 2026

– 3 –

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

        Plaintiffs,

v.

NAVISTAR, INC.,

        Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs GLS LeasCo and Central Transport's
Brief in Support of Combined Motions in Limine**

## STATEMENT OF ISSUES PRESENTED

I.  In this straightforward commercial dispute between companies engaged in the building and use of tractors for shipping goods, none of Matty Maroun (who has been deceased since before the events relevant to this lawsuit occurred), the Ambassador Bridge or the Gordie Howe Bridge have any legitimate relationship to the dispute, the claims or the defenses. Should the Court grant Plaintiffs' motion in limine to prohibit any references to Matty Maroun, the Ambassador Bridge, or the Gordie Howe Bridge?

II.  Michigan's adoption of Article 2 of the UCC permits the reduction of a seller's "damages for nondelivery" of goods only for "expenses saved in consequence of the seller's breach," not any separate income obtained or economic benefit received, and Michigan courts construe these statutes consistent with their plain text. Should the Court grant Plaintiffs' motion in limine to prohibit evidence or argument that Plaintiffs' damages should be reduced due to certain leasing income or economic benefits Plaintiffs received from continued possession of the MY2018 tractors?

III.  Michigan law allows businesses to recover exemplary damages after a finding of fraud through the presentation of evidence about the business's loss of goodwill or any damage to the company's reputation, and the Federal Rules of Evidence regarding character evidence and hearsay do not prohibit this sort of testimony. Should the Court grant Plaintiffs' motion in limine to permit Plaintiffs to present testimony regarding any loss of goodwill or reputation they incurred due to Navistar's fraud?

IV.  Federal Rule of Civil Procedure 54(d)(2)(A) generally provides that a claim for attorney's fees must be made by motion unless the relevant substantive law requires them to be proved at trial to the jury, and Michigan's substantive law allowing such fees for instances of fraud permits such a claim to be made by motion to the court. Should the Court grant Plaintiffs' motion in limine to commit the determination of Plaintiffs' attorney fees to a post-judgment motion?

V.  Following the events at issue in this case, Plaintiffs engaged in continued business dealings with Navistar, not related to Navistar's breach of contract or fraud presented in this lawsuit. Should the Court grant Plaintiffs' motion in limine to exclude any evidence or reference to such subsequent business dealings for lack of relevance and prejudicial effect?

VI.      Following Plaintiffs' contracting with Navistar to obtain new trucks, GLS assigned its purchase rights to Equipment Leasing Company, LLC, but nevertheless remained a signatory to the agreement. Under Article 2, a buyer—defined as "a person who buys or contracts to buy goods"—can seek consequential damages, and so, as this Court already determined, Plaintiffs can seek their damages and that assignment has no bearing on the parties' claims and defenses. Should the Court grant Plaintiffs' motion in limine to exclude any evidence or reference to Equipment Leasing Company, LLC's involvement in the contracts?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 54

Fed. R. Evid. 401

Fed. R. Evid. 402

Fed. R. Evid. 403

Fed. R. Evid. 404

Fed. R. Evid. 405

Fed. R. Evid. 803

Fed. R. Evid. 807

MCL 440.2713

*Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609 (2009)

## TABLE OF CONTENTS

Statement of Issues Presented ................................................................................ i

Controlling or Most Appropriate Authority............................................................. iii

Table of Authorities ................................................................................................v

Introduction ...........................................................................................................1

Argument................................................................................................................2

    I.  Any references to Matty Moroun, the Ambassador Bridge, or the Gordie Howe Bridge should be excluded as irrelevant and prejudicial. ......................2

    II.  The Court should exclude evidence and argument that continued use of the MY2018 tractors reduces damages.........................................................3

        A.   "Lease income" and "economic benefit" are not "expenses saved" under MCL 440.2713(1)..........................................................................4

        B.   Because the lease payments net to zero between the two Plaintiffs, Navistar's evidence and argument would only confuse the jury. ...........6

    III. Plaintiffs may present reputation and goodwill evidence in support of their exemplary-damages claim, as Michigan law squarely allows. ...............7

        A.   The character-evidence rules permit Plaintiffs' proofs. ..........................9

        B.   The hearsay rules permit Plaintiffs' proofs. ..........................................10

    IV. Plaintiffs need not present evidence of attorney's fees to the jury, because Michigan law commits the fee determination to the Court on post-judgment motion. ................................................................................11

    V.  The Court should exclude, under Rules 401 and 403, evidence of subsequent business dealings with Navistar.................................................13

    VI. The Court should also exclude any mention or argument regarding Equipment Leasing Company, LLC's involvement in the contracts. ............14

Conclusion .............................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975)...................................................................................12

*Brooks v. Rose*,
  191 Mich. App. 565 (1991)........................................................................12

*Cooper v. Auto Club Ins. Ass'n*,
  481 Mich. 399 (2008).................................................................................13

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).....................................................................................8

*Donaghey v. Moorpark Bellingham Homeowners Ass'n, Inc.*,
  No. 2:22-cv-08524, 2023 WL 9318509 (C.D. Cal. 2023)..................................9

*Equal Emp. Opportunity Comm'n v. St. Joseph's/Candler
  Health Sys., Inc.*,
  No. CV420-112, 2022 WL 17978822 (S.D. Ga. Dec. 28, 2022) ........................9

*Feighan v. Resource Systems Group Inc.*,
  No. CV 20-03759, 2023 WL 4623123 (D.D.C. July 19, 2023)...........................9

*Fertico Belgium S.A. v. Phosphate Chemicals Export Ass'n, Inc.*,
  70 N.Y.2d 76 (1987) .....................................................................................5

*In re Davol, Inc.*,
  510 F. Supp. 3d 538 (S.D. Ohio 2020) .........................................................9

*In re Testosterone Replacement Therapy Prod. Liab. Litig.
  Coordinated Pretrial Proc.*,
  No. 14 C 1748, 2017 WL 2313201 (N.D. Ill. May 29, 2017) .............................9

*In re: Tylenol (Acetaminophen) Mktg.*,
  No. 2436, 2016 WL 3125428 (E.D. Pa. June 3, 2016).......................................9

*Int'l Outdoor, Inc. v. SS Mitx, LLC*,
  349 Mich. App. 212 (2023)................................................................. 12, 13

*McPeak v. McPeak (On Remand)*,
  233 Mich. App. 483 (1999)...........................................................................8

*Oppenhuizen v. Wennersten*,
  2 Mich. App. 288 (1966)..............................................................................12

*Precision Master, Inc. v. Mold Masters Co.*,
  No. 268501, 2007 WL 2012807 (Mich. Ct. App. July 12, 2007).........................5

*Ray Haluch Gravel Co. v. Cent. Pension Fund*,
  571 U.S. 177 (2014).....................................................................................12

*Schrand v. Federal Pac. Elec. Co.*,
  851 F.2d 152 (6th Cir. 1988)...........................................................................3

*Unibar Maint. Servs., Inc. v. Saigh*,
  283 Mich. App. 609 (2009).......................................................................8, 11

*United States v. Lopez-Medina*,
  461 F.3d 724 (6th Cir. 2006)...........................................................................2

*United States v. Nero*,
  598 F. Supp. 3d 568 (E.D. Mich. 2022).........................................................10

*United States v. Piche*,
  981 F.2d 706 (4th Cir. 1992)...........................................................................9

*United States v. Ridling*,
  350 F. Supp. 90 (E.D. Mich. 1972)..................................................................7

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010).........................................................................14

*United States v. White*,
  846 F.3d 170 (6th Cir. 2017).........................................................................14

*Vanalstine v. Land O'Lakes Purina Feeds, LLC*,
  326 Mich. App. 641 (2018)..............................................................................5

*Veselenak v. Smith*,
  414 Mich. 567 (1982).....................................................................................7

*Wolfel v. Holbrook*,
  823 F.2d 970 (6th Cir. 1987)...........................................................................7

**Statutes & Rules**

1 U.S.C. § 1 ......................................................................................................9

Fed. R. Civ. P. 54 ..........................................................................................11

Fed. R. Evid. 401 ..................................................................................... *passim*

Fed. R. Evid. 402 ................................................................................. 2, 3, 6, 14

Fed. R. Evid. 403 ..................................................................................... 3, 14, 15

Fed. R. Evid. 404 ................................................................................. 8, 9, 10, 11

Fed. R. Evid. 405 ..................................................................................... 8, 10, 11

Fed. R. Evid. 803 ..................................................................................... 8, 10, 11

Fed. R. Evid. 807 ............................................................................................10

MCL 440.2713 ........................................................................................ 3, 4, 5

**Other Authorities**

Chris Cameron & Vjosa Isai, *Trump Threatens to Block Opening of New Bridge to Canada*, N.Y. Times (Feb. 9, 2026) ...................................................................2

**INTRODUCTION**

This is a breach-of-contract and fraud case between commercial parties, with commercial damages. The jury's task is direct: decide whether Navistar committed fraud to induce Plaintiffs to enter the 2022 Letter Agreement or, alternatively, what Navistar promised, whether it broke those promises, and how the breaches harmed Plaintiffs as relevant to Plaintiffs' breach-of-contract claim. The rulings sought herein keep the trial focused on those questions.

Each addresses a different distraction. The first keeps Matty Moroun and the Ambassador Bridge saga—neither of which has to do with commercial truck purchases—out of a trial about commercial truck purchases. The second excludes misleading evidence about inter-company lease payments from Central to GLS LeasCo, which net to zero and do not affect damages. The third confirms the admissibility of evidence of harm to Plaintiffs' industry reputation and goodwill, which Michigan law makes a recoverable element of exemplary damages. The fourth confirms that attorney's fees in a fraud case are decided by the Court on a post-judgment motion, sparing the jury an issue it will not decide. The fifth seeks to exclude irrelevant evidence of Plaintiffs' post-breach dealmaking with Navistar. And the sixth seeks to exclude any mention of Equipment Leasing Co.'s involvement in the contracts, which has no bearing on the claims or defenses in this case, as the Court already decided at the summary-judgment stage.

## ARGUMENT

**I.** **Any references to Matty Moroun, the Ambassador Bridge, or the Gordie Howe Bridge should be excluded as irrelevant and prejudicial.**

Manuel "Matty" Moroun—the former owner of GLS LeasCo, Central Transport, and many other companies—passed away in 2020, several years before the events at issue in this case began in 2021. His name nonetheless remains a fixture in the news. The Moroun family's ownership of the Ambassador Bridge and their opposition to the construction of the Gordie Howe Bridge have been widely reported, returning to national headlines as recently as last month.[1] But none of that has anything to do with whether Navistar defrauded Plaintiffs or whether it breached its obligation to timely deliver Plaintiffs' trucks. Navistar should not be permitted to put Mr. Moroun's name, the bridges, or the surrounding controversy to the jury.

Evidence is admissible only when it tends to show that a fact of consequence to the action is more or less probable than it would be without the evidence. Fed. R. Evid. 401, 402. The Sixth Circuit has been explicit: "guilt by association" evidence is irrelevant. *United States v. Lopez-Medina*, 461 F.3d 724, 741–42 (6th Cir. 2006). The Sixth Circuit has likewise overturned a jury verdict where the jury heard evidence of other actors and incidents that could not be "logically or reasonably tied"

---

[1] *See, e.g.*, Chris Cameron & Vjosa Isai, *Trump Threatens to Block Opening of New Bridge to Canada*, N.Y. Times (Feb. 9, 2026), at https://www.nytimes.com/2026/02/09/us/politics/trump-gordie-howe-bridge-canada.html.

to the issues in the case. *Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156–57 (6th Cir. 1988). Here, reference to the late Mr. Moroun, his family's ownership of the Ambassador Bridge, or the controversy over the Gordie Howe bridge is of no consequence to this action. It is inadmissible under Rules 401 and 402.

Rule 403 likewise precludes this evidence, as "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Mr. Moroun and the bridge controversy are matters on which a Michigan juror may have strong feelings. Those matters would not help the jury decide whether Navistar committed fraud or breached its contracts. Instead, the only reason Navistar would mention them would be to invite the jury to decide the case based on stigma, emotion, or politics—the very thing that Rule 403 is built to prevent.

## II.     The Court should exclude evidence and argument that continued use of the MY2018 tractors reduces damages.

Michigan's UCC allows a buyer's damages for breach to be reduced by one thing and one thing only: "expenses saved in consequence of the seller's breach." MCL 440.2713(1). Not collateral revenues. Not downstream gains. Not creative recharacterizations of what the buyer did with its old equipment while waiting for the seller to perform. Only expenses saved.

That statutory limit disposes of a damages argument Navistar intends to present at trial. GLS LeasCo's business is to purchase trucks and lease them to sister

– 3 –

companies like Central Transport. GLS LeasCo bought the Navistar tractors at issue here to replace its MY2018 tractors. But because Navistar did not deliver on time, GLS LeasCo kept leasing the MY2018 trucks to Central Transport during the delay, and ran some of the trucks even after replacements arrived. Navistar intends to use that fact against Plaintiffs, arguing that GLS LeasCo "economically benefitted" from Navistar's own breach through the "lease income" it earned on the older trucks. Ex. 1, Hosfield Supp. Report at 27–28.

The Court should exclude any testimony, cross-examination, or argument advancing that theory. It is irrelevant to damages under Michigan law. And even if it were not, the lease payments net to zero between the two Plaintiffs—meaningless arithmetic that would only confuse the jury on the governing standard.

### A. "Lease income" and "economic benefit" are not "expenses saved" under MCL 440.2713(1).

MCL 440.2713(1) draws a clean line: a buyer's damages for nondelivery or repudiation are "the difference between the market price at the time when the buyer learned of the breach and the contract price" and "incidental and consequential damages," but "less expenses saved in consequence of the seller's breach." Michigan courts enforce the UCC's textual limits by their plain terms. In *Precision Master, Inc. v. Mold Masters Co.*, the Michigan Court of Appeals—interpreting the identical language in another section of the UCC involving cover damages, *see* MCL 440.2712(2)—held that "expenses saved" was "clear and unambiguous" and

to be enforced as written. No. 268501, 2007 WL 2012807 (Mich. Ct. App. July 12, 2007). It then held that the language allows offset for expenses avoided by the buyer. *Id.*

The New York Court of Appeals, interpreting identical language in its own UCC,[2] is directly on point. *Fertico Belgium S.A. v. Phosphate Chemicals Export Ass'n, Inc.*, 70 N.Y.2d 76 (1987). There, after a late delivery forced the buyer to cover at a substantially higher price, it renegotiated a resale contract in exchange for additional compensation. *Id.* at 79–81. The Court held that this additional compensation was "not . . . an expense saved" under the UCC and had been improperly credited to the breaching party. *Id.* at 83. The Court held this was so because "saved expenses must be costs or expenditures which would be anticipated had there been no breach." *Id.* Thus, increased compensation from a downstream contract is not a cost or expenditure. *Id.* The same is true under MCL 440.2713(1), which has identical statutory language.

---

[2]Because Michigan adopted MCL 440.2713(1) from the Uniform Commercial Code, Michigan Courts "may gain guidance from decisions of other jurisdictions interpreting similar model provisions," *Vanalstine v. Land O'Lakes Purina Feeds, LLC,* 326 Mich. App. 641, 653 (2018).

Navistar's "lease income" theory cannot survive this authority.[3] Lease income is not an avoided expense. It is a revenue stream—the opposite of an expense. The same is true of the broader claim that Plaintiffs benefitted by keeping older trucks in service during Navistar's delay. That is not an expenditure the breach allowed Plaintiffs to avoid; it is the use of an asset, the cost of which was already sunk. And the underlying facts confirm what the legal rule already shows: Plaintiffs did not "need" the older trucks; Central's total mileage over the period barely increased. Instead, it ran them rather than sell into a collapsing used-truck market that would have resulted in roughly $15,000-per-truck losses per sale. Ex. 2, GLS 30(b)(6) Dep. Vol. II, at 322–23; Ex. 3, GLSN-0012939. However framed, Navistar's arguments are irrelevant to damages and should be excluded under Rules 401 and 402.

**B.    Because the lease payments net to zero between the two Plaintiffs, Navistar's evidence and argument would only confuse the jury.**

Setting aside the UCC's measure of damages, Navistar's argument here is meaningless on its own arithmetic and would only confuse the jury and waste time.

---

[3]Although both Mr. Hosfield's Rebuttal Expert Report and Supplemental Expert Report state only that Mr. Kahaian erred in failing to "account for the economic benefit that GLS realized in the form of lease income by deferring the sale of the sold and unsold MY2018 Tractors," and that "GLS was able to mitigate its claimed damages by generating profits from these lease agreements," Ex. 4, Hosfield Report at 27; Ex. 3, Hosfield Supp. Report at 27–28, the same reasoning would apply to any unraised claim that Plaintiffs damages should be reduced due to any profits obtained by way of increased freight they were able to ship due to having extra trucks, which argument Navistar brought up for the first time at the parties' meet and confer on the motions in limine.

– 6 –

Navistar posits that GLS LeasCo benefitted from receiving lease payments. It ignores the other half of the transaction: Central paid them. Exs. 5, 6, and 7. (GLSN-0002879; GLSN-0002896; GLSN-0002905).) GLS LeasCo's gain in each transaction is equivalent to Central's loss. They net to zero.

Zero dollars is not an offset. Evidence that, by its own arithmetic, cannot affect the damages calculation does not make any element of the case more or less probable. But despite its meaninglessness, Navistar intends to put that evidence before the jury with the imprimatur of an economics expert. That is what Rule 403 is intended to prevent. The Court should "prevent the use of [this] evidence that has marginal utility in the process of truth seeking," because "it is of such a nature so as to over-impress the jury" without having any real value. *Wolfel v. Holbrook*, 823 F.2d 970, 974 (6th Cir. 1987) (quoting *United States v. Ridling*, 350 F. Supp. 90, 95 (E.D. Mich. 1972)).

Ultimately, Navistar is asking the jury to credit it for the natural consequences of its own breach, on evidence barred by the UCC. The Court should not allow it.

III.   **Plaintiffs may present reputation and goodwill evidence in support of their exemplary-damages claim, as Michigan law squarely allows.**

Michigan recognizes that exemplary damages are available in fraud cases to compensate for intangible injuries. *Veselenak v. Smith*, 414 Mich. 567, 572–73 (1982). The Michigan Court of Appeals has held that companies can obtain exemplary damages for injuries "that cannot be measured or estimated in monetary

– 7 –

terms." *Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609, 631 (2009). This includes "a loss of good will," or "any damage to other types of company reputation amongst either employees or customers." *Id.* Further, it "is not essential to present direct evidence" of such injuries; it is enough that the injury is "natural and proximate in view of the nature of defendant's conduct." *Id.* (quoting *McPeak v. McPeak (On Remand)*, 233 Mich. App. 483, 490 (1999)).

Plaintiffs intend to prove their exemplary damages through general reputation and opinion testimony from employees including Kyle Blain and Brianne Perkins, who have first-hand knowledge of Plaintiffs' standing in the trucking industry— including their longstanding efforts to build and protect that reputation by providing drivers with new trucks. Plaintiffs will also offer specific instances reflecting how Navistar's acts harmed that standing. To streamline trial, Plaintiffs ask the Court to rule *in limine* on key aspects of this evidence, including its admissibility under both Rule 404 and 405's character-evidence rules, and the hearsay rules.

At the threshold, both sets of evidentiary rules use the word "person." *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character"); Fed. R. Evid. 405(a) (same); Fed. R. Evid. 803(21) ("reputation among a person's associates"). The Federal Rules of Evidence are legislatively enacted and so interpreted like statutes. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). And Congress has provided that, unless context shows otherwise, the words "person" and "whoever"

– 8 –

in any statute include corporations and other business entities. 1 U.S.C. § 1. Courts have thus regularly applied Rule 404 to corporations.[4] With that in mind, the relevant evidentiary rules permit this reputational testimony.

### A. The character-evidence rules permit Plaintiffs' proofs.

Rule 404(a)(1) bars character evidence offered to prove that a person "acted in accordance with the character or trait" on a particular occasion. Fed. R. Evid. 404(a)(1). Here, Plaintiffs intend to offer reputation evidence for the opposite purpose: to show that Navistar's misconduct caused Plaintiffs reputational harm. Navistar's misconduct prevented Plaintiffs from living up to the reputation they had established in the industry for quality and for putting drivers in newer, top-of-the-line trucks. That is why the evidence matters: not because Plaintiffs acted consistently with their reputation, but because Navistar's conduct caused reputational injury when Plaintiffs could not. *See, e.g.*, *United States v. Piche*, 981 F.2d 706, 713 (4th Cir. 1992) (holding that when "character is in issue in the strict sense, which occurs where a material fact that under the substantive law determines

---

[4]*Feighan v. Resource Systems Group Inc.*, No. CV 20-03759, 2023 WL 4623123, at *8–9 (D.D.C. July 19, 2023); *Donaghey v. Moorpark Bellingham Homeowners Ass'n, Inc.*, No. 2:22-cv-08524, 2023 WL 9318509, at *6 (C.D. Cal. 2023); *In re Davol, Inc.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020); *Equal Emp. Opportunity Comm'n v. St. Joseph's/Candler Health Sys., Inc.*, No. CV420-112, 2022 WL 17978822, at *5–6 (S.D. Ga. Dec. 28, 2022); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 2313201, at *2 (N.D. Ill. May 29, 2017); *In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016).

rights and liabilities of the parties, such as plaintiff's reputation for honesty in a defamation action," such evidence is admissible outside of Rule 404(a)(1) (citations omitted)).

When character evidence is admissible, Rule 405 governs how it may be introduced. Character may be proved through "testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). And character "may also be proved by specific instances of the person's conduct." Fed. R. Evid. 405(b).

### B.      The hearsay rules permit Plaintiffs' proofs.

Rule 803(21) expressly excludes from the hearsay rule statements of "reputation among a person's associates or in the community concerning the person's character." Fed. R. Evid. 803(21). For the textual reasons cited above, "person" includes Plaintiffs, and reputation evidence about Plaintiffs' standing in the trucking industry and among employees falls squarely within the exception.

Even if the Court read Rule 803(21) more narrowly to exclude corporations from the definition of "person," the residual exception of Rule 807 independently supports admission. *See* Fed. R. Evid. 807. That rule applies where evidence carries sufficient guarantees of trustworthiness and is more probative on the point than any other evidence reasonably available. *United States v. Nero*, 598 F. Supp. 3d 568, 570–71 (E.D. Mich. 2022). Here, reputation testimony about a corporation is no less

reliable than reputation testimony about a natural person. The Rules already recognize the reliability of community reputation in the analogous setting of natural persons. And there is no more probative source of corporate reputation and goodwill than testimony from the employees and industry participants who know it best.

In sum, Michigan law identifies loss of reputation and goodwill among employees and customers as recoverable exemplary damages. *Unibar*, 283 Mich. App. at 631. Testimony on those subjects goes to the heart of the claim. The Court should confirm that the testimony is admissible under Rules 404, 405, and 803.

**IV. Plaintiffs need not present evidence of attorney's fees to the jury, because Michigan law commits the fee determination to the Court on post-judgment motion.**

Michigan recognizes a common-law exception to the American Rule by allowing a fraud plaintiff to recover the attorney's fees the fraud forced it to incur. The amount of fees, however, is decided by the court on a post-judgment motion, not by the jury. Plaintiffs thus ask this Court for a ruling *in limine* that will avoid jury confusion and the unnecessary disclosure of attorney bills at trial.

Two procedural rules frame the relevant issue here. Rule 54 provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law *requires* those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A) (emphasis added). In a diversity case, that "substantive law" is state law. As the Supreme Court has held, in "an ordinary

diversity case where the state law does not run counter to a valid federal statute or rule of court," a "state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975). The same is true for a "judicially created rule" making attorney's fees available. *Id.* And the Supreme Court has separately confirmed that fee determinations are collateral to the merits—whether statutory or contractual—and thus properly decided by post-trial motion. *Ray Haluch Gravel Co. v. Cent. Pension Fund*, 571 U.S. 177, 184–88 (2014).

Here, Plaintiffs seek attorney's fees subject to Michigan's substantive, common-law exception allowing recovery of attorney's fees "where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct." *Brooks v. Rose*, 191 Mich. App. 565, 575 (1991) (citing *Oppenhuizen v. Wennersten*, 2 Mich. App. 288 (1966)). That includes fees incurred in prosecuting the very case in which the fee request is made. *Int'l Outdoor, Inc. v. SS Mitx, LLC*, 349 Mich. App. 212, 244 (2023) (confirming "that a trial court has authority to award attorney fees in an action in which the moving party incurred the fees as a result of another party's fraudulent or unlawful conduct," and rejecting argument that this was "limited . . . to fees incurred in prior litigation"), *lv. denied*, 515 Mich. 973

– 12 –

(2024);[5] *cf. Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 409 & n.4 (2008) (noting generally that a fraud plaintiff may recover for all "injuries resulting from [the defendant's] wrongful act," which "may include . . . reasonable attorney fees"). Indeed, in *International Outdoor*, the Court of Appeals specifically explained that Michigan law grants "*a trial court* [the] authority to award attorney fees in an action in which the moving party incurred the fees as a result of another party's fraudulent or unlawful conduct." 349 Mich. App. at 243 (emphasis added). For that reason, the Court in *International Outdoor* concluded that "the trial court necessarily abused its discretion when it denied [a defendant's] *motion* for attorney fees on the ground that there was no exception to the American Rule premised on fraud or unlawful conduct," and specifically "directed" the "*trial court*" to "reconsider [the] request for attorney fees." *Id.* at 244 (emphases added).

Here, the Court should rule that Plaintiffs can assert a post-judgment claim for attorney's fees by motion directed to the Court.

## V.     The Court should exclude, under Rules 401 and 403, evidence of subsequent business dealings with Navistar.

Plaintiffs move in limine under Federal Rules of Evidence 401–403 for an order precluding Navistar, its counsel, and all witnesses from mentioning, eliciting testimony about, or arguing that Plaintiffs' continued business dealings with

---

[5]State intermediate appellate precedent is especially persuasive where the state supreme court declines review. *Lukas v. McPeak*, 730 F.3d 635, 638 (6th Cir. 2013).

– 13 –

Navistar after the pertinent events alleged in the Complaint. Any such post-event dealings are not relevant to whether Navistar earlier made actionable misrepresentations or earlier failed to perform contractual obligations, and any minimal probative value is too attenuated to justify admission. *See* Fed. R. Evid. 401, 402; *United States v. White*, 846 F.3d 170, 178 (6th Cir. 2017); *United States v. Warshak*, 631 F.3d 266, 330–31 (6th Cir. 2010).

Furthermore, admission of this evidence would unfairly prejudice Plaintiffs and confuse the issues by inviting the jury to draw the legally improper inference that, because Plaintiffs continued some dealings with Defendants, no fraud or breach occurred or no injury resulted. *See* Fed. R. Evid. 403.

**VI.    The Court should also exclude any mention or argument regarding Equipment Leasing Company, LLC's involvement in the contracts.**

Finally, Plaintiffs seek an order precluding Navistar from mentioning Equipment Leasing Company, LLC ("ELC") or suggesting to the jury that ELC—not Plaintiffs—is the proper party in interest. The Court has already addressed Navistar's ELC theory in denying summary judgment—although GLS LeasCo assigned certain purchase rights to ELC and ELC paid for and took title to the trucks, the Court held that Navistar had not established that GLS LeasCo assigned away its claims or causes of action, and further recognized that GLS LeasCo allegedly remained the owner of the old trucks whose delayed resale caused the claimed damages. ECF No. 72, PageID.2968–70. Those facts make ELC, at most, part of a

– 14 –

collateral legal argument about assignment and standing, not a fact issue bearing on whether Navistar breached the 2022 Letter Agreement or the amount of Plaintiffs' damages.[6]

Any probative value from referencing ELC is therefore minimal and substantially outweighed by the risk of confusing the issues, misleading the jury, and inviting an improper mini-trial over corporate structure, invoicing, title paperwork, and legal ownership of claims. Rule 401 limits admissibility to evidence that makes a consequential fact more or less probable, and Rule 403 permits exclusion where the evidence risks unfair prejudice, confusion, misleading the jury, undue delay, or wasting time. Navistar should not be allowed to use ELC to imply that Plaintiffs suffered no loss or are not entitled to recover where the Court has already rejected that contention as a basis for judgment. Accordingly, the Court should bar Navistar and its witnesses from mentioning ELC, ELC's payment of invoices, or ELC's receipt of title before the jury absent prior leave of Court.

## CONCLUSION

The Court should grant Plaintiffs' motions in limine.

Respectfully submitted,

KIENBAUM HARDY

---

[6] Indeed, at most, Navistar can only claim that GLS LeasCo assigned to ELC the rights to purchase or take possession of the *2023 replacement trucks*, which has no bearing on the damages Plaintiffs maintain from the inability to sell the 2018 trucks because of Navistar's fraud and breach of contract. *See* ECF No. 72, PageID.2970.

– 15 –

VIVIANO PELTON & FORREST, PLC

By: */s/Eric J. Pelton*
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Attorneys for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com

Dated:  April 28, 2026

## LOCAL RULE CERTIFICATION

I, Eric J. Pelton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, PLC

By: /s/ Eric J. Pelton
      Eric J. Pelton (P40635)
      Thomas J. Davis (P78626)
Counsel for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com

Dated: April 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

/s/ Eric J. Pelton
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com