
EXHIBIT 4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

_____

GLS LEASCO, INC. and CENTRAL TRANSPORT LLC,

Plaintiffs,

v.

NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

_____

REBUTTAL EXPERT REPORT AND DISCLOSURE OF

MARK J. HOSFIELD

Submitted October 9, 2024

CONFIDENTIAL

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

**Table of Contents**

I. Introduction ........................................................................................................................2

II. Scope of Retention ............................................................................................................2

III. Information Relied Upon in Forming My Opinions.........................................................3

IV. Relevant Background ........................................................................................................5

V. Summary of Opinions ......................................................................................................11

VI. Basis and Reasoning........................................................................................................13

| | |
|---|---|
| Exhibit 1: | Curriculum Vitae of Mark J. Hosfield |
| Exhibit 2: | Index of Documents Relied Upon in Forming Opinions |
| Exhibit 3: | Adjustments to Mr. Kahaian's Lost Resale Value Damages |
| Exhibit 4: | Mr. Kahaian's Lost Resale Value Damages Attributed to Sale of MY2018 Tractors to Universal |

| | |
|---|---|
| Appendix A: | Summary of MY2018 Tractors |
| Appendix B: | Summary of MY2023 Tractors |
| Appendix C: | Kahaian TruckPaper Auction and Market Values by Month and Mileage |
| Appendix D: | Comparison of MY2023 Deliveries, MY2018 Deliveries, and TruckPaper Values |
| Appendix E: | Mileage of MY2018 Tractors as of March 2022 |
| Appendix F: | April 13, 2022 Production Schedule for the MY2023 Tractors |

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

## I.    Introduction

I am currently a managing director at Stout Risius Ross, LLC ("Stout").  I was previously a partner at Coopers & Lybrand, Arthur Andersen, KPMG LLP and, most recently, was a founding principal of Davis & Hosfield Consulting LLC.  Since 1987, I have focused on providing consulting and expert witness assistance to clients in commercial disputes.  Prior to that, I gained financial management and operational experience as both a Controller and Vice President of Finance of a corporation, as well as in the consulting practice at Coopers & Lybrand.  I am a certified public accountant ("CPA") and certified management accountant ("CMA").  I have also taught accounting classes and have lectured on finance and accounting topics.

I have performed a variety of economic, business, and financial analyses on behalf of clients in disputes, including breach of contract, unjust enrichment, lost sales, lost profits, incremental profits, manufacturing and marketing capacities, fixed and variable costs, business valuation, prejudgment interest, and presumed economic and non-economic loss.  I have been involved with the damages aspect of disputes involving claims of breach of contract, misappropriation of confidential information, tortious interference, fraud, breach of fiduciary duty, breach of duty of loyalty, defamation, and other types of business disputes.  I have testified as an expert witness on behalf of both Plaintiffs and Defendants at deposition and trial in both state and federal courts, as well as at arbitrations.

A complete description of my background and qualifications is set forth in my curriculum vitae and list of testimony, which is attached as Exhibit 1.

## II.    Scope of Retention

The above-referenced matter relates to a lawsuit filed by GLS Leasco, Inc. ("GLS") and Central Transport, LLC ("Central"), collectively "Plaintiffs," against Navistar, Inc. ("Navistar" or "Defendant").[1]

Specifically, the lawsuit involves breach of contract and fraud allegations relating to GLS's letter agreement with Navistar for the supply of International Tractors.[2]

Stout has been retained by Barnes & Thornburg LLP ("Counsel") on behalf of Defendant in the above-referenced matter to prepare analyses to assist the Court in considering the amount of damages that may be

---

[1] Second Amended Complaint, dated September 4, 2024, p. 1.

[2] Second Amended Complaint, dated September 4, 2024, pp. 4-5 and 11-13.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

recoverable by Plaintiffs should Defendant be found liable for the claims asserted against it.  I have also been asked to respond to the opinions and calculations contained in the Expert Report of Michael N. Kahaian, dated August 23, 2024 (the "Kahaian Report").

I offer no opinion relating to the liability elements in this matter.

### III.    Information Relied Upon in Forming My Opinions

My opinions are based upon information made available to me as of the date of this report.  I, and professionals working under my direction, have relied upon and examined documents produced by the parties along with publicly available information.  A listing of all documents relied upon is attached as Exhibit 2.

I have also reviewed the following depositions:

Navistar

- Olawale Akinosho, Truck Sales Manager at Navistar, dated August 20, 2024;
- Mark Belisle, Vice President of Dealer Sales, dated August 22, 2024;
- Guy Sean Carmichael, Vice President of Sales, SW region, dated August 21, 2024; and
- Tony Stinsa, Director of Logistics at Navistar, dated August 14, 2024.

Central

- Kyle Blain, 30(b)(6), Vice President of Maintenance at Central and President of GLS, dated September 10-11, 2024;
- Nathan Hanvey, Shop Manager at Central, dated September 19, 2024;
- Brianne Perkins, Fleet Manager at Central, dated September 18, 2024; and
- Nick Schmallenberg, Chief Financial Officer ("CFO") at Central, dated September 19, 2024.

Allegiance Trucks

- Justin Fink, Chief Executive Officer ("CEO") of Allegiance Trucks (formerly Chief Executive Officer of Summit Truck Group), dated July 31, 2024; and
- Jim Lollis, (Former Fleet Sales Manager at Allegiance Trucks), dated August 6, 2024.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

<u>Universal Logistics Holdings, Inc.</u>

- Jay Mason, Vice President of Maintenance at Universal, dated September 20, 2024

I have also held discussions with the following individuals:

- Josh Adams, Director of Pricing at Navistar; and
- Tony Stinsa, Director of Logistics at Navistar.

My opinions are based on my skills, knowledge, experience, education, and training, as well as information gathered by and/or provided to me as of the date of this report. It is usual and customary for experts to consider and/or rely upon sources of information such as those in Exhibit 2 in forming their opinions.

I understand that I may be asked to testify regarding my opinions contained herein as well as related matters, including those raised on cross examination; those necessary to address matters raised by other parties' witnesses who testify concerning damages issues; or those otherwise raised at or before trial by other parties' attorneys or the Court in relation to matters set forth in this report. I expect to further elaborate and expand on the content of my report as necessary to make my testimony understandable to the Court. To the extent helpful to explain, or to put in context, the subject matters discussed throughout my report, I also expect to provide further general explanations of the matters I discuss. In connection with any testimony, I may rely on materials referenced in this report and in the attachments and demonstrative exhibits to be prepared and identified before my testimony. Citations to material supporting my opinions is meant to be exemplary, not exhaustive. Thus, for example, where I cite a document to support an opinion or statement offered below, there may be additional documents I have reviewed that similarly support the opinion or statement, and I may rely on those additional documents if I am called to testify at trial or a hearing in this case.

I understand that discovery is ongoing and other new or supplemental information may become available prior to trial. To the extent any additional information is produced by either party, I will be prepared to incorporate any such additional information into my report if warranted, or otherwise to amend or supplement my report as appropriate.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

## IV.   Relevant Background

### A. Relevant Parties

#### 1. Central

"Central is a limited liability company organized under the laws of the State of Michigan, with the principal place of business located in Warren, Michigan."[3]  Central is a provider of less-than-truckload ("LTL") transportation services to customers in the U.S., including "Next Day, Regional, and Long Haul services."[4] Central operates over 200 facilities in the U.S.[5]  Central employs its own drivers; at present, Central has approximately 4,000 employee drivers.[6]  Central's parent company is LTL Holdings.[7]

#### 2. GLS

"GLS is a Michigan corporation with its registered office and principal place of business located at 12225 Stephens Road, Warren, Michigan."[8]  "GLS is in the business of purchasing, leasing, and selling commercial trucks, including leasing trucks to Central."[9]  GLS offers LTL shipments, full-truckload ("FTL") brokered and dedicated solutions, and parcel delivery services.[10]  GLS owns the model year 2018 tractors ("MY2018 Tractors") at issue in this case and leases those tractors to Central.[11]  GLS leases approximately 1,500 to

---

[3] Second Amended Complaint, dated September 24, 2024, p. 1.

[4] https://www.centraltransport.com/.  See page "about us" > "Who We Are"

[5] https://www.centraltransport.com/.  See page "about us" > "Who We Are"  See, also, Deposition of Nick Schmalenberg, dated September 19, 2024, p. 23.

[6] Deposition of Nick Schmalenberg, dated September 19, 2024, p. 23.

[7] Deposition of Nick Schmalenberg, dated September 19, 2024, pp. 29-30; Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 14.

[8] Second Amended Complaint, dated September 24, 2024, p. 1.

[9] Second Amended Complaint, dated September 24, 2024, p. 3.

[10] https://freight.gls-us.com/about-us-2/.

[11] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 17, 38, and 41; Deposition of Nick Schmalenberg, dated September 19, 2024, p. 25; Deposition of Brianne Perkins, dated September 18, 2024, p. 37.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

2,000 tractors to Central.[12]  GLS also leases tractors and other industrial equipment to other GLS-affiliated entities such as Hercules Material Holdings and Conlan Tire.[13]  GLS is owned by CenTra, Inc.[14]

GLS and Central are separate companies and maintain their own books and records but are affiliates and are under common control.[15]

### 3. Universal

Universal Logistics Holdings, Inc. ("Universal") is "a logistics holding company" that "owns and operates several different modes of transportation."[16, 17]  Central, GLS, and Universal are at least in part under common ownership.[18]

### 4. Navistar

"Navistar is a Delaware corporation registered and authorized to conduct business within the State of Michigan, with its principal place of business located in Lisle, Illinois."[19]  In September 2024, Navistar "announced its plan to rebrand and change its name to International Motors, LLC ('International')."[20] Navistar "build[s] International trucks and engines[,] IC Bus® school and commercial buses, as well as develop[s] Fleetrite aftermarket parts."[21]

---

[12] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 19.

[13] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 17-18.

[14] Deposition of Nick Schmalenberg, dated September 19, 2024, pp. 29-30; Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 17.

[15] Deposition of Nick Schmalenberg, dated September 19, 2024, pp. 29-30 and 38-40; Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 17.

[16] Deposition of Nick Schmalenberg, dated September 19, 2024, p. 34.

[17] The documents produced in this matter may refer to Universal as "UTS" or "LGSI."  LGSI Equipment of Indiana ("LGSI") is a division of Universal. (Deposition of Jay Mason, dated September 20, 2024, p. 5).

[18] Deposition of Brianne Perkins, dated September 18, 2024, p. 36; Deposition of Nick Schmalenberg, dated September 19, 2024, p. 29; Deposition of Jay Mason, dated September 20, 2024, pp. 19 and 33. (According to Mr. Mason, Central is a shareholder in Universal, and Central is owned by Matthew Moroun who is also the largest shareholder of Universal.)

[19] Answer to Amended Complaint, dated November 21, 2023, p. 1.

[20] https://www.prnewswire.com/news-releases/navistar-announces-rebrand-and-name-change-to-international-302259109.html. For the purposes of this report, I may use "Navistar" to refer to the entity now rebranded as "International."

[21] https://www.international.com/our-company.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

Navistar was founded in 1831, and currently has approximately 15,000 employees.[22]  Navistar primarily manufactures medium-duty, heavy-duty, and severe-duty trucks.[23]  Trucks are categorized into classes based on weight and are generally defined as vehicles weighing from 19,501 to 26,000 pounds (Class 6), 26,001 to 33,000 pounds (Class 7), and 33,001 or greater pounds (Class 8).[24]  In addition to selling trucks, buses, and parts, Navistar also offers loans and leases under its brand Navistar Financial.[25]  Navistar's manufacturing and production facilities are located in various cities in the U.S., Canada, and Mexico.[26]  Navistar also sells used trucks, which involves taking in trades from Navistar's customers who purchase new trucks, reconditioning them, and remarketing them within the used truck market.[27]

### B.  Overview of the Local Freight Trucking Industry

Businesses in the local freight trucking industry in the U.S. provide "general freight trucking services over short distances."[28]  Local general freight trucking companies handle a variety of goods and commodities, often within a metropolitan area that may cross state lines.[29]  Generally, trips within this industry are same-day return.[30]  Services within this industry primarily consist of intermodal transportation (30.8% of revenue), truckload transportation (28.6% of revenue),[31] dry-bulk transportation (15.2% of revenue),[32] and LTL transportation (15.0% of revenue).[33]  LTL refers to truck shipments between 100 and 10,000 pounds,[34] which is Central's predominant business.[35]  The industry is fragmented, with no business in the industry having

---

[22] https://www.international.com/our-company.

[23] https://www.international.com/products.

[24] https://afdc.energy.gov/data/10381.

[25] https://www.international.com/services/financing.

[26] https://www.international.com/our-company.

[27] Deposition of Tony Stinsa, dated August 14, 2024, pp. 16-17.

[28] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 5.

[29] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 5.

[30] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 5.

[31] Intermodal transportation refers to moving freight by two or more modes of transportation (e.g., trucks, railway, ships) and often use standardized intermodal containers that can be used along multiple modes of transportation. (IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, pp. 31-32)

[32] "Dry-bulk transportation primarily consists of commodities like coal, iron, grain and construction materials." (IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, pp. 31-32)

[33] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, pp. 31-32.

[34] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 5.

[35] https://www.centraltransport.com/.  See page "about us" > "Who We Are"

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

more than 10% market share.[36]  There are approximately 393,000 businesses that operate in this industry, these businesses employ approximately 649,000 employees.[37]

In the 5-year period from 2019-2024, local freight trucking companies benefited from favorable conditions for both revenue and profitability.[38]  Diesel prices "surged amid the pandemic's recovery, enabling sharp revenue growth as truckers imposed fuel surcharges."[39]  Demand for truckers rose as consumer spending and confidence boosted manufacturing activity.[40]  Revenue has "climbed for local freight truckers even through the macroeconomic volatility, illustrating their established and resilient position in the US economy."[41] Industry revenue has surged to an estimated $96.3 billion in 2024, representing a CAGR of 6.6% from 2019 through 2024.[42]  Industry profit is an estimated $6 billion in 2024, representing a CAGR of 5.6% from 2019 through 2024.[43]  Revenue for local freight truckers is "set to climb at a CAGR of 0.9% to an estimated $100.6 billion over the five years through 2029."[44]

The Market for Commercial Trucks During the Period 2021 Through 2023
The combination of a low inventory and strong freight market in the post-pandemic period caused a historical run-up in used-truck prices that was significantly above normal.[45]  Several supplier constraints that were holding up production for Navistar and other original equipment manufacturers ("OEMs"), which meant that not enough trucks were being produced to meet the demand, also contributed to the low inventory and high prices of used-trucks during the post-pandemic period.[46]  A report from Sandhills Global

---

[36] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 11.

[37] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 15.

[38] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 13.

[39] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 13.

[40] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 13.

[41] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 13.

[42] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, pp. 13 and 15.

[43] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, pp. 9 and 13.

[44] IBISWorld Industry Report: Local Freight Trucking in the US, July 2024, p. 13.

[45] Deposition of Tony Stinsa, dated August 14, 2024, p. 44; Stinsa Deposition Exhibit 95, p. 3 (NAV00014025); Deposition of Jim Lollis, dated August 6, 2024, p. 241.

[46] Deposition of Tony Stinsa, dated August 14, 2024, p. 100; Deposition of Jim Lollis, dated August 6, 2024, pp. 268-269, 276-278 and 282.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

("Sandhills")[47] shows the Equipment Value Index ("EVI") and Inventory Trend for used Class 8 Day Cab Trucks for the period 2015 through September 2024.[48] Based on the Sandhills report, the Asking EVI[49] of used Class 8 Day Cabs peaked at the beginning Q2 of 2022, at an asking price of around $48,000, and, in the same period, inventory bottomed out.[50] From the peak, the asking price of Day Cabs decreased in Q2 2022, and then stabilized through the end of 2023.[51]



---

[47] Sandhills Global is a provider of printed and online publications in the agriculture, transportation, and aviation industries. TruckPaper is one of Sandhills Global's many brands. (https://www.sandhills.com/about; https://www.sandhills.com/ourbrands)

[48] Sandhills Global Report on Day Cab Trucks, Class 8: U.S. Used Market, dated September 2024.

[49] According to Sandhills, the Equipment Value Index ("EVI") "provides a robust view of market trends based on multiple sales points—including auction, retail, trade-in, cash, and rental values, as well as asking data." "Asking data… includes pricing data from all listings on Sandhills websites, with each price corresponding to the dollar amount the dealer was 'asking' for the listing." (Sandhills Global Report on Day Cab Trucks, Class 8: U.S. Used Market, dated September 2024, p. 26)

[50] Sandhills Global Report on Day Cab Trucks, Class 8: U.S. Used Market, dated September 2024, p. 6.

[51] Sandhills Global Report on Day Cab Trucks, Class 8: U.S. Used Market, dated September 2024, p. 6.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

As shown in the graph below, the average percent of inventory sold each month between April 2022 and the end of 2024 was just over 20%.[52]  Therefore, it would take between 4 and 5 months for an average truck to be sold from the time it was put on the market.  A truck that was less desirable or in poor condition would likely remain on the market longer.  Mr. Kahaian has not allowed for the time required to sell a truck.



**Class 8: US Used Market**
% of Inventory Sold Last Month

### C. The April 2022 Letter Agreement

On April 8, 2022, Sean Carmichael of Navistar sent Kyle Blain, President of GLS, a letter agreement ("the April 2022 Letter Agreement") relating to GLS's purchase of 1,100 new 2023 International LT and RH tractors ("MY2023 Tractors").[53]  The April 2022 Letter Agreement indicated in part that "at the time of this letter Navistar can supply (1,100) new 2023 International LT/RH production slots from January 2022 thru June 2022."[54]

---

[52] Sandhills Global Report on Day Cab Trucks, Class 8: U.S. Used Market, dated September 2024, p. 7.

[53] Blain Deposition Exhibit D-31: Email from Sean Carmichael, dated April 8, 2022 with attached Letter Agreement between Navistar and GLS, dated April 8, 2022.  See also, Lollis Deposition Exhibit 36: Letter Agreement between Navistar and GLS, dated April 8, 2022, p. 1.

[54] Lollis Deposition Exhibit 36: Letter Agreement between Navistar and GLS, dated April 8, 2022, pp. 1-2.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

**New Truck Delivery – based on available production at the time of this letter.**

| New Truck Build Month | RH New Truck Builds | LT New Truck Builds | Trades |
|---|---|---|---|
| January | 42 | | 0 |
| February | 32 | | 0 |
| March | 342 | | 0 |
| April | 42 | 300 | 0 |
| May | 3 | 339 | 0 |
| June- Spillover month | | | 0 |
| Total | 461 | 639 | 0 |

The April 2022 Letter Agreement included a No Trade Agreement that waived GLS's option to trade-in the MY2018 Trucks for $57,000 per vehicle (also referred to as optional trade back or "OTB").[55] Navistar "agree[d] to pay Central $6,200,000 upon payment for the… 1,100 new units [of the MY2023 Tractors]" in the form of a $600,000 check payable to LGSI, a $4,000,000 check payable to Central Transport, and a "$1,600,000 Fleet Charge Credit applied to Central Transport's account."[56] The total payment of $6.2 million related to the no-trade credit for the MY2018 Tractors, reimbursement for an issue with QLS sensors, uptime reimbursement for a defect that caused certain trucks to be inoperable, and a telematics credit.[57] Mr. Blain testified that giving up the trade-in rights was "[p]robably the largest" component of the $6.2 million.[58] Mr. Mason testified that the $600,000 payment to LGSI was related to a reimbursement for rental expenses relating to the delay in receiving the first batch of MY2023 Tractors.[59]

## V. Summary of Opinions

I have been asked to respond to the opinions and calculations contained in Mr. Kahaian's expert report and to estimate the damages, if any, GLS and Central have incurred as a result of the alleged breach of contract. My opinions can be summarized as follows:

---

[55] Lollis Deposition Exhibit 36: Letter Agreement between Navistar and GLS, dated April 8, 2022, p. 3.

[56] Lollis Deposition Exhibit 36: Letter Agreement between Navistar and GLS, dated April 8, 2022, p. 3.

[57] Lollis Deposition Exhibit 36: Letter Agreement between Navistar and GLS, dated April 8, 2022, p. 3; Deposition of Tony Stinsa, dated August 14, 2024, pp. 118-120; Stinsa Deposition Exhibit D-94 (NAV00069561-NAV00069566 at NAV00069562); Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 90-91.

[58] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 145.

[59] Deposition of Jay Mason, dated September 20, 2024, pp. 142-143.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

- Mr. Kahaian's damages opinions do not consider the dynamics of the truck market around the time of the April 2022 Letter Agreement. The used truck market was temporarily inflated around the time of the April 2022 Letter Agreement due in large part to supplier constraints and the availability of parts. If Navistar and other OEMs had been able to fulfil truck orders, then the used truck market would not have been as high. GLS took a risk in waiving its rights to the trade-in values contained in the agreement. In return for waiving these rights and other concessions, GLS was paid $6.2M.

- Mr. Kahaian's damages calculation improperly assumes that GLS would have sold the MY2018 Tractors during the period April 2022 through June 2022. However, GLS did not sell the MY2018 Tractors in mid-2022, even though it had received significant shipments of the MY2023 Tractors by then. This is likely due to Plaintiffs' failure to effectively market and competitively price the MY2018 Tractors as well their undesirable features. I am not aware of any documentation that suggests Plaintiffs would have been able to sell the MY2018 Tractors at the inflated prices claimed by Mr. Kahaian, even if they had received the MY2023 Tractors in the period April 2022 through June 2022.

- Mr. Kahaian's damages calculations are unreliable because they rely on flawed and inappropriate assumptions that lack a sufficient basis and underlying support. Adjusting for the errors and improper assumptions used by Mr. Kahaian, GLS's Lost Resale Value damages are reduced from $24.9 million to no more than $5,447,296.[60] However, this $5,447,296 likely overstates GLS's Lost Resale Value damages because it assumes that Plaintiffs would have sold the MY2018 Tractors upon receiving the MY2023 Tractors, which they did not do. Further, excluding the 222 MY2018 Tractors sold to Universal reduces GLS's Lost Resale Value damages to $4,525,700.[61]

- Plaintiffs' damages would need to be reduced by the portion of the $6.2 million received under the April 2022 Letter Agreement related to the forfeiture of the OTB. Mr. Blain testified that giving up the trade-in rights was "[p]robably the largest" component of the $6.2 million.[62]

---

[60] Exhibit 3, Schedule 1.

[61] Exhibit 3, Schedule 1.

[62] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 145.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

## VI.    Basis and Reasoning

Mr. Kahaian estimates that Plaintiffs have incurred damages of $27,676,648, which is comprised of the following:[63]

| Category | Amount |
|---|---|
| 1  Lost Resale Value | $24,857,011 |
| 2  Out-of Pocket Repair & Maintenance Costs | 2,169,633 |
| 3  Incremental Fuel Costs | 650,005 |
| 4  **Total Economic Damages** | **$27,676,648** |

Mr. Kahaian's Lost Resale Value damages of $24,857,011 would be attributable to GLS because it is the owner of the MY2018 Tractors, whereas his Out-of-Pocket Repair & Maintenance Costs ($2,169,633) and Incremental Fuel Costs ($650,005) would be attributable to Central since it incurred those costs.[64]

### A.  Mr. Kahaian's Lost Resale Value damages

Mr. Kahaian's Lost Resale Value damages are based on the premise that "Plaintiffs sustain[ed] economic damages associated with selling the MY2018 Tractors at a lower price than it would have had Navistar met the delivery requirements of the [MY2023 Tractors]."[65]  Mr. Kahaian identifies 594 MY2018 Tractors that he assumes would have been sold at higher prices but-for the alleged breach (which he refers to as "Impacted Units").[66]  Mr. Kahaian assumes that the Impacted Units would have been sold during April 2022 through June 2022, which he refers to as the Expected Delivery Month.[67]  Mr. Kahaian calculates Lost Resale Value on the 594 Impacted Units as the difference between the Expected Resale Value and the Actual Resale

---

[63] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 13.

[64] See also, Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 38-39.

[65] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 7.

[66] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 10; See also, Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 244.  Mr. Kahaian excludes 18 scrapped and stolen tractors from his calculation of Impacted Units.

[67] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 11 and Exhibit D Schedule 2.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

Value.[68]  He defines Expected Resale Value as "the market value of the MY2018 tractors as of the Delivery Schedule," which he estimates total $39,703,623 for the Impacted Units.[69]  He defines Actual Resale Value as "the actual sales value achieved by the Plaintiffs" for the Impacted Units, which he estimates to be $14,846,612.[70]  For the reasons discussed below, the assumptions underlying Mr. Kahaian's calculations of Expected Resale Value and Actual Resale Value are flawed and lead to significantly inflated Lost Resale Value damages.

### 1. Mr. Kahaian's Calculation of Expected Resale Value

### i. Mr. Kahaian's "Expected Delivery Month" of the MY2023 Tractors

Mr. Kahaian's calculation of Expected Resale Value assumes that Plaintiffs anticipated the delivery of the MY2023 Tractors during April 2022, May 2022, and June 2022, as shown below:[71]

**Central's Expected Delivery Schedule**

| | Period | # Units |
|---|---|---|
| 1 | April 2022 | 75 |
| 2 | May 2022 | 225 |
| 3 | June 2022 | 330 |
| 4 | Total | 630 |

Mr. Kahaian determines the above delivery schedule based on discussions with Central's management and a February 13, 2022 email from Jim Lollis, Plaintiffs' dealer for the MY2023 Tractors, showing the production

---

[68] Expert Report of Michael N. Kahaian, dated August 23, 2024, pp. 10, 13 and Exhibit D Schedule 1.

[69] Expert Report of Michael N. Kahaian, dated August 23, 2024, pp. 10-11 and Exhibit D Schedule 2.

[70] Expert Report of Michael N. Kahaian, dated August 23, 2024, pp. 10-12 and Exhibit D Schedule 1.

[71] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 7.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

start of 75 MY2023 Tractors in April, 225 in May, 300 in June 2022, and 30 at a date to be determined, as shown below:[72]

| COMPANY | Order # | Qty | | STATUS | PRODUCTION STARTS |
|---|---|---|---|---|---|
| | | | **2/13/2022** | | |
| CENTRAL | 638393 | 75 | | OK | 3/31/2022 |
| CENTRAL | 638395 | 75 | | OK | 4/1/2022 |
| CENTRAL | 638396 | 75 | | OK | 4/22/2022 |
| CENTRAL | 638394 | 75 | | OK | 4/27/2022 |
| CENTRAL | 638399 | 75 | | OK | 5/25/2022 |
| CENTRAL | 638402 | 75 | | OK | 5/26/2022 |
| CENTRAL | 638403 | 75 | | OK | 5/27/2022 |
| CENTRAL | 638400 | 75 | | OK | 5/30/2022 |
| CENTRAL | 690728 | 30 | | TBD | TBD |
| | | 630 | 630 | | |

Mr. Kahaian's Expected Delivery Schedule assumes that the MY2023 Tractors would be delivered 30 days after the production start date.[73] Although Mr. Blain and Brianne Perkins, Fleet Manager at Central, testified that they usually expect delivery of a truck two to four weeks after the start of production,[74] Mr. Lollis testified that four to six weeks is the minimum delivery time.[75] According to Mr. Lollis, that meant for tractors with a production start date of April 1, 2022, there's a "good chance" those tractors would not start flowing to Central until the end of May 2022.[76] He further testified that delivery time is dependent on the

---

[72] Expert Report of Michael N. Kahaian, dated August 23, 2024, p . 7; Blain Deposition Exhibit D-19 (NAV00016007-NAV00016008); Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 33-34; Deposition of Brianne Perkins, dated September 18, 2024, p. 36.

[73] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 7 (footnote 3).

[74] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, pp. 26 and 120; Deposition of Brianne Perkins, dated September 18, 2024, pp. 90-92 and 106.

[75] Deposition of Jim Lollis, dated August 6, 2024, pp. 159 and 280-281.

[76] Deposition of Jim Lollis, dated August 6, 2024, p. 159.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

availability of parts and the distance traveled to deliver the trucks.[77, 78, 79]  Further, after a tractor leaves

Navistar's production facility, it is transferred to a post-production facility (PDI center) where the truck is

inspected and a Central decal and other parts are affixed to the truck.[80]

Thus, I have adjusted Mr. Kahaian's Expected Delivery Schedule to reflect a more reasonable (and still

conservative) assumption that delivery of the MY2023 Tractors would be expected 45 days (i.e., 6 weeks)

after start of production, which shifts his Expected Delivery Months to May 2022, June 2022, and July 2022,

as shown in table below:

| COMPANY | Order # | Qty | PRODUCTION STARTS | + 45 DAYS | Expected Delivery Month (Production Start +45 Days) | # Units |
|---------|---------|-----|-------------------|-----------|----------------------------------------------------|---------|
| CENTRAL | 638393 | 75 | 3/31/2022 | 45 | May-22 | 150 |
| CENTRAL | 638395 | 75 | 4/1/2022 | 45 | May-22 | |
| CENTRAL | 638396 | 75 | 4/22/2022 | 45 | June-22 | 150 |
| CENTRAL | 638394 | 75 | 4/27/2022 | 45 | June-22 | |
| CENTRAL | 638399 | 75 | 5/25/2022 | 45 | July-22 | 300 |
| CENTRAL | 638402 | 75 | 5/26/2022 | 45 | July-22 | |
| CENTRAL | 638403 | 75 | 5/27/2022 | 45 | July-22 | |
| CENTRAL | 638400 | 75 | 5/30/2022 | 45 | July-22 | |
| CENTRAL | 690728 | 30 | TBD | 45 | TBD | 30 |
| | | 630 | | | | 630 |

The Expected Delivery Month shown in the above table is based on the production start provided in the

February 13, 2022 email that Mr. Kahaian relies upon.  However, on April 13, 2022, five days after Mr.

Carmichael sent the April 2022 Letter Agreement to Mr. Blain, Ms. Perkins and Mr. Blain received an email

from Mr. Lollis showing revised estimated production dates for the MY2023 Tractors, with the earliest

---

[77] Deposition of Jim Lollis, dated August 6, 2024, p. 281.

[78] Mr. Lollis testified that the production environment during COVID was a fluid situation, with changing schedules, and production delays, due in large part to the availability of parts.  He testified that he had never seen production dates get pushed to this extent before.  (Deposition of Jim Lollis, dated August 6, 2024, pp. 268-269, 276-278, and 282).

[79] Ms. Perkins also testified that in her experience with OEMs, it is "very common" for a production schedule to fluctuate, and they can fluctuate tremendously, even under normal circumstances. (Deposition of Brianne Perkins, dated September 18, 2024, pp. 42 and 85)

[80] Deposition of Brianne Perkins, dated September 18, 2024, pp. 106-107.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

MY2023 Tractor expected to be placed into production on April 12, 2022 and the latest on July 1, 2022.[81] Mr. Blain did not sign the April 2022 Letter Agreement until May 18, 2022, after he was made aware of a revised production schedule on April 13, 2022. Further, by the time Mr. Blain signed the April 2022 Letter Agreement on May 18, 2022, Navistar had delivered only one MY2023 Tractor (delivered on May 18, 2022).[82] Therefore, it was evident to Mr. Blain as of the date he signed the April 2022 Letter Agreement that the production schedule had significantly shifted from the production schedule outlined in the February 13, 2022 email Mr. Kahaian relies on.[83] However, for purposes of responding to Mr. Kahaian's damages calculations, I have relied on the production schedule contained in the same February 13, 2022 email that Mr. Kahaian has relied on.

### ii. Mr. Kahaian's "Expected Month of Sale" for the MY2018 Tractors

Another assumption underlying Mr. Kahaian's calculated of Expected Resale Value is that Plaintiffs would have sold the MY2018 Tractors in the same month it expected to receive the MY2023 Tractors (i.e., April 2022 through June 2022). Mr. Kahaian does not provide any support for this assumption. Rather, it appears that he adopts this assumption from an analysis created by Mr. Blain and Nick Schmalenberg, who were both employees at Central.[84] Although GLS takes the position it owns the MY2018 Tractors, Central was responsible for the negotiation and execution of the sale of the MY2018 Tractors. Ms. Perkins testified that the turnaround time between taking a used truck out of service and prepping it for a new buyer varies, and it depends on a lot of factors such as the condition of the truck.[85] Mr. Blain testified that "there is a time period to get the… truck being replaced off the road… that can be two to four weeks itself."[86] I note that Mr. Stinsa, Director of Logistics at Navistar, testified that Navistar's target is 90 days to resell a used truck.[87]

---

[81] Deposition of Kyle Blain, 30(b)(6), dated September 10, 2024, p. 200; Blain Deposition Exhibit D-32. See also, Lollis Deposition Exhibit 73 showing the April 13, 2022 email with a production start date of April 12, 2022 and production end date of July 1, 2022.

[82] Appendix B.

[83] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 242; Deposition of Jim Lollis, dated August 6, 2024, p. 303. See also, Appendix B for delivery dates of the MY2023 Tractors.

[84] GLSN-0002047; Deposition of Nick Schmalenberg, dated September 19, 2024, pp. 108-109; Mr. Schmalenberg is unsure whether he or Mr. Blain prepared the document.

[85] Deposition of Brianne Perkins, dated September 18, 2024, p. 51.

[86] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 255.

[87] Deposition of Tony Stinsa, dated April 14, 2024, pp. 129-130.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

Furthermore, Jay Mason from Universal, who purchased several MY2018 Tractors from GLS, testified that Central experienced lag time in getting the MY2018 Tractors ready before they were delivered.[88]

As discussed above, I have adjusted Mr. Kahaian's Expected Delivery Schedule to assume that delivery of the MY2023 Tractors would occur 45 days after the indicated production start date. I then calculated the Expected Month of Sale for the MY2018 Tractors assuming that it would have taken Plaintiffs an additional 30, 60, and 90 days to sell the MY2018 Tractors after receiving the MY2023 Tractors:[89]

| Month | Kahaian MY2018 Unit Sales (Expected Delivery -15 Days) | MY2018 Unit Sales (Expected Delivery +30 Days) | MY2018 Unit Sales (Expected Delivery +60 Days) | MY2018 Unit Sales (Expected Delivery +90 Days) |
|---|---|---|---|---|
| April 2022 | 75 | - | - | - |
| May 2022 | 225 | - | - | - |
| June 2022 | 294 | 150 | - | - |
| July 2022 | - | 150 | 150 | - |
| August 2022 | - | 294 | 150 | 150 |
| September 2022 | - | - | 294 | 150 |
| October 2022 | - | - | - | 294 |
| November 2022 | - | - | - | - |
| | 594 | 594 | 594 | 594 |

However, even with these adjustments, it is not reasonable to assume that Plaintiffs would have been able to sell the MY2018 Tractors during the period June 2022 through October 2022, even if all of the MY2023 Tractors had been delivered in the period May 2022 through July 2022. As shown in the graph below, Plaintiffs received a significant number of MY2023 Tractors by June 2022 and July 2022, but they actually sold very few MY2018 Tractors in those months and the months that followed:[90]

---

[88] Deposition of Jay Mason, dated September 20, 2024, p. 100.

[89] Expert Report of Michael N. Kahaian, dated August 23, 2024, Exhibit D, Schedule 2.

[90] Appendix D, Schedule 1.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.



For example, Plaintiffs received a cumulative total of 114 MY2023 Tractors through June 2022 and 188 through July 2022, yet they only sold a cumulative total of 20 MY2018 Tractors by the end of July 2022. Those 20 MY2018 Tractors were sold to Brien Bell James Group in May 2022 and June 2022.[91] The next sale of MY2018 Tractors occurred in August 2022 to Universal, a company that shares some common ownership with Plaintiffs.[92] In fact, between August 2022 and mid-May 2023, virtually all sales of MY2018 Tractors were to Universal (i.e., of 222 MY2018 Tractors sold in total, only 3 MY2018 Tractors were sold to non-affiliated buyers).[93]

Notably, Plaintiffs were able to sell all 10 of their model year 2018 LT (line-haul) tractors to Vulcan Truck Sales in May 2022 and June 2022 for prices ranging from $60,000 to $75,000.[94] LT tractors are used for moving freight across long distances, are optimized for efficiency and comfort, and have a sleeper cab.[95] The MY2018 Tractors at issue in this case are RH (regional-haul) tractors, which are used for shorter, regional, hauls, and have a day cab.[96] I also understand from Josh Adams, Director of Pricing at Navistar, that day

---

[91] Appendix A, Schedule 1.

[92] Mr. Schamlenberg testified that the sales to Universal are typically at an arms-length market value. (Deposition of Nick Schmalenberg, dated September 19, 2024, p. 135).

[93] Appendix A, Schedule 1; Universal is also referenced on the invoices as "LSGI." (Deposition of Brianne Perkins, dated September 18, 2024, p. 60)

[94] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 314; Appendix A, Schedule 2.

[95] Discussion with Josh Adams.

[96] Discussion with Josh Adams.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

cabs are the least resalable truck.[97]  Several other undesirable features of the MY2018 Tractors contributed to Central's lack of success in selling them.  Mr. Stinsa identified several factors that warranted the MY2018 Tractors selling at a discount, including the A26 engine, manual transmission, steel wheels, yellow color, enormous package size for day cabs, and Central's poor reputation for maintenance.[98]  Ms. Perkins testified that "[a] lot of time, the biggest killer was the [A26] engine."[99]  Mr. Blain testified that the manual transmission of the 2018 tractors "would have made the sales more challenging", and that it could have also impacted the price.[100]  Mr. Blain also testified that selling the RH models was difficult due to "a lot of unfamiliarity with the model."[101]  When Plaintiffs attempted to sell the MY2018 Tractors at prices "comparable to what [was] being advertised for other like units," Plaintiffs needed to reduce the purchase price to account for the variance in features, including a $3,000 deduction for aluminum wheels (vs. steel wheels), $3,000 deduction for color, $4,000 deduction for horse power (410 vs. 450), and a $4,000 discount to retailers.[102]  A larger trade package typically takes longer to sell, which may also have contributed to Plaintiffs' inability to sell the MY2018 Tractors.[103]

Mr. Blain testified that while he began starting negotiations with potential buyers of the MY2018 Tractors in February 2022 and March 2022, including for the sale of 200 units to All Truck, those discussions fell apart because he couldn't give them a solid date for when the MY2018 Tractors would be available.[104]  On the other hand, Ms. Perkins testified that the biggest drawback was the A26 engine, as cited above.  Mr. Blain doesn't recall any other potential large sales (50 or more units).[105]  He also testified that Plaintiffs started

---

[97] See also, Deposition of Tony Stinsa, dated April 14, 2024, p. 127. ("90% of what's sold in the secondary market is sleepers.")

[98] Stinsa Deposition Exhibit D-105.

[99] Deposition of Brianne Perkins, dated September 18, 2024, pp. 43-44.  See also, Email re: 600+ 2018 International RH Day Cabs, starting at $68,500, dated April 11, 2022 (NAV00085345-NAV00085351 at NAV00085345).

[100] Deposition of Kyle Blain, dated September 11, 2024, p. 17.  See also, Email re: 600+ 2018 International RH Day Cabs, starting at $68,500, dated April 11, 2022 (NAV00085345-NAV00085351 at NAV00085345).

[101] Deposition of Kyle Blain, dated September 11, 2024, p. 15.

[102] Email re: MTM – 2018 International Daycab Sales, dated May 15, 2023 (GLSN-0001902).  See also, Email re: 600+ 2018 International RH Day Cabs, starting at $68,500, dated April 11, 2022 (NAV00085345-NAV00085351 at NAV00085345).

[103] Deposition of Tony Stinsa, dated April 14, 2024, p. 136; Email re: 600+ 2018 International RH Day Cabs, starting at $68,500, dated April 11, 2022 (NAV00085345-NAV00085351 at NAV00085345).

[104] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, pp. 254-255.

[105] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 259.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

advertising the MY2018 Tractors in April 2022 to retail customers who would be interested in smaller lots.[106] Mr. Schmalenberg testified that "you could coordinate a sale before or after it's available. If it's coming online, coming for sale soon."[107] However, I have seen little documentation suggesting that GLS or Central had encountered interest from potential buyers of the MY2018 Tractors prior to delivery of the MY2023 Tractors. Indeed, as discussed above, beside the sale of 20 units to the Brien Bell James Group, there were no other sales in 2022 of MY2018 Tractors to a non-affiliated buyer. Ms. Perkins testified regarding the MY2018 Tractors that "in the beginning it was relatively easy. There was such a great need and desperation in the market; people were kind of willing to pay anything; they didn't care about any condition."[108] However, her assertion that selling the MY2018 Tractors "was relatively easy" is contradicted by the fact that Plaintiffs were only able to sell 20 units to a non-affiliated buyer in 2022.

To the extent that there were interested buyers for the MY2018 Tractors in 2022 and early 2023, Plaintiffs' inability to sell them was likely due to their own failure to properly market and price the tractors. Ms. Perkins testified that she was in charge of selling the MY2018 Tractors, but she had no prior experience selling used trucks, and she was not provided any training for that role.[109] On or around June 2, 2022, Plaintiffs rejected an offer to sell 200 MY2018 Tractors to Stateline Truck for around $55,000 per unit, even though Stateline was willing to receive delivery of the tractors as late as September 30, 2022.[110] This price is significantly lower than Mr. Kahaian's assumption of an Expected Resale Value of $68,371 per unit in May 2022.[111] Plaintiffs were asking for $63,500 per unit and were unwilling to meet Stateline's offer.[112, 113] Furthermore, Plaintiffs' attempts to sell the MY2018 Tractors in 2022 were limited to private buyers, and

---

[106] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 257. See also, GLSN-0001111-GLSN-0001123; GLSN-0001137-GLSN-0001143.

[107] Deposition of Nick Schmalenberg, dated September 19, 2024, pp. 125.

[108] Deposition of Brianne Perkins, dated September 18, 2024, pp. 43-44.

[109] Deposition of Brianne Perkins, dated September 18, 2024, pp. 53 and 76.

[110] Email re: Offer on 2018 International RH Day Cabs, dated June 3, 2022 (GLSN-0001530-GLSN-0001531); Deposition of Joe Hanvey, dated September 19, 2024, pp. 85-94.

[111] Expert Report of Michael N. Kahaian, dated August 23, 2024, Exhibit D Schedule 2.

[112] Email re: Offer on 2018 International RH Day Cabs, dated June 3, 2022 (GLSN-0001530-GLSN-0001531).

[113] In June 2022, the auction price for the MY2018 Tractors with 400,000 miles was $50,480, the market value was $79,435, and the average of the auction and market values was $64,958 (see Appendix C). Stateline anticipated the values would continue to fall through the September delivery date and couldn't justifying paying a price in the mid-$50,000 range.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

they did not begin selling the tractors through auction sites such as Ritchie Brothers until early/mid-2023,[114] with Mr. Blain testifying that "we didn't realize how much the market had dropped. And we were trying to sell them to private owners. Because as you can see, the fees and the commissions are extensive…we were trying to avoid those additional fees…[so] we were trying to sell them in other avenues… or find some other good use for them."[115, 116]

I am also aware of other documents and testimony that suggest Plaintiffs would not have been able to sell the MY2018 Tractors in the mid-2022 timeframe. Mr. Mason recalls that he and Mr. Blain began discussing the sale of the MY2018 Tractors to Universal around May 2022,[117] but it wasn't until August 2022 that Central was able to provide the tractors to Universal, in part because Central needed to complete inspections and prepare the MY2018 Tractors for sale before they could be shipped.[118]

### iii.    Mr. Kahaian's Calculation of Expected Resale Value

Mr. Kahaian estimates the price that the Impacted Units could have sold for (the "Expected Resale Value") based on third-party data from TruckPaper, a commercial truck listing website and industry database.[119] Specifically, Mr. Kahaian assumes that the 594 Impacted Units could have been sold at the average of market and auction values.[120] Based on the mileage data produced by GLS, Mr. Kahaian determines the average mileage of Central's MY2018 Tractors was "approximately 400,000 miles per unit."[121] He multiplies the number of tractors sold in April 2022, May 2022, and June 2022 by the average of auction and market prices for MY2018 Tractors with 400,000 miles.[122]

As discussed above, the majority, 222 of the 296 MY2018 Tractors, were sold to Universal. Mr. Mason testified that Universal had a need for tractors in late 2022, and he spoke with Mr. Blain about purchasing the

---

[114] Appendix A, Schedule 1.

[115] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, pp. 311-313; Blain Deposition Exhibit D-50 (GLSN-0002628-GLSN-0002616 at GLSN-0002671-GLSN-0002716).

[116] According to Mr. Blain, the commissions through Ritchie Brothers was 10% to 25% in addition to $500 in fees. (Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 313).

[117] Deposition of Jay Mason, dated September 20, 2024, pp. 97-98, 103, and 115.

[118] Deposition of Jay Mason, dated September 20, 2024, pp. 99-100 and 108-109.

[119] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 11 and Exhibit G; https://www.truckpaper.com/.

[120] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 11 and Exhibit D, Schedule 2.

[121] Expert Report of Michael N. Kahaian, dated August 23, 2024, Exhibit D Schedule 2.

[122] Expert Report of Michael N. Kahaian, dated August 23, 2024, Exhibit D Schedule 2.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

MY2018 Tractors.[123] Mr. Mason testified that the price was determined based on negotiations with Mr. Blain in mid-2022, and Mr. Mason had looked at several different online publications and online auctions to evaluate what a reasonable market price was at the time.[124, 125] Mr. Mason recalls that he and Mr. Blain negotiated the price of these sales in May 2022, which was at least several months before the bill of sale date.[126] This implies that the price that Universal actually paid for the MY2018 Tractors (i.e., the invoiced amount) is a more reliable estimate of the Expected Resale Value in the period April 2022 through June 2022, in which case there would be no damages associated with the 222 units sold to Universal.[127]

I also note that the sale price (i.e., invoice price) for the MY2018 Tractors sold to Universal decreased over time, from a high of $55,000 (in August 2022 through October 2022) to a low of $36,900 (in May 2023), but this decrease was not due to the change in market prices from mid-2022 to mid-2023 because the prices were negotiated in May 2022, as discussed above. Regarding the lower prices on the later sales to Universal, Mr. Mason testified that the invoiced "price came down, a lot of it relating to condition" and that Universal "had gotten some of the better units on the front end of the sale... on the trucks [it] had paid the higher price for."[128, 129] Thus, the MY2018 Tractors sold later appear to have been in worse condition than the earlier sales. To the extent that the 292 unsold MY2018 Tractors were similarly in worse condition as of mid-2022, then it is not reasonable to assume, as Mr. Kahaian has, that they could have been sold for the average of the auction and market value in mid-2022.[130]

---

[123] Deposition of Jay Mason, dated September 20, 2024, pp. 77-78.

[124] Deposition of Jay Mason, dated September 20, 2024, pp. 83-84.

[125] Mr. Mason testified that when determining a market price for the MY2018 Tractors, "[m]ileage is a large factor, but availability was a major, as well." (Deposition of Jay Mason, dated September 20, 2024, p. 87)

[126] Deposition of Jay Mason, dated September 20, 2024, pp. 97-98, 103, 107, and 115.

[127] Mr. Kahaian's Lost Resale Value damages calculation attributes $4,502,154 to the 222 MY2018 Tractors sold to Universal. (See Exhibit 4)

[128] Deposition of Jay Mason, dated September 20, 2024, pp. 115-117.

[129] Several factors go into pricing a used truck such as the mileage and condition. (See, for example, Deposition of Justin Fink, July 31, 2024, p. 200 and Deposition of Jay Mason, dated September 20, 2024, p. 87)

[130] Even if the 292 unsold MY2018 Tractors had not been in worse condition as of mid-2022, any subsequent deterioration of their condition and value can be attributed to Plaintiffs decision to hold onto and continue using the MY2018 Tractors long after receiving the MY2023 Tractors.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

### 2. Calculation of Actual Resale Value

Mr. Kahaian calculates the Actual Resale Value for the Impacted Units to be $14,846,612 by adding together the price for which Plaintiffs sold 296 MY2018 Tractors, the offer amounts for 6 unsold MY2018 Tractors, and the auction value of 292 unsold MY2018 Tractors as of July 31, 2024.[131]

To calculate Actual Resale Value for the 296 MY2018 Tractors that were sold, Mr. Kahaian uses the proceeds of $12,488,499 that GLS received from the sale of those tractors.[132] As discussed above, of the 296 sold MY2018 Tractors, 222 were sold to Universal, a related party.[133] However, as discussed above, Mr. Kahaian's comparison of Actual Resale Value for the MY2018 Tractors sold to Universal to his assumed Expected Resale Value in April through June 2022 is improper because the Actual Resale Value for the MY2018 Tractors sold to Universal was negotiated in May 2022.

Mr. Kahaian's Actual Resale Value for the 6 unsold units is based on offers that GLS received as of the date of his report, totaling $110,000.[134]

To calculate the Actual Resale Value for the remaining 292 unsold MY2018 Tractors, Mr. Kahaian uses the auction value of $7,699 as of July 31, 2024, which totals $2,248,114.[135] However, using the values as of July 31, 2024 for the unsold MY2018 Tractors is improper because, by March 2023, 598 MY2023 Tractors had been delivered to Plaintiffs (i.e., enough to replace the 594 Impacted Units), yet Plaintiffs still had not sold 400 Impacted Units.[136] As of the date of Mr. Kahaian's report, 16 months after March 2023, Plaintiffs still had not sold 292 Impacted Units.[137] The decrease in value of the MY2018 Tractors since March 2023, whether caused by the decrease in market prices, age, or additional mileage put on the tractors, is unrelated to any purported delay in receiving the MY2023 Tractors.

---

[131] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 12.

[132] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 12.

[133] Appendix A, Schedule 1.

[134] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 12.

[135] Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 12.

[136] Appendix D, Schedule 1.

[137] Appendix D, Schedule 1.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

### 3. Adjustments to Mr. Kahaian's Calculation of Lost Resale Value

I have made certain adjustments to Mr. Kahaian's calculations of Lost Resale Value, as discussed in further detail below, and which are shown in Exhibit 3.

For the Expected Month of Sale for the MY2018 Tractors, Mr. Kahaian assumes that Plaintiffs would have sold the MY2018 Tractors in the same month it expected to receive the MY2023 Tractors (i.e., April 2022 through June 2022). I have adjusted Mr. Kahaian's Expected Month of Sale for the MY2018 Tractors based on the assumption that these tractors could expect be sold 75 days after the expected production start date of the MY2023 Tractors.[138] However, as discussed above, even with these adjustments, it is not reasonable to assume that Plaintiffs would have been able to sell the MY2018 Tractors during the period June 2022 through August 2022, even if all of the MY2023 Tractors had been delivered in the period May 2022 through July 2022.

For the Expected Resale Value, Mr. Kahaian uses the average TruckPaper auction and market values to estimate the value of the MY2018 Tractors in the Expected Month of Sale, based on an assumed average mileage on the MY2018 Tractors of 400,000 miles. I have adjusted the Expected Resale Value using the average of the TruckPaper auction and market values in my adjusted Expected Month of Sale that correspond with the estimated mileage of each individual MY2018 Tractor.[139] Accordingly, I have calculated an Expected Resale Value of each MY2018 Tractor individually, rather than applying an Expected Resale value based on an assumed mileage of 400,000 for all of the MY2018 Tractors, as Mr. Kahaian has.

For Actual Resale Value, Mr. Kahaian sums the price for which Plaintiffs sold 296 MY2018 Tractors (i.e., invoice amount), the offer amounts for 6 unsold MY2018 Tractors, and the auction value of 292 unsold MY2018 Tractors as of July 31, 2024. I have adjusted Mr. Kahaian's Actual Resale Value by assuming that Plaintiffs should have sold the MY2018 Tractors within 30 days of receiving the MY2023 Tractors (which I refer to in Exhibit 3, Schedule 2 as "Adjusted Month of Sale"). I use the average of the TruckPaper auction and market values as of the Adjusted Month of Sale that correspond with the estimated mileage of each

---

[138] As discussed above, I have assumed that the MY2023 Tractors would be delivered 45 days after the April 2022 through May 2022 production start dates and that it would conservatively take an additional 30 days after receiving the MY2023 Tractors to sell the MY2018 Tractors, for a total of 75 days after the expected production start date.

[139] I have assumed that the MY2018 Tractors would have been sold in the order in which they were actually sold.

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

MY2018 Tractor. I assume the 292 unsold MY2018 Tractors could have been sold at the average auction and market value, whereas Mr. Kahaian uses the auction value.[140]

All the above adjustments reduce Mr. Kahaian's Lost Resale Value damages from $24,857,011 to $5,447,296.[141] When excluding the MY2018 Tractors sold to Universal, Mr. Kahaian's Lost Resale Value damages are further reduced to $4,525,700.[142]

Assuming it would have taken Plaintiffs 60 days to sell the MY2018 Tractors after receiving the MY2023 Tractors (rather than the 30 days assumed in my calculations above), Mr. Kahaian's Lost Resale Value damages are reduced to $4,314,237 (or $4,248,967 excluding the sales to Universal).[143]

Alternatively, using the production schedule contained in the April 13, 2022 email discussed above, and assuming it would have taken Plaintiffs 30 days to sell the MY2018 Tractors after receiving the MY2023 Tractors, Mr. Kahaian's Lost Resale Value damages are reduced from $24,857,011 to $4,438,316.[144] When excluding the MY2018 Tractors sold to Universal, Mr. Kahaian's Lost Resale Value damages are further reduced to $4,347,597.[145] Assuming it would have taken Plaintiffs 60 days to sell the MY2018 Tractors after receiving the MY2023 Tractors, then Mr. Kahaian's Lost Resale Value damages are reduced to $4,007,418.[146]

However, as discussed above, even with these adjustments, it is not reasonable to assume that Plaintiffs would have been able to sell the MY2018 Tractors during the period June 2022 through August/September 2022, even if all of the MY2023 Tractors had been delivered in the period May 2022 through July 2022.

---

[140] Additionally, my use of the average of the TruckPaper auction and market values for the unsold units is conservative to the extent that the unsold MY2018 Tractors were in worse condition than the other MY2018 Tractors that were sold as of the Expected Month of Sale. This appears to be the case based on my review of the documents and testimony in this matter.

[141] Exhibit 3, Schedule 1.

[142] Exhibit 3, Schedule 1.

[143] Exhibit 3, Schedule 1. Calculated by adding an additional 30 days to Expected Month of Sale of MY2018 Tractors for a total of 105 days after production start.

[144] Exhibit 3, Schedule 3.

[145] Exhibit 3, Schedule 3.

[146] Exhibit 3, Schedule 3. Calculated by adding an additional 30 days to Expected Month of Sale of MY2018 Tractors for a total of 105 days after production start.

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

### 4. Plaintiffs' Continued Use of the MY2018 Tractors After Delivery of the MY2023 Tractors

Central's continued use of certain MY2018 Tractors after receiving the MY2023 Tractors generated income that GLS would otherwise have not generated if it sold the MY2018 Tractors.[147] Ms. Perkins testified that GLS "had to start using them again" and that it was a "good problem to have."[148] She also testified that GLS began placing certain MY2018 Tractors back into service due to rapid growth of the company.[149] Mr. Blain similarly testified that rather than selling the MY2018 Tractors for lesser prices Plaintiffs sought to "find some other good use for them" and put them back in service.[150]

As discussed above, Mr. Kahaian's calculation of Lost Resale Value is based on the difference between the Expected Resale Value and Actual Resale Value. His calculation of Actual Resale Value for MY2018 Tractors is based on the selling price for sold tractors and the auction value as of July 2024 for unsold tractors, which are lower than they otherwise would have been had Plaintiffs sold the MY2018 Tractors upon receiving the MY2023 Tractors.[151] However, Mr. Kahaian does not account for the economic benefit that GLS realized in the form of lease income by deferring the sale of the sold and unsold MY2018 Tractors. At a minimum, there would need to be an offset for the lease income that GLS continued to generate between the date the MY2023 Tractors were received and the date the MY2018 Tractors were sold, or through July 31, 2024 for the unsold tractors. GLS was able to mitigate its claimed damages by continuing to hold the MY2018 Tractors after receiving the MY2023 Tractors and generating profits from these lease agreements. The amount of these profits should therefore be deducted from Mr. Kahaian's Lost Resale Value damages.[152,] [153] I understand that the GLS/Central lease agreements have been requested, but agreements with pricing information has not been provided by Plaintiffs. I will be prepared to calculate GLS's profit on the MY2018 leases to Central if such information is made available to me.

---

[147] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, p. 323.

[148] Deposition of Brianne Perkins, dated September 18, 2024, p. 137.

[149] Deposition of Brianne Perkins, dated September 18, 2024, p. 137.

[150] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, pp. 312-313 and 322-323.

[151] The exception is the selling price of MY2018 Tractors sold to Universal, which as discussed above, was negotiated in May 2022.

[152] Exhibit 3, Schedule 3.

[153] Mr. Kahaian acknowledges that damages should be offset by mitigated damages recognizing that "Central is not claiming damages on 10 LT tractors because of its ability to sell them at a price that mitigated its damages." (Expert Report of Michael N. Kahaian, dated August 23, 2024, p. 6)

United States District Court, Eastern District of Michigan, Southern Division
Case No. 23-cv-12927

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

## VII.     Plaintiffs' Decision to Forfeit the OTB

Plaintiffs were aware of the potential risk of loss associated with selling the MY2018 Tractors themselves when they decided to waive the OTB.  As discussed above, as part of the April 2022 Letter Agreement, GLS gave up the option to trade the trucks to Navistar.  Central believed that it could take advantage of the strong used truck market and "gain profit by selling the equipment ourselves" because "the market was very good for used trucks, extraordinarily good."[154]  However, the TruckPaper auction value of the MY2018 Tractors peaked in January 2022, and from that January peak, fell 8% through May 2022 when Mr. Blain signed the April 2022 Letter Agreement.[155]  In June 2022 and July 2022, the auction value fell another 13% from the January 2022 peak.[156]  The TruckPaper market value peaked in April 2022 and fell 10% from the April 2022 peak by July 2022 and 13% by August 2022.[157]  As discussed above, if Plaintiffs were able to sell the MY2023 Tractors 75 days after the expected production start, they would have been faced with selling the MY2018 Tractors in a declining market (in June, July, and August 2022).  As discussed above, the TruckPaper auction value and average of the auction value and market value (used by Mr. Kahaian) stabilized during August through October, yet Plaintiffs were still unable to sell any MY2018 Tractors.

Further, in January 2022, GLS compared the optional trade back ("OTB") value of the MY2018 Tractors to offers it received from other original equipment manufacturer ("OEMs").  At the time, the OTB was $62,000 per truck compared to offers Central received from 4 OEMs ranging from $20,000 to $35,000.[158]  Mr. Schmalenberg recognized that the OTB value was around $30,000 higher than the market price at the time.[159]  He also recognized there would be a "substantial cost of walking away from the above market OTB offer."[160]

***********

---

[154] Deposition of Kyle Blain, 30(b)(6), dated September 11, 2024, pp. 244-245.

[155] See Appendix D, Schedule 2.  8% is calculated as ($54,210-$58,612) / $58,612.

[156] See Appendix D, Schedule 2.  13% is calculated as ($46,834-$54,210) / $58,612.

[157] See Appendix D, Schedule 2.  10% is calculated as ($74,613-$82,697) / $82,697.  13% is calculated as ($72,086-$82,697) / $82,697.

[158] Schmallenberg Deposition Exhibit D-59 (GLSN-0000815-GLSN-0000816).

[159] Schmallenberg Deposition Exhibit D-59 (GLSN-0000815-GLSN-0000816); Deposition of Nick Schmallenberg, dated September 19, 2024, pp. 59-64.

[160] Deposition of Nick Schmallenberg, dated September 19, 2024, p. 67; Deposition Exhibit D-59 (GLSN-0000815-GLSN-0000816).

GLS Leasco, Inc. and Central Transport LLC v. Navistar, Inc.

My report, with supporting exhibits, is contained herein, and presents a summary of my opinions and the bases and reasons therefor as of this date. To the extent any additional information is produced by either party, I will be prepared to incorporate any such additional information into my report, or otherwise to amend or supplement my report as appropriate.

This report is to be used only for the purpose of this litigation and may not be published or used for any other purpose without prior written consent.

By:

Mark J. Hosfield
October 9, 2024