# EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


GLS LEASCO, INC., and

CENTRAL TRANSPORT LLC,

    Plaintiffs,


  -vs-                   Case No. 23-CV-12927-MAG-APP


NAVISTAR, INC.,

    Defendant.

_____/


      DEPONENT:  CENTRAL TRANSPORT LLC

                  GLS LEASCO INC.

                  (KYLE BLAIN)

      DATE:      Wednesday, November 13, 2024

      TIME:      9:03 a.m.

      LOCATION:  KIENBAUM, HARDY, VIVIANO,

                  PELTON & FORREST, PLC

                  280 North Old Woodward Avenue, Suite 400

                  Birmingham, Michigan

      REPORTER:  Karen Fortna, CRR/RMR/RPR/CSR-5067

      JOB NO:    34630

APPEARANCES:


    KIENBAUM, HARDY, VIVIANO,

    PELTON & FORREST, PLC

    By:  Mr. Eric J. Pelton

        Mr. Thomas J. Davis

    280 North Old Woodward Avenue, Suite 400

    Birmingham, Michigan  48009

    248.645.0000

    epelton@khvpf.com

    tdavis@khvpf.com

        Appearing on behalf of the Plaintiffs


    BARNES & THORNBURG LLP

    By:  Mr. Anthony C. Sallah

        Mr. Scott R. Murphy    (VIA ZOOM)

    171 Monroe Avenue, NW, Suite 1000

    Grand Rapids, Michigan  49503

    616.742.3930

    asallah@btlaw.com

    smurphy@btlaw.com

        Appearing on behalf of the Defendant


ALSO PRESENT VIA ZOOM:

        Mr. Robert Zapinski

BY MR. SALLAH:

Q.   Okay.  Can you describe for me the alleged fraud?

A.   Well, there was several points.  You know, first, we were told in December of 2021 that Navistar could only build 600 trucks for the GLS Universal P.A.M. group.  In January, that changed and due to some, you know, believable factors, you know, specifically related to the Bendix CMS system, that Navistar was going to build us 1,100 trucks between March, April and May of 2022.

     As part of the agreement that we ultimately signed, you know, we gave up our rights to recover the residual value on those Central -- GLS specifically -- recover the residual values on those trucks.  You know, we gave up that right based on the delivery timing that was in the agreement, we signed the agreement and then that agreement -- that timing was not fulfilled.

Q.   And the delivery timing that you're referring to, that's from the April 8th cover letter, 2022?

A.   That's correct.

Q.   Okay.  And then the meeting that you're talking about in December 2021, that is -- was that a meeting that's talked about in the second amended complaint with Mark Belisle and Sean Carmichael?

A.     Correct, that's the one I'm referring to.

Q.     Okay.  And then you said January 2022 is when you were told -- I'm sorry, strike that.

       Okay.  As far as the misrepresentations that plaintiffs would allege form the fraud claim, were all of those alleged misrepresentations made to you?

       MR. PELTON:  "You," the company, or to him Kyle?

       MR. SALLAH:  To Kyle.

       THE WITNESS:  All those factors that I described?

       MR. SALLAH:  Yes.

       THE WITNESS:  Yes.

BY MR. SALLAH:

Q.     Okay.  Now the actual damages that GLS are seeking in the lawsuit for the fraud claim, are those the same damages that are described in Mr. Kahaian's expert report that was provided in the lawsuit?

       MR. PELTON:  I'm going to object.  That's not one of the corporate dep topics for today, the damages.  Hold on.

       THE WITNESS:  Yeah.

       MR. PELTON:  If you want to ask him in his personal capacity, even though he's already

been deposed, I understand that was part of the amendment, so we'll allow that.

MR. SALLAH:  I'm struggling a bit with that one because there's a new fraud claim.  I think it's fair to ask what the damages are supporting the alleged fraud.

MR. PELTON:  Well, sure, but it's not a dep topic in which he would have prepared as a corporate witness.  If you want to ask him in his individual capacity, even though he's been deposed, I understand that was prior to the amendment, so we'll allow you to do that.  I think that's the fair way to approach it.

MR. SALLAH:  Okay.  I guess we'll certify the question for now and then -- that's fine. We'll just keep going.

BY MR. SALLAH:

Q.    Okay.  So as far as you're aware, Mr. Blain, are the damages that are being sought for the fraud claim the same that are described in Mr. Kahaian's report?

A.    I'm not certain.

Q.    Okay.  You don't know one way or another?

A.    I don't know if they're all included in Kahaian's report, no.

Q.    Do you know the damages that are in Mr. Kahaian's
report, the damages that are talked about in there?

A.    Yes.

Q.    Okay.  Are GLS and Central -- well, let's do it
this way:  As part of the damages to support the
fraud claim, you're not aware that GLS and Central
are seeking as damages the trade-in values of the
2018 trucks; is that correct?

A.    I'm not sure I -- can you say that again?

Q.    Yeah.  So you had mentioned before that -- well,
I'll rephrase.

            The damages that are being sought to
support the fraud claim, you're not aware that GLS
and Central are seeking the value of the residual
for the 2018s under the prior OTB agreement; is
that correct?

            MR. PELTON:  As part of the fraud claim?

            MR. SALLAH:  Correct.

            THE WITNESS:  Okay.  I guess I'm -- I
understand the damages that were provided in
Kahaian's report.  Is that what you're referring to
and what that includes?

            MR. SALLAH:  Yeah.  I'm just trying to
get an understanding of the damages that are being
claimed to support the fraud claim, right, and then

A.    Right.

Q.    Yeah.  And then excess maintenance costs, right?

A.    Uh-hum, yes.

Q.    So are those also being sought in connection with
the fraud claim?

A.    Yeah, I think I'm having a problem differentiating
between the two.  I mean, yes, it's part of the
claim, certainly those issues and those damages
that you just mentioned.

Q.    And they may not be different, right?  And I sort
of am, too -- that's why I'm just trying to ask.
They might be the same, so I'm just trying to get
an understanding if they're the same or they're
different.  And to be clear, I'm not talking about
claims for attorney fees, right?

A.    Okay.

Q.    Because there's an allegation in -- I think maybe
in one of the filings that there's also being
attorney fees sought, so I'm putting that in a
separate bucket, but for the actual monetary
bucket, the harm that plaintiffs allege in
connection with the fraud claim, is it fair to say
that that's all contained in Mr. Kahaian's report
as well?

A.    No, there's damages above and beyond that.  I mean,

I didn't prepare for that on a specific level, but, you know, no, there are -- there's additional damages above and beyond that.

Q. Okay. What are they?

A. Damages to reputation, you know, I think we did cover. And I'm trying to remember back to Kahaian's report, you know; the recruiting cost, the additional recruiting costs, but also the cost of opportunity lost when we couldn't hire drivers because we didn't have automated tractors in certain areas of the country.

Q. Okay.

A. And then goodwill with our customers for both of those reasons.

Q. Okay. So I have reputation and then goodwill?

A. Yeah, I think those probably fall under the same category, but yes.

Q. Okay. And have you done anything to calculate the damages sought for reputational harm?

A. I have not.

Q. Okay. Are you aware of anyone doing that?

A. No.

Q. Okay. And then opportunity costs. Can you talk about that a little more? What do you mean by the opportunity costs? I think you said it was also

mentioned in Mr. Kahaian's report.

MR. PELTON:  It might be helpful if you put Kahaian's report in front of him if you want him to testify about that report, but I think you used the word opportunity costs, not him.  He said opportunity lost, actually, so I object.

BY MR. SALLAH:

Q.   Yeah, you said, "The cost of opportunity lost when we couldn't hire drivers because we didn't have automated tractors."  So is that "cost of opportunity lost when we couldn't hire drivers," is that because you didn't have the 2023 tractors at a certain point in time?

A.   That's correct.

Q.   Okay.  Anything else?

A.   Not that comes to mind right now.

Q.   Now the reputation costs and the goodwill, are those also being sought in the lawsuit in connection with the breach of contract claim?

A.   Can you say that again, please?

Q.   Yeah.

So we talked about the damages contained in Mr. Kahaian's report and I think you said there's some additional damages being sought; one's reputation, one's goodwill or the opportunity lost

STATE OF MICHIGAN)

COUNTY OF OAKLAND)


                 Certificate of Notary Public

        I do hereby certify the witness, whose attached testimony was taken in the above matter, was first duly sworn to tell the truth; the testimony contained herein was reduced to writing in the presence of the witness, by means of stenography; afterwards transcribed; and is a true and complete transcript of the testimony given.  I further certify that I am not connected by blood or marriage with any of the parties, their attorneys or agents, and that I am not interested directly, indirectly or financially in the matter of controversy.

        In witness whereof, I have hereunto set my hand this day at Clarkston, Michigan, State of Michigan.

        I hereby set my hand this day, November 14, 2024.




*Karen Fortna*
_____

        Karen Fortna, CRR/RMR/RPR/CSR-5067

        Notary Public, Oakland County, Michigan

        My Commission expires 4/30/2025