# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC <br><br>                Plaintiffs, <br><br>      v. <br><br> NAVISTAR, INC. <br><br>                Defendant. | Civil Action No. 23-cv-12927 <br><br> Hon. Mark A. Goldsmith <br><br> Magistrate Judge Anthony P. Patti |

# DEFENDANT NAVISTAR, INC.'S OPPOSITION TO PLAINTIFFS' COMBINED MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUE PRESENTED ................................................................ i

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

ARGUMENT ........................................................................................................ 2

    A.    MIL No. 1: The Court should deny Plaintiffs' motion to preclude evidence or argument regarding Manuel "Matty" Moroun, the Ambassador Bridge, or the Gordie Howe Bridge. ................................ 2

    B.    MIL No. 2: The Court should deny Plaintiffs' motion to exclude evidence regarding the revenue GLS earned by choosing to keep and lease the MY2018 trucks to Central. ............................................... 5

    C.    MIL No. 3: The Court should deny Plaintiffs' motion to present reputation and goodwill evidence in support of their exemplary-damages claim. .................................................................................. 10

    D.    MIL No. 4: The Court should deny Plaintiffs' motion seeking permission not to present evidence of attorneys' fees to the jury. ....... 16

    E.    MIL No. 5: The Court should deny Plaintiffs' motion to preclude any evidence of subsequent business dealings with Navistar. ............ 19

    F.    MIL No. 6: The Court should deny Plaintiffs' motion to preclude any mention or argument regarding ELC's involvement .................... 22

CONCLUSION .................................................................................................... 25

## STATEMENT OF ISSUE PRESENTED

Motion *in Limine* ("MIL") No. 1:  Plaintiffs GLS Leasco, Inc. ("GLS") and Central Transport LLC ("Central") seek exemplary damages for alleged injury to their reputation.  At the same time, they seek to preclude Defendant Navistar, Inc. ("Navistar") from introducing evidence that undermines such reputation, namely the Moroun family's ownership of Plaintiffs and the Ambassador Bridge—ownership that Plaintiffs themselves highlight in their own marketing materials.  Should the Court permit Plaintiffs to claim reputational damages while barring Navistar from presenting evidence that goes directly to the quality of that reputation?

MIL No. 2:  Plaintiffs seek damages based on the alleged resale value they lost on the Model Year 2018 ("MY2018") trucks and alleged higher maintenance and fuel costs they incurred by driving the MY2018 trucks.  GLS, however, earned millions of dollars in revenue by leasing the MY2018 trucks to Central, which in turn operated the trucks for years.  Should the Court preclude Navistar from introducing evidence regarding the revenue GLS earned by leasing, rather than selling, the MY2018 trucks?

MIL No. 3:  Under Michigan law, exemplary damages are inappropriate in cases where the alleged injury is a financial one arising out of commercial dealings between the parties.  Plaintiffs admit this is a case "between commercial parties, with commercial damages," and failed to disclose any computation of exemplary damages or identify any witness with personal knowledge of harm to reputation and goodwill.  Should the Court allow Plaintiffs to present vague and self-serving reputation testimony from witnesses who were never disclosed as having knowledge of that subject?

MIL No. 4:  To survive summary judgment, Plaintiffs argued that attorneys' fees are an element of damages of their fraud claim.  Under Michigan law, when attorneys' fees are sought as an element of damages rather than under the Court's equitable discretion, the opposing party is entitled to trial by jury on entitlement and reasonableness.  Should Plaintiffs be permitted to deny Navistar its constitutional right to have a jury decide the reasonableness of attorneys' fees?

MIL No. 5:  Plaintiffs claim they were defrauded so egregiously that they deserve exemplary damages.  Yet, Plaintiffs continued purchasing trucks from Navistar after the alleged fraud, including while Navistar delivered the new trucks under the parties' contract.  Should the Court bar evidence that Plaintiffs continued doing business with the company they accuse of fraud?

MIL No. 6:  Plaintiffs claim that they were harmed because Navistar's alleged delay in delivering the new trucks under the May 2022 Letter Agreement precluded them from selling their MY2018 trucks.  There is no dispute, however, that Equipment Leasing Company LLC ("ELC") purchased, paid for, and took title to every single one of the new trucks.  Should the Court bar evidence of who actually bought and received the new trucks under the May 2022 Letter Agreement, particularly when the Court already ruled that this is an issue that remains to be addressed at trial?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1.  *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 2016 WL 1125968 (Mich. Ct. App. Mar. 22, 2016).

2.  *Complete Med. Sales Inc. v. Genoray Am., Inc.*, 2021 WL 6210646 (C.D. Cal. Dec. 3, 2021).

3.  *Cunningham v. Underwood*, 116 F. 803 (6th Cir. 1902).

4.  *Fairview Builders, Inc. v. Bireta*, 2005 WL 736454 (Mich. Ct. App. Mar. 31, 2005).

5.  *Fakhoury v. O'Reilly*, 2022 WL 909347 (E.D. Mich. Mar. 28, 2022).

6.  *Mattress Closeout Ctr. IV, LLC v. Panera, LLC*, 2016 WL 3855184 (E.D. Mich. July 15, 2016).

7.  MCL §§ 440.2714-15.

8.  *Michelson v. United States*, 335 U.S. 469 (1948).

9.  *Olbrys v. Peterson Boat Works, Inc.*, 1996 WL 143466 (6th Cir. Mar. 28, 1996).

10. *Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, 2023 WL 5609303 (S.D.N.Y. Aug. 30, 2023).

11. *State Farm Mut. Auto. Ins. Co. v. Universal Rehab. Servs., Inc.*, 2017 WL 1304984 (E.D. Mich. Mar. 30, 2017).

12. *Taylor & Gaskin, Inc. v. Chris-Craft Indus.*, 732 F.2d 1273 (6th Cir. 1984).

13. *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542 (6th Cir. 1981).

14. *Venture Indus. Corp. v. Himont U.S.A., Inc.*, 2004 WL 1595206 (6th Cir. July 13, 2004).

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aebig v. Cox*,
   2005 WL 292186 (Mich. Ct. App. Feb. 8, 2005) ...............................................18

*Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*,
   2016 WL 1125968 (Mich. Ct. App. Mar. 22, 2016)...........................................17

*Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*,
   500 Mich. 32 (2017) ..........................................................................................17

*CadleRock Joint Venture, L.P. v. Royal Indem. Co.*,
   872 F. Supp. 2d 592 (N.D. Ohio 2012) ..............................................................19

*Citizens Nat. Bank of Cheboygan v. Mayes*,
   133 Mich. App. 808 (Mich. Ct. App. Apr. 17, 1984)..........................................18

*Complete Med. Sales Inc. v. Genoray Am., Inc.*,
   2021 WL 6210646 (C.D. Cal. Dec. 3, 2021)......................................................20

*Cunningham v. Underwood*,
   116 F. 803 (6th Cir. 1902) ...................................................................................4

*Donaghey v. Moorpark Bellingham Homeowners Ass'n, Inc.*,
   2023 WL 9318509 (C.D. Cal. Nov. 29, 2023) ....................................................15

*Durham v. Feeney*,
   195 Mich. 318 (1917) ...........................................................................................4

*Fairview Builders, Inc. v. Bireta*,
   2005 WL 736454 (Mich. Ct. App. Mar. 31, 2005)................................................6

*Fakhoury v. O'Reilly*,
   2022 WL 909347 (E.D. Mich. Mar. 28, 2022)....................................................19

*Feighan v. Res. Sys. Grp., Inc.*,
   2023 WL 4623123 (D.D.C. July 19, 2023) .........................................................15

*Fertico Belgium S.A. v. Phosphate Chems. Export Ass'n, Inc.*,
   70 N.Y.2d 76 (1987).............................................................................................9

*Hillside Prods., Inc. v. Cnty. of Macomb*,
389 F. App'x 449 (6th Cir. 2010) ...............................................................7

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
2019 WL 1651038 (D. Or. Apr. 17, 2019) ...........................................14

*In re Bishop*,
2017 WL 3912948 (Bankr. M.D. Fla. Sept. 6, 2017)..........................20

*In re Davol, Inc.*,
510 F. Supp. 3d 538 (S.D. Ohio 2020) ..................................................15

*In re Nestle Boost Nutritional Drink Litig.*,
2025 WL 1150712 (N.D. Cal. Apr. 18, 2025).......................................20

*In re Testosterone Replacement Therapy Prod. Liab. Litig.*
*Coordinated Pretrial Proc.*,
2017 WL 2313201 (N.D. Ill. May 29, 2017).........................................15

*In re Tylenol (Acetaminophen) Mktg.*,
2016 WL 3125428 (E.D. Pa. June 3, 2016)..........................................15

*Int'l Outdoor, Inc. v. SS Mitx, LLC*,
349 Mich. App. 212 (2023) ....................................................................18

*Koloda v. Gen. Motors Parts Div. Gen. Motors Corp.*,
716 F.2d 373 (6th Cir. 1983) ...................................................................5

*Mattress Closeout Ctr. IV, LLC v. Panera, LLC*,
2016 WL 3855184 (E.D. Mich. July 15, 2016).....................................11

*Michelson v. United States*,
335 U.S. 469 (1948)...................................................................................14

*Munafo v. Metro. Transp. Auth.*,
2003 WL 2179913 (E.D.N.Y. Jan. 22, 2003)..........................................4

*Olbrys v. Peterson Boat Works, Inc.*,
1996 WL 143466 (6th Cir. Mar. 28, 1996) ............................................6

*Precision Master Inc. v. Mold Masters Co.*,
2007 WL 2012807 (Mich. Ct. App. July 12, 2007)...............................8

v

*Profit Pet v. Arthur Dogswell, LLC,*
   603 F.3d 308 (6th Cir. 2010) ........................................................................21

*Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.,*
   2023 WL 5609303 (S.D.N.Y. Aug. 30, 2023)..................................................20

*Schrand v. Fed. Pac. Elec. Co.,*
   851 F.2d 152 (6th Cir. 1988) ..........................................................................5

*State Farm Mut. Auto. Ins. Co. v. Universal Rehab. Servs., Inc.,*
   2017 WL 1304984 (E.D. Mich. Mar. 30, 2017)..............................................11

*Taylor & Gaskin, Inc. v. Chris-Craft Indus.,*
   732 F.2d 1273 (6th Cir. 1984) ......................................................................7, 8

*TCP Indus., Inc. v. Uniroyal, Inc.,*
   661 F.2d 542 (6th Cir. 1981) ........................................................................10

*United States v. Baytank (Houston), Inc.,*
   934 F.2d 599 (5th Cir. 1991) ........................................................................14

*United States v. Bonds,*
   12 F.3d 540 (6th Cir. 1993) ..........................................................................24

*United States v. Lopez-Medina,*
   461 F.3d 724 (6th Cir. 2006) ..........................................................................5

*United States v. Warshak,*
   631 F.3d 266 (6th Cir. 2010) ........................................................................20

*United States v. White,*
   846 F.3d 170 (6th Cir. 2017) ........................................................................20

*Venture Indus. Corp. v. Himont U.S.A., Inc.,*
   2004 WL 1595206 (6th Cir. July 13, 2004) .....................................................8

*Wallace Hardware Co. v. Abrams,*
   223 F.3d 382 (6th Cir. 2000) ........................................................................15

*Williams v. B. & R. Realty Co.,*
   1979 WL 827 (Ark. Feb. 26, 1979) ................................................................20

vi

*Zamorano v. Wayne State Univ.*,
  No. 07-12943, 2008 WL 2999546 (E.D. Mich. Aug. 1, 2008) ..........................14

*Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*,
  219 Mich. App. 190 (1996) ................................................................18

## STATUTES

MCL § 440.1103 ............................................................................8

MCL § 440.2713 ........................................................................7, 8

MCL § 440.2714 ............................................................................7

MCL § 440.2715 ............................................................................8

## RULES

Fed. R. Civ. P. 26(a).................................................................. 11, 12

Fed. R. Civ. P. 37(c)............................................................. 11, 12, 13

Fed. R. Civ. P. 54(d) ....................................................................16

Fed. R. Evid. 403 ................................................................. 4, 24, 25

Fed. R. Evid. 803 ........................................................................14

Fed. R. Evid. 807 ........................................................................13

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs seek to have it both ways: present a sanitized and self-serving version of the facts while shielding the jury from the evidence that exposes the failings in their case. Plaintiffs' efforts through these MILs should be denied.

On MIL No. 1, Plaintiffs ask this Court to prohibit Navistar from introducing evidence about their owners' (the Moroun family) reputation while seeking damages for alleged injury to their own reputation. On MIL No. 2, Plaintiffs claim damages for the lost resale value of their MY2018 trucks and the costs they incurred driving those trucks while asking the Court to ignore the millions of dollars GLS earned by choosing to lease—rather than sell—those trucks. On MIL No. 3, Plaintiffs seek to present vague reputation testimony in support of exemplary damages—a remedy unavailable in this commercial dispute with commercial damages—without ever having disclosed such evidence or any computation during discovery. On MIL No. 4, Plaintiffs claim attorneys' fees as an element of damages yet ask the Court to deprive Navistar of its constitutional right to a jury determination of those fees. On MIL No. 5, Plaintiffs seek exemplary damages for alleged fraud yet seek to exclude evidence that they continued purchasing trucks from the very company they accuse of defrauding them. On MIL No. 6, Plaintiffs seek to exclude evidence of a central, undisputed fact—that ELC, not GLS, purchased, paid for, and took title to the new trucks—a fact this Court expressly reserved for trial.

1

The Federal Rules of Evidence do not permit such selective disclosure of probative facts.  As set forth below, each of Plaintiffs' MILs should be denied.

## ARGUMENT

A.    **MIL No. 1: The Court should deny Plaintiffs' motion to preclude evidence or argument regarding Manuel "Matty" Moroun, the Ambassador Bridge, or the Gordie Howe Bridge.**

*First*, MIL No. 1 should be denied as moot.  Navistar has moved to preclude Plaintiffs from introducing evidence regarding their corporate reputation and goodwill at trial.  ECF No. 101, PageID.4015-18.  To the extent Navistar's motion is granted, Navistar currently does not plan to refer to (i) Manuel "Matty" Moroun, (ii) the Ambassador Bridge, or (iii) the Gordie Howe Bridge, at trial.[1]

*Second*, the Court should deny this motion if it denies Navistar's MIL No. 8 and/or grants Plaintiffs' MIL No. 3 and allows Plaintiffs to "present reputation and goodwill evidence in support of their exemplary-damages claim," including "reputation and opinion testimony" about their "standing in the trucking industry" and "longstanding efforts to build and protect that reputation."  ECF No. 100, PageID.3876-77.  Evidence regarding Matty Moroun's long-time operation and ownership of Plaintiffs and their affiliates, including the Ambassador Bridge, and

---

[1] Navistar intends to reference the Moroun family generally, Matthew T. Moroun, and the family of companies he controls due to Matthew T. Moroun's personal involvement in the facts at issue and the relevance of his ownership of both Plaintiffs and, for example, some of the buyers to whom GLS sold MY2018 trucks.  Navistar does not understand MIL No. 1 to seek to exclude such evidence.

2

the public's view of that ownership, goes directly to Plaintiffs' corporate reputation and any harm—or lack thereof—that reputation could have suffered.  Indeed, Central's own marketing materials highlight its "corporate family," ***including ownership of the Ambassador Bridge***:



Ex. A (GLSN-0013130) (Central Presentation) at 3.

Here, Plaintiffs identify no specific evidence they seek to exclude, but seek an order excluding a category of evidence that, if granted, would preclude Navistar from referencing Plaintiffs' own marketing materials while defending against a

3

claim for loss of goodwill or reputation.[2]  Plaintiffs cannot have it both ways.  A party that volunteers its reputation as an element of damages cannot foreclose the opposing party from testing that party's reputation.  *See, e.g.*, *Cunningham v. Underwood*, 116 F. 803, 812 (6th Cir. 1902) (where "[t]he question of the character of the plaintiff was put in issue by the plea of the general issue, . . . [i]f the plaintiff was a person of tarnished reputation, it was competent for the defendant to show it, for such a plaintiff cannot have received much damage."); *Durham v. Feeney*, 195 Mich. 318, 322 (1917) (where "plaintiff claimed the arrest entitled her to damages because of the effect upon her reputation," "the evidence tending to show it was bad at the time of the arrest was admissible" "[a]s bearing upon the question of damages"); *Munafo v. Metro. Transp. Auth.*, 2003 WL 2179913, at \*24 (E.D.N.Y. Jan. 22, 2003) ("courts have found that where a plaintiff claims reputational injury, defendants must be permitted to introduce specific evidence that the plaintiff's reputation has already been compromised.") (citing cases).

Evidence regarding the Moroun family's reputation, including ownership of the Ambassador Bridge, is directly relevant rebuttal to a claim that Plaintiffs enjoy a sterling industry reputation that Navistar supposedly tarnished.  FRE 403 thus cuts in favor of admission: the probative value is heightened by Plaintiffs' affirmative

---

[2] Plaintiffs' single supporting media reference—a New York Times article—does no more than confirm that Moroun-related news exists and is not on any party's exhibit list.  ECF No. 100, PageID.3871.

4

use of reputation evidence, and any incremental risk of unfair prejudice is one Plaintiffs themselves invited. *See Koloda v. Gen. Motors Parts Div. Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) ("[V]irtually all material evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").[3]

**B.**     <u>**MIL No. 2**</u>**: The Court should deny Plaintiffs' motion to exclude evidence regarding the revenue GLS earned by choosing to keep and lease the MY2018 trucks to Central.**

Plaintiffs' damages are based on their claims (i) that they lost resale value on their MY2018 trucks and (ii) that they incurred higher maintenance and fuel costs by continuing to operate the MY2018 trucks. Yet, their MIL No. 2 seeks to exclude evidence regarding the revenue GLS earned on those same trucks when it chose to lease them to Central instead of reselling them. MIL No. 2 should be denied.

Navistar is entitled to argue that Plaintiffs' damages should be reduced by the lease revenue GLS earned. Navistar's expert, Mark J. Hosfield, calculated the amount of lease revenue GLS earned on its MY2018 trucks *after* GLS had received the new trucks. This includes the lease revenue GLS was earning on these MY2018 trucks as of September 2024 (the end of the leasing data Plaintiffs produced)—more than a year after delivery of all new trucks had been completed. *See* Ex. B (M.

---

[3] Plaintiffs' cases are inapposite, as neither case addresses a party's ability to respond to reputation evidence put on by an adverse party. *See* ECF No. 100, PageID.3871-72 (citing *United States v. Lopez-Medina*, 461 F.3d 724, 741-42 (6th Cir. 2006); *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 155-56 (6th Cir. 1988)).

Hosfield Apr. 28, 2026 Rep.) at 3 (calculating "(i) the lease revenue GLS earned on the MY2018 Tractors from January 2022 through September 2024 that it continued to hold and lease after receiving the MY2023 Tractors, and (ii) the projected lease revenue GLS has earned, to-date, under the assumption that it has continued leasing the MY2018 tractors it was leasing at the end of 2024 at the same rate"). Plaintiffs' damages model—based upon Plaintiffs' hypothetical revenues from reselling their MY2018 trucks in April, May, and June 2022—should be reduced by this additional benefit GLS received by leasing and not selling the MY2018 trucks after receiving new trucks. ECF No. 100-2 (M. Hosfield Feb. 21, 2025 Report), PageID.3916-17.[4]

Michigan law is clear that breach of contract damages may not put a plaintiff in a **better** position than if a contract had been performed. *See Olbrys v. Peterson Boat Works, Inc.*, 1996 WL 143466, at \*2 (6th Cir. Mar. 28, 1996) ("The purpose of awarding damages is to compensate for damages incurred, not to provide a plaintiff with a windfall."); *Fairview Builders, Inc. v. Bireta*, 2005 WL 736454, at \*3 (Mich. Ct. App. Mar. 31, 2005) ("[T]he injured party should not obtain a windfall; that is, he should not be placed in a better position as a result of the breach. . . . Thus, any mitigation or savings to the injured party should be deducted from any award.").

---

[4] *See also id.* ("I understand that the GLS/Central . . . agreements with pricing information has not been provided by Plaintiffs. I will be prepared to calculate GLS's profit on the MY2018 leases to Central if such information is made available to me.").

6

This is why, when a plaintiff's damages are based upon allegations that it was unable to sell an asset it otherwise would have sold, "offsetting the value of the asset that Plaintiffs retained when the transaction fell through" is mandatory. *Hillside Prods., Inc. v. Cnty. of Macomb*, 389 F. App'x 449, 461 (6th Cir. 2010).

Here, there is no world where Plaintiffs would have been able to **both** (1) sell the MY2018 trucks in April, May, and June 2022, and (2) lease and operate them through 2024 and beyond. Thus, if Plaintiffs are to get damages based on the former, there must be a deduction for the value of the latter.

In order to try to avoid this result, Plaintiffs try two tactics. First, they rely on an inapplicable provision from the Michigan Uniform Commercial Code ("UCC") related to damages for a seller's "[n]ondelivery or repudiation." MCL § 440.2713; ECF No. 100, PageID.3873. But this is not a case about non-delivery, much less repudiation. Navistar delivered every single new truck under the May 2022 Letter Agreement. ECF No. 29, PageID.256-57. The new trucks were accepted, so the appropriate section is Section 2714, which provides that a "buyer [who] has accepted goods . . . may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." MCL § 440.2714(1); *see also Taylor & Gaskin, Inc. v. Chris-Craft Indus.*, 732 F.2d 1273, 1277 (6th Cir. 1984) ("The fuel tanks here in dispute had been accepted by Chris-Craft. Therefore, the relevant Mich. Comp. Laws

7

section is 440.2714.").  "[A]ny manner which is reasonable" precludes any manner that would recognize a windfall.  MCL § 440.2714(1).

Moreover, Plaintiffs are seeking consequential damages based on purportedly reduced value of their MY2018 trucks (not the new trucks that are the subject of the contract).  *See, e.g.*, ECF No. 55, PageID.1903 ("Plaintiffs' right to recover ***consequential damages*** arising from Navistar's breach") (emphasis added); *id.* PageID.1904 ("GLS is a buyer and may recover ***consequential damages***") (emphasis added).  Section 2715(2) limits consequential damages to "any loss . . . which could not reasonably be prevented."  MCL § 440.2715(2)(a) & cmt. 2; *see also Taylor & Gaskin*, 732 F.2d at 1278 n.2 ("the recovery of consequential damages is permissible only to the extent that damages 'could not reasonably be prevented by cover or otherwise'").  Where Plaintiffs do cover any losses, those losses are not recoverable. *Venture Indus. Corp. v. Himont U.S.A., Inc.*, 2004 WL 1595206, at *3 (6th Cir. July 13, 2004) (affirming summary judgment on plaintiff's claim for lost profits where plaintiff "covered its loss" and "was able to avoid lost profits").

Even if Section 2713 applies, nothing in its language restricts deductions and the UCC provides that unless expressly "displaced," "the principles of law and equity . . . shall supplement its provisions."  MCL § 440.1103.  In fact, the only Michigan case Plaintiffs cite, *Precision Master Inc. v. Mold Masters Co.*, rejected a challenge to an offset as "disingenuous."  2007 WL 2012807, at *5 (Mich. Ct. App.

8

July 12, 2007) (cited at ECF No. 100, PageID.3873).  In so doing, the court held that the UCC makes clear that "the remedy for breach" is to "allow the nonbreaching party to realize the benefit of his bargain, **but not to obtain a windfall**."  *Id.* (emphasis added).  Here, Plaintiffs are the ones seeking a windfall by trying to recover (i) the expected resale value of the MY2018 trucks; and (ii) the allegedly higher maintenance and fuel costs they incurred from using the MY2018 trucks; **and** retain (iii) the value obtained from leasing those trucks after the date they claim they would have resold them.  Michigan law prohibits this kind of double-dipping.[5]

Plaintiffs next argue that lease payments between GLS and Central "net to zero" and therefore do not constitute an "offset."  ECF No. 100, PageID.3885-86.  Plaintiffs leave out an important part of the equation: Central did not just make a payment, it also received the **use** of the MY2018 trucks in return.  That use has economic value, which GLS and Central determined to be the monthly lease price.  Navistar is entitled to a deduction for the value of the asset (the trucks) during the period Plaintiffs retained them, *i.e.*, the leasing revenue.

---

[5] Plaintiffs' other cited case similarly involves **cover** damages, not consequential damages, and does not hold that windfall damages are allowed.  *See* ECF No. 100, PageID.3874 (citing *Fertico Belgium S.A. v. Phosphate Chems. Export Ass'n, Inc.*, 70 N.Y.2d 76, 83-84 (1987) (noting "exceptional [facts] because [the buyer] met its subsale obligations with the cover fertilizer and yet acquired title and control over the late-delivered fertilizer from [the seller]," and that "our decision does not fit squarely within the available Uniform Commercial Code remedies")).

Lastly, even if Navistar is not entitled to a damages deduction for the lease revenue GLS earned (and it is), the evidence is still relevant and admissible for at least two other reasons.  First, all plaintiffs have a "duty to mitigate damages in breach of contract cases subject to the Uniform Commercial Code."  *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 550 (6th Cir. 1981).  And Plaintiffs did not resell the MY2018 trucks at the pace Navistar delivered new trucks.  *See* ECF No. 100-2 (M. Hosfield Feb. 21, 2025 Rep.), PageID.3908.  Navistar is entitled to argue that Plaintiffs failed to mitigate by selling the MY2018 trucks *because* Plaintiffs kept the MY2018 trucks to lease (and use) instead.

Second, Plaintiffs assert "exemplary damages" based on alleged harm to their "longstanding efforts to build and protect th[eir] reputation by providing drivers with new trucks." ECF No. 100, PageID.3877.  The fact that Plaintiffs continued to lease and operate the MY2018 trucks through the end of 2024, despite having all of the new trucks delivered well before that, undermines that claim.

C.   **MIL No. 3: The Court should deny Plaintiffs' motion to present reputation and goodwill evidence in support of their exemplary-damages claim.**

In MIL No. 3, Plaintiffs seek permission to present vague and self-serving reputation evidence in support of their exemplary-damages claim—evidence they

10

failed to disclose, never quantified, and that does not satisfy the foundational requirements for reputation testimony.  MIL No. 3 should be denied for six reasons.

*First*, Plaintiffs' own framing—that this is "a breach-of-contract and fraud case between commercial parties, with commercial damages" (ECF No. 100, PageID.3870)—confirms the Court should grant Navistar's MIL No. 8 to exclude evidence of exemplary damages.  "Exemplary damages are especially inappropriate in cases, like the present one, where the alleged injury is a financial one arising out of commercial dealings between the parties."  *State Farm Mut. Auto. Ins. Co. v. Universal Rehab. Servs., Inc.*, 2017 WL 1304984, at *4 (E.D. Mich. Mar. 30, 2017).  Plaintiffs' position that this is a commercial case "with commercial damages" has one clear implication—Plaintiffs should have, but did not, provide Navistar with a computation of such damages and the evidentiary basis for the same.  Fed. R. Civ. P. 26(a)(1)(A)(iii); Fed. R. Civ. P. 37(c)(1).  Plaintiffs cannot backdoor "commercial damages" they should have quantified through a claim for exemplary damages.  *See also Mattress Closeout Ctr. IV, LLC v. Panera, LLC*, 2016 WL 3855184, at *6 (E.D. Mich. July 15, 2016) (denying exemplary damages because "claims of lost business are quantifiable and susceptible of monetary compensation").

*Second*, MIL No. 3 confirms that Plaintiffs intend to rely on information that should have been—but was not—disclosed during discovery.  *See* ECF No. 101, PageID.4015-18.  FRCP 26(a)(1)(A) requires a party to provide, without awaiting a

11

discovery request, "the name . . . of each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims," "a computation of each category of damages claimed," and "the documents or other evidentiary material . . .  on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).

As Navistar explained in its MIL No. 8, after amending to assert their fraud claim and making a cursory assertion of exemplary damages, neither GLS nor Central amended their initial disclosures, provided a computation, or identified witnesses with personal knowledge of harm to reputation and goodwill.  ECF No. 101, PageID.4013-18.  Indeed, one of the two witnesses Plaintiffs identify in their motion—Brianne Perkins, ECF No. 100, PageID.3877—was *never* identified as a witness on any topic in Plaintiffs' initial disclosures.  *See generally* ECF No. 101-3 (GLS's Initial Disclosures).  The other—Kyle Blain—was identified as a witness *prior* to GLS adding its fraud claim, and Plaintiffs' reputation and goodwill were *not* identified as a topic of his knowledge.  *See id.* PageID.4040-41; *see also* ECF No. 59-1 (GLS's Supp. R&Os), PageID.2338-39.  Under FRCP 37(c)(1), Plaintiffs' failure "to provide [such] information or identify a witness as required by Rule 26(a) or (e)," was neither "substantially justified" nor "harmless," and Plaintiffs therefore

12

are "not allowed to use that information or witness to supply evidence . . . at a trial." Fed. R. Civ. P. 37(c)(1).[6]

*Third*, Plaintiffs' MIL No. 3 is impermissibly broad and premature. Plaintiffs ask the Court to bless in advance "general reputation and opinion testimony from employees" along with "specific instances reflecting how Navistar's acts harmed that standing." ECF No. 100, PageID.3877. But Plaintiffs do not disclose any specific testimony their witnesses intend to give, much less any foundation for it. As but one example, Plaintiffs argue that the "residual" hearsay exception applies, *id.* PageID.3879—but, even if FRE 807 applies (and it does not), FRE 807 requires "reasonable notice of the intent to offer the statement—including its substance" and that such hearsay statement "is supported by circumstantial guarantees of trustworthiness." Fed. R. Evid. 807. As of this opposition, Plaintiffs have not identified any specific hearsay statement they intend to offer.

*Fourth*, to the extent Plaintiffs describe the anticipated testimony, it is not proper reputation evidence. Plaintiffs propose that Mr. Blain and Ms. Perkins testify about Plaintiffs' "longstanding efforts to build and protect [their] reputation by providing drivers with new trucks." ECF No. 100, PageID.3877. That is personal-

---

[6] The only testimony Mr. Blain offered on reputational harm was that he had not "done anything to calculate the damages sought" and was not "aware of anyone doing that." ECF 101-5 (Nov. 13, 2025 Pls.' 30(b)(6) Dep.), PageID.4060-64.

13

experience testimony, not the "reputation among a person's . . . *associates* or in the *community* concerning the person's *character*."  Fed. R. Evid. 803(21) (emphasis added).  Indeed, the United States Supreme Court made clear in *Michelson v. United States*, 335 U.S. 469, 477 (1948), that a reputation witness "may not testify . . . that his own acquaintance, observation, and knowledge . . . leads to his own independent opinion."  This District has applied *Michelson* to hold that "[r]eputation evidence is not . . . evidence of specific acts of a person or the personal opinion of a witness about another individual."  *Zamorano v. Wayne State Univ.*, 2008 WL 2999546, at *4 (E.D. Mich. Aug. 1, 2008).

Moreover, Plaintiffs acknowledge that the meaning of "the word 'person'" and whether it applies to "corporations" is a "threshold" issue.  ECF No. 100, PageID.3877-78.  But Plaintiffs are wrong that the answer to that question is yes.  As the Fifth Circuit held in *United States v. Baytank (Houston), Inc.*, "we have not found or been cited to any authority indicating that a corporate or institutional defendant such as Baytank is even entitled to consideration of character evidence."  934 F.2d 599, 614 n.26 (5th Cir. 1991); *see also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 2019 WL 1651038, at *17 (D. Or. Apr. 17, 2019) ("it is an open question whether 'person' as used in Rule 404 includes non-natural entities.  The Court is persuaded by the reasoning in the Federal Practice and Procedure treatise that it does not.").  Indeed, Plaintiffs do not cite a single case from

14

the Sixth Circuit in support of their proposition, and the cases they do cite *exclude* a corporation's attempts to introduce its own character evidence.[7]

*Fifth*, the reputation Plaintiffs describe—"for quality and for putting drivers in newer, top-of-the-line trucks"—belongs to Central, the trucking operator, not GLS, the purchasing and leasing entity. ECF No. 100, PageID.3878. But exemplary damages are only available for the fraud claim. And Plaintiffs' own argument that Central is a *contractual* third-party beneficiary carries with it an implicit admission: Central is *not* a party to the May 2022 Letter Agreement—Central itself took no action in reliance upon the alleged December 2021 representations, and thus cannot recover for fraud. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 407 (6th Cir. 2000) ("A claim of fraud or misrepresentation cannot succeed absent proof that the plaintiff acted in reliance on the purported misrepresentations.").

*Sixth*, Plaintiffs' purported "exemplary damages" evidence is an improper end-run around the Court's prior order dismissing Plaintiffs' fraud claim based upon

---

[7] *See* ECF No. 100, PageID.3878 (citing *Feighan v. Res. Sys. Grp., Inc.*, 2023 WL 4623123, at *8-9 (D.D.C. July 19, 2023) (excluding defendant's testimony about its "professional environment" and "workplace culture"); *Donaghey v. Moorpark Bellingham Homeowners Ass'n, Inc.*, 2023 WL 9318509, at *6 (C.D. Cal. Nov. 29, 2023) (striking allegations of defendant's "past disregard of the law"); *In re Davol, Inc.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020) (excluding defendant's charitable acts); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 2017 WL 2313201 (N.D. Ill. May 29, 2017) (same); *In re Tylenol (Acetaminophen) Mktg.*, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) (excluding evidence of "defendants' 'good corporate character'")).

Navistar's "represent[ations] to GLS and Central [] that it would produce 1,100 trucks by the end of June if it signed the agreement."  ECF No. 72, PageID.2963-64. Any reputational injury from alleged delivery delays therefore stems from Plaintiffs' remaining *contract* claim—for which exemplary damages are unavailable.

**D.**     **MIL No. 4: The Court should deny Plaintiffs' motion seeking permission not to present evidence of attorneys' fees to the jury.**

In MIL No. 4, Plaintiffs seek a ruling that they need not present evidence regarding attorneys' fees to the jury.  The Court should deny the motion (and grant Navistar's MIL No. 11) because Plaintiffs seek attorneys' fees *as an element of damages*, which is a legal claim regarding which Navistar has a right to trial by jury.

Under FRCP 54(d), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*."  Fed. R. Civ. P. 54(d)(2)(A) (emphasis added).  Plaintiffs do not dispute that they seek attorneys' fees *not* as an award pursuant to the Court's equitable discretion, but rather as an element of damages. Nor could they, given that in pleading the fraud claim and in avoiding summary judgment on the same, Plaintiffs argued that attorneys' fees were an element of damages for the fraud claim.  *See, e.g.*, ECF No. 25, PageID.202 & n.2 (arguing that "attorneys' fees" were a "distinct damages theor[y] arising from the fraud claim" and "an element of damages in a fraud claim").

16

Damages are an element of a legal claim, and when attorneys' fees are an element of damages, a party is entitled to a trial by jury on entitlement to and reasonableness of the fees. *See Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 2016 WL 1125968, at \*13-14 (Mich. Ct. App. Mar. 22, 2016), *rev'd on other grounds*, 500 Mich. 32, 40-42 (2017). *Barton-Spencer* reversed a trial court's award of attorneys' fees based on a post-trial motion because "Article 1, § 14 of Michigan's 1963 Constitution provides, 'The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law.'" *Id.* at \*13. The Court noted that in the case at issue—one regarding entitlement to attorneys' fees under a contract—attorneys' fees were an element of damages and "claims for money damages were generally considered legal in nature." *Id*. Because the attorneys' fees claim was an element of damages in the case and thus legal, not equitable, the party "was entitled to have the issue decided by a jury rather than the trial court." *Id.*

Although the Michigan Supreme Court overturned the Court of Appeals in *Barton-Spencer* on the separate grounds that any right to a jury trial had been contractually waived,[8] the Court of Appeals' decision in *Barton-Spencer* is consistent with other decisions regarding attorneys' fees as damages. *See, e.g.*,

---

[8] *See Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 500 Mich. 32, 42 (2017).

17

*Citizens Nat. Bank of Cheboygan v. Mayes*, 133 Mich. App. 808, 813 (Mich. Ct. App. Apr. 17, 1984) (because fees were an element of damages being sought, "Plaintiff should have presented this issue to the jury during its presentation of evidence on the damages issue so that the jury could determine whether or not plaintiff was entitled to such attorney fees and, if entitled, could determine the amount of the fees"); *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 219 Mich. App. 190, 196 (1996) (party seeking attorney fees as an element of damages "must introduce evidence of the reasonableness of the attorney fees to establish a prima facie case and to avoid a directed verdict"); *cf. Aebig v. Cox*, 2005 WL 292186, at *8 (Mich. Ct. App. Feb. 8, 2005) (affirming jury's determination of fees as damages in case of intentional misrepresentation and fraud).

Plaintiffs' motion relies entirely on dicta from *Int'l Outdoor, Inc. v. SS Mitx, LLC*, 349 Mich. App. 212, 244 (2023) regarding "the trial court['s] authority to award attorney fees" in a lawsuit alleging fraud. But at issue was the availability of fees at all. *Id.* No party there challenged whether, to the extent fees were available, they should be awarded by the jury, instead of a judge, and a party entitled to a jury of course has the option of waiving that right. *Id.* Nor do Plaintiffs cite any case in which a party demanded a trial by jury on attorneys' fees as an element of damages— as Navistar does here—and the court denied that right. For these reasons, Plaintiffs' MIL No. 4 should be denied, and Navistar's MIL No. 11 should be granted.

18

**E.      MIL No. 5: The Court should deny Plaintiffs' motion to preclude any evidence of subsequent business dealings with Navistar.**

*First*, this motion fails to actually identify the evidence Plaintiffs seek to exclude. How can Navistar and the Court identify what Plaintiffs deem to be the "pertinent" business dealings? What temporal limitation applies? "Where a motion in limine simply asserts objections without tying them to specific evidentiary items, the Court properly may deny it as overbroad and insufficiently specific." *Fakhoury v. O'Reilly*, 2022 WL 909347, at *6 (E.D. Mich. Mar. 28, 2022) (collecting cases).

Indeed, Plaintiffs' own expert submitted another amended report less than two weeks ago that includes damages calculations through May 2026. Ex. C (Kahaian May 7, 2026 Rep.) at 4 & Ex. G. Plaintiffs cannot seek to introduce evidence from as recently as this month, yet ask that Navistar be prohibited from using evidence post-dating Plaintiffs' (undefined) chosen time period.

*Second*, evidence of subsequent dealings between Plaintiffs and Navistar is directly relevant to all of Plaintiffs' claims. Plaintiffs claim they were defrauded by Navistar and were so humiliated that they deserve exemplary damages. That Plaintiffs continued to buy trucks from Navistar after this supposed fraud (and after *alleging* the fraud) is directly relevant to testing the veracity of those allegations. *See CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, 872 F. Supp. 2d 592, 608 (N.D. Ohio 2012) (denying motion in limine to exclude "evidence of conduct occurring after the closing date of the lease pools" relevant to "falsity of [] prior

19

representations"); *Complete Med. Sales Inc. v. Genoray Am., Inc.*, 2021 WL 6210646, at *5-6 (C.D. Cal. Dec. 3, 2021) (plaintiff's "extreme claims of wrong doing and damages" and allegations that defendant's actions had "tarnished [plaintiff's] reputation," were not credible in light of continued "business relationship.").[9]  And these continued purchases undermine allegations that any purchase was induced by false representations, as opposed to a simple desire to continue purchasing the product.  *See*, *e.g.*, *In re Nestle Boost Nutritional Drink Litig.*, 2025 WL 1150712, at *3 (N.D. Cal. Apr. 18, 2025).[10]

Further, Navistar's desire for and pursuit of a continuing business relationship with Plaintiffs cuts against any inference of intent.  *Cf. Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, 2023 WL 5609303, at *5 (S.D.N.Y. Aug. 30, 2023), *aff'd*, 2024 WL 4764060 (2d Cir. Nov. 13, 2024) (there is "little reason to infer that State Farm would jeopardize a continuing business relationship by

---

[9] Plaintiffs cite criminal cases that are inapplicable.  *See* ECF No. 100, PageID.3883 (citing *United States v. Warshak*, 631 F.3d 266, 330-31 (6th Cir. 2010) (affirming exclusion of defendant's "legitimate" business sales as irrelevant to the forfeiture phase of criminal trial); *United States v. White*, 846 F.3d 170, 178 (6th Cir. 2017) (excluding evidence regarding criminal defendant's repayment to victims of fraud because "intention to repay the victims of fraud is no defense")).

[10] *See also In re Bishop*, 2017 WL 3912948, at *2 (Bankr. M.D. Fla. Sept. 6, 2017) ("continued business relationship with Debtor" after learning of unauthorized credit card charges "and failure to report unauthorized charges undermine the assertion" of unauthorized use); *Williams v. B. & R. Realty Co.*, 1979 WL 827, at *1 (Ark. Feb. 26, 1979) ("continued conduct in doing business with [agent] for another two years" despite claiming fraudulent inducement "cast[] serious doubt" upon fraud assertion).

20

defrauding a repeat partner"). As for breach, to the extent Plaintiffs intend to argue that the May 2022 Letter Agreement is ambiguous, this dispute would come down to contract interpretation. Under those circumstances, how the parties structured future deals and their course of conduct would be directly relevant to the interpretation of this contract. *See Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 315 (6th Cir. 2010) ("[T]he trier of fact can also consider evidence outside the four corners of the Agreement, including the parties' course of conduct.").

*Third*, the parties were repeatedly discussing their future deals during late 2022 and early 2023, the same time delivery of the new trucks under the May 2022 Letter Agreement was ongoing, inextricably intertwining these discussions with what Navistar presumes Plaintiffs regard as "pertinent" facts. *See, e.g.*, Ex. D (NAV00103601) (November 11, 2022 email from Navistar's Sean Carmichael to GLS's Mr. Blain discussing resale of the MY2018 trucks and stating, "[S]hould be ready to present you with a cover letter on next years [sic] deal.").

*Finally*, evidence regarding subsequent business dealings between Plaintiffs and Navistar would not be unfairly prejudicial. In Plaintiffs' own words, this case is a "commercial dispute between companies." ECF No. 100, PageID.3863. Plaintiffs identify no "unfair" prejudice from information related to those companies' commercial dealings.

**F.     MIL No. 6: The Court should deny Plaintiffs' motion to preclude any mention or argument regarding ELC's involvement.**

Plaintiffs' MIL No. 6 asks this Court to airbrush a central, undisputed fact out of the trial record: that ELC, not GLS, purchased, paid for, and took title to the new trucks that are the subject matter of the May 2022 Letter Agreement.  ECF No. 100, PageID.3883-84; ECF No. 51-2 (Blain Dec. 13, 2024 Decl.), PageID.1088-89.  This fact entirely undermines Plaintiffs' case and shows that GLS assigned away its rights to any claims in this action.  Indeed, this Court expressly held that "this issue remains to be addressed at trial."  ECF No. 72, PageID.2970.  Thus, Plaintiffs' MIL No. 6 should be denied.

*First*, Plaintiffs assert that the Court "already decided at the summary-judgment stage" that ELC's "involvement" "has no bearing on the claims or defenses in this case."  ECF No. 100, PageID.3870.  Not so.  The Court held that "[b]ecause Navistar had not established, as a matter of law, that GLS assigned away its rights to any claims or causes of action, this issue remains to be addressed at trial."  ECF No. 72, PageID.2970.  Yet, Plaintiffs' MIL No. 6 seeks to exclude the very evidence that would allow the jury to evaluate the scope and effect of that assignment.  In other words, Plaintiffs seek, through a motion *in limine*, to exclude a factual dispute that the Court expressly reserved for trial.

*Second*, Plaintiffs' case is premised upon the contention that time was of the essence.  As to liability, Plaintiffs claim that Navistar breached the May 2022 Letter

22

Agreement by failing to deliver all new trucks by "the end of June" 2022. *Id.*, PageID.2965-67. As to damages, Plaintiffs claim that Navistar's alleged delay in delivering new trucks prevented GLS from selling the MY2018 trucks in a historic market. The implicit premise in both theories is that GLS could not sell its MY2018 trucks until it received new trucks. Plaintiffs admit as much by referring to the new trucks as the "*replacement trucks*" in their motion. ECF No. 100, PageID.3884 n.6 (emphasis in original). ELC's role is fatal to both theories.

Plaintiffs did not take delivery of a single new truck; rather, ELC purchased, paid for, and took title and ownership of the new trucks. ECF No. 72, PageID.2969; ECF No. 100, PageID.3883-84; ECF No. 51-2 (Blain Dec. 13, 2024 Decl.), PageID.1088-89. Because Plaintiffs never took delivery of the new trucks, their claim that timely delivery *to Plaintiffs* was the principal reason for the May 2022 Letter Agreement collapses under its own weight. The jury is entitled to consider the obvious inference: if GLS was content to allow ELC to receive the new trucks whenever they arrived, then the asserted urgency of the June 2022 deadline for GLS to resell the MY2018 trucks is not credible. Indeed, GLS's claim that *it* needed delivery of new trucks in order to sell its MY2018 trucks falls apart when one considers the simple fact that *ELC* accepted delivery of the new trucks. That is, GLS could have sold the MY2018 trucks at any time, regardless of when Navistar delivered the new trucks to *ELC*. And without the causal premise that GLS could

23

not sell the MY2018 trucks until it acquired the new trucks, GLS suffered no cognizable lost resale value damages.

*Third*, excluding ELC is practically unworkable. ELC's purchase of the new trucks is inextricably intertwined with the operative facts of the case. Plaintiffs cannot present their own case, including their account of when, how, and to whom each of the new trucks was delivered, without referencing ELC because it was ELC who paid for and took ownership of the new trucks. If Plaintiffs' MIL No. 6 were granted, Plaintiffs' own witnesses could not describe the basic chronology of the transaction without violating the order. Indeed, the jury would, in effect, be asked to try a commercial case while pretending the buyer is someone other than the buyer. That is not a permissible exercise of FRE 403 discretion; it is an evidentiary fiction.

*Fourth*, Plaintiffs' claim that the evidence regarding ELC would "confus[e] the issues, mislead[] the jury, and invit[e] an improper mini-trial" does not withstand scrutiny. ECF No. 100, PageID.3884. As set forth above, the probative value of the evidence concerning ELC is not "minimal," *cf. id.*, but goes to the core elements of Plaintiffs' affirmative case and Navistar's defense. The only "prejudice" that may arise from such evidence is that it will reveal weaknesses in Plaintiffs' case, which is not "unfair prejudice." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) ("Unfair prejudice 'does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence'"). The asserted risk of jury confusion

24

is one of Plaintiffs' own making: Plaintiffs themselves decided that ELC would purchase and take title to the new trucks. Plaintiffs cannot invoke FRE 403 to shield the jury from the consequences of their own corporate structure.

## **CONCLUSION**

Navistar respectfully requests the Court deny Plaintiffs' Combined Motions *in Limine*.

Respectfully submitted,

Dated: May 19, 2026

/s/ *Kevin M. Jakophek*
Kevin M. Jakopchek (IL Bar #6317040)
Kathryn K. George (IL Bar #6306004)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: 312.876.7700
Fax: 312.993.9767
kevin.jakopchek@lw.com
katie.george@lw.com

and

Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
BARNES & THORNBURG LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
616-742-3930
smurphy@btlaw.com
asallah@btlaw.com

*Attorneys for Defendant Navistar, Inc.*
*n/k/a International Motors LLC*

25

## LOCAL RULE CERTIFICATION

I, Kevin M. Jakopchek, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Kevin M. Jakopchek*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 19, 2026, the foregoing was electronically filed with the CM / ECF system which will send notification of such filing to the e-mail addresses registered in the CM / ECF system, as denoted on the Electronic Mail Notice List.

/s/ *Kevin M. Jakopchek*
*Attorney for Defendant Navistar, Inc.*
*n/k/a International Motors LLC*