UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

        Plaintiffs,

v.

        NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs' Brief in Opposition to Defendant Navistar Inc.'s Omnibus
Motion *in Limine* to Exclude Certain Evidence or Argument**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION .............................................................................................1

RELEVANT BACKGROUND & CASE THEORY ..................................................1

ARGUMENT ....................................................................................................6

I.    The bulk of Navistar's Motions in Limine are stealth summary judgment arguments barred by the Sixth Circuit's *Louzon* decision, and should be denied outright for that reason. ............................................6

II.    Navistar's motions in limine all fail on their merits as well. ....................8

A. MILs 1 and 2 attempt to stretch a single statement from the Court's summary judgment opinion out of context into an artificial construction of the parties' contract contradicted by reality. ....................................................................................8

B. The Court dismissed one fraud theory because it belonged in the contract claim, yet Navistar now asks the Court, in MIL 3, to exclude the evidence from the contract claim too. .............................12

C. Navistar concedes that rescission is for the Court's determination, mooting MIL 4. .........................................................14

D. MIL No. 5 improperly targets the key evidence that establishes the falsity, scienter, and intent elements of the surviving fraud claim. ...............................................................................15

E. MILs 6 and 8 misstate Michigan exemplary damages law and the disclosure record. ............................................................16

F. MIL 7 misstates Michigan fraud law and the disclosure record. ........18

G. MIL No. 9 confuses a deponent's limited recall with a Rule 26 disclosure failure. ...............................................................21

H. MIL 10 demands a categorical hearsay ruling on a topic where admissibility depends on each particular statement's purpose. .........22

I. MIL No. 11 is both moot and wrong as a matter of Michigan law, as attorney's fees are to be decided by the Court post-trial. ...............24

CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Audio Technica U.S., Inc. v. United States*,
   963 F.3d 569 (6th Cir. 2020) ...................................................................6

*Barton-Spencer v. Farm Bur. Life Ins. Co. of Mich.*,
   No. 324661, 2016 WL 1125968 (Mich. Ct. App. Mar. 22, 2016).....................25

*Brooks v. Rose*,
   191 Mich. App. 565 (1991) ....................................................................24

*Chapman v. Bible*,
   171 Mich. 663 (1912) ...........................................................................19

*Cooper v. Auto Club Ins. Ass'n*,
   481 Mich. 399 (2008) ...........................................................................25

*Deere & Co. v. FIMCO Inc.*,
   260 F. Supp. 3d 830 (W.D. Ky. 2017)........................................................20

*Derderian v. Genesys Health Care Sys.*,
   263 Mich. App. 364 (2004) ....................................................................16

*Firwood Mfg. Co. v. Gen. Tire, Inc.*,
   96 F.3d 163 (6th Cir. 1996) ....................................................................11

*Foreman v. Foreman*,
   266 Mich. App. 132 (2005) ....................................................................19

*Goodell v. CitiMortgage, Inc.*,
   No. 12-12979, 2013 WL 3466969 (E.D. Mich. July 10, 2013).........................18

*Howe v. City of Akron*,
   801 F.3d 718 (6th Cir. 2015) ...................................................................20

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2015 WL 12748002 (N.D. Ohio Mar. 6, 2015) .................23

*Ind. Mich. Power Co. v. United States*,
   422 F.3d 1369 (Fed. Cir. 2005) ...............................................................11

*Int'l Outdoor, Inc. v. SS Mitx, LLC*,
   349 Mich. App. 212 (2023) ............................................................... 24, 25

*Joba Constr. Co. v. Burns & Roe, Inc.*,
   121 Mich. App. 615 (1982) .....................................................................17

*Jonasson v. Lutheran Child & Family Servs.*,
115 F.3d 436 (7th Cir. 1997) ................................................................8, 16

*KCH Servs., Inc. v. Vanaire, Inc.*,
No. 05-777-C, 2010 WL 1416672 (W.D. Ky. Mar. 31, 2010) .........................20

*Louzon v. Ford Motor Co.*,
718 F.3d 556 (6th Cir. 2013) ...........................................................6, 8

*Marathon Petroleum Co. LP v. Midwest Marine, Inc.*,
906 F. Supp. 2d 673 (E.D. Mich. 2012) ...........................................21

*McIntosh v. Fixel*,
297 Mich. 331 (1941) ......................................................................14

*Oppenhuizen v. Wennersten*,
2 Mich. App. 288 (1966) .................................................................17

*Pransky v. Falcon Grp., Inc.*,
311 Mich. App. 164 (2015) ............................................................25

*S. C. Gray, Inc. v. Ford Motor Co.*,
92 Mich. App. 789 (1979) ..............................................................11

*Sperberg v. Goodyear Tire & Rubber Co.*,
519 F.2d 708 (6th Cir. 1975) ........................................................8, 14

*State Farm Mut. Auto. Ins. Co. v. Univ. Rehab. Servs., Inc.*,
No. 2:15-cv-10993, 2017 WL 1304984 (E.D. Mich. Mar. 30, 2017) ...............17

*Titan Ins. Co. v. Hyten*,
491 Mich. 547 (2012) ............................................................... 15, 19

*Trepel v. Roadway Express, Inc.*,
194 F.3d 708 (6th Cir. 1999) ........................................................24

*U.S. v. Taylor*,
166 F.R.D. 356 (M.D.N.C.1996) ...................................................21

*Unibar Maint. Servs., Inc. v. Saigh*,
283 Mich. App. 609 (2009) ...........................................................17

*United States v. Lavigne*,
No. 21-20355, 2022 WL 16836336 (E.D. Mich. Nov. 9, 2022) .....................23

*Veselenak v. Smith*,
414 Mich. 567 (1982) ....................................................................17

– iv –

*Whitesell Corp. v. Whirlpool Corp.*,
  No. 1:05-CV-679, 2009 WL 3672751 (W.D. Mich. Oct. 30, 2009) .................22

*Yankee Atomic Elec. Co. v. United States*,
  536 F.3d 1268 (Fed. Cir. 2008) ........................................................................12

**Statutes**

MCL 440.2612 .....................................................................................................11

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................15

**Other Authorities**

75 Am. Jur. 2d Trial § 42 ......................................................................................8

## INTRODUCTION

Navistar's motion in limine, in large part, is a stealth effort at partial summary judgment that is inappropriate to ask the Court to decide in a motion in limine. And the rest largely misunderstands or misstates the nature of the evidence it seeks to exclude. The Court should deny Navistar's motion in limine in full.

## RELEVANT BACKGROUND & CASE THEORY

In 2017, GLS purchased 630 model-year 2018 tractors from Navistar for lease to its sister company, Central, together with an Optional Trade-Back Agreement ("OTB"). ECF No. 51-2; ECF No. 51-7. The OTB guaranteed GLS the right to resell those tractors back to Navistar four years later at a fixed residual of approximately $62,000 per unit—well above Navistar's own internal estimates of what the tractors would be worth at trade-in. *Id.*; Ex. A, Fink Dep. 67-68, 83-85. In effect, the OTB was a back-loaded discount, and combined with other volume- and loyalty-based discounts GLS received on its front-end purchases, it made GLS one of Navistar's least profitable customers. Ex. B, Belisle Dep. 238-41. The OTB's structure also gave Navistar two levers to claw that discount back: the buyback obligation triggered only if GLS purchased new trucks from Navistar, Ex. C, Lollis Dep. 44–45, and the residual itself fell by $750 per truck for every month past the four-year turn-in anniversary—a "rollout" deduction, *id.* at 55. Either lever allowed Navistar to use self-imposed delay to reduce its financial exposure.

When the MY 2018 trucks came due for replacement, Navistar pulled both levers. From the moment GLS opened negotiations in February 2021, Navistar was internally scheming—over its own dealer's objections—to delay GLS orders and to push delivery dates past the rollout window. Ex. A, Fink Dep. 91-98. After GLS threatened suit, Navistar finally agreed to the July 2021 Letter Agreement under which Navistar promised to deliver 1,305 new tractors—1,100 between February and December 2022, and 205 more in early 2023—with GLS's OTB rights preserved. ECF No. 51-8; ECF No. 51-9 at 16, 137-38. Navistar's own records show, however, that its 2022 production schedule was already "filled in May 2021"—two months *before* Navistar signed the July 2021 Agreement. ECF No. 51-10, 51-11.

Faced with that oversold position, Navistar set about doing the opposite of what its contractual obligations required. Throughout 2021, Navistar's senior leadership directed production *away* from its largest contracted customers—GLS chief among them—and *towards* smaller customers who could extract fewer pricing concessions and generated higher profits. In November 2021, Navistar Group Vice President Mark Belisle told its dealer council that the company's "goal is to have 25% of what we build in 2022 going to small customers" and that "large customers are not going to be able to get all the trucks they want, need, or think they need." ECF No. 29, PageID.262. Navistar internal documents show that this reallocation of production was largely taken from customers with the lowest profit margins,

– 2 –

including GLS. ECF No. 29, PageID.261–62.

The scheme came to a head on December 16, 2021. Belisle and Navistar Vice President Sean Carmichael traveled to Plaintiffs' Warren, Michigan headquarters and told Plaintiffs, in person, that Navistar could only produce 600 trucks for Plaintiffs in 2022—not the 1,100 the July 2021 Agreement required—citing capacity constraints. ECF No. 51-15, PageID.1246, 1251, 1255; ECF No. 51-16, 51-16, PageID.1263–64. That statement was false when made. Navistar had the capacity to build 1,100 trucks for Plaintiffs in 2022; what it lacked was the willingness to allocate that capacity to its long-time, but low-margin customers GLS and Central. Belise's own words confirm the lie just three weeks later, when on January 7, 2022, he wrote to his Navistar colleagues that Navistar could "slip" the additional 500 trucks for Plaintiffs into 2022 production "as incremental production," with the only stated condition being that Plaintiffs waive their OTB trade-back rights. ECF No. 51-15, PageID.1251–52.

That lie was, in Belisle's words, an "opportunity" to get Navistar out from under Plaintiffs' OTB rights it had been seeking to avoid. *Id.* To resolve the manufactured capacity crisis, Navistar offered Plaintiffs a solution: if Plaintiffs would waive their OTB rights and accept delivery of tractors without a collision-mitigation system installed, Navistar would manufacture and deliver 1,100 new tractors on an accelerated schedule. ECF No. 51-23, PageID.1562–63; ECF No. 51-

– 3 –

15, PageID.1251–53. The Agreement called for trucks to be delivered on a rolling basis throughout March, April, and May, with June designated as a spillover month, with the final tractors due by the end of June. *See* ECF No. 55, PageID.1886-87

The bargain made economic sense only because the used-truck market was, at that time, "historically strong," with prices nearing historic peaks. ECF No. 51-20, PageID.1277; ECF No. 51-21, PageID.1289; ECF No. 51-22, PageID.1523. By taking delivery of new trucks promptly, Plaintiffs could sell the displaced MY 2018 tractors into a hot market—revenue that would offset what Plaintiffs were giving up by waiving their trade-in rights. ECF No. 51-15, PageID.1254, 1261; ECF No. 51-19, PageID.1269.

Carmichael signed the April 8, 2022 letter agreement (the "Letter Agreement") for Navistar on April 8, 2022. Even before it signed the Agreement, Navistar had built and delivered some tractors, and would continue to make limited deliveries over the next five weeks. ECF No. 91-3, PageID.3472. During the five weeks before Plaintiffs countersigned, Navistar never withdrew the offer and never asked Plaintiffs to extend the delivery schedule. ECF No. 51-2, PageID.1088. Instead, on May 17, 2022, at Carmichael's direction, Navistar's dealer threatened Plaintiffs that "if we do not have a signed agreement based on the 1100 new with no-trades," Navistar would "stop/postpone our production and hold deliveries of built tractors." ECF No. 51-35, PageID.1647; ECF No. 51-36, PageID.1648.

– 4 –

Plaintiffs signed the next day. ECF No. 51-23, PageID.1564.

Navistar did not perform. It built more than 10,000 tractors between January and June 2022—and more than 7,000 between March and June—but delivered only a fraction of the promised 1,100 for Plaintiffs by the end of June. ECF No. 51-37, PageID.1652; ECF No. 51-15, PageID.1261. Final delivery did not come until September 2023, roughly fifteen months late. ECF No. 51-24, PageID.1586–87. In the interim, the used-truck market collapsed: the average market value of a MY 2018 tractor with 400,000 miles fell more than 75% between May 2022 and final delivery. ECF No. 51-21, PageID.1472. Central also incurred elevated maintenance, fuel, repair, and driver-recruitment costs from keeping the older tractors in service past their planned trade-in dates. ECF No. 51-44, PageID.1698–99.

Plaintiffs' two theories at trial, as cabined by the Court's September 26, 2025 Opinion and Order, ECF No. 72 are that (1) Navistar fraudulently induced Plaintiffs to waive their OTB rights through its December 2021 misrepresentation; and (2) Navistar then breached the resulting April 2022 Letter Agreement by failing to deliver 1,100 tractors by the June 30, 2022 deadline, depriving Plaintiffs of the bargained-for ability to liquidate the MY 2018 fleet into a then-historic used-truck market that had collapsed by the time delivery finally finished.

## ARGUMENT

**I.     The bulk of Navistar's Motions in Limine are stealth summary judgment arguments barred by the Sixth Circuit's *Louzon* decision, and should be denied outright for that reason.**

A "motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions" by "exclud[ing] anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[N]on-evidentiary legal issues," however, "must be decided in the context of a motion for summary judgment." *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020). The Sixth Circuit has accordingly held that where a "motion in limine is no more than a rephrased summary-judgment motion, the motion should not be considered." *Louzon*, 718 F.3d at 563. That principle applies even where the moving party "attempts to infuse" an "evidentiary matter" into its motion by arguing evidence is irrelevant and inadmissible. *Id.* at 562. That is so because such an argument "rests entirely on the presumption" that the underlying claim is legally insufficient—a presumption that "if true would render null the need for any evidentiary rulings." *Id.* at 563.

Navistar's motion does exactly what *Louzon* and *Audio Technica* forbid. It repeatedly rests on a substantive premise that a certain claim, defense, or damages theory is legally unavailable, and then asks the Court to exclude evidence as "irrelevant" only because of that antecedent ruling:

– 6 –

- **MIL No. 1** asks the Court to "[p]reclude evidence or argument of any contract liability theory other than" its preferred framing of the April 2022 Letter Agreement. ECF No. 101, PageID.3984. That request depends on the premise that Navistar's framing is the only legally permissible reading of the contract.

- **MIL No. 2** asks the Court to declare that "Plaintiffs could not have incurred any damages before June 30, 2022." *Id.* at PageID.4000. That request depends on the substantive premise that, as a matter of law, no recoverable damages can be incurred before June 30, 2022.

- **MIL No. 4, parts 2–4** asks the Court to rule that Plaintiffs are not entitled to the remedy of rescission as a matter of law, even conceding that rescission is "an equitable remedy for the Court, irrelevant to jury issues." *Id.* at PageID.4008–09. By definition, Navistar's request for a substantive ruling on an equitable question "irrelevant to" a jury is not an evidentiary issue.

- **MIL No. 5** asks the Court to preclude Plaintiffs from arguing or proving that Navistar breached the July 2021 Letter Agreement, or knew at signing that it could not perform. *Id.* at PageID.4009. That request is built on the substantive premise that no claim or theory may rest on Navistar's pre-execution knowledge of its inability to perform.

- **MIL No. 6** seeks to exclude driver recruitment costs and financing costs based on the substantive premise that these damages categories fall outside of what is permitted as exemplary damages as a matter of law. *Id.* at PageID.4014.

- **MIL No. 7** asks the Court to rule that forfeited trade-in-rights damages are "legally not viable" because Plaintiffs "waived" their claim to such trade-in rights. *Id.* Waiver is a substantive legal ruling, not an evidentiary defect.

- **MIL No. 8** argues that exemplary damages "cannot be awarded" based on the record evidence in this case. *Id.* at PageID.4015–16. That is a quintessential Rule 56 inquiry: whether the record evidence supports a claim.

- **MIL No. 11** asks the Court to rule that attorneys' fees are not recoverable as an element of fraud damages and are available only as costs under Rule 54(d). *Id.* at PageID.4020. That is a question of substantive law, not admissibility.

Together, these eight motions are not evidentiary objections. They are

"unwritten and unnoticed motion[s] for summary judgment." 75 Am. Jur. 2d Trial

§ 42. Navistar already had its Rule 56 opportunity. It moved on Counts I and II, the Court ruled, and what survived to trial survived precisely because Navistar could not foreclose it under Rule 56. ECF No. 72. Navistar is not entitled to another pass at summary judgment simply because its new counsel would have litigated the original Rule 56 motion differently—let alone through the guise of a procedural vehicle stripped of Rule 56's schedule and other procedural protections. *Louzon*, 718 F.3d at 561–63. The Court should deny MIL Nos. 1, 2, 4.2–4.4, 5, 6, 7, 8, and 11 on that ground alone. But as Part II demonstrates, each motion also fails on its merits.

## II.    Navistar's motions in limine all fail on their merits as well.

Motions in limine are reserved for evidence that is "clearly inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Where admissibility turns on the purpose for which the evidence is offered, the better practice in this Circuit is to address admissibility at trial as concrete questions arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Navistar, time and time again, ignores these precepts.

### A. MILs 1 and 2 attempt to stretch a single statement from the Court's summary judgment opinion out of context into an artificial construction of the parties' contract contradicted by reality.

Navistar's first two motions share the same faulty premise: that this Court's summary judgment order converted the Parties' April 8, 2022 Letter Agreement into a one-shot obligation to deliver all 1,100 trucks on June 30, 2022, with any earlier

expectation foreclosed. Br.3–9. The order does no such thing, and Navistar's own witnesses, expert, admissions, and the face of the contract itself confirm a rolling-production contract with June carved out as the "Spillover month." ECF No. 51-23, PageID.1562.

The premise underlying Navistar's theory comes from a single sentence from this Court's summary judgment order: that "GLS and Central Transport will be barred from advancing that theory at trial." ECF No. 72, PageID.2967. Read in context, that sentence does the limited work the Court intended it to do, and no more. The Court was rejecting Navistar's *strict impossibility* defense, which rested on the theory that Plaintiffs were arguing that Navistar could not have met the monthly figures in the production chart (e.g., 75 trucks in March, 225 in April) that had already passed by the May 18, 2022 signing. *Id.* at PageID.2966. Plaintiffs explained that they were not claiming breach for Navistar's failing to strictly comply with each specific monthly total, because the contract itself contained a June "spillover" month that reflected an acknowledgment that rolling deliveries might continue through March to May and until June, the ultimate deadline for the last truck to be delivered. *See, e.g.*, ECF No. 55, PageId.1886–87.

Navistar's suggestion that the Court's ruling somehow transmogrified the contract from one contemplating rolling production, into one where Navistar's sole obligation was to deliver 600 trucks on June 30 is absurd. "Failed to deliver all the

– 9 –

trucks by end of June 2022" is not the same as "no truck was due before June 30, 2022." Navistar's own brief confirms that trucks *were* in fact delivered prior to June 2022, characterizing them as "on time," not "early." Br.7. And Navistar's own executives repeatedly confirmed the rolling nature of deliveries:

- Mark Belisle testified that tractor deliveries are spread out over time, as "no customer wants 1300 trucks showing up in two days." Ex. B at 90–91.

- David Brown admitted that it started producing trucks for delivery "well before the [April 2022 Agreement] was even signed." Ex. D at 222–23.

- Tony Stinsa confirmed that for customers like Central, "the production is usually spread across many months throughout the year. Sometimes every month in the year." Ex. E at 24–25.

Even Navistar's own expert Mr. Hosfield presumes a rolling May/June/July 2022 delivery schedule of his own. Ex. F at 77:7–80:24. Navistar's suggestion that the Court, in a single sentence tied to an affirmative defense, intended to subvert reality and prevent the Plaintiff from litigating their case based on undisputed reality that around 150 of the 1100 trucks *were* delivered in March, April, and May—and were expected to be delivered in March, April, and May—is directly contrary to the Court's order, which left to the jury to determine "what schedule the 2022 agreement required." *See* ECF No. 72, PageID.2972.

So understood, MILs 1 and 2 fail on their face. MIL 1 would improperly exclude evidence regarding, and remove from the jury's purview, the contract's delivery terms, including evidence that shows the parties understood the contract

– 10 –

called for rolling production and deliveries to be <u>completed</u> by June 2022 as a "spillover" motion. Navistar offers zero authority to support the notion that the Court should (or intended to) present a knowingly false picture to the jury about the actual record in this case. It should be rejected.

MIL 2 would improperly exclude the damages methodology used by *both parties' experts*, contrary to common sense and law. Michigan's "U.C.C. remedies are to be liberally construed to ensure that the aggrieved party is put in as good a position as if the other party had fully performed." *Firwood Mfg. Co. v. Gen. Tire, Inc.*, 96 F.3d 163, 169 (6th Cir. 1996). "As good a position" means the "position as he would have been in had the promised performance been rendered." *S. C. Gray, Inc. v. Ford Motor Co.*, 92 Mich. App. 789, 810 (1979). And Michigan's UCC rejects "uncommercial and legalistic" interpretations of agreements calling for deliveries by installment, and instead requires "the singleness of the document and the negotiation, together with the sense of the situation" to "prevail." MCL 440.2612 & cmt 3. Courts have thus rejected Navistar's rigid formalism, recognizing so-called "pre-breach" damages are recoverable in cases involving a rolling performance obligation. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1375 (Fed. Cir. 2005) (rejecting similar argument to hold party could recover damages that "befall it during the periods both antedating and postdating the breach" of a rolling performance obligation); *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268,

1273 (Fed. Cir. 2008) (requiring damages calculation to compare "the breach and non-breach worlds" in light of the rate at which performance was expected.)

Here, full performance as contemplated by the contract was rolling deliveries. That is the counterfactual world that should have occurred absent Navistar's fraud/breach, not the impossible one Navistar now posits where all 1,100 trucks for Central and its affiliates arrived at once on June 30.[1] The delivery schedule for April and May, while not a strict deadline, is reasonable evidence of when trucks should have started arriving in a non-breach world. If more new trucks had come in April and May, then more used trucks would have been sold in April and May. Both Mr. Kahaian and Mr. Hosfield bake this real-world, common-sense notion into their damages analyses. *See* ECF No. 91, PageID.3436-3437. Navistar has no basis to demand—particularly through an *in limine* motion rather than a dispositive motion—that the Court effectively dismiss much of Plaintiffs' damages claim.

**B. The Court dismissed one fraud theory because it belonged in the contract claim, yet Navistar now asks the Court, in MIL 3, to exclude the evidence from the contract claim too.**

The Court dismissed Plaintiffs' April 2022 fraud theory—the version premised on Navistar's misrepresentation that it would perform the April 2022 Letter Agreement—on a specific basis: that a promise to perform a contract "is

---

[1]That's not what even happened in reality. Navistar produced and delivered a number of trucks in the months leading up to the June 30 deadline. ECF No. 91-3, PageID.3472.

– 12 –

nothing more than a statement that [Navistar] will perform the contract" and is "implicit in every contractual promise." ECF No. 72, PageID.2963–64. In other words, the fraud theory failed not because the alleged misrepresentation was irrelevant. It failed because it was subsumed within the breach of contract claim. *Id.*

Navistar, nonetheless, asks this Court to exclude evidence of its intent to perform the April 22 Letter Agreement because it is only relevant to the fraud claim. Br. 9–11. This argument is internally circular, if not judicially estopped. Having dismissed the fraud claim on the grounds that intent-to-perform is a contract theory, Navistar implicitly conceded that intent-to-perform is relevant to the contract theory.

Indeed, the only evidence Navistar specifically attacks—the May 17, 2022 Lollis text conveying Navistar's threat to "stop/postpone our production and hold delivery of built tractors"—is relevant to *both* surviving claims. Among other things, this evidence: (1) proves that Navistar was building trucks to fulfill the April 2022 Agreement even before Blain signed, refuting Navistar's intended claim that Blain's "delay" is the reason it could not perform; and (2) reinforces the *surviving* fraud claim, by showing that Navistar was so desperate to have Plaintiffs waive their OTB rights, it threatened Kyle Blain into signing the agreement rather than withdrawing it, despite their newfound claim it was impossible to timely perform.

Ultimately, Navistar cannot obtain motion-in-limine relief unless it shows that evidence of its intent to perform is clearly inadmissible for any purpose. Rule 401

and 402 set a low bar for relevance. Evidence of Navistar's intent to perform—depending on context—is relevant to many other issues, including (1) Navistar's understanding of the contract's requirements, which the Court held to be a fact issue for trial; and (2) its awareness of its own capacity constraints, which relates to the "foreknowledge" element of Navistar's impracticability defense. Objection at trial—not *in limine* relief—is the proper course here. *Sperberg*, 519 F.2d at 712.

### C. Navistar concedes that rescission is for the Court's determination, mooting MIL 4.

Navistar concedes rescission is an equitable remedy for the court, "irrelevant to jury issues." ECF No. 101, PageID.4008. That concession is fatal, as a motion in limine is meant to exclude evidence *at trial*. But Navistar is wrong on the merits too.

Its first three arguments are of the same ilk: that Plaintiffs waited too long to bring a rescission claim, including by suing for breach of contract or because of the "waiver by acceptance of benefits" rule of *McIntosh v. Fixel*, 297 Mich. 331, 345 (1941). That doctrine presupposes that the party knew it was defrauded but continued performance anyway; here, Plaintiffs discovered Belisle had been lying through discovery in this case, causing it to amend the complaint in September 2024 to add fraud claims, and identifying a rescission remedy. *See* ECF No. 25 (motion for leave); ECF No. 29 (SAC). By then, all the tractors due under the contract had been delivered, albeit late, so it did not accept benefits while knowing of fraud.

Further, Plaintiffs are allowed to plead alternative and inconsistent remedies.

– 14 –

Fed. R. Civ. P. 8(d). And Navistar *consented* to the second amendment complaint's filing, rather than claiming delay. *See* ECF No. 28.

Navistar also argues that rescission is "impossible" because the Court cannot "unscramble the egg." But that argument itself rests on contested factual premises that would be for a court sitting in equity to weigh. As just one example, Navistar argues that Plaintiffs already received the new trucks and cannot send them back. But Navistar forgets that it owed Plaintiffs *every one* of those trucks under the July 2021 Letter Agreement that it fraudulently induced Plaintiffs to give up, meaning there is no equitable basis to send any truck back to Navistar. The Court's equitable powers to remedy fraud are "manifold," *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 557–58 (2012), and should be exercised after the trial, not in this motion.

### D. MIL No. 5 improperly targets the key evidence that establishes the falsity, scienter, and intent elements of the surviving fraud claim.

MIL 5 asks the Court to exclude all evidence that Navistar had no intention of performing or could not perform the July 2021 Letter Agreement. This argument is, in fact, a surreptitious effort to gut the fraud theory that this Court did allow—namely, that Navistar fraudulently induced Plaintiffs to replace its July 2021 Letter Agreement—and that Agreement's OTB rights—with the April 2022 Letter Agreement. ECF No. 72, PageID.2963. To prevail, Plaintiffs must prove falsity, scienter, and intent to induce reliance. *See Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 378 (2004).

– 15 –

Navistar's pre-December 2021 conduct proves these elements. As early as February 2021, Navistar's executives were already maneuvering to evade the OTB obligation by stalling the new-truck sales that triggered Plaintiffs' trade-back rights. *Supra* at 1–2. Navistar entered the July 2021 agreement only after Plaintiffs threatened suit. *Supra* at 2. By that time, Navistar's own internal records showed that its production schedule was already full, having taken more orders than it could fulfill. *Supra* at 2–3. But despite taking on a contractual obligation to allocate 1100 tractors to Plaintiffs—and despite having the capacity to do so—it diverted allocation to more profitable customers, and then lied to Plaintiffs about it. *Supra* at 3. It then used that lie to induce Plaintiffs into giving up the OTB rights altogether.

This evidence has nothing to do with an unpled claim of "breach" of the 2021 Agreement, as Navistar bizarrely suggests. It is foundational evidence of the fraud case that tends to show Navistar's motivation, its knowledge of falsity, and its intention to use that lie to have GLS give up the July 2021 agreement and forego its OTB rights. Navistar erects and attacks a strawman for the pretextual purpose of excluding what it knows to be damning evidence of fraud. That is not what a motion in limine is for. *Jonasson*, 115 F.3d at 440.

### E. MILs 6 and 8 misstate Michigan exemplary damages law and the disclosure record.

MIL 6 and 8 share a theme: a Rule 26 attack on three damages categories: difficulties in driver recruitment (MIL 6), increased financing costs (MIL 6), and

harm to reputation and goodwill (MIL 8). MIL 8 adds a substantive argument that exemplary damages are categorically unavailable. These arguments fail or are moot.

*First*, Michigan law explicitly permits corporations to recover exemplary damages to compensate for "loss of reputation as a skillful and competent company." *Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich. App. 609, 630 (2009). Exemplary damages compensate "for injuries not capable of precise computation resulting from malicious conduct," *Joba Constr. Co. v. Burns & Roe, Inc.*, 121 Mich. App. 615, 643 (1982), and their amount is left to the discretion of the jury, *Oppenhuizen v. Wennersten*, 2 Mich. App. 288, 298 (1966). Navistar's cases do not bar such recovery; instead, they preclude exemplary damages only for "purely pecuniary" losses "susceptible to full and definite monetary compensation." *State Farm Mut. Auto. Ins. Co. v. Univ. Rehab. Servs., Inc.*, No. 2:15-cv-10993, 2017 WL 1304984, at *4 (E.D. Mich. Mar. 30, 2017); *see Veselenak v. Smith*, 414 Mich. 567, 574–75 (1982). Plaintiffs are not seeking pecuniary damages under the guise of exemplary damages. They seek exemplary damages for injury to reputation and goodwill flowing from Navistar's fraud, including their loss of standing amongst employees, potential employees, customers, and other industry members.

*Second*, and as illustration, driver recruitment troubles are circumstantial evidence of reputational harm supporting exemplary damages. They are not a pecuniary damages line item. And because exemplary damages are, by definition,

not capable of precise calculation, Rule 26 does not require a calculation of such damages. *See Goodell v. CitiMortgage, Inc.*, No. 12-12979, 2013 WL 3466969, at *10 (E.D. Mich. July 10, 2013). On the larger disclosure point, Plaintiffs plainly disclosed the claim for exemplary damages in their November 2024 supplemental responses: "the injury to [their] reputation among customers and employees and the loss of [their] goodwill." ECF No. 59-1, PageID.2339. And Kyle Blain's deposition supplied the factual predicates: operational disruption from the delayed fleet, loss of customer confidence, and damage to GLS's standing in the resale market. ECF No. 51-44, PageID.1699. If Navistar wanted more specificity, the vehicle was a motion to compel during discovery, not a motion in limine on the eve of trial.

*Third*, Plaintiffs are not seeking increased financing costs are an element of damages, rendering this part of the motion moot.

### F. MIL 7 misstates Michigan fraud law and the disclosure record.

Relatedly, Navistar's MIL 7 seeks to exclude Plaintiffs from recovering damages measured by the value of its trade-in rights that it lost when it was fraudulently induced to waive its OTB rights. Both cited grounds are meritless.

*First*, Navistar argues that such damages were extinguished when Plaintiffs signed the April 2022 Letter Agreement. This argument misunderstands Michigan fraud damages. Michigan recognizes "manifold" remedies for fraud, *Titan Ins. Co.*, 491 Mich. at 557–58, and the Michigan Supreme Court has long held that a

– 18 –

defrauded plaintiff can recover as "damages the difference between the value of what he would have obtained had the statements been true and the value of what he actually received." *Chapman v. Bible*, 171 Mich. 663, 667 (1912). Thus, a plaintiff fraudulently induced into signing a contract may recover damages measured by the difference between what she received, and what she would have received had she not signed the contract. *Foreman v. Foreman*, 266 Mich. App. 132, 146-47 (2005).

So too here. Had Navistar told the truth—that it could build Plaintiffs the 1100 trucks as contracted—Plaintiffs would not have been induced into signing the April 2022 Agreement, and they would have retained their right to sell back its used trucks at the residual, even as the market prices of the trucks crashed. That measure of calculating damages—using the $62,000 figure, less contractual deductions, as the "but-for" value of the trade-ins, less actual proceeds Plaintiffs earned from selling the trucks—came out to approximately $14.26 million. Ex. G, Kahaian 2d Am. Rpt.

Navistar's non-disclosure argument is likewise meritless. The methodology underlying the fraud damages measure is the one set forth in Plaintiffs' original expert report *and*, notably, by Navistar's own expert Mr. Hosfield:

$$[Expected\ Resale\ Value] - [Actual\ Resale\ Value] = [Lost\ Resale\ Value].$$

*See* ECF No. 91, PageID.3435. The only changes are the inputs, and arguably more precise ones at that, as the "but for" price in this scenario is ascertainable directly from the parties' undisputed contract rather than market estimates. That alternative

– 19 –

scenario does not transform a previously-disclosed methodology into a "new opinion" requiring a fresh Rule 26(a)(2) disclosure, as an expert is entitled to apply his methodology to alternative factual scenarios. *See KCH Servs., Inc. v. Vanaire, Inc.*, No. 05-777-C, 2010 WL 1416672, at \*3 (W.D. Ky. Mar. 31, 2010) (rejecting identical argument because while "elements of damages were added based on new information, [the expert] did not fundamentally change his method of calculating damages from one report to the next"); *see also Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 837 (W.D. Ky. 2017) (Rule 26(e)(2) "does not set limitations on the amount or length of permissible supplemental disclosures.").

Finally, Plaintiffs *have* since issued a supplemental report setting forth this alternative factual scenario.[2] *See* Ex. G. And even if the timing were imperfect, Navistar would not be entitled to exclusion under Rule 37 under the five-factor harmlessness test of *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015). Navistar was not surprised, as the methodology hasn't changed. There is no need to cure; Mr. Hosfield can apply these new inputs to his own (identical) formula in minimal time. Trial, over a month away, will not be disrupted. And the evidence is important, as a counterpart calculation of "benefit of the bargain" damages on the fraud claim to the same calculation for breach. There is no basis for exclusion. *See*

---

[2]As Navistar itself did just weeks ago, when on April 28, 2026 it served alternative scenarios for its own expert's damages methodology.

*Marathon Petroleum Co. LP v. Midwest Marine, Inc.*, 906 F. Supp. 2d 673, 693 (E.D. Mich. 2012) (denying exclusion of supplemental report that modified calculations using alternative data inputs).

### G. MIL No. 9 confuses a deponent's limited recall with a Rule 26 disclosure failure.

MIL 9 seeks blanket exclusion of "undisclosed bulk sales or resale negotiations" based on a single piece of deposition testimony: Kyle Blain's 30(b)(6) statement that he could recall only two large-volume sales negotiations at the time of his September 2024 deposition. ECF No. 101, PageID.4017–18. This argument fundamentally miscomprehends that a 30(b)(6) witness's testimony is not tantamount to a binding judicial admission. "Rather, just as in the deposition of individuals, it is only a statement of the corporate person which, if altered, may be explained and explored through cross-examination as to why the opinion or statement was altered." *U.S. v. Taylor*, 166 F.R.D. 356, 362 n. 6 (M.D.N.C.1996). Thus, 30(b)(6) testimony does not "preclude[ ] the introduction all other evidence that relates to the designee's testimony, inconsistent or not." *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2009 WL 3672751, at *1 (W.D. Mich. Oct. 30, 2009).

Furthermore, the damages theory at issue—that Plaintiffs lost the opportunity to sell used trucks at favorable 2022 prices because Navistar's delayed performance pushed sales into a deteriorating market—does not depend on identifying specific

– 21 –

lost bulk buyers. The market prices Plaintiffs received and would have received are established through Mr. Kahaian's expert analysis, which relies on objective market data rather than the specifics of any individual sale negotiation. If Navistar disputes that Plaintiffs had buyers who would have paid higher prices, it can present that argument to the jury. But that dispute goes to the weight of the damages evidence, not its admissibility. There is no basis to categorically exclude testimony regarding bulk sales from *any* witness.

### H. MIL 10 demands a categorical hearsay ruling on a topic where admissibility depends on each particular statement's purpose.

Navistar's MIL 10—a mere paragraph long—seeks to exclude categorically as "hearsay" any verbal discussion about potential truck sales. It references one snippet of Kyle Blain's testimony that he had "verbal" discussions with one potential buyer—and then demands a categorical exclusion of "any other verbal conversations." Hearsay does not work that way. Rule 801(c) defines hearsay by what a statement is offered to prove, which means a hearsay ruling requires both (i) a specific out-of-court statement and (ii) the purpose for which it is offered. Navistar supplies nothing concrete on which the Court could rule, let alone provide a basis for a categorical ruling in the abstract.

Ironically, the one example Navistar alludes to proves the point, as even that snippet of testimony has plainly admissible, non-hearsay uses. For example, the fact that Blain was engaged in discussions with All Truck—regardless of the truth of any

particular statement made by All Truck representatives—is proof that, contrary to Navistar's argument, Plaintiffs were attempting to mitigate their losses. The evidence shows that market demand existed for trucks in general—market demand which Navistar's delayed deliveries cost them. *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 12748002, at *1 (N.D. Ohio Mar. 6, 2015). And third-party statements would potentially be relevant to Blain's state of mind, including decisions on what to price vehicles at and where he might potentially best sell the vehicles. On a cold record, until the evidence is offered, there is no way for a Court to meaningfully evaluate admissibility. *See, e.g.*, *United States v. Lavigne*, No. 21-20355, 2022 WL 16836336, at *11 (E.D. Mich. Nov. 9, 2022) ("The Court is not in a position to rule on the admissibility of any such evidence, or related testimony, without reviewing the materials in context." (citations omitted)).

Navistar's reliance on *Trepel* does not support the categorical exclusion it seeks. That case merely held that a specific out-of-court price quote offered to establish market value was hearsay because the speaker's willingness to pay that exact price was the very assertion offered for its truth. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716–17 (6th Cir. 1999). That is a narrow ruling tied to a specific evidentiary use, not a categorical bar on every out-of-court statement that touches on a potential transaction. The proper time for Navistar to raise good-faith hearsay objections is at trial, so the Court can evaluate the statement given its context.

– 23 –

**I.  MIL No. 11 is both moot and wrong as a matter of Michigan law, as attorney's fees are to be decided by the Court post-trial.**

Plaintiffs and Navistar agree on one part of MIL 11. Plaintiffs have themselves moved for a ruling that attorneys' fees should be determined by the Court on a post-judgment motion rather than presented to the jury. ECF No. 100, PageID.3880–82. To that extent, Navistar's motion is moot.

But to the extent that Navistar's intention is to preclude Plaintiffs from recovering attorneys' fees at all, it is doubly improper. As noted, that is an improper argument for a motion in limine. *Supra* Part I. But it also is contrary to Michigan law, which recognizes the common-law fraud exception to the American Rule, and permits recovery of attorney fees "where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct." *Brooks v. Rose*, 191 Mich. App. 565, 575 (1991). The Michigan Court of Appeals recently reaffirmed and clarified the exception in *International Outdoor, Inc. v. SS Mitx, LLC*, holding that the rule reaches not only fees from prior litigation but also fees incurred in the very action in which fraud is being proved. 349 Mich. App. 212, 243–44 (2023) (directing court to award such fees); *see also Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 409 & n.4 (2008) (plaintiff may recover for all "injuries," including reasonable attorney fees).

Navistar offers no contrary authority. Its only citation—*Barton-Spencer v. Farm Bureau Life Insurance Co. of Michigan*—addresses contractual attorney-fee

– 24 –

provisions, which are recoverable as general damages because the contract authorizes them. No. 324661, 2016 WL 1125968, at *13 (Mich. Ct. App. Mar. 22, 2016), *rev'd in part on other grounds*, 500 Mich. 32 (2017); *see also Pransky v. Falcon Grp., Inc.*, 311 Mich. App. 164, 194 (2015). The common-law fraud exception is a different rule with different conceptual underpinnings. *Int'l Outdoor*, 349 Mich. App. at 243–44. *Barton-Spencer* does not narrow Plaintiffs' right to fees as fraud damages. MIL 11 should be denied as moot on the procedural question— both sides agree it is for the Court, post-trial—and on the merits as to the legal question because fees are recoverable if Navistar is found liable for fraud.

## CONCLUSION

This Court should deny Navistar's Omnibus Motions *in Limine*.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.:

By:    /s/ Eric J. Pelton
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Counsel for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Date: May 19, 2026    tdavis@khvpf.com
557691

– 25 –

## LOCAL RULE CERTIFICATION

I, Eric J. Pelton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ Eric J. Pelton
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com

## CERTIFICATE OF SERVICE

I hereby certify that on May XX, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

*/s/ Eric J. Pelton*
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
