| | |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC | Civil Action No. 23-cv-12927 |
| | Hon. Mark A. Goldsmith |
| Plaintiffs, | Magistrate Judge Anthony P. Patti |
| v. | |
| NAVISTAR, INC. | |
| Defendant. | |

**DEFENDANT'S SUPPLEMENTAL MOTION *IN LIMINE* TO EXCLUDE PLAINTIFFS' EXPERT'S UNTIMELY OTB DAMAGES OPINIONS**

On May 8, 2026, Plaintiffs served a Second Amended Expert Report from their damages expert, Michael Kahaian ("Kahaian"). **Ex. A** (the "Second Amended Report"). For the first time, at Appendix II of the Second Amended Report, Kahaian offers an "alternative scenario of economic damages" based on an entirely new damages theory. Specifically, Kahaian opines that Plaintiffs are entitled to damages representing (i) their forfeited trade-in rights under the parties' terminated 2017 Optional Trade-In Agreement assuming (ii) claimed delivery based upon the parties' terminated 2021 Letter Agreement (the "Terminated Agreements Damages").

Kahaian claims the Terminated Agreements Damages total approximately $12.29 million. Ex. A, Appendix II. This new damages theory was never disclosed in Kahaian's original report (served August 23, 2024) or his Amended Report (served February 7, 2025). Indeed, Plaintiffs first disclosed this new theory one month before trial, after having disclaimed any such theory in discovery. *See* Omnibus Mot. in Limine, ECF No. 101, PageID.4014.

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Navistar moves the Court for an order excluding this portion of Kahaian's opinions and new theory at trial, including any testimony relating to it, as untimely under Rule 26(a)(2)(D). Under well-established precedent, exclusion of Kahaian's untimely Terminated Agreements Damages opinion is automatic and mandatory, and under no set of facts can Plaintiffs satisfy their burden to show the nondisclosure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also*, *e.g.*, *Gould Elecs., Inc. v. Livingston Cnty. Rd. Comm'n*, Case No. 17-cv-11130, 2020 WL 4587049, at *4 (E.D. Mich. Apr. 1, 2020) (Goldsmith, J.) (excluding expert evidence because delay in submitting it was "neither harmless nor substantially justified").

Pursuant to Local Rule 7.1(a), counsel for Navistar sought the concurrence of Plaintiffs' counsel, explaining the nature of this Motion and its legal basis, and concurrence was not obtained.

Dated: May 22, 2026

Respectfully submitted,

Kevin M. Jakopchek (IL 6317040)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
kevin.jakopchek@lw.com

/s/ *Anthony C. Sallah*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
BARNES & THORNBURG LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
Tel: (616)-742-3930
smurphy@btlaw.com
asallah@btlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC | Civil Action No. 23-cv-12927 |
| | Hon. Mark A. Goldsmith |
| Plaintiffs, | Magistrate Judge Anthony P. Patti |
| v. | |
| NAVISTAR, INC. | |
| Defendant. | |

## BRIEF IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION *IN LIMINE* TO EXCLUDE PLAINTIFFS' EXPERT'S UNTIMELY OTB DAMAGES OPINIONS

i

# TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED .................................................................v

CONTROLLING OR MOST APPRORIATE AUTHORITIES ........................... vi

RELEVANT BACKGROUND ........................................................................1

    A.    Kahaian's Original Damages Model and Opinions Concerning Lost Resale Value. .................................................................... 1

    B.    Kahaian's New and Untimely Terminated Agreements Damages Model. ............................................................................. 2

LEGAL STANDARD .....................................................................................5

ARGUMENT ..................................................................................................7

    A.    Kahaian's New Terminated Agreements Damages Opinions are Untimely. ...................................................................................7

    B.    Plaintiffs Cannot Satisfy Their Burden to Excuse the Untimely Disclosure. ....................................................................9

CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Asher v. Unarco Material Handling, Inc.*,
  No. CIV.A. 6:06-548-DCR, 2008 WL 2596612 .................................................6

*Bean v. Meridian L.L.C. v. Suzuki Motor Co. (In re C.F. Bean L.L.C.)*,
  841 F.3d 365 (5th Cir. 2016) .........................................................................8

*Bisig v. Time Warner Cable, Inc.*,
  940 F.3d 205 (6th Cir. 2019) .......................................................................14

*Columbia Invs., LLC v. Lowe's Home Centers, LLC*,
  No. 1:23-CV-00017, 2024 WL 6971081 (M.D. Tenn. Sept. 16, 2024)....passim

*Gardner v. United States*,
  No. 21-CV-02109, 2022 WL 5434338 (W.D. Tenn. July 20, 2022) ..............15

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) ........................................................................ 6

*Kelliher v. DXC Tech. Servs., LLC*,
  No. 19-13316, 2021 WL 5545955 (E.D. Mich. Feb. 22, 2021) ......................6

*Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*,
  No. 2:18-CV-12606, 2020 WL 1502004 (E.D. Mich. Mar. 30, 2020).... passim

*Muflihi v. U.S. Steel Corp.*,
  No. 22-CV-12609, 2025 WL 2656035 (E.D. Mich. Sept. 16, 2025) ..............11

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*,
  No. 2:08-CV-12247, 2010 WL 891695 ..........................................................6

*RJ Control Consultants, Inc. v. Multiject, LLC*,
  100 F.4th 659 (6th Cir. 2024) .....................................................................5, 6

*Ross v. Am. Red Cross*,
  No. 2:09-CV-905, 2012 WL 2090513 (S.D. Ohio Jan. 26, 2012) aff'd, 567 F.
  App'x 296 (6th Cir. 2014) ..............................................................................5

*Saint-Gobain Corp. v. Gemtron Corp.*,
  No. 1:04 CV 387, 2006 WL 1307890 .............................................................8

**Rules**

Federal Rule of Civil Procedure 26(a)(2)(B) ............................................................5

Federal Rule of Civil Procedure 26(a)(2)(D) ............................................................5

Federal Rule of Civil Procedure 26(e)(2) .................................................................7

Federal Rule of Civil Procedure 37(c)(1) .................................................................5

# STATEMENT OF ISSUE PRESENTED

Whether the Court should exclude the damages opinions set forth for the first time in Appendix II of Plaintiffs' expert Michael Kahaian's Second Amended Report—served approximately twenty months after the Court-ordered disclosure deadline—advancing an entirely new theory of "alternative" economic damages based on (i) a forfeited OTB agreement and (ii) a forfeited 2021 Letter Agreement, which Plaintiffs never disclosed, affirmatively disclaimed in discovery, and could have presented in Kahaian's original report, in violation of Federal Rules of Civil Procedure 26(a)(2)(D) and 37(c)(1).

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- Federal Rule of Civil Procedure 26(a)(2)(D)

- Federal Rule of Civil Procedure 37(c)(1)

- *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015)

- *Muflihi v. U.S. Steel Corp.*, No. 22-CV-12609, 2025 WL 2656035 (E.D. Mich. Sept. 16, 2025)

- *Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-CV-12606, 2020 WL 1502004 (E.D. Mich. Mar. 30, 2020)

- *Columbia Invs., LLC v. Lowe's Home Centers, LLC*, No. 1:23-CV-00017, 2024 WL 6971081 (M.D. Tenn. Sept. 16, 2024)

<u>**RELEVANT BACKGROUND**</u>

**A.      Kahaian's Original Damages Model and Opinions Concerning Lost Resale Value.**

On January 2, 2024, this Court entered the Case Management and Scheduling Order requiring Plaintiffs' expert witness disclosures and reports to be served by August 23, 2024. ECF No. 13. Kahaian, Plaintiffs' damages expert, provided an original expert report dated August 23, 2024. He opines that because of Navistar's alleged "failure to meet the Replacement Units Delivery Schedule," Plaintiffs incurred damages "associated with … Selling the MY2018 Tractors at a lower price than it would have had Navistar met the Replacement Units Delivery Schedule" (lost resale value damages), and excess maintenance and fuel costs. ECF No. 64-4, PageID.2462, ¶ 26. That is, Kahaian's damages model calculated damages based solely on Navistar's alleged failure to meet a claimed "delivery" schedule in connection with the May 2022 letter agreement at issue. In doing so, he primarily measured the difference between the expected and actual resale value of the MY2018 trucks, relying on claimed sale prices equal to the monthly average of market prices and auction prices. ECF No. 64, PageID.2393-94.

Kahaian's first amended report, served on February 7, 2025,[1] offered the same opinion: Navistar's alleged failure to deliver new trucks on time caused Plaintiffs to

---

[1] Plaintiffs offered the amended report to account for updated GLS truck sales for MY2018 trucks. *See* Ex. A, ¶ 2.

1

incur lost resale value damages for the old trucks. Neither the original report nor the amended report contained any opinion concerning Terminated Agreements Damages—*i.e.*, what Plaintiffs would have allegedly received from Navistar, if they traded in the old trucks to Navistar, at values identified in the 2017 Optional Trade-In Agreement, in a hypothetical world in which they did not waive their trade-in rights.

Navistar engaged Mark Hosfield to rebut Kahaian's lost resale value opinions, and those related to maintenance and fuel expenditures. ECF No. 51-21. According to Plaintiffs, "[b]oth experts identify the 2018 tractors whose sales were postponed due to Navistar's delay, both determined a 'but-for' the breach resale value, and both compared that value to the actual resale value." ECF No. 91, PageID.3434. Kahaian's original opinions are currently the subject of Navistar's pending motion to exclude under Federal Rule of Evidence 702. ECF No. 64.

**B.    Kahaian's New and Untimely Terminated Agreements Damages Model.**

On May 8, 2026, Plaintiffs served the Second Amended Report. Ex. A. Kahaian states that the report was prepared "to update the economic damages analysis" to reflect updated actual resale values, updated values for unsold tractors, and updated historical pricing. *Id*. at ¶ 3. The report states that "the underlying methodology and analysis remain unchanged" and should be "read in conjunction

2

with the Kahaian Report and Amended Report," though the opinions "supersede those presented in the Amended Report to the extent they differ." *Id*. at ¶ 4.

However, intertwined in the Second Amended Report is an entirely new (and alternative) damages model: Appendix II, titled "Economic Damages – 2017 Optional Trade-In Agreement." Kahaian describes this new model as an "alternative but-for scenario in which Plaintiffs had not waived the November 6, 2017 Optional Trade-In Agreement." *Id*. at ¶ 13; *see also id.* at ¶¶ 5(b), 13-16, 19. Under this new model, Kahaian opines that Plaintiffs would have been able to **trade in** to Navistar (not sell to third-parties) the MY2018 tractors at a base value of $62,000 per tractor in lieu of executing the May 2022 letter agreement that forms the basis of Plaintiffs' breach of contract claim. Kahaian then applies "specified deductions," including mileage deductions, and a $750 deduction based on delivery timing under a **July 2021 letter agreement** (a contract which was superseded and replaced by the 2022 letter agreement and under which Plaintiffs are not suing), yielding an expected resale value of approximately $32.08 million. *Id*. at ¶ 14. Kahaian then deducts Plaintiffs' actual resale values on the MY2018 trucks, and a $5.60 million payment Plaintiffs received "in connection with the subsequent no-trade agreement" (which is actually the $6.2 million payment Plaintiffs received under the May 2022 letter agreement, *see* ECF No. 101, PageID.4008-09). He arrives at a $12.29 million figure, with another $1.9 million in maintenance and fuel costs. Ex. A, ¶¶ 15-19.

Notably, on April 28, 2026, Navistar moved to exclude evidence or argument regarding damages for forfeited trade-in rights, noting that GLS's initial disclosures "contain no reference to damages calculated by reference to the trade-in rights" and that "when Plaintiffs supplemented the R&Os to address the fraud claim, they did not include trade-in rights as the category of damages." ECF No. 101, PageID.4014-15. Navistar highlighted that in Plaintiffs' supplemental responses to Navistar's damages interrogatories, they (i) "refer[red] Navistar to the report of its expert, Michael N. Kahaian, *which was disclosed on August 23, 2024*," and (ii) "[w]ith respect to the fraud claim, GLS seeks (1) exemplary damages . . . and (2) its costs and attorneys' fees." *Id*.; ECF No. 59-1, PageID.2339. Notably absent from this sworn response is any reference to damages based on forfeited trade-in rights. Furthermore, when Plaintiffs sought leave to amend their complaint to add a fraud claim in September 2024, they expressly represented to this Court that the "distinct damages theories arising from the fraud claim—attorneys' fees and exemplary damages—are not subjects of expert testimony." ECF No. 25, PageID.202-03. Plaintiffs argued there would be "no need for those matters to be addressed in expert reports" and "[n]o discovery extension is required." *Id*.

Ten days after Navistar's motion *in limine*, Plaintiffs served Kahaian's Second Amended Report, disclosing the forfeited and disclaimed Terminated Agreements Damages.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a)(2)(D), "[t]he default deadline for expert disclosures is 'at least 90 days before the date set for trial or for the case to be ready for trial,'" but the "district court can modify the default deadline by court order." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024) (quoting Fed. R. Civ. P. 26(a)(2)(D)). This disclosure "must be accompanied by a written report—prepared and signed by the witness" containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B).

When a party fails to comply with these timing requirements, that party is barred from "using information or a witness 'to supply evidence on a motion, at a hearing, or at a trial.'" *RJ Control Consultants, Inc.*, 100 F.4th at 668 (citing Fed. R. Civ. P. 37(c)(1)). Exclusion under Rule 37(c)(1) "is automatic and mandatory" unless the untimely party "can show its nondisclosure was substantially justified or harmless." *Id*. (cleaned up); *see also Ross v. Am. Red Cross*, No. 2:09-CV-905, 2012 WL 2090513, at \*3 (S.D. Ohio Jan. 26, 2012) (finding that exclusion of expert's "new opinion" that was "not contained in his expert report" was "automatic and mandatory" and that failure to comply with Rule 26 was not substantially justified), *aff'd*, 567 F. App'x 296 (6th Cir. 2014); *Muflihi v. U.S. Steel Corp.*, No. 22-CV-

5

12609, 2025 WL 2656035, at *6 (E.D. Mich. Sept. 16, 2025) (excluding late disclosure of expert's economic damages opinions).

The rule applies equally to new and untimely opinions outside the scope of an expert's original report. *See*, *e.g.*, *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 2:08-CV-12247, 2010 WL 891695, at *4 (E.D. Mich. Mar. 8, 2010) (granting motion *in limine* to limit expert's trial testimony to "the subject matter he or she timely disclosed in his or her Rule 26(a)(2)(B) expert report."); *Asher v. Unarco Material Handling, Inc.*, No. CIV.A. 6:06-548-DCR, 2008 WL 2596612, at *3 (E.D. Ky. June 25, 2008) (excluding expert's "new opinion testimony" that "was outside the scope of opinions contained in the original reports.").

Courts in this circuit analyze five factors, outlined in *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015), to determine whether the untimely party's disclosure is substantially justified and harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*RJ Control Consultants, Inc.*, 100 F.4th at 668-69 (citing *Howe*, *supra*). "The burden of providing substantial justification or harmlessness is on the offending party." *Kelliher v. DXC Tech. Servs., LLC*, No. 19-13316, 2021 WL 5545955, at *2 (E.D. Mich. Feb. 22, 2021) (excluding untimely expert witness disclosure) (Goldsmith,

6

J.); *see also Moonbeam Cap. Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-CV-12606, 2020 WL 1502004, at *7 (E.D. Mich. Mar. 30, 2020) ("[U]nless Defendant can show that its violation of Rule 26(a) was either justified or harmless, the preclusion sanction is automatic and mandatory.") (citation omitted).

## ARGUMENT

### A. Kahaian's New Terminated Agreements Damages Opinions are Untimely.

Kahaian's new Terminated Agreements Damages opinions and theory are undisputedly untimely. The Court's CMO required Plaintiffs to make their Rule 26 expert witness disclosures and reports by August 23, 2024. ECF No. 13. Kahaian's original report contains no Terminated Agreements Damages opinions. Not until May 8, 2026, via the Second Amended Report, did Kahaian disclose this new damages theory related to Plaintiffs' forfeited trade-in rights.

To the extent Plaintiffs contend that Kahaian's newly-disclosed Terminated Agreements Damages theory is mere supplementation under Rule 26(e)(2), the contention fails. Rule 26(e)(2) certainly may permit supplementation "to correct 'previously supplied information,'" and even under a liberal reading of the rule, may

7

permit extrapolation or introduction of new data not previously available.[2] But the rule "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Columbia Invs., LLC v. Lowe's Home Centers, LLC*, No. 1:23-CV-00017, 2024 WL 6971081, at *4 (M.D. Tenn. Sept. 16, 2024) (citation omitted). "A party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report." *Moonbeam Capital Investments, LLC*, 2020 WL 1502004, at *6 (citing Moore's Federal Practice 3d, § 26.131[2] and *Bean v. Meridian L.L.C. v. Suzuki Motor Co. (In re C.F. Bean L.L.C.)*, 841 F.3d 365, 371-72 (5th Cir. 2016) (disclosures must be "supplemental" and should not add new information or expand expert analysis and opinions)); *Saint-Gobain Corp. v. Gemtron Corp.*, No. 1:04 CV 387, 2006 WL 1307890, at *2 (W.D. Mich. May 9, 2006) ("The Court cannot accept a definition of supplementation which would essentially allow for unlimited bolstering of expert opinions.") (citation omitted).

---

[2] Except for Appendix II, paragraphs 13-19, and any accompanying supporting data as outlined herein, Navistar is not now challenging other portions of Kahaian's Second Amended Report in which he corrected his previous reliance on inaccurate data as untimely. However, the remainder of the Second Amended Report is subject to the same methodological and other flaws as outlined in Navistar's pending motion to exclude. *See* ECF No. 64.

Here, Kahaian's Terminated Agreements Damages opinions are based on an entirely new theory and do not provide any corrective information. They are also based on information and evidence available to Kahaian at the time of his original report in August 2024. Kahaian cited the parties' November 6, 2017 OTB Agreement in his original report. ECF No. 64-4, PageID.2458, ¶ 13. And to further inform his new Terminated Agreements Damages opinions, he claims he "understand[s] that Plaintiffs assert that [Navistar's] alleged conduct caused them to forgo this agreement," which is what Plaintiffs have claimed in this case from the very beginning. ECF No. 1-1, PageID.12, ¶ 23 (GLS's original complaint alleging that "GLS would never have waived its trade-in rights … in the absence of Navistar's agreement to the earlier production schedule[.]").

Thus, Kahaian's new Terminated Agreements Damages opinions are untimely and not proper supplementation under Rule 26(e).

## B. Plaintiffs Cannot Satisfy Their Burden to Excuse the Untimely Disclosure.

Plaintiffs cannot satisfy their burden of establishing substantial justification and harmlessness. All five factors favor exclusion.

***Factor one (surprise) overwhelmingly favors exclusion***. Plaintiffs never disclosed trade-in rights as a damages theory in their initial disclosures. When Plaintiffs amended their complaint to add a fraud claim, they represented that their fraud damages required no expert testimony. And when they served sworn

interrogatory responses regarding damages, they simply referred Navistar to Kahaian's original report, served on August 23, 2024, which contains nothing about Terminated Agreements Damages.

Plaintiffs thus affirmatively represented—to this Court and under oath in discovery—that they were not seeking trade-in rights as damages and that their fraud damages did not require expert testimony. Navistar was entitled to rely on these representations. The sudden appearance of a $12.29 million damages opinion on this new theory, disclosed for the first time approximately twenty months after the expert disclosure deadline and on the eve of trial, *after* Plaintiffs disclaimed this category of damages on *both* of their causes of action, is the very definition of unfair surprise. *See Moonbeam Capital Investments, LLC*, 2020 WL 1502004, at *12 ("[T]he record demonstrates that the late disclosure of [a new expert opinion] was a surprise … neither Wharton's initial May 24, 2019 report, nor his June 25, 2019 rebuttal report, provided any opinion regarding the possibility of [the new opinion].").

***The second factor, potential cure, overwhelmingly favors exclusion***. Expert discovery is closed and trial is one month away. Navistar has already deposed Kahaian, already filed a pending *Daubert* challenge directed to his prior opinions, and has no opportunity to depose Kahaian again—much less make a fair and fulsome *Daubert* challenge on Kahaian's new Terminated Agreements Damages opinions.

*Even if* Navistar was given the opportunity to re-depose Kahaian, that would not be "an appropriate remedy." *Id*. at *12. As the Court held in *Moonbeam*:

> [T]o adequately cure the surprise, Plaintiffs would have to be given the opportunity to re-depose Wharton regarding the mockup and his new opinion, after conferring with their own expert, Tognetti. This solution would, however, require the Court to re-open discovery, which closed on August 2, 2019, to schedule an additional deposition and to give Tognetti sufficient time to alter his own expert report and provide a rebuttal, if necessary.

*Id*. Such relief would also be inconsistent with the Court's directive, on several occasions, that trial will proceed on June 23 as currently scheduled. ECF No. 78. *See also Muflihi*, 2025 WL 2656035, at *7 (noting that the first and second *Howe* factors favored exclusion because "[c]ontrary to Plaintiff's position, Defendant could not cure the surprise because it could not depose the expert and file motions challenging the expert's qualifications or conclusions by the motion *in limine* deadline set by the Court."); *Columbia Invs., LLC*, 2024 WL 6971081, at *7 ("Defendant has no ability to cure the surprise because, as set forth above, the July Report was disclosed after the deadline to depose experts. It was also served after Defendant had already disclosed its own expert report.").

In addition, the Terminated Agreements Damages theory interjects brand new issues to the case, all of which require supplemental discovery. For example:

- Kahaian's new model assumes the enforceability of the (terminated and superseded) 2021 Letter Agreement. But at the time that agreement was

terminated and superseded, Navistar had a *different* impracticability defense to the enforcement of that agreement (*i.e.* the changes in the known supply environment after it was signed in July 2021) than the impracticability defense the parties have litigated thus far (related to the 2022 Letter Agreement).

- The 2022 Letter Agreement which superseded and replaced the terminated agreements provided Plaintiffs with different (and upgraded) trucks, additional warranty coverage, and other benefits which Plaintiffs accepted and received. Reverting to damages based upon the Terminated Agreements would require additional economic work and discovery to quantify the value of those benefits.

- In a world in which Plaintiffs traded in their old trucks to Navistar, Navistar would have received ownership of the trucks and Navistar would be entitled to calculate the value it could have received from the trucks, which likely would include analysis of new Navistar Used Truck data, in order to restore the parties to the status quo ante.

Finally, Navistar would have to be allowed to raise and brief issues related to the reliability of Kahaian's methodology and the legal viability of seeking damages based upon the terminated agreements.

***The third Howe factor—disruption to the trial—also overwhelmingly favors exclusion***. Allowing Kahaian's newly-disclosed Terminated Agreements Damages

would substantially disrupt trial preparation and potentially the trial itself. Permitting a new expert disclosure and a $12.29 million damages theory at this stage would necessitate re-opening expert discovery, new rebuttal opinions, and delay the resolution of this case. *See Columbia Invs., LLC*, 2024 WL 6971081, at *7 (noting that the third *Howe* factor favored exclusion of an expert's "new opinions" because "[p]ermitting a new expert disclosure nearly three months after the deadline to do so, a few days after the deposition deadline, and only a few months prior to trial would impact the case management schedule and plan and most likely necessitate *post hac* deadline extensions."); *Moonbeam*, 2020 WL 1502004, at *13 (noting the third factor favored exclusion because "[r]e-opening discovery to cure any surprise could delay trial.").

And as discussed *supra*, the parties would essentially be forced to spend trial time litigating the viability of Navistar's defenses to enforcement of the July 2021 Letter Agreement—significantly disrupting the trial about an alleged breach of the 2022 Letter Agreement.

***Fourth, the importance factor does not save Kahaian's untimely opinion***. In fact, Plaintiffs are hard-pressed to argue Kahaian's Terminated Agreements Damages opinion—which, according to Kahaian, is merely an "alternative scenario of economic damages"—is important at all. That is because Plaintiffs themselves swore under oath that their damages did *not* include forfeited trade-in rights, and

represented to the Court that their fraud claim did not require expert testimony. Plaintiffs have already advanced their primary damages theory, approximately $22 million in economic damages based on lost resale value, repair costs, and fuel costs. Plaintiffs cannot now claim this theory is so important that it justifies circumventing the scheduling order, the Federal Rules of Civil Procedure, their own sworn interrogatory responses, and their representations to the Court.[3] *See Moonbeam*, 2020 WL 1502004, at *13 (noting that expert's new opinion was only "tangentially important in relation to the most material issues" and thus favored exclusion).

***Finally, the fact that Plaintiffs can offer no convincing reason for Kahaian's untimely disclosure of Appendix II favors exclusion***. There is no new evidence or facts upon which Plaintiffs can claim support Kahaian's Terminated Agreements Damages opinions. As indicated above, his new damages theory is based on the parties' OTB Agreement executed on November 6, 2017, and on Plaintiffs' contention that they wished they did not waive their trade-in rights, which they made from this case's very inception. Kahaian was retained and issued his initial report in August 2024; he could have calculated the alternative damages theory at that time using the same information underlying the report. *See Columbia*

---

[3] Even if Plaintiffs could claim importance, the other factors would greatly outweigh it, because "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019).

*Invs., LLC*, 2024 WL 6971081, at \*9 (noting that the plaintiff's expert "could have set forth these opinions prior to its expert disclosure deadline."). There is no proper explanation for the late disclosure.

Kahaian's Terminated Agreements Damages opinions are undisputedly untimely. And Plaintiffs cannot demonstrate that their failure to disclose this new theory was substantially justified or harmless. The Court should exclude Kahaian's newly-disclosed damages theory under Rule 37. *See Gardner v. United States*, No. 21-CV-02109, 2022 WL 5434338, at \*3 (W.D. Tenn. July 20, 2022) (noting that "excluding an expert witness's testimony for failure to comply with the court's expert disclosure deadline is an available option that courts within this circuit commonly exercise, even where if [sic] effectively precludes a plaintiff from recovering claimed damages in whole or in part.") (citation omitted).

<u>**CONCLUSION**</u>

For the foregoing reasons, Navistar respectfully requests that the Court grant this motion and exclude Appendix II of Kahaian's Second Amended Report, and for any further relief that the Court deems just and appropriate.

Dated: May 22, 2026

Respectfully submitted,

Kevin M. Jakopchek (IL 6317040)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
kevin.jakopchek@lw.com

/s/ *Anthony C. Sallah*
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
BARNES & THORNBURG LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
Tel: (616)-742-3930
smurphy@btlaw.com
asallah@btlaw.com

## LOCAL RULE CERTIFICATION

I, Anthony C. Sallah, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Anthony C. Sallah*
*Attorney for Defendant Navistar, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 22, 2026, the foregoing was electronically filed with the CM / ECF system which will send notification of such filing to the e-mail addresses registered in the CM / ECF system, as denoted on the Electronic Mail Notice List.

/s/ *Anthony C. Sallah*
*Attorney for Defendant Navistar, Inc.*