UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

      Plaintiffs,

v.

      NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

---

## JOINT MEMORANDUM REGARDING OBJECTIONS TO EXHIBITS

Pursuant to the Court's May 18, 2026 Order, Plaintiffs GLS Leasco, Inc. and Central Transport, LLC and Defendant Navistar, Inc. submit the following joint memorandum regarding the use of exhibits that were not identified on a party's preliminary trial exhibit list.

Upon the exchange of exhibit lists, Plaintiffs objected that Defendant had listed 431 exhibits in the Joint Final Pretrial Order that were not listed on Defendant's October 23, 2024 Preliminary Trial Exhibit List (ECF No. 39). Plaintiffs cited the Court's Order Amending the Case Management and Scheduling Order (ECF No. 78), which states that "[a]bsent good cause, only those exhibits that have been listed on an exhibit list previously filed and in the proposed JFPO may be

offered into evidence...." (ECF No. 78, PageID.3059, § II(B)(6)(h)(ii).) Plaintiffs initially objected to 431 of Defendant's 603 exhibits on this ground.

The Court's May 18, 2026 Order required the parties to meet with Special Master Nathan Fink to resolve the use of these exhibits at trial. The parties have partially resolved the issues, but differences remain as follows.

**Agreed Good Cause:** The parties agree that the following would constitute "good cause" for failing to identify exhibits on the parties' preliminary trial exhibit lists and that such documents should be allowed to be marked for trial exhibits:

- Exhibits produced by the other party or a third party after the October 22, 2024 deadline for preliminary trial exhibit lists;

- Documents produced by third parties in September 2024 in response to Plaintiffs' subpoenas;

- Exhibits used at deposition;

- Documents expressly relied on in the parties' experts' reports, but not otherwise included in the list of documents reviewed that were attached to the experts' reports;

- Documents that are encompassed within longer email chains that fall into one or more of the preceding categories of exhibits.

This leaves 48 exhibits on Defendant's trial exhibit list to which Plaintiffs still object (*see* Ex. A)[1] and 30 exhibits on Plaintiffs' trial exhibit list to which Defendant objects (*see* Ex. B and *infra* at Other Cause Issues in Dispute).

---

[1] Defendant's Exhibit A excludes exhibits listed on Plaintiffs' preliminary exhibit list. It is Plaintiffs' position these too should be excluded. Thus, the total Plaintiffs object to is 329.

**Remaining Disagreement:** In addition, with respect to Defendant's exhibits, Plaintiff disagrees that Navistar should be entitled to rely upon (i) exhibits listed on Plaintiffs' (not Defendant's) Preliminary Exhibit List (ECF No. 40), and (ii) individual documents from within catch-all categories on Defendant's Preliminary Exhibit List (*i.e.*, "Any exhibit identified by Plaintiffs.").

Defendant disagrees that it is required to show "good cause" for these exhibits, and even if it does, Defendant has established good cause and Plaintiffs have not identified any prejudice as a result of the documents being listed as exhibits.

**Plaintiffs' Position Regarding Defendant's Remaining**
**Exhibits on Which There is Disagreement**

The whole purpose of the preliminary exhibit list is to tell the other side what evidence it might face from *that party*. The Case Management Order's language is party-specific: the disclosing party must "separately identify[] those that *it* expects to offer at trial and those *it* may offer if the need arises." (ECF No. 13, PageID.74, § I(D).) That tracks Federal Rule of Civil Procedure 26(a)(3)(A)(iii), which likewise requires "separately identifying those items *the party* expects to offer" at trial.

The list, in other words, is not meant to catalog the existence of documents in the abstract. It is meant to identify what the listing party intends to use. That the other party may have preliminarily considered using a document is beside the point. What matters is what *Defendant* intended to offer. Defendant cannot revive exhibits that Plaintiffs have since dropped from their exhibit list and treat them as its own.

3

Navistar's catchall theory fails for the same reason: it defeats the disclosure rule's basic purpose. As one court has held, a party's listing of "'[a]ny document produced by any party ... in this case during discovery' defeats the very purpose of requiring pretrial disclosure." *See U.S. Equal Emp. Opportunity Comm'n v. Ohio State Univ.*, 2023 WL 1070245, at *2 (S.D. Ohio Jan. 27, 2023). Courts routinely reject such designations as they do not do what an exhibit list exists to do. *Stansbury v. Hopkins Hardwoods, Inc.*, 2018 WL 2977439, at *2 (W.D. Ky. Mar. 2, 2018) ("'catchall descriptions' . . . do nothing to identify what exhibits [Defendant] intends to introduce at trial"); *Burkhart v. R.J. Reynolds Tobacco Co.*, 2014 WL 12617550, at *7 (M.D. Fla. Apr. 30, 2014) (party cannot use "catch-all exhibits that incorporate by reference... documents not individually disclosed" and must "specifically and individually identify each document").

The good cause categories the parties have agreed to are consistent with that purpose; Defendant's are not. Documents another party produced after the exhibit deadline could not reasonably have been listed by the deadline, so their omission is excusable. Deposition exhibits—which in this case may effectively stand in as trial testimony—already put the other side on notice of the specific documents at issue for trial. Defendant's open-ended catchall does the opposite. A category like "anything the other side might use" identifies nothing, and is precisely what the Federal Rules of Civil Procedure forbid. Defendant initially listed 87 exhibits. (*See*

ECF No. 39) Its broad catchalls are contrary to the letter and spirit of the rules and are insufficient.

Defendant's response is entirely premised on the use of the "Any exhibits listed by Plaintiffs" catch-all. This fact undercuts their argument because they presume such catch-all makes them admissible. In contrast, Plaintiffs are not relying on catch-alls beyond what the parties agreed to as part of this mediation. Yet Defendant is critical of Plaintiffs for compromising, which reduced the list of exhibits out of compliance with the court's exhibit list order from 431 to 329[2].

Finally, Defendant's argument about changing theories is false. Plaintiffs brought a fraud claim when discovery revealed the fraud. Defendant stipulated to that amendment to the Complaint and then stipulated to a new exhibit list deadline. The contract claim has always been premised on, and still is, Navistar's late delivery of trucks. Fact questions of intent will be determined by the jury. "Because each side has supported its view of what schedule the 2022 agreement required, there is a genuinely disputed factual issue." (ECF No. 72, PageID.2972.)

---

[2] The exhibits were to be exchanged on May 12. Defendant was a day late. Regardless, Plaintiffs have had this massive list for two weeks, not five.

**Defendant's Position Regarding Defendant's Remaining
Exhibits on Which There is Disagreement**

**I.   Defendant Need Not Establish Good Cause For Exhibits (Or Exhibit
Categories) On Plaintiff's Preliminary Exhibit List.**

Plaintiffs mischaracterize Defendant's prior exhibit list.  It did not seek to list
"any document produced by the other party" or "anything else the other side might
use."  Instead, rather than relisting every document listed on Plaintiffs' exhibit list,
Defendants simply included in its list "any exhibit identified by Plaintiffs."  Notably,
Plaintiffs did the same, listing as a line on their preliminary exhibit list "Any
Relevant, Admissible Exhibit on Defendant's Exhibit List," in addition to dozens of
other catchall categories that did not identify any specific documents.  Plaintiffs
therefore had notice of the documents on Navistar's current exhibit list.

Plaintiffs try to escape this reality by arguing that the parties should be
restricted to their own exhibit list.  First, as noted above, these documents were on
Defendant's exhibit, giving Plaintiff notice that Defendant may use each exhibit that
Plaintiffs had listed.  But even putting that aside, the plain text of the scheduling
order does not restrict use at trial of a document that was on that particular party's
exhibit list: "Absent good cause, only those exhibits that have been listed on an
exhibit list previously filed and in the proposed JFPO may be offered into evidence,
except for rebuttal exhibits that could not be reasonably anticipated before trial."
(ECF No. 78, PageID.3059). Exhibits listed by Navistar on its JFPO trial exhibit list

6

that were both on "an" exhibit list (*i.e.*, Plaintiffs' or Navistar's preliminary exhibit lists), and in the JFPO, do not require any additional showing of good cause. Indeed, although Plaintiffs contend—despite the plain text—that Navistar cannot identify or use documents that were on Plaintiffs' exhibit list, Navistar is not aware of any authority, from any jurisdiction, that precludes a party from using documents that the other party itself put on an exhibit list. Nor would any rule make sense, as the purpose of exhibit lists is to give notice, and Plaintiffs clearly have notice of documents they themselves identify.

Second, there are no "catch-alls" on Navistar's JFPO trial exhibit list—each document is specifically and separately identified on Navistar's list. Instead, *Plaintiffs* identified specific categories of documents (*e.g.*, "All MBR Reports produced by Navistar, as needed") on their preliminary exhibit list in October 2024, and are now trying to argue that their own categorical identifications are insufficient to give themselves notice.

That about-face is wrong—courts have allowed catch-all categories on exhibit lists produced during discovery, and it is only when the parties are "preparing the Joint Final Pretrial Order," as we are now, the preference is to "eliminate those general or catch-all exhibits of the nature commonly associated with discovery requests or, in the alternative, carve up such general or catch-all exhibits and specifically identify the separate and identifiable portions of those 'documents' to

7

identify the admissible exhibit(s) therein." *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 2:08-CV-12247, 2010 WL 764368, at \*3 (E.D. Mich. Mar. 2, 2010). That is exactly what Navistar has done.

Indeed, the very out-of-district case cited by Plaintiffs (i) involved a motion to compel a compliant *trial* exhibit list, not a discovery exhibit list, filed approximately one month before trial, and (ii) even noted that Rule 26(a)(3) (when applied to trial exhibit lists) permits "voluminous items of a similar or standardized character to be described by meaningful categories." *U.S. Equal Emp. Opportunity Comm'n v. Ohio State Univ.*, No. 2:20-CV-04624, 2023 WL 1070245, at \*1 (S.D. Ohio Jan. 27, 2023). So, for example, when Plaintiffs included a "catchall" category on their discovery exhibit list of "All Orders and Production Update reports," (ECF No. 40, PageID.689, Ex. 976), Navistar appropriately and separately identified *each* of the "Orders and Production Update Reports" on its trial exhibit list, by bates number. Notably, the case also does not involve an attempt—like Plaintiffs' here— to *bar* the use of exhibits, but rather to force an *identification* of exhibits--*which Navistar already did* in the JFPO. *Id*. at \*1 (addressing an "expedited motion to compel defendant to file" a compliant exhibit list in advance of trial).

Thus, Navistar need not even satisfy any good cause standard.  Even if it did, Plaintiffs cannot be prejudiced by Navistar's identification of a document identified on Plaintiffs' own previously filed exhibit list, and Defendants by incorporation. *See*

8

*Leary v. Daeschner*, 349 F.3d 888, 907-08 (6th Cir. 2003) (requiring a "significant showing of prejudice" in order to find no good cause under Fed. R. Civ. P. 16(b)).

## II.    Navistar Has Satisfied Good Cause.

The above should end the inquiry.  But Navistar has also attached an updated spreadsheet identifying the remaining exhibits on Navistar's trial exhibit list not expressly identified on a prior exhibit list, and not otherwise included in Plaintiffs' self-serving "good cause" categories that noticeably changed during negotiations as Plaintiffs realized more and more of their own exhibits were not on their prior exhibit list. Navistar has added an "Asserted Good Cause" column whereby Navistar provides (in addition to this submission) a good cause reason for these remaining exhibits. The remaining documents primarily include (i) continuations of email chains for exhibits listed on a prior exhibit list or deposition exhibit[3]; (ii) documents produced by a third-party where a GLS representative was included but GLS did not produce it, and (iii) reports and email communications concerning Plaintiffs, supply chain issues, and/or production updates, each of which are also encompassed within document categories on Plaintiffs' preliminary exhibit list. For the remaining 48

---

[3] Plaintiffs object to many of Navistar's other exhibits as incomplete in instances where there are continuing emails changes beyond the one identified on Navistar's list.  Given this objection, Plaintiffs should want inclusion of these more fulsome email chains.

documents listed, Navistar has satisfied good cause to include them on Navistar's trial exhibit list for multiple, independent reasons.

First, Plaintiffs' ever-shifting case theories, and case developments after preliminary exhibit lists were filed, warrant good cause for Navistar's remaining exhibits. Among other things:

- GLS filed a Second Amended Complaint to include a newly-asserted fraud claim on September 24, 2024 – less than one month before the previously filed exhibit lists. This significant case development warrants inclusion of the remaining uncontested exhibits on Navistar's trial list. As the spreadsheet identifies, many of the remaining exhibits are reports and email communications concerning Plaintiffs or supply issues in the truck market (including many communications relating to Bendix) that go to intent or state of mind. Conveniently, the documents also are encompassed expressly within document categories on Plaintiffs' preliminary exhibit list, such as "Ex. 978: All Reports produced by Navistar regarding Supply Chain and Material Shortage Issues, as needed," and "Ex. 976: All Orders and Production Update reports, as needed."  If Plaintiffs agree that documents produced by third parties in September 2024 constitute good cause to add documents, certainly Plaintiffs adding an entirely new theory of liability in that same month likewise warrants additional documents.

10

- In addition, Plaintiffs asserted a new breach of contract theory during summary judgment briefing after the date of the previously filed exhibit lists. In particular, at summary judgment, Plaintiffs proffered a new, "second breach theory" that Navistar failed to deliver all trucks by the end of June, as opposed to their breach theory prior to summary judgment (now abandoned). (ECF No. 72, PageID.2966-67). Abandoning one breach theory for another raises new issues, particularly given the parties' dispute concerning the scope of the agreement at issue.

- Moreover, after the parties filed preliminary exhibit lists in October 2024, the parties conducted at least seven more depositions, Navistar filed a motion to compel discovery (ECF 42), and the parties conducted additional significant discovery activities. That is, issues for trial crystallized even more since the date of the previously filed exhibit lists. Indeed, GLS did not take Navistar's 30(b)(6) deposition until December 4, 2024, Navistar did not take a deposition concerning Plaintiffs' fraud claim until after the date of the previously filed exhibit lists, the parties conducted expert depositions, and the Court did not render its opinion on Navistar's motion to dismiss the fraud claim, and the parties' summary judgment motions, until September 26, 2025.

11

These additional facts warrant good cause for the additional exhibits on Navistar's trial exhibit list.

Plaintiffs' continued objections to Navistar's exhibits are based on shifting and self-serving definitions of good cause. For example, Plaintiffs now propose that good cause includes "Documents expressly relied on in the parties' experts' reports, **but not otherwise included in the list of documents reviewed that were attached to the experts' reports."** Plaintiffs offer no logic for this qualifier. Despite Plaintiffs' expert serving supplemental reports well after Navistar's preliminary exhibit list, Navistar would not be able to cross-examine Plaintiffs' expert with the list of documents that he reviewed in preparation of the report. And, Plaintiffs now propose that they satisfy good cause for certain of their new exhibits not on a prior exhibit list because it was "expressly relied on in the parties' experts' reports," when such documents are not identified in Plaintiffs' expert report at all.

Plaintiffs also propose that good cause includes documents produced by the opposing party after preliminary exhibit lists were filed, but not that own party's documents. However, Plaintiffs now defend certain of their exhibits that Plaintiffs, in fact, produced after their preliminary exhibit list. In addition, during the meet and confer process, Plaintiffs' logic for excluding documents that Navistar produced after the preliminary exhibit list was that Navistar should have amended to add such documents to its exhibit list. But at the same time, Plaintiffs agree that there is good

cause for the inclusion of documents produced by third parties in *September* 2024 (before the preliminary exhibit lists were filed). The inconsistent positions have no basis in any actual definition of good cause, but are simply gamesmanship based upon which "new" documents Plaintiffs have on their JFPO trial exhibit list.

Instead of attempting to follow Plaintiffs' continually evolving good cause standard, the Special Master should take a liberal view and allow the new documents on both parties' trial exhibit lists.

Third, and just as importantly, Plaintiffs have not identified *any prejudice* by the inclusion of any of Navistar's trial exhibits—a necessary prerequisite to opposing good cause. *See Leary v. Daeschner*, 349 F.3d 888, 907-08 (6th Cir. 2003) (requiring a "significant showing of prejudice" in order to find no good cause under Fed. R. Civ. P. 16(b)).

Considering (i) the parties have had each others' lists more than five weeks before trial begins, and there are no non-produced documents on the list, (ii) Plaintiffs' ever-shifting good cause standard and case theories, (iii) Plaintiffs still fail to identify any actual prejudice from any identified exhibits, and (iv) the number of significant case developments since the parties exchanged preliminary lists, Navistar's respectfully submits that the Special Master should find good cause for all documents on each side's list and let the parties try the case on the merits.

## **Plaintiff's Trial Exhibit List - Remaining Disagreement**

Plaintiffs also offer the following "good cause" justifications for the 30 exhibits which were not on their Preliminary Exhibit List (ECF No. 40) and do not fall into the categories the parties have agreed upon above:

1.    P-162

    a.    Plaintiffs' Position: This is the final version of monthly delivery tracker. It is not a new or unexpected exhibit. It is a natural extension of the prior monthly reports that were identified.

    b.    Defendant's Position: The "monthly delivery tracker" identified by Plaintiffs is attached to an email dated December 1, 2023. Plaintiffs had this document before their first document production in the case, yet it was not identified on Plaintiffs' preliminary exhibit list. Nonetheless, Plaintiffs' reasoning follows Navistar's reasoning for good cause for certain email communications occurring after an email listed on a preliminary exhibit list, but within the same email chain. Therefore, Navistar has no timeliness objection to Plaintiffs' use of this document—if Navistar is similarly allowed to use the remaining emails in dispute on Navistar's trial exhibit list, which are also "natural extensions" of previously identified documents.

2.      P-164d, 166a, 166b, 166c, 166d, 168a, 169a, 169b, 170l, 170p, 172a, 172b, 172c, 172d, 172f, 172g, 172h, 172i, 174d, 174e, and 174f

a.      Plaintiffs' Position: These documents are correspondence regarding potential 2018 tractor sales that are relevant to Plaintiffs' mitigation efforts. They are all part of a series of communications with potential buyers and Plaintiffs previously identified other communications with these buyers as exhibits. Thus, admission of these exhibits does not add any new potential buyers to the record, create any element of surprise, or change Defendant's approach to the mitigation issue to be tried.

b.      Defendant's Position: These email communications existed prior to Plaintiffs' preliminary exhibit list. Moreover, under Plaintiffs' approach, Navistar would have good cause to rely on any email communication with the same individual regarding a broad, similar subject matter, even if not on a prior exhibit list. Nonetheless, Plaintiffs' reasoning follows Navistar's reasoning for good cause for virtually all remaining disputed exhibits on Navistar's trial exhibit list, including certain email communications occurring after an email listed on a preliminary exhibit list, but within the same email chain. Therefore, Navistar has no objection to Plaintiffs' use

15

of this document as long as Plaintiffs agree to those remaining exhibits in dispute on Navistar's trial exhibit list that are related to any subject matter on which some documents were previously disclosed.

3.    P-175b, 175d, 175e, and 175f

    a.    <u>Plaintiffs' Position:</u> These documents are invoices for the sale of 2018 tractors and support the summary exhibit on which both experts are relying to offset Plaintiffs' damages. They thus fall within the "used by expert" category agreed upon by the parties above. Furthermore, these invoices reflect sales that occurred *after* the deadline for preliminary exhibit lists, meaning that they did not exist at the time that the parties exchanged their preliminary lists.

    b.    <u>Defendant's Position:</u> Plaintiffs do not identify the "summary exhibit on which both experts are relying[.]" They also do not explain how these invoices "support" that summary exhibit. These documents are also not "expressly relied upon" in Plaintiffs' damages expert, Mr. Kahaian's, expert report—contradicting Plaintiffs' unilateral qualifier that good cause includes "Documents expressly relied on in the parties' experts' reports" but not "otherwise included in the list of documents reviewed that

were attached to the experts' reports." In reality, Plaintiffs produced these documents after Navistar filed a motion to compel and after the deadline for prior exhibit lists. If Plaintiffs are entitled to rely upon documents produced by Plaintiffs after their preliminary exhibit list, then Navistar should be afforded the same right—as Navistar has suggested should be allowed for both parties all along.

4. P-187b, 187d, and 187g

    a. <u>Plaintiffs' Position:</u> Written responses to requests for production are not typically used or allowed as exhibits. They are more like depositions – either read as admissions or used to impeach.

    b. <u>Defendant's Position:</u> Plaintiffs' position related their use of RFPs is not related to the purpose of this joint statement, and the admissibility of such exhibits should be considered if and when Plaintiffs seek to use such exhibits. Defendant does not agree that these are admissible."

Please see the above discussion of good cause and the attached tracker.

Respectfully submitted,

/s/*Eric J. Pelton*

KIENBAUM, HARDY, VIVIANO, PELTON & FORREST, P.L.C.
Eric J. Pelton (P40635)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com

*Counsel for Plaintiffs*

Dated: May 26, 2026

/s/*Anthony C. Sallah with permission*

BARNES & THORNBURG LLP
Scott R. Murphy (P68015)
Anthony C. Sallah (P84136)
171 Monroe Ave., N.W. Ste. 1000
Grand Rapids, MI 48903
(616) 742-3930
smurphy@btlaw.com
asallah@btlaw.com

LATHAM & WATKINS, LLP
Kevin M. Jakopchek (IL Bar #6317040)
Kathryn K. George (IL Bar #6306004)
330 N. Wabash Ave., Ste. 2800
Chicago, IL  60611
(312) 876-7700
kevin.jakopcheki@lw.com
katie.george@lw.com

*Counsel for Defendant*

Dated: May 26, 2026

18

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically caused to be filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

/s/ Eric J. Pelton
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com