# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC | Civil Action No. 23-cv-12927 |
| Plaintiffs, | Hon. Mark A. Goldsmith |
| v. | Magistrate Judge Anthony P. Patti |
| NAVISTAR, INC. | |
| Defendant. | |

**DEFENDANT NAVISTAR, INC.'S MEMORANDUM ON OUSTANDING**
**ISSUES FROM JOINT LIST OF EVIDENTIARY ISSUES**

Defendant Navistar, Inc. ("Navistar") respectfully submits this memorandum to address four remaining, non-resolved issues from the Joint List of Evidentiary Issues filed on June 4, 2026 (ECF No. 119).

## I. ISSUE 1: JUSTIN FINK AND JIM LOLLIS ARE INDEPENDENT ACTORS NOT UNDER NAVISTAR'S CONTROL

Plaintiffs seek to admit statements by Justin Fink and Jim Lollis as non-hearsay statements of Navistar's agent under FRE 801(d)(2). *See* Exs. A-C (P-2, P-12, P-50). Plaintiffs cannot meet their burden of proving an agency relationship.

An agent "act[s] on the principal's behalf and subject to the principal's control," *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015), "with power to affect the legal rights and duties of the other person," Restatement (Third) Of Agency § 1.01, cmt. c (2006), and, when applicable, to "bring about, modify, accept performance of, or terminate contractual obligations between his principal and third persons." *Miller v. Joaquin*, 431 F. Supp. 3d 906, 912 (E.D. Mich. 2019) (citation omitted).

There is no evidence that Fink and Lollis acted as Navistar's agents. In fact, the dealer agreement between Navistar and Allegiance expressly states: "The Dealer is not Company's agent in any respect and is not authorized to incur any obligations or make any promises or representations in its behalf." Ex. D (P-186) at NAV00134250. And for the 2021 and 2022 Agreements, Allegiance and Summit (Fink's and Lollis's employers) were separate signatories to the agreements rather

1

than signing as agents on behalf of Navistar. *See* ECF No. 51-8, PageID.1136; ECF No. 50-2, PageID.904. "Because [Lollis and Fink] [were] never authorized to act on [Navistar's] behalf, but rather only pursuant to contractual obligations, no principal-agent relationship was established." *Keating*, 615 F. App'x at 372. Indeed, "[a]s a general rule, a dealer is not an agent for manufacturers of the products it sells." *Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009); *see also Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 65 (9th Cir. 1973) ("[C]ourts have held consistently that controls of the kinds reserved by [the manufacturer] Chrysler do not create a relationship of agency[.]"). Plaintiffs' cases do not hold otherwise.

In *Harrison v. General Motors*, the court construed facts in the light most favorable to plaintiff, to find plaintiff had sufficiently alleged GM acted through authorized GM dealerships by "direct[ing] consumers to take their vehicles to authorized dealerships for repairs or services" and "'control[ling] the way in which its authorized dealers can respond to complaints' and conduct repairs, among other allegations." 712 F. Supp. 3d 949, 954 (E.D. Mich. 2024). None of those facts exist here. Instead, GLS's President, Kyle Blain, that directed Allegiance to function as its dealer on the 2022 Agreement between Navistar, GLS, and Allegiance. Ex. E (DX-21) ("We would retain a facing dealer which is expected to be Allegiance"); Ex. F (DX-79) ("Need to send an email asking for Jim to remain our salesman if we intend to use Allegiance as our facing dealer.").

Similarly, in *Joaquin*, the court found agency between the defendant and a third-party principal because (i) defendant signed the contract on the principal's behalf, (ii) defendant held himself out as principal's agent, (iii) principal—not agent—paid for services, and (iv) agent provided "uncontradicted testimony that he was acting on behalf of" principal. 431 F. Supp. 3d at 912–14. Here, by contrast, Lollis explicitly disclaimed working under Navistar's control and stated, "I work for the dealership" and as "an advocate for [his] customer." Ex. G (Lollis Dep.) at 14:15–20, 138:2–6. Additionally, Fink testified that Navistar did not place any restrictions on "how the dealership was able to actually… sell Navistar vehicles to end consumers." Ex. H (Fink Dep.) at 19:13–18.

## II. ISSUES 7 & 8: DOCUMENTS EXCHANGED IN THE COURSE OF THE 2021 AND 2022 LETTER AGREEMENT NEGOTIATIONS

Navistar seeks rulings that four documents exchanged in the course of the 2021 and 2022 Letter Agreements negotiations are admissible.

*DX-261* is a June 2021 email correspondence between Lollis and Blain. *See* Ex. I (DX-261). Plaintiffs object on relevance, prejudice, and hearsay grounds.

In DX-261, Lollis attaches a draft of the 2021 Letter Agreement and provides an updated schedule, which he notes is an "estimate[]" that could change "for the better or worse based on supplier issues." The document has "some tendency" to show that Plaintiffs received communications that the production schedules discussed in negotiations were subject to change, which is relevant to the parties'

understanding of the Letter Agreement's language "based on available production." *Id.* at -06; *see* Fed. R. Evid. 401.  FRE 403 is inapplicable because any prejudice to Plaintiffs is not "unfair" prejudice, but rather the legitimate probative force of evidence that undercuts Plaintiffs' narrative and, in any event, no prejudice Plaintiffs could identify would "substantially outweigh" the probative force.

The document is not being offered for the truth of every projected production number or trade value provided, but rather the effect on Blain's notice and knowledge and the parties' state of mind and understanding of negotiations.  In any event, they also reflect Lollis's then-existing intent, plan, and understanding regarding available production under FRE 803(3), and the portions reflecting Blain's communications are opposing-party statements under FRE 801(d)(2).

*DX-21* is a December 2021 email chain between Blain and Navistar's Vice President of Sales, Sean Carmichael.  Ex. E (DX-21).  Plaintiffs object on relevance, prejudice, and hearsay grounds.

As to relevance, the document shows Blain's reaction to the December 16, 2021 meeting in which he was told that GLS's allocation had been reduced to 600 units, the basis of Plaintiffs' fraud claim.  *Id.* at -766.  Blain told Navistar that Central "need[ed] to improve on the reduction to 600 units for the fleets in 2022," had "2500+ trucks that should be traded by the end of 2023," and needed the remaining "435 units" from LT production or other means.  *Id.*  This evidence has "some

4

tendency" to show that instead of a fraudulent scheme, the 2022 Letter Agreement was aggressively pursued by Blain. Again, any "prejudice" is not "unfair" and does not substantially outweigh any probative force.

As to hearsay, the evidence is being offered as to Blain's state of mind and the effect on the listener. In addition, it consists almost entirely of Blain's statements, which are party opponent admissions under FRE 801(d)(2). The only statement from Carmichael—regarding times in which he would be available for a call—is not being offered to prove those were the times he was in fact available.

***DX-43*** and ***DX-88*** are April 2022 communications from Lollis to Blain and Central's senior maintenance coordinator, Brianne Perkins, attaching an updated truck production schedule. Ex. J (DX-43); Ex. K (DX-88). The schedule, which Plaintiffs received over a month before signing, reflected that 390 trucks were not scheduled to begin production until June 2022, and 15 trucks until July 2022. Plaintiffs object on relevance, prejudice, and hearsay grounds.

First, this Court has already recognized the relevance of DX-43 to deny Plaintiffs' summary judgment motion, observing that "a production schedule sent to GLS and Central Transport before they signed the agreement projected that production would go beyond the end of June 2022[.]" ECF No. 72, PageID.2971. The document bears directly on Plaintiffs' knowledge of the production schedule before signing the May 2022 Letter Agreement (as again confirmed by DX-88).

Second, Plaintiffs object as to FRE 403, arguing that the dates were simply generated by Lollis, not Navistar, and therefore unreliable. But Plaintiffs themselves listed numerous of Lollis's production schedules on their exhibit list, *see, e.g.*, Ex. L (P-107), their expert relied upon them (*see* ECF No. 106-2, PageID.4467), and Perkins acknowledged that the updates were "common" and "typical[.]" Ex. M (Perkins Dep.) 101:25–102:6, 82:1–6. And Lollis testified that he "generated" such production schedules using "information out of Navistar's system." Ex. G (Lollis Dep.) at 200:1–3; *see also id.* at 157:9–18 ("Q. So those dates came from Navistar, then? A. Oh Yes."), 194:24–195:12.

Third, hearsay does not bar DX-43 or DX-88 as they are not offered for their truth, and any disputes as to their precise accuracy do not constitute prejudice because they are offered for their effect on Plaintiffs: to show what they knew about the production schedule before signing, that they received written notice of *production* extending past June 2022, and to impeach Plaintiffs' claim that they expected *delivery* by June 2022. And Perkins' statements in DX-88 are party admissions. *See* Fed. R. Evid. 801(d).

In addition, multiple hearsay exceptions apply. DX-43 or DX-88 reflect Lollis's and Perkins's then-existing state of mind under FRE 803(3). And they qualify as recorded recollection under FRE 803(5). Lollis's testimony establishes that he created the spreadsheets at or near the time when his knowledge of the

6

production dates was fresh, using data from Navistar's ordering system, and the documents accurately reflect that knowledge.

## III.   ISSUE 10: REFERENCES TO UNRELATED SETTLEMENTS

Plaintiffs identified as exhibits certain documents that in part contain references to legal settlements with third parties unrelated to Plaintiffs' claims. Such information is not relevant, and textbook unfair prejudice warranting exclusion under Fed. R. Evid. 403. *See McLeod v. Parsons Corp.*, 73 F. App'x 846, 854–55 (6th Cir. 2003). In order to streamline the presentation of evidence at trial, Navistar suggested that it produce new versions of those documents with this information redacted as a cure for the prejudice of such irrelevant information. *See In re Air Crash Disaster*, 86 F.3d 498, 532 (6th Cir. 1996) (recognizing prejudicial portions of otherwise relevant evidence "could be redacted"). Plaintiffs should be ordered to confer regarding redaction of references to irrelevant third-party settlements or be barred from using documents containing such referenced under Fed. R. Evid. 403.

DATED: June 9, 2026                                Respectfully submitted,

|  | /s/ *Kevin M. Jakopchek* |
|---|---|
| Scott R. Murphy (P68015) | Kevin M. Jakopchek (IL 6317040) |
| BARNES & THORNBURG LLP | LATHAM & WATKINS LLP |
| 171 Monroe Ave. NW, Suite 1000 | 330 North Wabash Avenue, Suite 2800 |
| Grand Rapids, MI 49503 | Chicago, Illinois 60611 |
| 616-742-3930 | Tel: (312) 876-7700 |
| smurphy@btlaw.com | kevin.jakopchek@lw.com |

*Attorneys for Defendant Navistar, Inc. n/k/a International Motors LLC*

## LOCAL RULE CERTIFICATION

I, Kevin M. Jakopchek, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Kevin M. Jakopchek*
Kevin M. Jakopchek (IL Bar #6317040)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: 312.876.7700
Fax: 312.993.9767
kevin.jakopchek@lw.com

## CERTIFICATE OF SERVICE

I certify that on June 9, 2026 a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Kevin M. Jakopchek*

9