UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

      Plaintiffs,

v.

NAVISTAR, INC.,

      Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs' Trial Brief re: Disputed Evidentiary Issues 1, 7, and 8
Identified in ECF No. 119.**

## Argument

I.     **Communications from dealer personnel Fink and Lollis concerning the GLS transactions are admissible against Navistar as opposing-party statements under Fed. R. Evid. 801(d)(2)(D).**

GLS seeks a ruling that communications by Summit Truck Group and Allegiance Trucks personnel—primarily CEO Justin Fink and fleet sales manager Jim Lollis—regarding the 2021 and 2022 co-op truck agreements are admissible non-hearsay statements made by Navistar's "agent… on a matter within the scope of that relationship and while it existed" under Fed. R. Evid. 801(d)(2)(D). The existence of an agency relationship is a preliminary matter for the Court under Fed. R. Evid. 104(a), as determined by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). The Court may consider the statements themselves in deciding this. Fed. R. Evid. 801(d)(2) (final sentence).

An "agent" under Rule 801(d)(2) is determined by reference to "common law agency doctrine." *United States v. Wiedyk*, 71 F.3d 602, 605 (6th Cir. 1995). An "agency" relationship is one "in which one person… acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person." Restatement (Third) of Agency § 1.01 (2006). A person who negotiates and sells another's goods to third parties for a commission, and speaks with buyers on the seller's behalf, is the seller's agent. *Miller v. Joaquin,* 431 F. Supp. 3d 906, 912-14 (E.D. Mich. 2019).

With respect to dealer-manufacturer relationships, this Court has held that a party plausibly alleged a dealership was an agent of General Motors based on "allegations that GM regularly supervised dealership operations, required reports on and contributed resources to sales, and promoted its brand at dealership locations." *Kiriacopoulos v. Gen. Motors LLC*, 2023 WL 2789622, at \*14 (E.D. Mich. Apr. 5, 2023) (Goldsmith, J.) (noting control over the transaction as the test). Another court likewise held that—if proven true—facts establishing that a vehicle manufacturer directed its customer to use a particular dealership for repairs and warranty services, and controlled how dealers performed those repairs would establish agency. *Harrison v. Gen. Motors, LLC*, 712 F. Supp. 3d 949, 953-54 (E.D. Mich. 2024).

Here, the established facts are far stronger and—for evidentiary purposes under Rule 104—support a finding that the dealership (and its agents Fink and Lollis) were Navistar's agents for the transactions at issue:

- ***Navistar led the deal.*** Navistar and GLS had a "co-op" deal. Ex. C, Carmichael Dep. 79:7-11. In a "co-op" deal, the "transaction was led by a Navistar individual," unlike a standard sale where "the dealer led the transaction." Ex. A, Belisle Dep. 16:10–15. Carl Webb agreed that "Navistar executives were actually involved in making those decisions directly." Ex. B, Webb 30(b)(6) Dep. 99:24-100:7.

- ***Navistar retained risk of loss.*** A co-op deal arises when the customer "is larger than what a dealer is comfortable taking risk of loss on," so "Navistar retains risk of loss" throughout the transaction. Ex. A at 17:20–18:2.

- ***Navistar set the price***. In a standard sale, the dealer "is completely free to set their own selling price to the customer." Ex. A, Belisle Dep. 26:2–5. "In co-op deals, that's not true." *Id.* at 26:6–11. Navistar instead pays dealers a flat

– 2 –

$750 per truck, *id.* at 26:12–27:3, which Carmichael described as "the dealer's commission," Ex. C, Carmichael Dep. 79:12–81:5.

- ***Navistar controlled ordering, production, and delivery.*** In co-op deals, Navistar provides trucks "out of their own production." Ex. D, Fink Dep. at 54:12-24, 57:6-15. Navistar set the truck price and the order quantity. *Id.* at 23:13-25:20; Ex. E, Lollis Dep. 101:3-102:16. The dealer saw Navistar's order board; GLS did not. Ex. F, Akinosho Dep. 274:23–275:7. But the dealer could not even "order the trucks until Navistar authorized us to do so." Ex. D, Fink Dep. 59:13–17.

- ***Navistar spoke to GLS through the dealer.*** The dealer's job was "close communication with Navistar and the customer." Ex. D, Fink Dep. 66:11–18. Lollis said that while he would try to help the customer, Navistar would state its position, and "at the end of the day, we have to present to the customer whatever Navistar tells us to present." Ex. E, Lollis Dep. 51:22–25.

  Navistar even routed, through Lollis, its threat that GLS sign the 2022 agreement or lose already-built trucks. *See* Ex. E, Lollis Dep. 186:4–187:11. And when litigation loomed, Navistar enlisted Lollis to gather documents. Ex. C, Carmichael Dep. 373:13-23.

Together, these facts show that Fink and Lollis were Navistar's agents for the 2021 and 2022 co-op deals.[1] Indeed, the facts here strongly align with those in *Olson Mfg. Co. v. Roberts*, where an agency relationship existed when the manufacturer itself made the "arrangements for the sale and the method of sale," "dictated and controlled the sale price," "fixed the amount of the commission to be paid" to the

---

[1] Navistar has suggested it will oppose this conclusion, claiming that Fink and Lollis were not authorized to make negative comments about Navistar's conduct to GLS. But the agent need not be specifically authorized to make a specific damaging statement; he only needs to be authorized to act on the matter the statement concerns. *Perry v. City of Pontiac,* 254 F.R.D. 309, 314-15 (E.D. Mich. 2008); *Carter v. Univ. of Toledo*, 349 F.3d 269, 275-76 (6th Cir. 2003).

– 3 –

dealer, and maintained rights to the vehicles before they were sold. 280 P.2d 433, 437 (Colo. 1955). Given this authority, the special master should recommend the Court hold, under Rule 104, that Fink and Lollis's statements on the 2021 and 2022 transactions are non-hearsay admissions of a party agent, and admit them at trial.

**II.      The objections to Navistar's "negotiation" and "pre-contract delivery" documents cannot be resolved in the abstract.**

Navistar next seeks an advance ruling that "documents exchanged in the course of negotiation of the 2021 and 2022 letter agreements" and "pre-signing production updates sent to Plaintiffs" are "relevant and admissible." Some pieces are easy—an opposing party's own statement is not hearsay. The rest can only be decided on a case-by-case basis, in context, by the Court.

Navistar's own examples prove it. DX 21 is a December 2021 email chain between GLS's Kyle Blain and Navistar's Sean Carmichael. GLS does not dispute relevance, and concedes the document is not hearsay when offered by Navistar: the substance comes from Blain, and Carmichael only asks to set up a phone call. DX 21 is likely admissible.

DX 261 and DX 43 are different. Lollis produced both, and relevance is disputed for both:

- DX 261 is a June 2021 chain involving a non-operative contract. Navistar leans on Lollis's lines that "production dates are estimated." But the operative agreement is the 2022 one, not the 2021 agreement referenced here. Litigating whether the earlier contract is ambiguous—and, if so—what the parties intended by its terms invites a confusing, time-wasting mini-trial.

– 4 –

- DX 43 is an email from Lollis attaching a spreadsheet *he* built from what he says he pulled from Navistar's systems. It is not Navistar's official data. It predates the April 2022 agreement, and says nothing about that agreement's terms. Rule 401 relevance is doubtful, and Rule 403 should preclude it.

The special master should recommend that those relevance calls are not appropriate for pretrial resolution. Instead, they should be evaluated on a case-by-case basis, in context, by the Court during trial.

Both also have a hearsay problem. Both documents came from Lollis, so each is double-hearsay if offered for the truth of what Navistar supposedly asserted—that is, the content of its offer and its production data. That is what Navistar appears to want. Navistar answers with a list of non-hearsay labels ("effect on the listener, notice or knowledge, state of mind, and impeachment") but never says how any fits. Each turns on which statement Navistar offers, why that statement matters irrespective of its truth, and whether that asserted use survives Rule 403, which requires weighing whether the risk of the jury crediting the hearsay use outweighs the probative value of the non-hearsay use. Those discretionary calls belong to the trial judge, once the trial record provides context.

Navistar then falls back to hearsay exceptions that presume a live witness. The "prior consistent statement" exception is admissible only when the "declarant testifies… and is subject to cross-examination." Fed. R. Evid. 801(d)(1). It rebuts attacks on credibility, like recent fabrication or improper influence or motive; it cannot be used to "bolster the witness merely because she has been discredited."

– 5 –

*Tome v. United States,* 513 U.S. 150, 157-58 (1995). Even then, the statement must predate the alleged motive. *Id.* at 167. And recorded recollection requires a witness who cannot recall facts while testifying, but who once knew those facts and made the writing when the matter was fresh in his mind. *United States v. Porter,* 986 F.2d 1014, 1016-17 (6th Cir. 1993). These issues are not ripe for resolution, as they cannot be decided pre-trial before a live witness testifies.

### III. Navistar's attempt to add undisclosed redactions to exhibits based on "irrelevance" is inappropriate.

Finally, Navistar has added a last-minute dispute into the present briefing: whether it should be able to add redactions to documents to hide what it deems "irrelevant" material regarding settlements. Only one exemplar document has been identified (P-62): a 71-page Board of Directors 2022 Operating Plan. The specific proposed redactions have not been identified. Given the uncertainty, it is unclear how the special master could rule. And procedure aside, it is inappropriate.

Case law is clear: "relevance redactions are unnecessary and improper, and this district has rejected the propriety of such redactions." *Weidman v. Ford Motor Co.*, 340 F.R.D. 106, 112 (E.D. Mich. 2021) (citing cases). Unlike privilege redactions, which are authorized by Rule 26(b)(5)(A), "redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure." *Id.* (quoting *Burris v. Versa Prod., Inc.*, 2013 WL 608742, at *2 (D. Minn. Feb. 19, 2013)) And the rule of completeness means that if Navistar wants

– 6 –

to use the document, it must take the good with the bad. *See* Fed. R. Evid. 106. Navistar may not present a sanitized version of any document to a jury.

Indeed, Navistar's claim that references to "settlements" are irrelevant is not something that can be decided in the abstract. Navistar's own exemplar proves the point. Page 59 of the report is captioned "Net cash flow worsens in 2022 due to $500M+ in legal settlements partially offset by improvements in gross cash flow and NWC." That is plainly relevant to GLS's case, which turns on *why* Navistar defrauded GLS. Navistar's own documents reflect a company bleeding cash and looking for margin wherever it could find it. That is motive. Navistar diverted production away from GLS and toward higher-margin customers, and a board-level document showing Navistar's deteriorating net cash flow in the very year at issue is direct evidence of the financial pressure that drove that choice. Navistar's motive for hiding this language from the jury is equally clear. Redactions should not be allowed.

## Conclusion

The special master should recommend that (1) there is sufficient evidence under Rule 104 to treat Fink and Lollis's statements as non-hearsay statements of a party opponent's agents; (2) negotiation documents and Lollis's production data be decided by the Court at trial; and (3) the Court not permit Navistar to redact anything from trial exhibits that were produced in discovery without redactions.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
 Eric J. Pelton (P40635)
 Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Dated:  June 9, 2026 tdavis@khvpf.com

– 8 –

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, I electronically filed this document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

/s/Eric J. Pelton
Eric J. Pelton (P40635)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
epelton@khvpf.com