UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

 Plaintiffs,        Case No. 23-cv-12927

v.            Hon. Mark A. Goldsmith

NAVISTAR, INC.,      Magistrate Judge Anthony P. Patti

 Defendant.

---

**REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
REGARDING REMAINING EVIDENTIARY ISSUES FROM THE
JOINT LIST OF EVIDENTIARY ISSUES (ECF NOS. 119, 126 AND 127)** [1]

## I.   INTRODUCTION

Pursuant to the Court's June 3, 2026 Order Following Pretrial Conference (ECF No. 115), the parties submitted a Joint List of Evidentiary Issues (ECF No. 119) identifying ten evidentiary issues and representing that they expected to resolve several of them by agreement. Two cross-briefs filed June 9, 2026 frame the issues that remain in dispute: Navistar's Memorandum on Outstanding Issues (ECF No. 126), addressing Issues 1, 7, 8, and 10, and Plaintiffs' Trial Brief re Disputed

---

[1] The signature block of ECF No. 127 identifies Kienbaum Hardy Viviano Pelton & Forrest, P.L.C. ("KHVPF") as "Attorneys for Defendant." As with the comparable error noted at ECF No. 125, that is a scrivener's error; KHVPF is counsel for Plaintiffs, and ECF No. 127 is Plaintiffs' brief.

Evidentiary Issues 1, 7, and 8 (ECF No. 127), which addresses those issues and, in its third section, the redaction question raised as Issue 10.

This Report addresses the four issues in the cross-briefs. The parties did not submit Issues 2, 3, 4, 5, 6, or 9 for decision.[2] I recommend the Court resolve the four live issues as set out in the Recommendations below, preserving in each instance the trial court's discretion under Federal Rules of Evidence 104, 403, and 611.

## II.    BACKGROUND

This action arises out of Plaintiffs GLS Leasco, Inc. ("GLS") and Central Transport, LLC's ("Central") (together, "Plaintiffs") purchase of trucks from Defendant Navistar, Inc. ("Navistar"). Plaintiffs assert claims for breach of contract and fraud, the latter added by a Second Amended Complaint filed September 24, 2024 (ECF No. 29). The transactions were structured as "co-op" deals, in which, according to Plaintiffs' witnesses, Navistar rather than the dealer led the transaction. Summit Truck Group, and later Allegiance Trucks, served as the "facing dealer." Justin Fink (the chief executive of Summit, and later of Allegiance) and Jim Lollis (a fleet sales representative who carried the Central account across those dealerships) were the principal dealer personnel; Sean Carmichael was Navistar's Vice President of Sales.

---

[2] On June 9, 2026, the parties filed a Joint Stipulation Resolving Pre-Trial Disputes on Evidentiary Issues Nos. 2-6, 9, and 10 (ECF No. 128). As discussed below, Issue 10 is not fully resolved.

2

Plaintiffs' allocation was reduced to 600 units in late 2021 (*see* Ex. C (P-50), ECF No. 126-4, PageID.5721). Kyle Blain, GLS's President, signed the 2022 letter agreement on or about May 18, 2022 (*see* Carmichael Dep. at 372, ECF No. 127-4, PageID.5879). Plaintiffs allege that Navistar fraudulently induced and then breached its commitments by diverting production away from Plaintiffs and pushing scheduled trucks past the contemplated delivery window. The four remaining disputes concern (1) whether statements by Fink and Lollis are admissible against Navistar under Rule 801(d)(2)(D); (7 and 8) whether four documents exchanged during the negotiations and before signing (DX-21, DX-261, DX-43, and DX-88) are relevant and admissible; and (10) whether references to unrelated third-party settlements appearing within otherwise-designated exhibits may be redacted for trial.

## III. ISSUE 1: AGENCY STATUS OF FINK AND LOLLIS UNDER RULE 801(d)(2)(D)

### A. The parties' positions.

Plaintiffs (ECF No. 127) seek a ruling under Rule 104(a) that statements by Fink and Lollis concerning the 2021 and 2022 transactions are non-hearsay statements of Navistar's agent under Rule 801(d)(2)(D). Relying on common-law agency principles, *see United States v. Wiedyk*, 71 F.3d 602, 605 (6th Cir. 1995); Restatement (Third) of Agency § 1.01 (2006); and *Miller v. Joaquin*, 431 F. Supp. 3d 906, 912–14 (E.D. Mich. 2019), they argue that one who negotiates and sells another's goods to third parties for a commission, and speaks to buyers on the seller's

3

behalf, is the seller's agent. They cite deposition testimony that, in a co-op deal, Navistar led the transaction (Belisle), was "actually involved in making those decisions directly" (Webb 30(b)(6)), retained the risk of loss, set the price while paying the dealer a flat $750-per-truck fee (Belisle; Carmichael), controlled ordering, production, and delivery (Fink; Lollis; Akinosho), communicated with the customer through the dealer (Fink; Lollis), routed through Lollis its position that GLS sign the 2022 agreement (Lollis), and enlisted Lollis to gather documents when litigation loomed (Carmichael) (ECF No. 127, PageID.5862–63). They add, citing *Perry v. City of Pontiac*, 254 F.R.D. 309, 314–15 (E.D. Mich. 2008), and *Carter v. University of Toledo*, 349 F.3d 269, 275–76 (6th Cir. 2003), that an agent need not be authorized to make the specific damaging statement, but only to act on the matter the statement concerns.

Navistar (ECF No. 126) responds that Fink and Lollis were independent dealer actors not subject to its control. It relies on *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015) (an agent acts "subject to the principal's control"), and on the general rule that "a dealer is not an agent for manufacturers of the products it sells," *Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009); *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 65 (9th Cir. 1973). Navistar points to the disclaimer in its dealer agreement ("The Dealer is not Company's agent in any respect and is not authorized to incur any obligations or make any promises or

4

representations in its behalf") (ECF No. 126, PageID.5703; Ex. D (P-186), ECF No. 126-5, PageID.5727), to the fact that Summit and Allegiance signed the 2021 and 2022 agreements as separate signatories (ECF No. 126, PageID.5704; ECF No. 51-8, PageID.1136; ECF No. 50-2, PageID.904), and to record evidence that GLS itself selected Allegiance as its facing dealer (DX-21; DX-79) (Ex. E (DX-21), ECF No. 126-6; Ex. F (DX-79), ECF No. 126-7, PageID.5735). It distinguishes *Harrison v. General Motors, LLC*, 712 F. Supp. 3d 949, 953–54 (E.D. Mich. 2024), and *Miller*, and cites Lollis's testimony that he worked for the dealership and acted as an advocate for the customer (Lollis Dep. at 14, 138) (ECF No. 126-8, PageID.5741, 5744) and Fink's testimony that Navistar placed no restrictions on how the dealership sold vehicles to end customers (Fink Dep. at 19) (ECF No. 126-9, PageID.5761).

### B. Analysis.

The framework is largely common ground. Whether a declarant was a party's agent is a preliminary question under Rule 104(a), decided by a preponderance of the evidence, and the Court may consider the proffered statements themselves, though their contents do not alone establish the existence or scope of the relationship. Fed. R. Evid. 104(a), 801(d)(2); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). Agency is assessed under common-law principles. *Wiedyk*, 71 F.3d at 605.

Two points narrow the dispute. First, Rule 801(d)(2)(D) reaches statements by a party's "agent or employee . . . on a matter within the scope of that relationship." Fink and Lollis were employees of the dealer, not of Navistar, so the question is whether they (or their dealer-employer) acted as Navistar's agent on the matters their statements concern. Second, several of the designated exhibits contain statements by Navistar's own personnel, principally Carmichael (e.g., P-12; P-50). Statements by Navistar's officers and employees within the scope of their employment are opposing-party statements under Rule 801(d)(2)(A) and (D) regardless of the dealer-agency question, and their admissibility does not turn on the issue the parties have briefed.

On the dealer-agency question, neither a categorical ruling of admissibility nor one of inadmissibility fits this record. The general rule that a franchised dealer is not its manufacturer's agent, *Carlisle*; *Stansifer*, describes a specific commercial structure in which the intermediary operates on its own account rather than the manufacturer's. In *Stansifer*, the distributor purchased automobiles from the manufacturer, obtained title, resold at any price it chose, dealt with purchasers in its own name, assumed the credit risk, and carried its own liability insurance. 487 F.2d at 64–65. In *Carlisle*, no agency was found because the manufacturer lacked the overarching control over the service provider's day-to-day operations that agency law required. 576 F.3d at 656–57. Neither case forecloses agency where the

6

transaction departs from those structures. *Carlisle* acknowledged that it is "not hard to imagine circumstances whereby a dealer could be a manufacturer's agent," 576 F.3d at 656, and *Stansifer* recognized that the rule would not shield a manufacturer whose intermediary was in fact acting on the manufacturer's account. 487 F.2d at 64. The co-op record here describes precisely such a departure: Navistar set the price, retained the risk of loss, paid the dealer a flat $750-per-unit fee rather than a margin, controlled ordering, production, and delivery, and routed its negotiating positions to Plaintiffs through the dealer. Whether those indicia suffice to establish agency on the matters Fink's and Lollis's statements concern is the fact-intensive Rule 104(a) determination recommended for trial.

*Miller* confirms that a person who sells another's goods on commission can be an agent of the goods' owner for purposes of contract and hearsay attribution. *Miller*, 431 F. Supp. 3d at 912–14. But the agency finding in *Miller* rested on evidence that ran entirely in one direction: the contract documents were prepared on the principal's letterhead, an independent witness testified that the agent was representing the principal, all payments flowed from the principal's accounts, and the agent's own uncontradicted trial testimony confirmed he conducted all his coin business through the principal. *Id.* at 912–14. On that record the court found that "no reasonable juror" could conclude the agent had contracted personally, and it granted judgment as a matter of law. *Id.* at 914. The present record does not present a

7

similarly one-sided picture. The same co-op indicia support a finding of agency as to those transactions, but the contractual disclaimer, Lollis's testimony that he worked for the dealership and advocated for the customer, and Blain's own contemporaneous emails selecting Allegiance as facing dealer supply genuine competing inferences on control. *Miller* thus supports submitting the agency question to the fact-finder rather than resolving it categorically; it does not authorize a definitive ruling in either direction on this record.

*Harrison*, 712 F. Supp. 3d at 949 (distinguished by Navistar), is not contrary. It addressed whether GM's dealerships could be GM's agents for warranty-privity and duty-to-disclose purposes under state law, not under Rule 801(d)(2)(D), and held that allegations of manufacturer control over how dealers handled complaints and repairs sufficed at the pleading stage to allege agency. *Id.* at 953–55, 958–59. Those control indicia are structurally analogous to the co-op record here, so *Harrison* supports Plaintiffs' view that dealer agency is fact-intensive and not foreclosed by the dealer's separate identity; it does not establish agency as a matter of law. And because *Harrison* asked only whether a dealer broadly acts as the manufacturer's agent in a class of transactions, it does not resolve the narrower, matter-specific question Rule 801(d)(2)(D) poses. *Wiedyk*, 71 F.3d at 605.

The disclaimer in the dealer agreement is probative but not controlling, because Rule 801(d)(2)(D) looks to the parties' actual relationship and the scope of

authority on the matter at issue rather than to a contractual label. Plaintiffs are correct, as a matter of law, that an agent need not be authorized to utter the damaging statement; authority to act on the subject the statement addresses suffices. *Perry*, 254 F.R.D. at 314–15; *Carter*, 349 F.3d at 275–76. Navistar's contention that Fink and Lollis were not authorized to criticize Navistar therefore misstates the test. Because the record supports competing inferences on control, the scope inquiry remains matter-specific — a statement tied to a co-op transaction Navistar led may fall within scope, while one made in the dealer's ordinary customer-facing capacity may not.

These Rule 104(a) agency and scope questions are best resolved statement by statement and matter by matter as foundation is laid at trial, as set out in the Recommendations below.

## IV.   ISSUES 7 AND 8: THE NEGOTIATION AND PRE-SIGNING DOCUMENTS (DX-21, DX-261, DX-43, DX-88)

### A. The parties' positions.

Navistar seeks advance rulings that four documents are relevant and admissible: DX-21 (a December 2021 email chain between Blain and Carmichael reflecting Blain's reaction to the reduction of GLS's allocation to 600 units); DX-261 (a June 2021 email from Lollis to Blain attaching a draft of the 2021 letter agreement and a schedule Lollis described as "estimated" and subject to change "for the better or worse based on supplier issues") (Ex. I (DX-261), ECF No. 126-10, PageID.5766); and DX-43 and DX-88 (April 2022 communications from Lollis

9

transmitting an updated production schedule showing that many trucks were not scheduled to begin production until June and July 2022, more than a month before signing) (Ex. J (DX-43), ECF No. 126-11; Ex. K (DX-88), ECF No. 126-12). Navistar argues that the documents are relevant under Rule 401; that Rule 403 does not bar them because any prejudice is not unfair; that they are largely non-hearsay, offered for their effect on Plaintiffs' notice, knowledge, and state of mind and as opposing-party statements of Blain and Perkins; and, alternatively, that the Lollis schedules are admissible under Rules 803(3) and 803(5). It emphasizes that this Court relied on DX-43 in denying Plaintiffs' summary judgment motion, noting that a schedule sent before signing "projected that production would go beyond the end of June 2022." ECF No. 72, PageID.2971.

Plaintiffs respond that these objections cannot be resolved in the abstract. They concede DX-21 is "likely admissible," do not dispute its relevance, and acknowledge that its substance is Blain's own statements, with Carmichael's only contribution being a request to schedule a call. They dispute the relevance of DX-261, which concerns the non-operative 2021 agreement and, they say, threatens a mini-trial on an earlier contract, and of DX-43, which attaches a spreadsheet Lollis built that is "not Navistar's official data," predates the operative agreement, and says nothing about its terms. They argue that both present layered-hearsay problems if offered for the truth of the production data, and that Navistar's reliance on the prior-

10

consistent-statement exception, Fed. R. Evid. 801(d)(1); *Tome v. United States*, 513 U.S. 150, 157–58, 167 (1995), and the recorded-recollection exception, Fed. R. Evid. 803(5); *United States v. Porter*, 986 F.2d 1014, 1016–17 (6th Cir. 1993), presumes a testifying witness and is not ripe. *See* ECF No. 127, PageID.5864–66.

### B. Analysis.

The parties largely agree that these documents are ill-suited to categorical pretrial resolution, because admissibility turns on the purpose for which a document is offered and on the trial context. I agree, with the following guidance.

DX-21 warrants a definitive ruling because the parties agree on it. It is relevant under Rule 401; its substance consists of Blain's statements, which are opposing-party statements admissible against Plaintiffs under Rule 801(d)(2)(A); and Carmichael's only contribution, identifying times he was available for a call, is not offered for its truth. I recommend that DX-21 be held admissible over the relevance and hearsay objections, subject to Rule 403, foundation, and completeness at trial.

DX-43 and DX-88 are materially identical and relevant under Rule 401, a conclusion reinforced by the Court's reliance on DX-43 at summary judgment. ECF No. 72, PageID.2971. Offered for the non-hearsay purpose of establishing what Plaintiffs knew, or were on notice of, before signing, the documents are not barred by the hearsay rule, and the asserted unreliability of the underlying dates goes to weight rather than admissibility for that purpose. That Plaintiffs designated

11

comparable Lollis schedules (e.g., P-107), and that their expert relied on such schedules, further undercuts a Rule 403 challenge to this use. To the extent the documents are offered for the truth of the production dates they report, however, a hearsay foundation must be laid, whether as data the proponent contends originated from Navistar's systems and is attributable to Navistar as an opposing party, as business records under Rule 803(6), or otherwise. I recommend that DX-43 and DX-88 be admitted for the non-hearsay notice-and-knowledge purpose, subject to Rule 403, with the truth-of-the-dates purpose and its supporting foundation reserved to trial.

DX-261 is the most attenuated of the four. As a June 2021 communication bearing on Navistar's contention that the parties understood production schedules to be estimated and supplier-dependent, it has some tendency to inform the meaning of the 2022 agreement's "based on available production" language and Plaintiffs' knowledge and reliance on the fraud claim. But because it concerns the earlier 2021 agreement, the relevance, Rule 403, and hearsay questions it presents—including the risk of a mini-trial on an earlier contract's terms—are best decided by the trial court as the document is offered.

Plaintiffs are also correct that Navistar's alternative reliance on Rules 801(d)(1) and 803(5) is premature. Each presumes a testifying witness and a trial record. Rule 801(d)(1) requires that the declarant testify and be subject to cross-

examination, and ordinarily that the statement predate the alleged motive, *Tome*, 513 U.S. at 157–58, 167, and Rule 803(5) requires a witness who cannot fully recall the matter, *Porter*, 986 F.2d at 1016–17. Those theories cannot be adjudicated before the relevant witnesses testify.

## V. ISSUE 10: REDACTION OF REFERENCES TO UNRELATED THIRD PARTY SETTLEMENTS

### A. The parties' positions.

Navistar contends that certain designated exhibits contain references to settlements with unrelated third parties; that those references are irrelevant and unfairly prejudicial under Rule 403, *see McLeod v. Parsons Corp.*, 73 F. App'x 846, 854–55 (6th Cir. 2003); and that it should be permitted to produce versions with the references redacted, *see In re Air Crash Disaster*, 86 F.3d 498, 532 (6th Cir. 1996) (prejudicial portions of otherwise relevant evidence "could be redacted"). It asks that Plaintiffs be ordered to confer regarding redaction or be barred from using documents containing such references. *See* ECF No. 126, PageID.5709.

Plaintiffs respond that the request is both procedurally and substantively flawed. Procedurally, Navistar has identified only one exemplar, P-62, a 71-page Board of Directors 2022 Operating Plan, and has not specified the language it seeks to redact. Substantively, they argue that relevance redactions are improper, citing *Weidman v. Ford Motor Co.*, 340 F.R.D. 106, 112 (E.D. Mich. 2021), and *Burris v. Versa Products, Inc.*, 2013 WL 608742, at *2 (D. Minn. Feb. 19, 2013), and that

13

Rule 26(b)(5)(A) authorizes only privilege redactions. Invoking the rule of completeness, Fed. R. Evid. 106, they contend that Navistar must take the document as it stands. They add that the references are not irrelevant: the page-59 caption of P-62, describing a worsening 2022 net cash flow driven by "$500M+ in legal settlements," is in their view probative of Navistar's financial motive to divert higher-margin production away from Plaintiffs, a matter central to the fraud claim. *See* ECF No. 127, PageID.5866–67.

### B. Analysis.

The issue is not ripe for categorical resolution. Navistar is correct that a trial court may, under Rule 403, redact discrete, unfairly prejudicial, and irrelevant portions of an otherwise admissible exhibit, as *In re Air Crash Disaster* recognizes. The authorities Plaintiffs cite, *Weidman* and *Burris*, address the distinct discovery-stage question whether a producing party may unilaterally withhold portions of responsive documents as irrelevant, and do not establish that a trial court is powerless to redact unfairly prejudicial matter from a trial exhibit. Plaintiffs' categorical position that relevance-based redactions are never permissible for trial exhibits is therefore overstated.

Plaintiffs are right, however, that the question cannot be decided in the abstract. Relevance and the Rule 403 balance can be assessed only against specific text, and Navistar has not identified, exhibit by exhibit and passage by passage, the

14

language it proposes to redact. The one concrete example illustrates the difficulty: the page-59 caption of P-62, tying a deterioration in Navistar's 2022 cash flow to a substantial sum in legal settlements, is at least arguably probative of financial motive on the fraud claim and may not be a properly redactable, unrelated reference. A categorical ruling that all settlement references are irrelevant cannot stand, and one that none may be redacted is equally unsound. Under the rule of completeness, where a passage is itself relevant and the document is admitted, Navistar may not excise the unfavorable portions; but collateral references to unrelated third-party settlements that bear no probative relationship to the claims and carry a real risk of unfair prejudice may be redacted under Rule 403.

The appropriate path is a passage-by-passage meet-and-confer, with any remaining disputes presented on the specific text, as set out in the Recommendations below. Privilege redactions are separately authorized by Fed. R. of Civ. P. 26(b)(5)(A) and appear uncontested.

## VI.   RECOMMENDATIONS

For the foregoing reasons, I respectfully recommend that the Court:

1. As to Issue 1, **DECLINE** to admit or exclude the statements of Justin Fink and Jim Lollis categorically under Rule 801(d)(2)(D); **DENY** any request for a categorical *in limine* bar, because the record amply supports a preponderance finding of agency as to the co-op transactions sufficient to defeat wholesale

exclusion; and resolve the agency and scope questions under Rule 104(a) as foundation is laid at trial. Statements by Navistar's own officers and employees within the designated exhibits are opposing-party statements under Rule 801(d)(2)(A) and (D) independent of the dealer-agency question.

2. As to Issues 7 and 8, hold DX-21 **ADMISSIBLE** over the relevance and hearsay objections, subject to Rule 403, foundation, and completeness; hold DX-43 and DX-88 **ADMISSIBLE** for the non-hearsay purpose of establishing Plaintiffs' pre-signing notice and knowledge, subject to Rule 403, with the truth-of-the-dates purpose and its supporting foundation reserved to trial; and **DECLINE** to rule categorically on DX-261, whose relevance, Rule 403, and hearsay questions should be decided in context at trial.

3. As to Issues 7 and 8, **DECLINE** Navistar's request for a blanket ruling that all four documents are admissible for all purposes, and **DECLINE** as premature its alternative reliance on Rules 801(d)(1) and 803(5), each of which presumes a testifying witness and a developed trial record.

4. As to Issue 10, **DECLINE** to rule categorically, the dispute not being ripe absent identification of the specific text at issue; reject both Plaintiffs' position that relevance-based redactions of trial exhibits are categorically impermissible and Navistar's position that references to settlements are categorically irrelevant; and **DIRECT** the parties to meet and confer to

16

identify the specific language at issue and Plaintiffs' basis of relevance for each, with remaining disputes presented on the specific text. The page-59 passage of P-62, and comparable language probative of motive or intent, should be treated as presumptively relevant and not subject to relevance-based redaction; privilege redactions are authorized by Rule 26(b)(5)(A) and appear uncontested.

5. **RESERVE** to the trial court its discretion under Rules 104, 403, and 611, and preserve all substantive evidentiary objections, including relevance, hearsay, authentication, foundation, and completeness, for resolution at trial. Nothing in this Report addresses Issues 2, 3, 4, 5, 6, or 9, which the parties did not submit for decision.

## VII.   CONCLUSION

These recommendations resolve the questions the parties have joined while leaving to the trial court the fact-bound and context-dependent determinations that Rules 104, 403, and 611 commit to it.

Pursuant to the Court's instruction at the June 8, 2026 Pretrial Conference, the parties are advised that they may file objections to this Report and Recommendation no later than 10:30 a.m. on June 11, 2026.

18

Respectfully submitted,

Dated: June 10, 2026

/s/ Nathan J. Fink
Nathan J. Fink
Special Master