UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLS LEASCO, INC. and
CENTRAL TRANSPORT, LLC,

      Plaintiffs,

v.

      NAVISTAR, INC.,

Defendant.

Case No. 23-cv-12927

Hon. Mark A. Goldsmith

Magistrate Judge Anthony P. Patti

**Plaintiffs' Trial Brief Regarding Maria Averhart's and
Tony Stinsa's "Managing Agent" Status**

**Introduction**

The Special Master correctly recommended that the Court hold that "a qualifying party-opponent deposition may be used as substantive evidence notwithstanding the witness's availability." ECF No. 125, PageID.5700. Navistar's response does not seriously contest that conclusion. Instead, it manufactures a dispute over a threshold issue that its own initial disclosures established years ago: Maria Averhart and Tony Stinsa are not "mere employees" who punch a clock and follow rote instructions; they are employees performing important managerial functions whom Navistar itself disclosed as having knowledge critical to this case. Their depositions may be used Plaintiffs at trial, for any purpose.

**Argument**

I. **A "managing agent" is functionally defined as *anyone* who exercises judgment and discretion in the employer's affairs.**

A "managing agent" is someone who (1) "[a]cts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs" as distinguished from "a common employee, who does only what he is told to do"; (2) can be depended upon to testify at the principal's direction; and (3) "[c]an be expected to identify himself with the interests of his principal rather than those of the other party." *Brandon v. Art Ctr. Hosp. (Osteopathic),* 366 F.2d 369, 372 (6th Cir. 1966). This is a functional test. It does not

demand an executive with enterprise-wide power. Rule 32(a)(3) separately lists officers and directors; "managing agents" are necessarily something less.

The Sixth Circuit has confirmed as much. In *Black v. United Parcel Service*, the court held it was "reasonable" to classify a UPS shipping terminal's "preloading manager," seemingly equivalent to a shift supervisor, as a managing agent whose deposition could be "used at trial for any purpose," even though he "was physically present in the courtroom during the trial." 797 F.2d 290, 291, 293 (6th Cir. 1986) (construing the predecessor of Rule 32(a)(3)). Navistar's out-of-circuit authority applies a similar test, asking "what the employee actually did," and focusing on whether the employee exercised "personal discretion in making decisions without obtaining additional authorization from superiors." *Young & Assocs. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 523 (D. Utah 2003).

## II.    Averhart and Stinsa clear the "managing agent" bar.

**Maria Averhart.** When deposed, Averhart headed Order-to-Delivery Operations, which she admitted was a managerial position. Ex. 1, Averhart Dep. at 13, 18. She directed coordination with internal and external sales personnel to ensure that manufacturing orders were processed correctly (*id.* at 20), supervised multiple direct reports (*id.* at 22), and exercised judgment on questions at the core of this case—including whether Navistar's manufacturing plants could swap orders (*id.* at 93-96, 107-108, 112-115, 167), independently determines whether the factory can

"commit" to producing ordered vehicles (*id.* at 107, 112-115), and directs schedulers on how to spread orders "as best as possible" and on what timeline (*id.* at 91-92, 166-67). She was also named to Navistar's Bendix task force, charged with determining how to allocate Navistar's collision-mitigation radars across its pending truck orders (*Id.* at 128–32, 137.)

Navistar's only real response to this evidence of Averhart's discretionary duties is that she operated within a "defined operational lane," reported to someone else, and took direction from sales on some tasks. ECF No. 131, PageID.5941. But having a supervisor is not disqualifying; every managing agent short of the CEO reports to somebody. *Brandon*, 366 F.2d at 372. Nor did she simply do what sales demanded, no questions asked. She independently reviewed the order board and generated the very lists of swap options from which sales chose. Ex. 1 at 119–24. And she screened each request against engineering, parts-availability, and configuration constraints, telling sales "no" when a requested build could not be made. *Id.* at 107–08, 112–15. She testified, in fact, that she would not have slotted orders had the plants been unable to build them. *Id.* at 167. Sales could ask, but Averhart decided whether to honor them.

Averhart thus exercised discretion in managing Navistar's affairs, unlike a "common employee." *Brandon*, 366 F.2d at 372. Her authority exceeds that of the shipping-terminal preloading manager in *Black*. And Navistar's own initial

– 3 –

disclosures treat her as more than a common employee: she is identified as someone that GLS could not communicate with except through Navistar counsel, who could speak for it on the supply chain issues that underlie Navistar's excuses for not fulfilling its contract. Ex. 2. She is a managing agent.

**Tony Stinsa.** Stinsa's status as a managing agent is even clearer. He was formerly the Vice President of Used Trucks, and by the time of his deposition he was Navistar's Director of Logistics. Ex. 3, Stinsa Dep. 8, 15. He testified that as Director of Logistics, he "manage[d] the inbound and outbound logistics of parts coming into the plants and trucks going out of the plants," thus commanding the flow of materials and vehicles across Navistar's manufacturing operations. *Id.* In *Black*, the Sixth Circuit held that a facility operations supervisor was reasonably classified as a managing agent. 797 F.2d at 293. Navistar's company-wide Director of Logistics, with nearly thirty years' experience at Navistar in high-level managerial and executive roles (Ex. 3 at 8–15), qualifies even more easily.

Stinsa's testimony about his role during the time at issue—Vice President of Navistar's used truck operations—removes all doubt. For over three years, he was "responsible for running the used truck business for Navistar" and its "general management," with seven departments reporting to him. *Id.* at 15–16, 45. He had to approve Navistar's monthly Confidential Price List—that is, the prices for every used truck the company offered—with the sales force unable to sell below that price

without his say-so. *Id.* at 51, 55, 151. By his own account, Stinsa ran an entire business line of a multinational truck manufacturer. He is a Navistar managing agent.

## Conclusion

Maria Averhart and Tony Stinsa are managing agents of Navistar. The Court should hold their depositions may be used by Plaintiffs for any purpose.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.:

By:   */s/ Thomas J. Davis*
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Counsel for Plaintiffs
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
Date: June 12, 2026     tdavis@khvpf.com

## LOCAL RULE CERTIFICATION

I, Thomas J. Davis, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ Thomas J. Davis
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed this document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants on record.

*/s/ Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com
