**Exhibit 1**

**Fink Trial Deposition - Plaintiff's Proposed Redactions**

**GENERAL POSITION: The** *de bene esse depositions were specifically ordered to serve as substitutes for trial testimony and should be presented to the jury as-is, with the exception of attorney colloquy / questions the offering attorney "struck" so it could rephrase, etc.* **To that end, Plaintiffs propose the following be** *stricken* **, but**

| # | Transcript Pages | Proposed Reason for Striking | Navistar's Objection |
|---|---|---|---|
| 1 | 5:5-6:1 | Videographer's preliminary statement | |
| 2 | 17:3-4 | Stricken question. | |
| 3 | 21:20-21 | Stricken question. | |
| 4 | 33:12-16 | Stricken question. | |
| 5 | 39:2-5 | Stricken question. | |
| 6 | 53:12-14 | Stricken question. | |
| 7 | 57:19-20 | Stricken question. | |
| 8 | 59:9-13 | Stricken question. | |
| 9 | 60:8-12 | Stricken question. | |
| 10 | 62:11-15 | Stricken question. | |
| 11 | 63:16-19 | Stricken question. | |
| 12 | 64:3-6 (partial) | Stricken question; however, retain the "So let's now turn to the 2021 exhibit, Plaintiff's Exhibit 21". | |
| 13 | 65:6-6 | Stricken question. | |
| 14 | 66:4-5 (partial) | Strike "So this is an email chain dated -- actually, strike that" but retain the "I'm going to hand you Plaintiffs' exhibit 29" | |
| 15 | 69:18-20 | Stricken question. | |
| 16 | 75:22-23 | Stricken question. | |
| 17 | 85:6-7 | Stricken question. | |
| 18 | 87:23-88:3 | Attorney colloquy and videographer colloquy | |
| 19 | 89:17-23 | Calls for speculation; witness literally said he was guessing at what language in a document he didn't author meant | Witness has personal knowledge of the document and lack of definiteness on meaning goes to weight (*see* Special Master's ruling on 602 objections, *e.g.* Podewell Dep. 172:8-23 (ECF No. 140-1, PageID.6262); Report and Recommendation, (ECF No. 140, PageID.6215)). |
| 20 | 92:17-17 | Withdrawn objection | All attorney objections should be excised from transcript. |
| 21 | 93:15-15 | Withdrawn objection | |
| 22 | 94:5-6 | Withdrawn objection | |
| 23 | 97:8-8 | Withdrawn objection | |
| 24 | 97:11-17 | Stricken question | |
| 25 | 99:7-16 | Calls for legal conclusion; witness is not being asked to merely give his understanding of contractual language he had a part in drafting (which would be permissible), but rather asking what "Central was agreeing" to do. Note that this was asked again a different way immediately following this colloquy, consistent with asking the witness to provide his own personal knowledge, and the objection to the rephrased question is accordingly withdrawn. | Witness signed the agreement and his understanding of the language is relevant to the extent Plaintiffs dispute this interpretation/understanding of the language. |
| 26 | 99:25-25 | Withdrawn objection | |

| | | | |
|---|---|---|---|
| 27 | 100:2-12 | Argumentative/speculative. Witness is being asked what Navistar might have done if Navistar had a certain intent, rather than being asked to testify from his personal knowledge. Note that the follow-up question "Did you ever hear Mr. Carmichael say, 'That's what we should do'" is not objected to because that question does ask whether Lollis actually HEARD someone from Navistar make a particular statement. Further, that question and answer set would appropriately flow from the unobjected-to question and answer at 99:18-24 | During Plaintiffs' examination, witness was asked questions suggesting Navistar was intending to escape the OTB agreement, this is proper cross examination regarding the understanding of the witness--a signatory to the agreement--regarding the contractual options aviailable to Navistar if that were its intent. |
| 28 | 106:25-25 | Withdrawn objection | |
| 29 | 107:12-18 | Attorney discussion going off record | |
| 30 | 109:10-10 | Withdrawn objection | |
| 31 | 110:3-3 | Withdrawn objection | |
| 32 | 110:14-14 | Withdrawn objection | |
| 33 | 110:25-25 | Withdrawn objection | |
| 34 | 111:16-20 | Asks question outside witness's personal knowledge; distinguish this question from the subsequent question asking specific question in the context of Fink's dealership's interaction was not speculative and thus not objected to. | This is not speculation. The witness testified that Navistar was paid when it accepted orders, and was turning down orders, and the witness confirmed his knowledge that Navistar was turning down money on the truck side. |
| 35 | 114:2-11 | Inappropriately mischaracterizing testimony of an absent witness. | Agree to withdraw. |
| 36 | 114:22-186:14 | Plaintiffs object to DX-261, and so questions by Navistar about that document should be excluded. Exhibit is hearsay when offered by Navistar for truth of what dealer/Navistar asserts therein. Moreover, Defendant trying to suggest that letter in an email attaching the 2021 agreement regarding "all production dates are estimated" -- language that is not actually set forth in the 2021 agreement, let alone in the operative 2022 agreement -- is somehow relevant to interpreting the 2022 agreement. Even any non hearsay use would be irrelevant (401) and prejudicial / confusing the issues (403). | DX-0261 is being offered for its non-hearsay notice use -- the statement to Mr. Blain that "all production dates are estimated and could change for the better or worse based upon supplier isuses." This is relevant both to Plaintiffs' understanding of Navistar's obligations under the 2021 Agreement (which they argue Navistar committed fraud to avoid) as well as interpretation of the production availability language that does appear in both the 2021 and 2022 letter agreements (*see* 112:9-15, witness testifying that language of some terms from the 2021 letter agreement "carried over" to the 2022 letter agreement). |

| | | | |
|---|---|---|---|
| 37 | 120:1-124:7 | Plaintiffs object to DX-491, so questions about the document should be excluded. Hearsay when offered by Navistar for truth of what is asserted. Defendant likewise trying to suggest that language in the 2021 agreement--language specifically confirmed NOT to be in the 2022 agreement by the same witness later--is somehow relevant to interpreting the operative 2022 contract. Even for a non-hearsay use this is 401 / 403 prejudicial and confusing the issues. | Document offered for state of mind, not truth of the matter. The point is not that it is true that the price would in fact hold if production avialability changed, but that the presence of that language reflects an understanding that prodution availability could change, and thus informs interpretation of the rest of the agreement, including the production availability langauge that did carry over to the 2022 letter agreement. In any event, Blain's statements in the email are party opponent party admisisons, and witness confirmed under oath while subject to cross examination his desription of his own actions. *See* ECF 140, PageID.6217 ("testimony about what a witness personaly, did, observed, or understood is not hearsay at all"). |
| 38 | 126:18-25 | Asking witness to speculate as to Mark Belisle's intended meaning in an email he wrote; this is classic request for speculation. | Witness is the recipient of the email and competent to testify as to his understanding of it. |
| 39 | 127:23-128:7 | Question is compound. Likewise, is argumentative as it does not seek to elicit a fact but rather seeks to have the witness adopt the examiner's inference or conclusion. | Witness was able to understand the question and affirmatively confirmed that yes Navistar was sharing that the order board was full. |
| 40 | 129:10-10 | Withdrawn objection | |
| 41 | 129:16-16 | Withdrawn objection | |
| 42 | 130:4-4 | Withdrawn objection | |
| 43 | 130:11-11 | Withdrawn objection | |
| 44 | 130:23-131:1 | Question seeks to elicit hearsay; Navistar's capacity to build is a key fact underpinning the fraud claim and this question seeks to use the answer to establish the truth of the assertions regarding the same (*i.e.* , that Navistar never said it only had the capacity to make 600 of the vehicles Plaintiffs ordered). 401/403 for any other conceivable use. | Not hearsay -- question is not offered to establish truth of anything Carmichael said, but rather to establish that Mr. Fink never remembers Mr. Carmichael making the representation that Plaintiffs say occurred; *i.e.,* he does not recall ever hearing Mr. Carmichael make the verbal act of the alleged misrepresentation in the case. |
| 45 | 137:24-138:5 | Attorney / videographer colloquy | |
| 46 | 138:17-18 | Attorney colloquy | |
| 47 | 139:18-140:3 | Questions ask Fink to answer hypothetical questions of a kind appropriate for expert testimony (what might a hypothetical company's reputation in the market place do to their ability to sell trucks--clearly intended to allude to Central); Fink not designated as an expert on Central's ability to sell trucks given Central's purported characteristics. Contrast this question with subsequent, unobjected to questions that are germane to Fink's own personal knowledge regarding Summit's own practice of selling used trucks. | Withdrawn. |
| 48 | 142:16-16 | Court reporter colloquy | |

| | | | |
|---|---|---|---|
| 49 | 143:17-145:16 | Object to DX-205. Being offered (explicitly at 144:14-15) for the truth of the matter asserted-- that the witness did make an offer to purchase trucks. Witness was unable to state, apart from reading the out-of-court statement, that any offer was made and even after reading the text could not say if it related to the 2018 MY trucks at issue. 401/403 to allow testimony when there is no basis to state that it involves trucks at issue, other trucks not relevant and jury will improperly assume they were the same trucks at issue. | **Hearsay:** Recorded recollection foundation established at 144:17-23 and 145:18-25; also admissible under residual hearsay exception -- sufficient guarantees of trustworthiness as it provides details regarding price offered and number of trucks, and there would be no reason for Mr. Fink to fabricate the fact that he had made this offer. It is more probative than any other potential document on this point. 401/403 -- 104 relevance connection satisfied by the questioning and exhibits establishing: (i) the 2018  RH trucks were the only model for which Plaintiffs were selling 200 more trucks (*see* 149:3-150:7 and P-4); (ii) the additional text messages showing discussions of offers for the 2018 International trucks (*see* 141:9-142:9 and Ex. 204), and (iii) the eventual counter offer from Plaintiffs for the exact amount ($63,500) for which they were advertising the trucks for sale (*see* 149:25-152:12) and Def. Ex. 594. |
| 50 | 145:5-5 | Withdrawn objection | |
| 51 | 145:10-16 | Calls for speculation / lacks foundation; witness already testified he did not know what 200 trucks the earlier text message related to, contra counsel's implication that the 200 trucks relate to the ones at issue in this case. | The question does not call for speculation, it simply asks the temporal connection between the two texts. |
| 52 | 145:18-25 | This is not proper refreshing of recollection; witness again already testified after reading text that he did not know what it related to. | Not refeshing of recollection, but establishment of recorded recollection hearsay exception. |
| 53 | 146:1-147:10 | Object to DX-257, related testimony should be excluded. Offered for hearsay use of suggesting that Summit made offer for 2018 trucks (which witness could not verify, see foundation/speculation objections above and below). Other use is 401/403 prejudicial in light of the risk that the hearsay use will predominate in the jury's mind | Mr. Blain's statement that he is putting together an offer is an admission of party opponent, and Mr. Fink's texts go to the effect on Mr. Blain that caused him to issue that response. 401/403 -- 104 relevance connection satisfied by the questioning and exhibits establishing: (i) the 2018 RH trucks were the only model for which Plaintiffs were selling 200 more trucks (*see* 149:3-150:7 and P-4); (ii) the additional text messages showing discussions of offers for the 2018 International trucks (*see* 141:9-142:9 and Ex. 204), and (iii) the eventual counter offer from Plaintiffs for the exact amount ($63,500) for which they were advertising the trucks for sale (*see* 150:1-152:12) and Ex. 594. |
| 54 | 146:5-9 | Same foundation objection as above - witness testified he did not know what 200 trucks were at issue. | Question establishes temporal connection between texts to establish 104 foundation for relevance. |
| 55 | 147:11-17 | Attorney/Court reporter colloquy | |

| | | | |
|---|---|---|---|
| 56 | 148:4-150:10 | Same as objections above to DX-205; questioning is not to elicit facts but to try to impress on the jury the inference are the trucks at issue in the case, despite witness's repeated indication that he does not recall. Hearsay use of the exhibit, 401/403 given the context and lack of witness knowledge. | **Hearsay:** Recorded recollection foundation established at 144:17-23 and 145:18-25; also admissible under residual hearsay exception -- sufficient guarantees of trustworthiness, it provides details regarding price offered and number of trucks, and there would be no reason for Mr. Fink to fabricate the fact that he had made this offer. It is more probative than any other potential document on this point. 401/403 -- 104 relevance connection satisfied by the questioning and exhibits establishing: (i) the 2018 RH trucks were the only model for which Plaintiffs were selling 200 more trucks (*see* 149:3-150:7 and P4); (ii) the additional text messages showing discussions of offers for the 2018 International trucks (*see* 141:9-142:9 and Ex. 204), and (iii) the eventual counter offer from Plaintiffs for the exact amount ($63,500) for which they were advertising the trucks for sale (*see* 150:1-152:12) and Ex. 594. |
| 57 | 151:2-9 | Lack of foundation; witness testified he did not know what price trucks were being sold at (let alone at what time period); attorney states as a fact that it is $63500 and asks if witness is surprised to know that fact. Improper questioning without foundation. Note that subsequent questioning used an exhibit (non-hearsay as it was written by Plaintiffs) which provides a proper foundation as to what price was set, at what time, and in what manner--and those questions are unobjected to. | Exhibit 594 is admissible -- a relevant statement of party opponent to which there is no objection, the questioning establishes the relevance--*i.e.* that the advertised offer is the exact amount offered in the text to Mr. Blain, which has some tendency to prove that they are discussing the same types of trucks. |
| 58 | 152:3-9 | Speculation - asks witness to confirm that a text DOES relate to a particular vehicle which is speculation; contrast this with the next question ("the two numbers are the same") which does not ask the witness to speculate that two numbers refer to the same thing but rather just elicits a fact. | Does not call for speculation, simply confirms that the numbers in the two documents are the same. |
| 59 | 152:13-153:4 | Same speculation and foundation as above; attempting to have witness conclude that one number must relate to another number in a text, where the witness already testified to lacking knowledge about the contents of the text. | Does not call for speculation, simply asks witness whether he is aware one way or the other. Lack of awareness is relevant--suggests that a lack of availability is not the cause that any deal was not made. |
| 60 | 153:19-23 | Witness being asked to speculate as to whether Plaintiffs set their advertised price for certain trucks based on an optional trade-back value that was no longer at issue, without any foundation that there was a connection between the two prices (which were not identical; the OTB was $62,000 less certain deductions; the advertisement price being discussed here exceeded that) | Witness's testimony regarding "customer value" is referring to the value in the P-4 spreadsheet, which Summit created, and question is confirming that customer value reverts to the OTB value, not a market value. |
| 61 | **154:16-163:17 (CONDITIONAL ON WHETHER PLAINTIFFS' EXHIBIT OBJECTIONS ABOVE ARE SUSTAINED)** | This is re-direct on the defense text exhibits objected to above. If all of the questions on all those exhibits are excluded, this would no longer make sense and Plaintiffs would not play it. But if any of those questions/exhibits are allowed, this needs to stay in. Final determination dependent on Court's ruling. | Navistar agrees that this questioning can be evaluated after any rulings on the preceding questioning. |

| | | | |
|---|---|---|---|
| 62 | **163:18-169-1 (CONDITIONAL ON WHETHER PLAINTIFFs' EXHIBITS OBJECTIONS ARE SUSTAINED)** | This is re-direct on the defense exhibits related to the cover letter on a draft of the 2021 agreement and the 2021 agreement's language itself. If all of that testimony/exhibit is excluded, then this will no longer make sense and Plaintiffs would not play it. But if any of those questions/exhibits are allowed, this needs to stay in. Final determination dependent on Court's ruling. | |
| 63 | 170:9-17 | Withdrawn question | |
| 64 | 176:1-177:6 | This relates to the same objected-to text exhibits that witness asked to speculate about. | This does not relate to the Ex. 205. $55,016 is Plaintiffs' expert's estimation of expected resale value as of June 2022, and $63,500 is the price at which they advertised for sale. |
| | | | |

**Lollis Trial Deposition - Plaintiff's Proposed Redactions**

**GENERAL POSITION: The *de bene esse depositions were specifically ordered to serve as substitutes for trial testimony and should be presented to the jury as-is, with the exception of attorney colloquy  / questions the offering attorney "struck" so it could rephrase, etc.*  To that end, Plaintiffs propose the following be *stricken* , but the rest retained. In the interest of meeting the Court's 5:00 deadline, Plaintiffs do not identify (as they did with Fink) all obvious attorney colloquy and videographer colloquy but would redact those from its presentation.**

| | Transcript Page | Reason for proposed redaction | |
|---|---|---|---|
| 65 | 13:11-14:1 | Attorney colloquy | |
| 66 | 16:23-17:7 | Attorney colloquy | |
| 67 | 24:16-25:22 | Attorney colloquy | |
| 68 | 29:24-31:4 | Attorney colloquy | |
| 69 | 31:20-23 | Withdrawn question that is then rephrased | |
| 70 | 33:17-34:13 | Withdrawn question then rephrased | |
| 71 | 40:7-8 | Stricken question | |
| 72 | 41:11-22 | Withdrawn question that is then rephrased | |
| 73 | 43:15-16 | Stricken question | |
| 74 | 52:23-53:2 | Stricken question | |
| 75 | 56:5-16 | Stricken question | 56:7-13 was not a withdrawn question and witness expressed the extent of his knowledge relevant to the questions that follow. |
| 76 | 69:21-70:10 | Withdrawn question later rephrased | |
| 77 | 76:7-14 | Attorney colloquy | |
| 78 | 94:18-23 | Withdrawn question later rephrased | |
| 79 | 96:1-7 | Withdrawn question later rephrased | |
| 80 | 106:9-107:20 | Improper  impeachment; the deposition testimony used to "impeach" was not discussing the April 8, 2022 agreement that Lollis had been testifying about at the trial deposition, when he said he couldn't say what Central thought when the letter was signed. Rather, the quoted deposition testimony used to "impeach" was discussing language in an email dated March 24, 2023 (see Lollis Dep. 116:14-119:13) | Document underlying testimony was used at 107:21-108:12; testimony at 107:16-20 unrelated to objection. |

| 81 | 124:8-125:15 | Plaintiffs object to DX97 and independently to the testimony regarding DX97. In recent days, Navistar has asserted a new planned damages mitigation theory: namely, that the switch from RH trucks to LT trucks that it made in March 2022, without increase in cost to PLaintiffs, provided "value" that it may somehow recover from Plaintiffs as an offset to damages. This theory is baseless, previously undisclosed, and fundamentally inconsistent with basic contract law. The April 2022 Agreement post-dated the RH-LT swap and itself expressly provides that Central will receive LT trucks at a specified price. Plaintiffs accepted the contract for the LTs at the stated price. Navistar is not entitled, post-breach, to assert--in essence--that Navistar gave Plaintiffs too good of a deal and are able to retroactively charge more, by deducting that additional value from Plaintiffs' damages. For these reasons, the document and testimony is 401/403 inadmissible. It is also hearsay when offered to prove the truth of the matter asserted as to Navistar's self-serving estimate of the "value" of (1) swapping trucks and (2) its decision not to charge Plaintiffs a surcharge that arose as a result of Navistar's own delay in delivering trucks. | Improper objection. Document has been on exhibit list so this is not something asserted in recent days. Defendants are not arguing for mitigation deduction from damages based on these values. Not hearsay per Special Master's holding that "testimony about what a witness personally...understood is not hearsay at all--it is the witness's own first-hand account." This testimony and document reflects Lollis's understanding at the time. Value provided by Navistar is relevant to Plaintiffs' fraud theory and Navistar's state of mind regarding supply constraints. |