# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC<br><br>    Plaintiffs,<br><br>  v.<br><br>NAVISTAR, INC.<br><br>    Defendant. | Civil Action No. 23-cv-12927<br><br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

## DEFENDANT'S RULE 50(A) MOTION
## FOR JUDGMENT AS A MATTER OF LAW

Defendant Navistar, Inc. ("Navistar") now moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on GLS Leasco, Inc. ("GLS") and Central Transport LLC's ("Central" and collectively with GLS, "Plaintiffs") fraud claim and breach-of-contract claim. Plaintiffs have been fully heard on both claims, and the evidence presented at trial would not permit a reasonable jury to find for Plaintiffs on the essential elements of liability for fraud or breach of contract. Undersigned counsel certifies that counsel personally spoke to, or met with, opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

For the reasons stated in the accompanying memorandum in support, the Court should grant Navistar judgment as a matter of law and dismiss all of Plaintiffs' claims.

1

DATED: July 8, 2026

Respectfully submitted,

/s/ *Kevin M. Jakopchek*

Scott R. Murphy (P68015)
BARNES & THORNBURG LLP
171 Monroe Ave. NW, Suite 1000
Grand Rapids, MI 49503
616-742-3930
smurphy@btlaw.com

Kevin M. Jakopchek (IL 6317040)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
kevin.jakopchek@lw.com

*Attorneys for Defendant Navistar, Inc. n/k/a International Motors LLC*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |
|---|---|
| GLS LEASCO, INC., and CENTRAL TRANSPORT LLC<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NAVISTAR, INC.<br><br>　　　　　　　Defendant. | Civil Action No. 23-cv-12927<br><br>Hon. Mark A. Goldsmith<br><br>Magistrate Judge Anthony P. Patti |

**<u>NAVISTAR'S MEMORANDUM IN SUPPORT OF RULE 50(A) MOTION
FOR JUDGMENT AS A MATTER OF LAW</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iv

STATEMENT OF ISSUES PRESENTED ..................................................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... viii

INTRODUCTION ......................................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.    Plaintiffs' fraud claim fails as a matter of law. ....................................................... 2

      A.    GLS offered no evidence of exemplary damages. ....................................... 2

      B.    Central has no fraud claim because it was not a party to the
            relevant agreements and therefore took no action based on the
            alleged fraud. ............................................................................................ 4

      C.    Central's alleged exemplary damages flow from a delay in
            delivery of trucks under the 2022 Letter Agreement, not the
            alleged fraud. ............................................................................................ 7

      D.    Central's evidence of exemplary damages is legally insufficient. ............... 8

      E.    Plaintiffs failed to introduce clear and convincing evidence from
            which a reasonable jury could find fraud. .................................................. 10

            1.    No reasonable juror could conclude Navistar made the
                  alleged misstatement. ......................................................................... 10

            2.    Plaintiffs could not have reasonably relied on the statement
                  they allege was made. ......................................................................... 11

            3.    No reasonable juror could conclude that Navistar acted
                  with intent to induce reliance because Plaintiffs, not
                  Navistar, reached out to discuss the new agreement. ...................... 14

II.   Plaintiffs' breach-of-contract claims also fails as a matter of law. ....................... 15

ii

A.     The 2022 Letter Agreement did not promise that Navistar would deliver all trucks by the end of June 2022. ...................................................16

B.     Plaintiffs waived any requirement of delivery by June 30, 2022. ...............19

C.     Plaintiffs released or waived any damages relating to the 2018–2019 trucks. ..................................................................................................20

D.     Plaintiffs' failure to provide UCC notice independently bars any remedy. .....................................................................................................22

E.     Plaintiffs have failed to provide sufficient proof of damages. ...................24

     1.     Kahaian's damages model rests on counterfactual assumptions that render it impermissibly speculative. ...................25

     2.     The model ignores truck-specific characteristics that materially reduce resale value. ...........................................................27

     3.     The model fails to account for the practical constraints of selling hundreds of trucks in bulk. ......................................................28

     4.     Plaintiffs failed to establish a nonspeculative causal link between the alleged breach and the claimed losses. ........................28

     5.     Plaintiffs offered no evidence of damages based upon any liability theory besides delivery of all trucks by June 30. .................30

     6.     Plaintiffs offered no non-speculative evidence regarding maintenance damages. ...................................................................30

III.    Navistar renews the legal arguments it presented in its motions for summary judgment. ..............................................................................................31

CONCLUSION ..............................................................................................................31

LOCAL RULE CERTIFICATION ..............................................................................33

CERTIFICATE OF SERVICE......................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agacinski v. Zamborowski,*
   972 F.2d 346, 1992 WL 184580 (6th Cir. 1992) .................................................3, 26, 29

*Am. & Foreign Ins. Co. v. Gen. Elec. Co.,*
   45 F.3d 135 (6th Cir. 1995) ........................................................................................7

*Am. Express Co. v. Lipscomb,*
   No. 79-72892, 1981 WL 40529 (E.D. Mich. Jan. 12, 1981) ...........................................3

*Aron Alan, LLC v. Tanfran, Inc.,*
   240 F. App'x 678 (6th Cir. 2007) ..............................................................................13

*Busch Marine Grp., Inc. v. Calumet River Fleeting, Inc.,*
   617 F. Supp. 3d 809 (E.D. Mich. 2022)......................................................................13

*Coates v. Bastian Bros., Inc.,*
   276 Mich. App. 498 (2007) .........................................................................................1

*Cook v. Little Caesar Enters., Inc.,*
   210 F.3d 653 (6th Cir. 2000)......................................................................................13

*Cooper v. Auto Club Ins. Ass'n,*
   481 Mich. 399 (2008) ...............................................................................................12

*D.R.C.D.T., Inc. v. Integrity Ins. Co.,*
   816 F.2d 273 (6th Cir. 1987)........................................................................................2

*Doherty v. S. Coll. of Optometry,*
   862 F.2d 570 (6th Cir. 1988).....................................................................................18

*Dupree v. Younger,*
   598 U.S. 729 (2023)..................................................................................................31

*Electro-Matic Products, Inc. v. Prime Computers, Inc.,*
   884 F.2d 579, 1989 WL 99044 (6th Cir. 1989) .............................................................6

*Erwin v. Texas Health Choice, L.C.*,
  187 F. Supp. 2d 661 (N.D. Tex. 2002)..................................................................6

*Gorman v. Am. Honda Motor Co.*,
  302 Mich. App. 113 (2013) ................................................................... 22, 24

*Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*,
  974 F.3d 767 (6th Cir. 2020)...............................................................................1

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
  268 Mich. App. 83 (2005) ................................................................................24

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
  398 Mich. 330 (1976) .........................................................................................2

*Jackson Printing Co., Inc. v. Mitan*,
  169 Mich. App. 334 (1988) ................................................................................8

*JP Morgan Chase Bank, NA v. Jackson GR, Inc.*,
  No. 311650, 2014 WL 3529088 (Mich. Ct. App. July 15, 2014) ...................4

*K & M Joint Venture v. Smith Int'l, Inc.*,
  669 F.2d 1106 (6th Cir. 1982) ..............................................................22, 23, 24

*Knight v. Wells Fargo*,
  No. CIV. 12-12129, 2014 WL 4829577 (E.D. Mich. Sept. 29, 2014) ................. 12, 13

*Kvaerner U.S., Inc. v. Hakim Plast Co.*,
  74 F. Supp. 2d 709 (E.D. Mich. 1999) ............................................................20

*Lathfield Holdings LLC v. Dahl Real Est. LLC*,
  2023 WL 6168972 (Mich. Ct. App. Sept. 21, 2023)......................................19

*MacDonald v. Thomas M. Cooley L. Sch.*,
  724 F.3d 654 (6th Cir. 2013)............................................................... 12, 13

*Mattress Closeout Ctr. IV, LLC v. Panera, LLC*,
  No. 14-CV-12562, 2016 WL 3855184 (E.D. Mich. July 15, 2016) ........................... 3, 8

*Novak v. Nationwide Mut. Ins. Co.*,
  235 Mich. App. 675 (1999) ..............................................................................12

*Oraha v. Troy Motors, Inc.*,
  2022 WL 3330152 (Mich. App. Aug. 11, 2022)..............................................12

*Patterson v. Hudson Area Schs.*,
724 F. Supp. 2d 682 (E.D. Mich. 2010)..................................................................................2

*Pick v. Gen. Elec. Co.*,
178 F.3d 1295 (6th Cir. Mar. 8, 1999)..................................................................................18

*Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*,
461 F. Supp. 3d 531 (E.D. Mich. 2020)................................................................................22

*Serv. Jewelry Repair, Inc. v. Cumulus Broad., LLC*,
145 F. Supp. 3d 737 (M.D. Tenn. 2015).................................................................................4

*Smith Living Tr. v. Erickson Ret. Cmtys.*,
326 Mich. App. 366 (2018) ....................................................................................................12

*State Farm Mutual Automobile Insurance Company v. Universal Rehab Services, Inc.*,
No. 2:15-cv-10993, 2017 WL 1304984 (E.D. Mich. March 30, 2017).........................8

*Veselnak v. Smith*,
414 Mich. 567 (1982) ................................................................................................................8

*Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*,
No. 1:05-CV-655, 2009 WL 891724 (W.D. Mich. Mar. 31, 2009) ................................4

*Wallace Hardware Co. v. Abrams*,
223 F.3d 382 (6th Cir. 2000)...................................................................................................5

*Wiskotoni v. Michigan Nat. Bank-W.*,
716 F.2d 378 (6th Cir. 1983)...................................................................................................3

**STATUTES**

MCL § 440.2607(3)(a) .............................................................................................................22

**RULES**

Federal Rule of Civil Procedure 50(a)(1) ...........................................................................1

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should grant Navistar judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Plaintiffs' fraud claim because the only surviving misrepresentation theory is unsupported by evidence of falsity, intent, reasonable reliance, or plaintiff-specific reliance by Central or by any competent evidence of exemplary damages.

Navistar's Answer: Yes.

2.      Whether the Court should grant Navistar judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on Plaintiffs' breach-of-contract claim because the 2022 Letter Agreement does not guarantee delivery of all trucks by June 30, 2022, because Plaintiffs waived any such requirement by signing the agreement with knowledge that production would extend into July, because Plaintiffs released or waived any damages relating to the 2018–2019 trucks, because Plaintiffs failed to provide timely UCC notice of breach, and because Plaintiffs have failed to provide sufficient proof of damages.

Navistar's Answer: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Federal Rule of Civil Procedure 50(a)

- *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020)

- *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 502–03 (2007)

- *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654 (6th Cir. 2013)

- *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690 (1999)

- *Knight v. Wells Fargo*, No. CIV. 12-12129, 2014 WL 4829577 (E.D. Mich. Sept. 29, 2014)

- *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 579 (6th Cir. 1988)

- *Pick v. Gen. Elec. Co.*, 178 F.3d 1295 (6th Cir. 1999)

- *Lathfield Holdings LLC v. Dahl Real Est. LLC*, 2023 WL 6168972 (Mich. Ct. App. Sept. 21, 2023)

- *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d 709 (E.D. Mich. 1999)

- MCL § 440.2607(3)(a)

- *K&M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106 (6th Cir. 1982)

- *Gorman v. American Honda Motor Co.*, 302 Mich. App. 113 (2013)

- *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83 (2005)

viii

## INTRODUCTION

Defendant Navistar, Inc. ("Navistar") now moves under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law on GLS Leasco, Inc. ("GLS") and Central Transport LLC's ("Central" and collectively with GLS, "Plaintiffs") fraud and breach-of-contract claims. Plaintiffs have been fully heard on the issues addressed below, and the evidence presented at trial would not permit a reasonable jury to find for Plaintiffs on the essential elements of liability or damages for fraud or breach of contract. For the reasons set forth below, Navistar respectfully requests that the Court enter judgment in Navistar's favor on Plaintiffs' claims.

## ARGUMENT

Federal Rule of Civil Procedure 50(a)(1) provides that, "[i]f a party has been fully heard on an issue during a jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then the Court may "grant a motion for judgment as a matter of law against the party" on any claim that can be maintained only with a favorable finding on that issue. Fed. R. Civ. P. 50(a)(1). In diversity cases, questions of evidentiary sufficiency are evaluated as the forum state would evaluate them. *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020). Under Michigan law, a directed-verdict motion is "properly granted if, viewing the evidence in a light most favorable to the nonmoving party, reasonable minds cannot differ." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 502–03 (2007).

1

Judgment as a matter of law is therefore proper if there is "a complete absence of proof" on a material issue or if "no disputed issue of fact exists upon which reasonable minds could differ." *Patterson v. Hudson Area Schs.*, 724 F. Supp. 2d 682, 690 (E.D. Mich. 2010).

## I.      Plaintiffs' fraud claim fails as a matter of law.

Measured against the relevant elements and defenses, Plaintiffs' fraud claim fails because the only surviving misrepresentation theory is unsupported by evidence of falsity, intent, reasonable reliance, or plaintiff-specific reliance by Central. Each failure independently warrants judgment as a matter of law.  Fraud must be proven by clear and convincing evidence and will not be presumed; if a transaction is equally capable of an honest and a fraudulent interpretation, it should be found honest. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976); *D.R.C.D.T., Inc. v. Integrity Ins. Co.*, 816 F.2d 273, 278 (6th Cir. 1987). Plaintiffs' evidence does not satisfy that standard.

### A.      GLS offered no evidence of exemplary damages.

The only witness Plaintiffs offered on exemplary damages was Mr. Kyle Blain. Mr. Blain's testimony was that Central Transport started an initiative to trade out trucks every four years, and that Navistar's delay in producing new trucks under the 2022 Letter Agreement undermined that effort, forced Central to continue to operate the Model Year 2018 trucks, and therefore damaged Central's reputation with its drivers and customers.

Mr. Blain offered no testimony regarding reputational damage suffered by GLS. Indeed, Blain admitted that the drivers allegedly affected were "drivers for Central

2

Transport," that "GLS doesn't have drivers," and that the customer impacts he discussed involved "Central's customers," not GLS's customers. (6/24/2026 Tr. 201:4–202:2.) Mr. Blain did not even claim that GLS's reputation had been damaged as to its only customer—its affiliate Central—and to the contrary testified that Plaintiffs had already made the decision that a different entity, ELC, would lease vehicles to Central before entering the 2022 Letter Agreement.

Because GLS has offered no evidence of any damages related to the alleged fraud claim, Navistar is entitled to judgment on GLS's claim for that basis alone. *See, e.g., Agacinski v. Zamborowski*, 972 F.2d 346, 1992 WL 184580, at *4 (6th Cir. 1992) (affirming judgment as a matter of law on plaintiff's claim because "[p]roof of damages must be based on factual evidence, not on mere speculation" and it was "impossible for a reasonable jury to calculate—without mere speculation—the extent of the [plaintiffs'] injury."); *Wiskotoni v. Michigan Nat. Bank-W.*, 716 F.2d 378, 389 (6th Cir. 1983) (reversing a jury's award of mental anguish damages because the plaintiff, "who had the burden of proof with respect to demonstrating damages for mental anguish, failed to provide specific and definite evidence of his own mental anguish, anxiety or distress"); *Mattress Closeout Ctr. IV, LLC v. Panera, LLC*, No. 14-CV-12562, 2016 WL 3855184, at *6 (E.D. Mich. July 15, 2016) (granting defendant summary judgment because "Plaintiff has presented no such evidence from which loss of reputation or goodwill may be inferred," where "Plaintiff has presented no hard evidence of any long-term effect on its customers of the damage to its showroom"); *Am. Express Co. v. Lipscomb*, No. 79-72892,

3

1981 WL 40529, at *6 (E.D. Mich. Jan. 12, 1981) ("In the absence of concrete evidence, an award for injury to plaintiff's good will and reputation would be speculative"), *aff'd*, 663 F.2d 1070 (6th Cir. 1981); *JP Morgan Chase Bank, NA v. Jackson GR, Inc.*, No. 311650, 2014 WL 3529088, at *8 (Mich. Ct. App. July 15, 2014) (affirming a grant of summary disposition because there was "no evidence that would justify an award of exemplary damages" where the plaintiff company, which had ceased operations, put on no evidence of loss of reputation); *Serv. Jewelry Repair, Inc. v. Cumulus Broad., LLC*, 145 F. Supp. 3d 737, 749–50 (M.D. Tenn. 2015) (granting summary judgment because the plaintiff "failed to present any material evidence that its reputation was injured or that, as a result, it suffered real or actual damages" where it offered only a declaration that failed to describe "how [the plaintiff's] reputation was impaired or to what extent, what the actual financial damages were, how they were calculated, or how those damages were caused by the loss of reputation"); *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2009 WL 891724, at *10 n.7 (W.D. Mich. Mar. 31, 2009) ("Conjecture about one's reputation in one's own mind cannot constitute a legally sufficient basis for determining damages, much less quantifying those damages with any reasonable certainty.").

### B. Central has no fraud claim because it was not a party to the relevant agreements and therefore took no action based on the alleged fraud.

Actual and reasonable reliance by a plaintiff, and intent to induce that reliance by a defendant, are required elements of any fraud claim. "[A] claim of fraud or

misrepresentation cannot succeed absent proof that the plaintiff acted in reliance on the purported misrepresentations." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 407 (6th Cir. 2000) (affirming dismissal of fraud claim because the plaintiff "still has not identified any actions it allegedly took in reliance on the [defendant's] purported misrepresentations").

Plaintiffs' proceeded to trial based on allegations that Navistar made a false statement in a December 16, 2021 meeting with the intent to eliminate "Plaintiffs' trade-back rights" and that, "had Navistar not made the alleged false representation, Plaintiffs [1] would not have entered into the Letter Agreement and [2] would not have waived their right to trade in their used trucks." ECF No., 29 at PageID. 272. But the evidence at trial conclusively establishes that Central took neither of the alleged acts made in reliance on Navistar's alleged statements.

First, the purported trade-in right is found in PX-1, GLS' 2018 Optional Tradeback Agreement. Central is not a party to that agreement, and therefore did not waive any right related to it.

Second, Central is not a party to the 2022 Letter Agreement. Instead, the 2022 Letter Agreement was addressed to GLS Leasco, stated that it was "intended to replace the previous agreement among **GLS LeasCo.**, Summit Truck Group and Navistar dated July 13th, 2021," and was signed as the operative purchase agreement for the new trucks. (Pls.' Ex. 136 at 1, 4.) Central was referenced in the no-trade payment provisions, but that does not make Central the contracting party that could have been fraudulently

induced to sign. (Pls.' Ex. 136 at 3–4.) Indeed, Plaintiffs' proceeded to trial on the theory that Central is a third-party beneficiary to the 2022 Letter Agreement—expressly admitting that it was not itself a party to that agreement. In short, it cannot succeed on its claim that it was fraudulently induced to enter the contract (and relied on the alleged statement as an inducement to enter the contract) when it was not even a party to the contract. *E.g.*, *Erwin v. Texas Health Choice, L.C.*, 187 F. Supp. 2d 661, 667 (N.D. Tex. 2002) (holding that "Plaintiff lacks standing to bring fraudulent inducement and negligent misrepresentation claims against Defendants as third-party beneficiaries of the contract that resulted from the alleged fraudulent inducement and negligent misrepresentations" because "[t]he rights of third-party beneficiaries to sue a party to the contract extend only to a cause of action for breach of contract"); *see Electro-Matic Products, Inc. v. Prime Computers, Inc.*, 884 F.2d 579, 1989 WL 99044, at *4 (6th Cir. 1989) (affirming the district court's grant of a directed verdict for the defendant on fraud and misrepresentation claims because "Electro–Matic cannot show that it acted in reliance upon the alleged statements by Prime").[1]

---

[1] Plaintiffs' citation to case law in oral argument related to whether a third-party beneficiary **can** – in some circumstances – act in reliance misses the mark. The question is whether they in fact *did*, and on the two acts that Plaintiffs pled and proceeded to trial on – terminating the 2018 OTB and the July 2021 Letter Agreement – Central plainly did not.

**C.** **Central's alleged exemplary damages flow from a delay in delivery of trucks under the 2022 Letter Agreement, not the alleged fraud.**

Even if Central could in theory have pursued a fraud claim, its evidence of exemplary damages is untethered from what Plaintiffs gave up in entering the 2022 Letter Agreement – GLS's potential trade-back rights related to the 2018 trucks.

Instead, Central claims that a delay in delivery of the 2023 trucks under the 2022 Letter Agreement caused the 2018 trucks to remain in service, thus damaging Central's reputation. But the undisputed evidence showed that Central had received 613 Model Year 2023 trucks, more than enough to cover taking the 594 Model Year 2018 trucks out of service, by March 2023. March 2023 was the date by which all deliveries of Model Year 2023 trucks were called for by the July 2021 Letter Agreement. And according to Plaintiffs' theory, the 2022 Letter Agreement called for deliveries of all trucks by June 2022.

In other words, Central's exemplary damages are not caused by the alleged action taken in reliance on the fraud—giving up the purported "trade back" rights and entering the 2022 Letter Agreement. Instead, they stem from the alleged breach of the 2022 Letter Agreement, through Navistar's purported failure to deliver the new trucks on the schedule that Plaintiffs claim to have expected. Because Central has not established causation for its asserted exemplary damages, its claim for exemplary damages fails as a matter of law. *Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 140 (6th Cir. 1995) (affirming a directed verdict for the defendant because "a plaintiff must establish a

7

causal connection between the claimed defect and the harm done" and "[c]ausation cannot be established solely by conjecture, speculation, or surmise").

### D. Central's evidence of exemplary damages is legally insufficient.

Under Michigan law, "exemplary damages will not be awarded to compensate a purely pecuniary grievance susceptible to full and definite monetary compensation." *Jackson Printing Co., Inc. v. Mitan*, 169 Mich. App. 334, 342 (1988). Indeed, "exemplary damages may be awarded to business entities in limited circumstances." *Mattress Closeout Center IV, LLC v. Panera, LLC*, 2016 WL 3855184, at *6 (E.D. Mich. July 15, 2016). "[T]he type of conduct which would give rise to the threshold of injured feelings necessary to support an award of exemplary damages . . . must inspire feelings of humiliation, outrage and indignity . . . [and] must be **malicious or so willful and wanton** as to demonstrate a reckless disregard of plaintiff's rights." *Veselnak v. Smith*, 414 Mich. 567, 573-75 (1982) (emphasis added). "Exemplary damages are especially inappropriate in cases, like the present one, where the alleged injury is a financial one arising out of commercial dealings between the parties." *State Farm Mutual Automobile Insurance Company v. Universal Rehab Services, Inc.*, No. 2:15-cv-10993, 2017 WL 1304984, at *4 (E.D. Mich. March 30, 2017).

Plaintiffs allege that they suffered reputational damages by losing goodwill among both drivers and customers and that Kyle Blain would testify to prove that loss of reputation. But Plaintiffs offered only generalized opinion testimony; they did not offer any corroborating documents, third-party customer or driver testimony, turnover

8

reports, recruiting-cost calculations, staffing reports, or financial analysis from which a jury could quantify, without speculating, reputational or exemplary damages. The evidence introduced by Plaintiffs falls well short of inspiring feelings of humiliation, outrage and indignity, and is pure speculation (*see* case law referenced *infra* at I.A).

As to the alleged loss of reputation among drivers, Blain admitted that Plaintiffs did not put on any evidence of any communications from the director in charge of recruiting drivers (Dan Lewis). (6/24/2026 Tr. 203:24–25, 205:25–206:3.) Similarly, Blain admitted that none of the turnover reports that supposedly would establish the existence of driver complaints were presented to him on direct examination. (6/24/2026 Tr. 206:4–21.) He further admitted that Plaintiffs did not put into evidence any calculations regarding recruiting costs (6/24/2026 Tr. 209:12–14) or even any staffing reports showing the number of drivers Central employed (6/24/2026 Tr. 209:25–210:6).

As to the alleged loss of reputation with customers, Blain similarly admitted that Plaintiffs did not put on any evidence of customers complaining about the 2018 trucks. (6/24/2026 Tr. 208:22–25.) And he further admitted that his direct examination did not include any analysis of any impact on Central's finances. (6/24/2026 Tr. 210:7–13.)

Because Plaintiffs failed to submit any evidence to substantiate their assertions that they suffered reputational losses with customers and with drivers, their claim for reputational losses fails as a matter of law.

9

    **E.**    **Plaintiffs failed to introduce clear and convincing evidence from which a reasonable jury could find fraud.**

        **1.**    **No reasonable juror could conclude Navistar made the alleged misstatement.**

In the Joint Final Pretrial Order,[2] Plaintiffs argued that Navistar committed fraud by telling Plaintiffs on December 16, 2021, that "it could not produce 1,100 tractors for them in 2022, as they were obligated to under the July 2021 Agreement, and could only produce 600 tractors instead." (Joint Final Pretrial Order at 4; *see also* 9/26/2025 Op., Dkt. 72, at PageID.2956 (allowing the fraud claim to proceed based only on the alleged misrepresentation "that in December 2021 Navistar told GLS and Central Transport it 'could only produce 600 trucks for' them").) Navistar contested this allegation because Navistar never told Plaintiffs that it was not physically possible for it to produce any more than 600 trucks for Plaintiffs.

As the evidence has shown, Navistar told Plaintiffs that it was going to "reduce" its allocation to 600 units. Kyle Blain, the president of GLS, admitted on the stand that he had been told at the December 16, 2021 meeting the truck count of 1,100 "was being *reduced* to 600 units." (6/25/26 Tr. 71:5–6 (emphasis added); *id.* at 70:17–20 (referring to the Dec. 16, 2021 meeting); *see also* 6/29/2026 Tr. 9:1–9 ("Q. So Mr. Carmichael, according to these notes from the next day, what did you tell Central at the December 16, 2021 meeting? A. That we'll be reducing their allocation from 1,100 units

---

[2] At the time of filing this motion, the revised Joint Final Pretrial Order has yet to be entered by the Court.

to 600. Q. What does allocation mean? A. Allocation means basically what slots we have for production or to build in our factory, so we were reducing it from 1,100 to 600."").) Further, after being told that Navistar was reducing its allocation to Central, Blain responded that he wanted more trucks, stating, "we need to improve on the *reduction* of 600 units in the fleet for 2022." (6/25/26 Tr. 24:13–15 (emphasis added).) This language about "reducing" the number of trucks confirms that he was talking about how many trucks had been allocated to Plaintiffs, as even Plaintiffs are not arguing that Navistar's *capacity* for production was reduced.

Indeed, on cross-examination Mr. Blain admitted as much—he admitted that he understands that Navistar "builds lots of trucks" (19:1-2), and that he "did not believe that [Plaintiffs] were the only customer receiving the Bendix system" (15:16-18) and that he would assume "that Navistar had to supply other customers with that Bendix system, too." Tr. 14:17-19. In other words, Mr. Blain admitted that he understood that Navistar's statements about supply constraints were in the context of its efforts to build for other customers too, not a statement that Navistar physically could only build 600 trucks for Plaintiffs.

> **2.    Plaintiffs could not have reasonably relied on the statement they allege was made.**

Even if Plaintiffs could prove by clear and convincing evidence that the statement they claim was made was in fact made, they could not possibly have reasonably relied on a statement about overall capacity to enter the 2022 Letter

Agreement.

One of the elements of fraud is "that the plaintiffs' reliance on the alleged misrepresentation must have been reasonable." *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 662–63 (6th Cir. 2013) (citing *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690 (1999)). Michigan law requires proof of reasonable or justified reliance, not merely actual reliance, and a plaintiff cannot claim fraud where it had information available to it that it chose to ignore or where it had the means to determine that the representation was not true. *See Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 415 (2008); *Oraha v. Troy Motors, Inc.*, 2022 WL 3330152, at *3–4 (Mich. App. Aug. 11, 2022); *Smith Living Tr. v. Erickson Ret. Cmtys.*, 326 Mich. App. 366, 385 (2018). For example, "[u]nreasonable reliance includes relying on an alleged misrepresentation that was expressly contradicted in a written contract that a plaintiff reviewed and signed." *Id.* "A plaintiff unreasonably relies on one of the defendant's statements if another of the defendant's statements contradicts it." *Novak*, 235 Mich.App. at 690.

This Court applied this principle in *Knight v. Wells Fargo*, No. CIV. 12-12129, 2014 WL 4829577 (E.D. Mich. Sept. 29, 2014) (Goldsmith, J.), and dismissed a fraud claim for a lack of reasonable reliance. In *Knight*, the plaintiff brought a fraudulent-inducement claim based on an oral representation that her insurance proceeds would be used to repair her fire-damaged rental property, not to pay off her loan. *Id.* at *1, *5. She alleged that Wells Fargo's agent told her that if she signed the signature page, Wells Fargo would "begin applying the insurance proceeds toward repairs" for her rental property.

12

*Id.* at \*5 (emphasis added). But the plain language of the signature page authorized Wells Fargo "to use the insurance proceeds to pay off the mortgage loan." *Id.* at \*7 (emphasis added).

This Court found that the plaintiff could not have reasonably relied on the claimed misrepresentation. This Court observed that "[u]nreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed." *Id.* (*quoting Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007)). Therefore, "[b]ecause the plain language of the written document expressly contradicted the claimed oral misrepresentation, Plaintiff's reliance on the oral statement was not reasonable." *Id.* at \*7; *see also MacDonald*, 724 F.3d at 665; *Busch Marine Grp., Inc. v. Calumet River Fleeting, Inc.*, 617 F. Supp. 3d 809, 820 (E.D. Mich. 2022) ("[R]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement [with contrary terms].") (quoting *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000)).

No reasonable jury could find reasonable reliance here. Plaintiffs' theory is that they relied on Navistar's statement that Navistar could produce only 600 trucks in 2022 and were induced by this statement to enter into an agreement [with contrary terms]

13

that required Navistar to produce 1,100 trucks in 2022.[3] But a reasonable person would not rely on a representation that a person **cannot** do something as an inducement to a contract calling for the counterparty to do exactly what it allegedly said it could not do. Because no reasonable person would rely on a statement that Navistar could produce only 600 trucks as an inducement to enter a later contract with **almost double the production requirement** (1,100 trucks), Navistar is entitled to judgment as a matter of law.

### 3. No reasonable juror could conclude that Navistar acted with intent to induce reliance because Plaintiffs, not Navistar, reached out to discuss the new agreement.

Plaintiffs' surviving fraud theory requires clear and convincing evidence that Navistar made the alleged statement with the intent that Plaintiffs rely on it. But the undisputed trial evidence defeats that element. Blain admitted that "at the December 16th meeting, Mr. Carmichael was not proposing a new agreement." (6/25/2026 Tr. 22:24–23:1.) Rather, after the meeting, it was Blain who sent a December 17, 2021 follow-up email, admitted as Defense Exhibit 21, in which he wrote, "we need to improve on the reduction to 600 units for the fleets in 2022." (6/25/2026 Tr. 23:7–24:18.)

---

[3] Plaintiffs' references throughout trial to Navistar's offering of the Bendix "pre wire" package do not change the result. The 2022 Letter Agreement itself provided for vehicles to be prewired, meaning that Plaintiffs were aware of the pre-wire option before signing the 2022 Letter Agreement and could not have relied on any representation regarding Bendix unavailability to enter it.

That sequence matters. If Plaintiffs' theory is that the December statement was designed to induce the later 2022 Letter Agreement, the evidence shows the opposite: Navistar delivered its allocation message that Plaintiffs admit was "not proposing a new agreement" and left, and Plaintiffs then initiated the effort to obtain more trucks under a new agreement. Blain admitted that after Navistar allegedly told him he would receive 600 trucks, he was "asking for more than that" and was "advocating for additional." (6/25/2026 Tr. 25:16–19.) He also admitted that, in a December 22 follow-up, it was Mr. Blain that was "pursuing the idea of getting the more than 600 trucks." (6/25/2026 Tr. 25:23–26:7.)

No reasonable jury could infer fraudulent intent from a statement that was followed not by a Navistar request for a new contract, but by Plaintiffs' own request for a better allocation.

## II.     **Plaintiffs' breach-of-contract claims also fails as a matter of law.**

Plaintiffs' breach-of-contract claim fails for five independent reasons. First, the 2022 Letter Agreement did not promise that Navistar would deliver all trucks by the end of June 2022—its terms establish only production slots and build months, and Plaintiffs' own witnesses confirmed that production is different from delivery. Second, Plaintiffs waived any June 2022 delivery requirement by signing the agreement with full knowledge that production would extend into June and July, meaning deliveries would occur in July and August. Third, the "No Trade Agreement Notes" in the 2022 Letter Agreement released or waived any damages relating to the 2018–2019 trucks. Fourth,

15

Plaintiffs failed to provide timely UCC notice of breach as required by MCL § 440.2607(3)(a), waiting nearly eleven months after the alleged breach date to send a formal notice of material breach. Fifth, Plaintiffs' damages evidence is legally insufficient—their expert's model rests on speculative assumptions about selling 480 trucks in a single month at inflated prices, unsupported by the trial evidence of actual market conditions, truck specifications, and bulk-sale realities.

### A.     The 2022 Letter Agreement did not promise that Navistar would deliver all trucks by the end of June 2022.

As explained in this Court's prior order, Plaintiffs' sole theory of breach is "that the breach occurred when Navistar failed to *deliver* all the trucks by end of June 2022." (9/26/2025 Op., Dkt. 72, PageID.2927 (emphasis added).) At trial, Plaintiffs have continued to disavow any other theory of breach: "The breach of contract claim is the June delivery date. We don't have a claim, we haven't asked for claiming there was a breach because there was this delivery schedule and they didn't deliver on a reasonable time." (7/1/2026 Tr. 127:9–13 (argument by Mr. Davis).)

In light of the testimony at trial, reasonable minds could not differ that the parties' agreement did not require Navistar to deliver all the trucks by the end of June 2022.

First, as the Court has already held, "GLS and Central Transport are unable to point to anything within the contract itself that conclusively establishes a June 2022 delivery due date."  (Dkt 72 at PageID 2972.) That is because by its own terms, the

16

agreement referred to available production as of April 2022, without any express delivery obligation. The agreement states that Navistar is working to secure "production slots" through June 2022; it says "New Truck Delivery" was "based on available production at the time of this letter"; and the table is titled "New Truck Build Month" and includes June only as a "Spillover month." (Pls.' Ex. 136 at 1–2.) On this basis alone Plaintiffs' contract claim fails as a matter of law.

Second, at trial, GLS's president, Kyle Blain, admitted that the table in the 2022 Letter Agreement identified "the build months or the production months" (6/25/2026 Tr. 28:9–14) and that "production slots are different than delivery" (6/25/2026 Tr. 27:15–18). He also admitted that it takes "two to four weeks," in his experience, for trucks to be "delivered once they're produce[d] [by] Navistar." (6/24/2026 Tr. 89:18–20)

Blain further admitted that there was "a June spill over month" in the table in the 2022 Letter Agreement that contemplated "that some of the builds [would] be in June . . . ." (6/25/2026 Tr. 28:9–20.) Blain admitted that because "some of the builds could be in June," "that would mean some of the deliveries could potentially be in July[.]" (6/25/2026 Tr. 28:21–23; *see also* 6/25/2026 27:25–28:2 ("Q: Okay and so if there was a production slot at the end of June, that would mean delivery in July, correct? A: Yes.").)

Consistent with these admissions about the plain language of the 2022 Letter Agreement, Blain also admitted that he knew before signing the agreement that (i) over

17

300 trucks would be built in June, and (ii) that trucks were also being built in July. Specifically, he admitted to receiving information on April 13, 2022, that the production schedule "provide[d] for 303 trucks to be produced in June" and for "15 in July," (6/24/2026 Tr. 193:9–194:2.)

The written agreement confirms these admissions. Plaintiffs bear the burden to prove what the contract required, and the jury may substitute a different contract for the one the parties made for themselves. On this trial record, no reasonable jury could turn production slots, build months, and a spillover month into a promise to deliver every truck by June 30, 2022. Plaintiffs therefore failed to establish the contractual obligation on which their theory depends, so their breach-of-contract claims fails as a matter of law. *E.g.*, *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 579 (6th Cir. 1988) (reversing denial of a directed verdict because the plaintiff, a student, failed to establish the existence of a promise, namely a promise by the college "not to change its curriculum if the effect would be to prevent his graduation").

Plaintiffs may point to Carmichael's emails using the language like "built and delivered by June," but those statements do not change the operative contract language just discussed. *Pick v. Gen. Elec. Co.*, 178 F.3d 1295, at *3–4 (6th Cir. Mar. 8, 1999) (unpublished) (affirming a grant of judgment as a matter of law where the plaintiff failed to establish a promise of "continued employment as long as his job performance remained satisfactory" and rejecting the plaintiff's "subjective interpretation of the language" in a letter from the employer). And Carmichael explained that his "should

18

have delivered" and "agreed to deliver" reflected advocacy for the customer and a goal to move trucks as quickly as possible. (6/29/2026 Tr. 15:1–16, 16:20–18:6.) His statements do not override the 2022 Letter Agreement's plain terms, nor Mr. Blain's admissions as to his understanding of the agreement.

Nor does the Court's summary-judgment ruling preclude judgment now. The Court denied Plaintiffs' partial-summary-judgment motion because, on the pretrial record, there was a disputed factual issue about what schedule the agreement required. Plaintiffs' trial proof has resolved that issue: their own witness admitted that the agreement used production and build terminology, that production is different from delivery, that some June builds meant July deliveries, and that Plaintiffs knew before signing that substantial production was scheduled in June and July. The summary-judgment record left a factual dispute; in contrast, the trial record leaves no basis on which a reasonable jury could conclude that delivery of all trucks was required by June 30, 2022.

**B.       Plaintiffs waived any requirement of delivery by June 30, 2022.**

In April of 2022, Plaintiffs were provided with a schedule showing production of the majority of trucks in June and July 2022.  As their own witnesses admitted, that would have meant delivery in July and August of 2022.   By proceeding with the 2022 Letter Agreement with the knowledge that any alleged obligation to meet a June delivery deadline would not be met, Plaintiffs waived any such claim. *Lathfield Holdings LLC v. Dahl Real Est. LLC*, 2023 WL 6168972, at *5 (Mich. Ct. App. Sept. 21, 2023) ("'A waiver

19

is a voluntary and intentional abandonment of a known right.' 'A valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive.'") (citations omitted); *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d 709, 718-19 (E.D. Mich. 1999) ("A waiver occurs when a party 'with full knowledge of material facts, does or forbears to do something inconsistent with the existence of the right in question or his intention to rely on that right.' . . . A party's affirmative conduct or statements which indicate that performance is not required constitute a waiver of the breach.").

### C.      Plaintiffs released or waived any damages relating to the 2018–2019 trucks.

The "No Trade Agreement Notes" section in the 2022 Letter Agreement independently foreclose Plaintiffs' attempt to recover a second time for the same damages tied to the 2018–2019 trucks (damages for old-truck disposal, rental, service, and delay) that the No Trade provisions expressly compensated. In that section, the 2022 Letter Agreement states that "Navistar agrees to pay Central $6,200,000 upon payment for the MY23 1,100 new units under this Letter Agreement" and that "Central/Universal and PAM Transportation will dispose of all 941 trades associated with this package." (Pls.' Ex. 136 at 3.) It further provides that, "[a]s part of the 'No Trade Agreement' associated with the $6.2M payment," Central, Universal, and PAM were "compensated" for "[a]ssistance for the disposal of the 941 units," "[r]ental

20

invoices associated with delayed current and future production," "[r]ental invoices associated with previous model year(s) delayed production resulting in 2017–2019 International trade units remaining in service," and downtime issues on the older trucks. (Pls.' Ex. 136 at 3–4.)

Most importantly, the 2022 Letter Agreement provides that it is "all-encompassing for any and all current or future issues for 941 model year 2017–2019 International units" and "terminates any and all other agreements pertaining to these units." (Pls.' Ex. 136 at 4.) That language covers the same 2018–2019 units on which Plaintiffs base their resale-value, maintenance, fuel, and reputation theories. (Pls.' Ex. 136 at 3–4; Def. Ex. 49 at 3–4.)

Trial testimony confirms that the No Trade Agreement addressed the older units and their sale or disposal. Blain testified that "disposal" meant "making them available for sale and promoting them" and agreed that "part of this agreement was that [Plaintiffs] were going to be reselling the vehicles yourselves." (6/25/2026 Tr. 41:15–20, 42:2–4.)

Plaintiffs cannot accept the benefits of that bargain (i.e., $6.2 million for any issues relating to the 2017–2019 trucks) and then seek damages a second time for issues (i.e., the resale-value, maintenance, fuel, and reputation damages) relating to the same trucks. A reasonable jury therefore could not award damages for the 2018–2019 trucks, because doing so would require disregarding the parties' written agreement. (Pls.' Ex. 136 at 3–4.)

21

**D.** **Plaintiffs' failure to provide UCC notice independently bars any remedy.**

Plaintiffs' breach-of-contract claim also fails because they did not provide timely notice of the alleged breach as required by Michigan's UCC. A buyer that has accepted goods "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" MCL § 440.2607(3)(a). The notice requirement applies to "any breach," including a breach based on late delivery, and applies even if the seller knows the underlying facts. *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 461 F. Supp. 3d 531, 544 (E.D. Mich. 2020). The required notice is that Plaintiffs contend there was a breach. *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1113 (6th Cir. 1982) ("The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach."); *Gorman v. Am. Honda Motor Co.*, 302 Mich. App. 113, 126 (2013) ("It is clear from reading comment 4 in its entirety that the seller must be given actual notice that the buyer believes that the seller is in breach.").

Plaintiffs' theory is that Navistar breached by failing to deliver all trucks by June 30, 2022. Plaintiffs knew that not all trucks would be delivered before they even signed the agreement, having received an April production schedule showing production in June and July.

22

Yet the record shows that the first formal notice of material breach was a May 26, 2023 letter from Plaintiffs' counsel—nearly eleven months after the alleged June 2022 breach and after hundreds of trucks had been accepted. (Def. Ex. 86.) Blain admitted that Defense Exhibit 86 was a letter from "lawyers representing GLS Leasco sent to Navistar," that the subject line was "notice of material breach of April 8th, 2022 letter agreement between Navistar . . . and GLS Leasco," and that the letter said Navistar "failed to build and deliver 517 of the 1,100 trucks that GLS timely ordered during the agreed upon time frame . . . " (6/24/2026 Tr. 197:25–198:1, 197:12–14, 198:6–8.) Blain further admitted that "if 517 out of 1,100 were not timely delivered," then "583 were" timely delivered. (6/24/2026 Tr. 198:10–12.)

Earlier complaints about scheduling or business discussions about production updates did not provide prompt notice that Plaintiffs were claiming a legal breach. For example, Plaintiffs point to a May 26, 2022 email (Plaintiffs' Exhibit 141) in which Blain responded to a production schedule sent by Jim Lollis by stating it was "unacceptable." (6/24/2026 Tr. 99:22–100:14, 101:11.)  But saying something is unacceptable is not the same as asserting that there has been a breach of a contract. The UCC requires prompt notice that the buyer is claiming a breach occurred, not merely generalized dissatisfaction or ongoing commercial dialogue. *See K&M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1114 (6th Cir. 1982) (holding that the district court "erred as a matter of law" by treating it as notice when the plaintiff "called Wallers to complain, but did not claim a breach," even though the plaintiff said it "intended to hold [the defendant]

23

responsible for the breakdowns"); *id.* at 1115 (requiring "unequivocal notice" of a breach); *Gorman v. American Honda Motor Co.*, 302 Mich. App. 113, 126 (2013) (rejecting reliance on a "transaction is still troublesome" formulation and requiring actual notice that the buyer believes the seller is in breach).

Several other reasons show the May 2022 email is not an unequivocal notice of breach. *First*, Blain did not send that email to Navistar; he sent it to Lollis, and this Court has already rejected Plaintiffs' contention that Lollis was an agent of Navistar. (6/25/2026 Tr. 7:17–19 ("[T]he Court is not going to find that Mr. Fink or Mr. Lollis were agents of Navistar.").) *Second*, Plaintiffs' own conduct further shows they did not think there was a breach in May 2022, as they did not issue a litigation hold in anticipation of litigation until October 2023—17 months after Blain's email. (Dkt. 3-3, PageID.316.) *Third*, nothing in the communication suggests a claim of breach.

Because Plaintiffs waited until May 26, 2023—almost 11 months after all trucks were supposedly due by June 30, 2022—to assert a "notice of material breach" of the 2022 Letter Agreement, no reasonable jury could find that Plaintiffs gave reasonable notice, and their contract claim is therefore barred. (6/24/2026 Tr. 197:13–198:8; Def. Ex. 86.)

### E.    Plaintiffs have failed to provide sufficient proof of damages.

Michigan law requires damages to be proven with reasonable certainty, not speculation. *See Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 96 (2005). As explained below, Plaintiffs have failed to prove damages with

24

reasonable certainty, failed to provide a nonspeculative causal link between any alleged breach and the claimed old-truck losses, and failed to show damages recoverable under the governing consequential-damages and lost-profits standards. Those failures independently defeat the damages element of the breach-of-contract claim.

### 1. Kahaian's damages model rests on counterfactual assumptions that render it impermissibly speculative.

Plaintiffs' damages theories rest on a speculative model constructed by their expert, Christopher Kahaian. Kahaian testified that his total damages opinion was $15,775,097, comprising $14.16 million in lost resale value and $1.6 million in repairs and maintenance costs. (7/6/2026 Tr. 71:5–16, 73:6–15.) To arrive at the lost-resale figure, Kahaian does not identify any transaction or series of transactions on which Plaintiffs purportedly missed out.  Instead he used a flat $55,000 per truck "expected resale value" based on the average of Truck Paper auction prices ($47,000) and market listing prices ($63,000), applied uniformly to all 480 trucks. (7/6/2026 Tr. 58:4–59:13.)

Critically, Kahaian assumed that all 480 trucks would be sold in June 2022—the very same month as delivery. This assumption is contradicted by Plaintiffs' actual sales. Kahaian confirmed that Plaintiffs had sold only 20 used trucks by the end of June 2022, zero additional trucks in July, and only 41 by the end of August, ***despite having received 278 new trucks by that time.*** (7/6/2026 Tr. 118:10–119:3; Def. Ex. 218P.) If Plaintiffs themselves could not sell even 41 trucks in three months when they actually had new MY 2023 trucks in hand, no reasonable jury could credit an assumption that

25

they would have sold all 480 in a single month. Tony Stinsa, Navistar's head of used truck operations, confirmed that selling 480 day cabs in a single month would present "extreme difficulty" and that even with Navistar's extensive wholesale network, it would "probably take us maybe six months to sell a package of that size." (7/6/2026 Tr. 210:17–19, 195:21–196:3.)

Moreover, Kahaian's own track record and sensitivity analysis confirm the model's fragility. He admitted that his prior opinions in this case had been excluded because "additional facts" made his "assumptions incorrect" and his "conclusion incorrect in terms of its totals." (7/6/2026 Tr. 85:1–25.) And his sensitivity analysis revealed that if half the trucks were sold in July instead of June, damages would decrease by approximately $500,000, and if all were pushed to July, damages would drop by approximately $1 million. (7/6/2026 Tr. 72:17–73:2.) This significant sensitivity to a single month's timing—combined with the absence of evidence that Plaintiffs could have sold all 480 trucks in June—renders the model impermissibly speculative. *See Agacinski v. Zamborowski*, 972 F.2d at *4 (6th Cir. 1992) (affirming judgment as a matter of law on plaintiff's claim because "[p]roof of damages must be based on factual evidence, not on mere speculation" and it was "impossible for a reasonable jury to calculate—without mere speculation—the extent of the [plaintiffs'] injury.")

### 2.    The model ignores truck-specific characteristics that materially reduce resale value.

Kahaian admitted he did not account for features that affect a buyer's willingness to purchase used semi-trucks, including condition, features, and specifications, and instead considered only the month of hypothetical sale and mileage—even rounding mileage up to 400,000 miles rather than using actual odometer readings. (Dkt. 90, PageID.3183; 7/6/2026 Tr. 64:12–65:3.) The trial record established that Central's trucks had multiple specifications that negatively affected resale value: the RH model (smaller cab, less desirable), yellow paint color, steel wheels (heavier, creating a maintenance concern), A26 engine (13-liter versus the preferred 15-liter), and manual transmission (less popular due to driver shortages). (7/6/2026 Tr. 200:15–205:11.)

Blain's own testimony and contemporaneous communications confirmed these deductions. At trial, Blain admitted that the trucks' steel wheels required a $3,000 deduction, their yellow color required a $3,000 deduction, and their 410-horsepower engines required another $4,000 deduction from comparable vehicles. (6/25/2026 Tr. 47:4–47:19.) Blain's email to Mr. Maroun similarly acknowledged deductions of $3,000 for steel wheels, $3,000 for color, $4,000 for horsepower, and $4,000 for discount to retailers—totaling $14,000 or more per truck. (7/6/2026 Tr. 206:6–206:17; DX 121.) Stinsa further testified that reconditioning costs average $3,000 per truck and can reach up to $10,000 for poorly maintained vehicles, further eroding the net resale value.

27

(7/6/2026 Tr. 193:1–193:14.) None of these deductions is accounted for in Kahaian's model.

### 3. The model fails to account for the practical constraints of selling hundreds of trucks in bulk.

Even if an average market price could estimate the sale price for one truck, it does not establish what Plaintiffs could have received for hundreds of trucks sold at once to wholesalers who would demand volume discounts and resale margins. (Dkt. 90, PageID.3184.) Trial testimony confirmed the practical problem: Blain testified that buyers wanted trucks "parked" so they could "inspect the trucks," that they "couldn't inspect trucks that were still actively in service," and that Plaintiffs stopped pursuing bulk sales because of "a lot of uncertainty" about when new trucks would arrive. (6/24/2026 Tr. 149:12–149:18.) A market-price model that assumes frictionless sales of hundreds of actively-deployed fleet trucks is divorced from the commercial realities the trial evidence established.

### 4. Plaintiffs failed to establish a nonspeculative causal link between the alleged breach and the claimed losses.

Because Plaintiffs seek consequential and lost-profits-style damages for the alleged lost resale value of the 2018 trucks, they must prove a nonspeculative causal link between an actionable breach and a loss that was reasonably probable, reasonably certain in amount, not preventable by reasonable efforts, and computable on a reliable evidentiary basis. Plaintiffs' model does not identify a single confirmed buyer for the relevant trucks at the assumed prices, nor does it tie any lost transaction to a specific

28

quantity, price, or closing date that Plaintiffs missed out on because of Navistar's alleged breach.

The trial record showed only potential, unconsummated sales efforts and that Navistar delivered new MY 2023 trucks much faster than Plaintiffs could sell the MY 2018 trucks. Even Plaintiff's expert had to admit that Navistar delivered 114 MY 2023 trucks prior to June 30, 2022, and GLS had only sold 20 by that time, and another 74 were delivered in July and GLS had still only sold 20 by the end of July. (7/6/2026 Tr. 118:2–118:23.) Simply put, the undisputed facts show that Plaintiffs made a conscious decision not to sell MY 2018 trucks despite having over 100 new MY 2023 trucks, and instead continued to utilize their old trucks—voluntarily foregoing sales and incurring the costs of which they complain. This pattern of conduct severs any causal link between Navistar's alleged breach and the claimed losses.

Because Plaintiffs' damages evidence is built on a series of counterfactual assumptions—that 480 trucks with suboptimal specifications could have been sold in the same month the MY 2023 trucks were delivered when the market reality required six months or more; that each truck would fetch $55,000 when truck-specific deductions reduce that figure by $14,000 or more; and that Plaintiffs rejected offers at $55,000 because the price was too low—no reasonable jury could calculate damages without mere speculation, and judgment as a matter of law is warranted on this independent ground. *See Agacinski v. Zamborowski*, 972 F.2d 346, 1992 WL 184580, at *4 (6th Cir. 1992) (affirming judgment as a matter of law because "[p]roof of damages

29

must be based on factual evidence, not on mere speculation" and it was "impossible for a reasonable jury to calculate—without mere speculation—the extent of the [plaintiffs'] injury").

### 5. Plaintiffs offered no evidence of damages based upon any liability theory besides delivery of all trucks by June 30.

In addition, Mr. Kahaian offered no damages model based upon any liability assumption **besides** delivery of all trucks by June 30. For reasons discussed *infra* that liability theory fails as a matter of law and fact, and to the extent the Court or jury reject it, Plaintiffs have offered no damages evidence regarding any other liability theory.

### 6. Plaintiffs offered no non-speculative evidence regarding maintenance damages.

Mr. Kahaian also testified regarding purported maintenance and repair damages. But besides relying on Mr. Blain's say-so, he could not identify any methodology for determining which repairs were included in the analysis. Mr. Blain also provided no testimony regarding his methodology, and Mr. Kahaian admitted that the spreadsheet Mr. Blain prepared does not provide any means of determining what any individual repair order line is, much less why it was a repair that was only incurred because of Navistar's purported breach. (*E.g.*, 7/6/2026 Tr. 144:2–17, 151:19–152:10.) Indeed, the repair list includes repairs that became necessary only **after** vehicles were already sold to Universal. There is no non-speculative basis for such damages.

30

III.    **Navistar renews the legal arguments it presented in its motions for summary judgment.**

In *Dupree v. Younger*, 598 U.S. 729 (2023), the Supreme Court held that "purely legal issues resolved at summary judgment" do not need to "be renewed in a post-trial motion." *Id.* at 738. But the Supreme Court also acknowledged that it is "a fair concern" that "the line between factual and legal questions can be 'vexing' for courts and litigants" and so recognized that "it would not be surprising if prudent counsel make sure to renew their arguments in a Rule 50 motion out of an abundance of caution." *Id.* (cleaned up). Accordingly, to ensure preservation of the legal arguments that it raised at summary judgment, Navistar reasserts those arguments and incorporates them by reference here. (Dkt. Nos. 50, 56, 59, 76, & 80.)

## CONCLUSION

For the foregoing reasons, Navistar respectfully requests that the Court grant its motion for judgment as a matter of law under Rule 50(a) and enter judgment in Navistar's favor on Plaintiffs' claims. Navistar further requests such relief as the Court deems just and proper.

DATED: July 8, 2026                          Respectfully submitted,

|  |  |
|---|---|
|  | /s/ *Kevin M. Jakopchek* |
| Scott R. Murphy (P68015) | Kevin M. Jakopchek (IL 6317040) |
| BARNES & THORNBURG LLP | LATHAM & WATKINS LLP |
| 171 Monroe Ave. NW, Suite 1000 | 330 North Wabash Avenue, Suite 2800 |
| Grand Rapids, MI 49503 | Chicago, Illinois 60611 |
| 616-742-3930 | Tel: (312) 876-7700 |
| smurphy@btlaw.com | kevin.jakopchek@lw.com |

*Attorneys for Defendant Navistar, Inc. n/k/a International Motors LLC*

32

*Attorneys for Defendant Navistar, Inc. n/k/a International Motors LLC*

## LOCAL RULE CERTIFICATION

I, Kevin M. Jakopchek, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Kevin M. Jakopchek*
Kevin M. Jakopchek (IL 6317040)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
kevin.jakopchek@lw.com

33

## CERTIFICATE OF SERVICE

I certify that on July 8, 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Kevin M. Jakopchek*